No. 23-40653

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

STATE OF TEXAS; STATE OF ALABAMA; STATE OF ARKANSAS; STATE OF LOUISIANA; STATE OF NEBRASKA; STATE OF SOUTH CAROLINA; STATE OF WEST VIRGINIA; STATE OF KANSAS; STATE OF MISSISSIPPI,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA; ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security; TROY MILLER, Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection; PATRICK J. LECHLEITNER, Acting Director of U.S. Immigration and Customs Enforcement; UR M. JADDOU, Director of U.S. Citizenship and Immigration Services; JASON D. OWENS, Chief of the U.S. Border Patrol,

Defendants-Appellants,

MARIA ROCHA; JOSE MAGANA-SALGADO; NANCI J. PALACIOS GODINEZ; ELLY MARISOL ESTRADA; KARINA RUIZ DE DIAZ; CARLOS AGUILAR GONZALEZ; LUIS A. RAFAEL; DARWIN VELASQUEZ; JIN PARK; OSCAR ALVAREZ; DENISE ROMERO; JUNG WOO KIM; ANGEL SILVA; HYO-WON JEON; ELIZABETH DIAZ; BLANCA GONZALEZ; MOSES KAMAU CHEGE; MARIA DIAZ,

Intervenor Defendants-Appellants,

STATE OF NEW JERSEY,

Intervenor-Appellant.

On Appeal from the United States District Court for the Southern District of Texas

## RECORD EXCERPTS FOR FEDERAL GOVERNMENT APPELLANTS

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

ALAMDAR HAMDANI
*United States Attorney*

JONATHAN E. MEYER
*General Counsel*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
NICHOLAS S. CROWN

*U.S. Department of Homeland Security*

*Attorneys, Appellate Staff*
*Civil Division, Room 7259*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1201*

# TABLE OF CONTENTS

**Page**

Tab 1:  Docket Sheet (ROA.1) ....................................................................RE.1

Tab 2:  Notice of Appeal (ROA.36411) ................................................... RE.157

Tab 3:  Memorandum and Order (Sept. 13, 2023) (ROA.36360) ........................ RE.161

Tab 4:  Supplemental Order of Injunction (Sept. 13, 2023) (ROA.36400).......... RE.202

Tab 5:  Memorandum and Order (July 16, 2021) (ROA.25184) .......................... RE.205

Tab 6:  Order of Permanent Injunction (July 16, 2021) (ROA.25261)................ RE.283

# Tab 1

Docket Sheet

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Brownsville)
# CIVIL DOCKET FOR CASE #: 1:18-cv-00068
# Internal Use Only

| | |
|---|---|
| State of Texas et al v. United States of America et al | Date Filed: 05/01/2018 |
| Assigned to: Judge Andrew S Hanen | Jury Demand: None |
| Related Case:  1:14-cv-00254 | Nature of Suit: 899 Other Statutes: |
| Cause: 05:551 Administrative Procedure Act | Administrative Procedures Act/Review or |
| | Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **State of Texas** | represented by | **William Thomas Thompson** |
| | | Lehotsky Keller Cohn LLP |
| | | Special Litigation Unit |
| | | 408 W. 11st Street |
| | | 5th Floor |
| | | Austin, TX 78701 |
| | | 210-286-0806 |
| | | Email: will@lkcfirm.com |
| | | *TERMINATED: 03/09/2023* |
| | | *LEAD ATTORNEY* |
| | | |
| | | **Adam Arthur Biggs** |
| | | Office of the Attorney General |
| | | P.O. Box 12548, Capitol Station |
| | | Austin, TX 78711 |
| | | 512-463-2120 |
| | | Email: adam.biggs@oag.texas.gov |
| | | *TERMINATED: 12/03/2020* |
| | | |
| | | **Adam Nicholas Bitter** |
| | | Office of the Attorney General |
| | | PO Box 12548 |
| | | Austin, TX 78711-2548 |
| | | 512-475-4055 |
| | | Fax: 512-320-0667 |
| | | Email: adam.bitter@oag.texas.gov |
| | | *TERMINATED: 01/07/2019* |
| | | |
| | | **Brantley Starr** |
| | | Office of the Attorney General of Texas |
| | | 209 W 14th St |
| | | Austin, TX 78701 |
| | | 512-936-8160 |
| | | Email: |
| | | brantley.starr@texasattorneygeneral.gov |
| | | *TERMINATED: 08/02/2019* |

**RE.2**

**Cristina Maria Moreno**
Office of the Attorney General
PO Box 12548
Capital Station
Austin, TX 78711-2548
512-463-2120
Email: cristina.moreno@oag.texas.gov
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
Terrazas, PLLC
1001 S. Capital of Texas Hwy.
Ste Building L, Ste. 250
Austin, TX 78746
512-294-9891
Email: ehudson@terrazaspllc.com
*ATTORNEY TO BE NOTICED*

**Ethan Quinn Szumanski**
Office of the Texas Attorney General
P.O. Box 12548
Capitol Station
Austin, TX 78711
512-936-1067
Email: ethan.szumanski@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
Office of the Texas Attorney General
Special Litigation Division
209 W 14th St
8th Fl
Austin, TX 78701
512-936-0631
Email: michael.toth@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
Office of the Attorney General
PO Box 12548
Austin, TX 78701
512-463-2080
Email: trent.peroyea@oag.texas.gov
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
Alliance Defending Freedom
15100 N 90th St
Scottsdale, AZ 85260
480-444-0020
Email: rbangert@adflegal.org

**RE.3**

*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
Office of the Texas Attorney General
Special Litigation Unit
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
512-936-2714
Email: ryan.walters@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
Lehotsky Keller LLP
919 Congress, Ste. 1100
Austin, TX 78701
512-840-9370
Email: todd@lehotskykeller.com
*TERMINATED: 03/22/2021*

**Plaintiff**

| State of Alabama | represented by | **William Thomas Thompson** |
| --- | --- | --- |

(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
Office of the Texas Attorney General
Special Litigation Division
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
512-936-2714
Email: ryan.walters@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of Arkansas**                    represented by    **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*
*ATTORNEY TO BE NOTICED*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

RE.5

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of Louisiana**                    represented by    **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**

RE.6

(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of Nebraska**                    represented by    **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of South Carolina**                  represented by   **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of West Virginia**                  represented by   **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**RE.8**

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of Kansas**                    represented by     **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**

**RE.9**

(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**Governor Phil Bryant**                     represented by   **Adam Arthur Biggs**
*State of Mississippi*                                         (See above for address)
*TERMINATED: 08/21/2020*                                      *TERMINATED: 12/03/2020*

                                                              **Adam Nicholas Bitter**
                                                              (See above for address)
                                                              *TERMINATED: 01/07/2019*

                                                              **Brantley Starr**
                                                              (See above for address)
                                                              *TERMINATED: 08/02/2019*

                                                              **Cristina Maria Moreno**
                                                              (See above for address)
                                                              *TERMINATED: 02/17/2021*
                                                              *ATTORNEY TO BE NOTICED*

**RE.10**

**Michael Christopher Toth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Lee Bangert**
(See above for address)
*TERMINATED: 12/03/2020*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**Governor Paul R. LePage**
*State of Maine*

represented by  **Paul R. LePage**
PRO SE

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Adam Nicholas Bitter**
(See above for address)
*TERMINATED: 01/07/2019*

**Brantley Starr**
(See above for address)
*TERMINATED: 08/02/2019*

**Cristina Maria Moreno**
(See above for address)
*TERMINATED: 02/17/2021*
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

**Plaintiff**

**State of Mississippi**

represented by  **William Thomas Thompson**
(See above for address)
*TERMINATED: 03/09/2023*
*LEAD ATTORNEY*

**Adam Arthur Biggs**
(See above for address)
*TERMINATED: 12/03/2020*

**Eric Alan Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Philip Trent Peroyea**
(See above for address)
*TERMINATED: 11/09/2020*

**Ryan Daniel Walters**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Todd Lawrence Disher**
(See above for address)
*TERMINATED: 03/22/2021*

V.

**Defendant**

**United States of America**                    represented by   **Jeffrey S Robins**
U.S. Department of Justice
Office of Immigration Litigation
PO Box 868
Washington, DC 20044
202-616-1246
Email: jeffrey.robins@usdoj.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aaron Steven Goldsmith**
US Dept of Justice
PO Box 868
Ben Franklin Station
Washington, DC 200044
202-532-4393
Email: aaron.goldsmith@usdoj.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett A Shumate**
United States Department of Justice
950 Pennsylvania Ave.
Washington, DC 20530
202-514-2331
Email: brett.a.shumate@usdoj.gov
*TERMINATED: 04/26/2019*

**RE.12**

**Daniel David Hu**
Office of the US Attorneys Office
1000 Louisiana
Ste 2300
Houston, TX 77002
713-567-9518
Fax: 713-718-3303
Email: daniel.hu@usdoj.gov
*ATTORNEY TO BE NOTICED*

**James Joseph Walker**
U S Dept of Justice
Civil Division, Office of Imm. Lit.
450 4th Street, NW
Washington, DC 20001
202-532-4468
Email: james.walker3@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kirstjen M. Nielsen**                    represented by   **Jeffrey S Robins**
*Secretary of the U.S. Department of*                     (See above for address)
*Homeland Security*                                       *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Aaron Steven Goldsmith**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Daniel David Hu**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **James Joseph Walker**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin K. McAleenan**                     represented by   **Jeffrey S Robins**
*Commissioner of U.S. Customs and Border*                 (See above for address)
*Protection*                                              *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **John V. Coghlan**
                                                          Ellis George Cipollone O'Brien Annaguey
                                                          LLP
                                                          1155 F Street NW,
                                                          Suite 750
                                                          Washington, DC 20004

**RE.13**

202-249-6900
Fax: 202-249-6899
Email: JCoghlan@egcfirm.com
*TERMINATED: 02/05/2021*
*LEAD ATTORNEY*

**Aaron Steven Goldsmith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel David Hu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Joseph Walker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas D. Homan**                     represented by    **Jeffrey S Robins**
*Deputy Director and Acting Director of*                 (See above for address)
*U.S. Immigration and Customs*                           *LEAD ATTORNEY*
*Enforcement*                                            *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**John V. Coghlan**
(See above for address)
*TERMINATED: 02/05/2021*
*LEAD ATTORNEY*

**Aaron Steven Goldsmith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel David Hu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Joseph Walker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**L. Francis Cissna**                   represented by    **Jeffrey S Robins**
*Director of U.S. Citizenship and*                       (See above for address)
*Immigration Services*                                   *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**John V. Coghlan**

**RE.14**

(See above for address)
*TERMINATED: 02/05/2021*
*LEAD ATTORNEY*

**Aaron Steven Goldsmith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel David Hu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Joseph Walker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carla L. Provost**                    represented by  **Jeffrey S Robins**
*Acting Chief of U.S. Border Control*              (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John V. Coghlan**
(See above for address)
*TERMINATED: 02/05/2021*
*LEAD ATTORNEY*

**Daniel David Hu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Joseph Walker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Karla Perez**                    represented by  **Nina Perales**
MALDEF
110 Broadway
Ste 300
San Antonio, TX 78205
210-224-5476
Fax: 210-224-5382
Email: nperales@maldef.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
MALDEF
110 Broadway

23-40653.14

Suite 300
San Antonio, TX 78205
210-224-5476
Email: aavila@maldef.org
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
Garcia & Garcia Attorneys at Law
P.O. Box 4545
McAllen, TX 78502
956-630-3889
Fax: 956-630-3899
Email: cgarcia@garciagarcialaw.com
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
MALDEF
110 Broadway
Ste 300
San Antonio, TX 78205
210-224-5476
Email: cmoreno@maldef.org
*TERMINATED: 01/07/2019*

**Denise Hulett**
Mexican American Legal Defense & Educ.
Fund
1512 14th St
Sacramento, CA 95814
916-642-6352
Email: dhulett@maldef.org
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
Ropes & Gray LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
202-508-4776
Email:
douglas.hallward-driemeier@ropesgray.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
MALDEF
110 Broadway
Suite 300
San Antonio, TX 78205
210-224-5476
Email: eherrera@maldef.org
*TERMINATED: 11/09/2020*

**John Paul Salmon**

RE.16

1801 San Pedro Ave.
San Antonio, TX 78212
(469) 226-8741
Email: jacksalmon02@yahoo.com
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
Persyn Law and Policy
912 Cole Street PMB 124
San Francisco, CA 94117
628-400-1254
Email: marykelly@persynlaw.com
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
Mexican American Legal Defense
11 East Adams
Ste 700
Chicago, IL 60603
312-427-0701
Email: porta@maldef.org
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
The Soto Law Office, LLC
300 Central Ave. SW
Suite 2500w
87102
Albuquerque, NM 87102
505-273-4062
Fax: 505-494-1092
Email: ramon@sotolawoffice.co
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Maria Rocha**                           represented by   **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Jose Magana-Salgado**                    represented by **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

RE.18

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Nanci J Palacios Godinez**                    represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.19**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Elly Marisol Estrada**                    represented by   **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.20**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Karina Ruiz De Diaz**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.21**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Carlos Aguilar Gonzalez**                represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.22**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Karla Lopez**                    represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.23**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Luis A Rafael**                      represented by **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.24**

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Intervenor Defendant**

**Darwin Velasquez**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

**RE.25**

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Jin Park**                                  represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

**RE.26**

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Oscar Alvarez**                    represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Nancy Adossi**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

**RE.28**

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Denise Romero**                    represented by **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

**RE.29**

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Pratishtha Khanna**                represented by   **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)

*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Intervenor Defendant**

**Jung Woo Kim**                                  represented by   **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*

**RE.31**

*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Intervenor Defendant**

**Angel Silva**                              represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**RE.32**

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Moses Kamau Chege**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Hyo-Won Jeon**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**RE.34**

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Elizabeth Diaz**                          represented by   **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**RE.35**

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Maria Diaz**                    represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**RE.36**

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Blanca Gonzalez**                    represented by  **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alejandra Avila**
(See above for address)
*TERMINATED: 08/02/2019*

**Carlos Moctezuma Garcia**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celina Ysela Moreno**
(See above for address)
*TERMINATED: 01/07/2019*

**Denise Hulett**
(See above for address)
*TERMINATED: 02/13/2020*
*ATTORNEY TO BE NOTICED*

**Douglas H Hallward-Driemeier**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ernest I. Herrera**
(See above for address)
*TERMINATED: 11/09/2020*

**John Paul Salmon**
(See above for address)
*TERMINATED: 04/26/2019*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Priscilla Orta**
(See above for address)
*TERMINATED: 06/04/2019*
*PRO HAC VICE*

**Ramon Andres Soto**
(See above for address)
*TERMINATED: 02/05/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**Proposed Amici New Jersey Businesses**          represented by **Andrew J Pincus**
Mayer Brown LLP
1999 K Street, NW
Washington, DC 200006-1101
(202) 263-3220
Email: apincus@mayerbrown.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Craig Dashiell**
Lownstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
973-597-2500
Email: cdashiell@lowenstein.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Leit**
Lowenstein Sandler LLP
One Lowenstein Dr
Roseland, NJ 07068
973-597-2500
Email: dleit@lowenstein.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gavin J Rooney**

Lowenstein Sandler, LLP
One Lowenstein Drive
Roseland, NJ 07068
973-597-2500
Email: grooney@lowenstein.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
1221 Avenue of the Americas
14th Floor
New York, NY 10020
212-506-2647
Email: lrgoldman@mayerbrown.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

| | | |
|---|---|---|
| **Stephen P Wallace** | represented by | **Stephen P Wallace** |
| | | 1116 Sheffer Road |
| | | Apt F |
| | | Aurora, IL 60505 |
| | | 630-995-1195 |
| | | PRO SE |

V.

**Amicus**

| | | |
|---|---|---|
| **U.S. Rep. Steve King** | represented by | **Andrew L Schlafly** |
| | | Attorney at Law |
| | | 939 Old Chester Road |
| | | Far Hills, NJ 07931 |
| | | 908-719-8608 |
| | | Email: aschlafly@aol.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Lawrence John Joseph** |
| | | Law Office of Lawrence J. Joseph |
| | | 1250 Connecticut Ave NW |
| | | Ste 700-1A |
| | | Washington, DC 20036 |
| | | Email: ljoseph@larryjoseph.com |
| | | *LEAD ATTORNEY* |

**RE.39**

*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
RAMON WORTHINGTON, PLLC
1506 S Lone Star Way
Suite 5
Edinburg, TX 78539
9562944800
Email: sramon@ramonworthington.com
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Proposed Amici Institutions of Higher Education** | represented by | **Andrew J Pincus**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Ishan K Bhabha**
Jenner & Block, LLP
1099 New York Avenue, NW
Ste 900
Washington, DC 20001-4412
202-637-6327
Email: IBhabha@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer J Yun**
Jenner & Block LLP
1099 New York Avenue NW
Ste 900
Washington, DC 20001
202-637-6334
Email: JYun@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lindsay C Harrison**
Jenner Block, LLP
1099 New York Avenue NW
Washington, DC 20001-4412
2026396865
Email: LHarrison@jenner.com
*LEAD ATTORNEY*

**RE.40**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas J Perrelli**
Jenner Block LLP
1099 New York Avenue NW
Washington, DC 20001-4412
202-639-6004
Email: TPerrelli@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Religious Organizations**     represented by     **Adeel A Mangi**
Patterson Belknap Webb Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2563
Email: aamangi@pbwt.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Johnathan James Smith**
Muslim Advocates
P.O. Box 66408
Washington, DC 20035
202-897-1897
Email: johnathan@muslimadvocates.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Juvaria Khan**
Muslim Advocates
P.O. Box 66408
Washington, DC 20035
202-897-1896
Email: juvaria@muslimadvocates.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael N Fresco**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2542
Email: mfresco@pbwt.com
*TERMINATED: 05/29/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Sirine Shebaya**
Muslim Advocates
P.O. Box 66408
Washington, DC 20035
202-897-1894
Email: sirine@muslimadvocates.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Zachary Kolodin**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2642
Email: zkolodin@pbwt.com
*TERMINATED: 06/04/2019*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Health Care
Professionals**                    represented by    **Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**RE.42**

**Lawrence S Lustberg**
Gibbons P.C.
One Gateway Center
Newark, NY 07102
973-596-4731
Email: LLustberg@gibbonslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Legal Aid Society**                represented by  **Hasan Shafiqullah**
The Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
212-577-3965
Email: hhshafiqullah@legal-aid.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessa Irene DeGroote**
Cleary Gottlieb et al
One Liberty Plaza
New York, NY 10006
212-225-2646
Email: jdegroote@cgsh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Kolodner**
Cleary Gotlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
212 225-2690
Email: jkolodner@cgsh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Legal Services**        represented by  **Andrew J Pincus**
**Organization**                                          (See above for address)
*LEAD ATTORNEY*

**RE.43**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joan R. Li**
Cooley LLP
3175 Hanover St
Palo Alto, CA 94304
650 843-5000
Email: jli@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maureen Alger**
Cooley LLP
3175 Hanover St
Palo Alto, CA 94304
650 843-5000
Email: malger@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael McMahon**
Cooley LLP
500 Boylston Street
Boston, MA 02116
617 937-2300
Email: mmcmahon@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monique Sherman**
Cooley LLP
3175 Hanover
Palo Alto, CA 94304
650 843-5000
Email: msherman@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amicus United We Dream**     represented by  **Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*

**RE.44**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Geoffrey Stuart Brounell**
Davis Wright et al
1251 Ave of the Americas, 21st Floor
New York, NY 10020
212-489-8230
Email: geoffreybrounell@dwt.com
*ATTORNEY TO BE NOTICED*

**Peter Karanjia**
DLA Piper LLP
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4135
Email: peter.karanjia@dlapiper.com
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici States**                    represented by   **Andrew William Amend**
New York Office of the Attorney General
28 Liberty St
14th Fl
New York, NY 10005
212 416-8022
Email: andrew.amend@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ester Murdukhayeva**
NYS Office of The Attorney General
Appeals & Opinions
28 Liberty Street
10005
New York, NY 10005
212-416-6279

**RE.45**

Email: ester.murdukhayeva1@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Patashnik**
California Department of Justice
Office of the Solicitor General
600 West Broadway
Suite 1800
San Diego, CA 92101
619-738-9628
Email: josh.patashnik@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Grace Zhou**
NYS Office of The Attorney General
28 Liberty Street, Fl. 23
New York, NY 10005
212-416-6160
Email: grace.zhou@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Proposed Amicus Kevin Johnson**          represented by   **Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey M Davidson**
Covington Burling LLP
One Front Street
San Francisco, CA 94111
415 591-7021
Email: jdavidson@cov.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**RE.46**

*ATTORNEY TO BE NOTICED*

**Mark H Lynch**
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
202-662-5544
Email: mlynch@cov.com
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Public Interest Groups**          represented by   **Andrew J Pincus**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jose Garza**
Law Office of Jose Garza
7414 Robin Rest Dr.
San Antonio, TX 78209
210-392-2856
Email: garzpalm@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Martin L. Saad**
Venable LLP
575 7th St NW
Washington, DC 2000
202-344-4345
Email: mlsaad@venable.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sameer P Sheikh**
Venable LLP
600 Massachusetts Ave NW
Washington, DC 20001
202-344-4168
Email: SPSheikh@venable.com
*LEAD ATTORNEY*

**RE.47**

*ATTORNEY TO BE NOTICED*

**William D Coston**
Venable LLP
600 Massachusetts Ave. NW
Washngton, DC 20001
202-344-4813
Email: wdcoston@venable.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alper T Ertas**
Thermo Fisher Scientific Inc.
5781 Van Allen Way
Carlsbad, CA 92008-7321
(760) 805-7307
Email: alper.ertas@thermofisher.com
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**United We Dream**                    represented by   **Peter Karanjia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Brown University**                   represented by   **Anton Metlitsky**
O'Melveny Myers, LLP
7 Times Square
New York, NY 10036
(212) 326-2000
Email: ametlitsky@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
O'Melveny and Myers LLP
400 S Hope St
Los Angeles, CA 90071
213-430-6189
Email: ryagura@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RE.48**

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**California Institute of Technology**          represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
O'Melveny Myers, LLP
7 Times Square
New York, NY 10036
(212) 326-2000
Email: jsokoler@omm.com
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Columbia University**          represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RE.49**

**Amicus**

**Cornell University**                    represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Dartmouth College**                    represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Duke University**                    represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)

**RE.50**

*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Emory University**                    represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Georgetown University**              represented by   **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**George Washington University**                represented by    **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Harvard University**                represented by    **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Massachusetts Institute of Technology**                represented by    **Anton Metlitsky**
(See above for address)

**RE.52**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Northwestern University**      represented by      **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Princeton University**      represented by      **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*

**RE.53**

*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Stanford University**                    represented by  **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**University of Chicago**                    represented by  **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**University of Pennsylvania**    represented by  **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Vanderbilt University**    represented by  **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Washington University in St. Louis**    represented by  **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RE.55**

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Yale University**                    represented by    **Anton Metlitsky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Sokoler**
(See above for address)
*TERMINATED: 02/28/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan Ken Yagura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Companies and**          represented by    **Andrew J Pincus**
**Associations**                                            (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen W Lin**
MAYER BROWN LLP
1221 Avenue of the Americas, 14th floor
New York, NY 10020
212-506-2538
Email: klin@mayerbrown.com

**RE.56**

*TERMINATED: 03/06/2020*
*LEAD ATTORNEY*

**Kevin Scott Ranlett**
Mayer Brown LLP
1999 K Street, NW
Washington, DC 20006
202-263-3000
Email: kranlett@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Goldman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sofia A Ramon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Texas Association of Business**          represented by   **Thomas Shawn Leatherbury**
Thomas S. Leatherbury Law, PLLC
1901 N. Akard St.
Dallas, TX 75201
214-213-5004
Email: tom@tsleatherburylaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Houston Hispanic Chamber of**          represented by   **Thomas Shawn Leatherbury**
**Commerce**                                             (See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Brazoria County Hispanic Chamber of**   represented by   **Thomas Shawn Leatherbury**
**Commerce**                                             (See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**El Paso Hispanic Chamber of Commerce**  represented by   **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Greater Austin Hispanic Chamber of**    represented by   **Thomas Shawn Leatherbury**
**Commerce**                                             (See above for address)
*ATTORNEY TO BE NOTICED*

**RE.57**

**Amicus**

**International Bancshares Corporation**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Marek Brothers Construction, Inc.**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Midland Hispanic Chamber of
Commerce**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Rio Grande Valley Hispanic Chamber of
Commerce**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**San Antonio Hispanic Chamber of
Commerce**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Southwest Airlines**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Texas Border Coalition**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**United Airlines, Inc.**    represented by    **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Current and Former Prosecutors and
Law Enforcement Leaders**    represented by    **Chirag G. Badlani**
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison St. Ste. 4000
Chicago, IL 60602
312-604-2776
Email: cbadlani@hsplegal.com
*ATTORNEY TO BE NOTICED*

**RE.58**

**Amicus**

**National Immigrant Justice Center**
*National Immigrant Justice Center, et al.*

**Amicus**

**Proposed Amici Current and Former Prosecutors and Law Enforcement Leaders**

represented by **Chirag G. Badlani**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Business Immigration Coalition**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Ascension Texas**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Dallas Regional Chamber**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Dallas Hispanic Chamber of Commerce**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Irving-Las Colinas Chamber of Commerce**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Health Management Systems**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Association for Latino Community Asset Builders**

represented by **Thomas Shawn Leatherbury**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**RE.59**

| | | |
|---|---|---|
| **San Antonio Chamber of Commerce** | represented by | **Thomas Shawn Leatherbury**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **Texas Opportunity Roundtable** | represented by | **Thomas Shawn Leatherbury**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **Texas Restaurant Association** | represented by | **Thomas Shawn Leatherbury**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **VisitDallas** | represented by | **Thomas Shawn Leatherbury**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **William F. Reade, Jr.** | represented by | **William F. Reade, Jr.**<br>55 Captain Nickerson Road<br>South Yarmouth, MA 022664<br>PRO SE |

<u>Amicus</u>

**Christine Timmon**

<u>Amicus</u>

**Ad Hoc New Yorker Republican Committee**
c/o Christopher Earl Strunk,
Trustee for Ad Hoc New Yorker
Republican Committee
141 Harris Avenue
Lake Luzerne, NY 12846-1721

<u>Amicus</u>

| | | |
|---|---|---|
| **Charles A Breiterman** | represented by | **Charles Andrew Breiterman**<br>45 East 89 Street #24B<br>New York, NY 10128<br>917-528-0474<br>Email: BreitermanLaw@gmail.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **Congressman Paul A Gosar, D.D.S** | represented by | **Lawrence John Joseph**<br>(See above for address) |

**RE.60**

*ATTORNEY TO BE NOTICED*

**Amicus**

**City of Los Angeles**                    represented by  **Michael Joseph Dundas**
Los Angeles City Attorney's Office
200 N. Main St
CHE, Ste 700
Los Angeles, CA 90012
213-978-8100
Email: mike.dundas@lacity.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Proposed Amici Local Governments and**   represented by  **Margaret Carter**
**Local Government Advocacy**                              *TERMINATED: 05/14/2021*
**Organizations**
**Daniel R Suvor**
O'Melveny & Myers, LLP
400 Hope Street, 18th Fl
Los Angeles, CA 90071-2889
213-430-7669
Email: dsuvor@omm.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Immigration Reform Law Institute**        represented by  **Matt A Crapo**
Immigration Reform Law Institute
25 Massachusetts Ave NW
Suite 335
Washington, DC 20001
571-435-3582
Email: mcrapo@irli.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**43 local governments and local**          represented by  **Nicholas James Whilt**
**government officials and advocacy**                       O'Melveny and Myers LLP
**organizations**                                          400 S Hope St
Los Angeles, CA 90071
213-430-7503
Email: nwhilt@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James A Bowman**
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 10036
213-430-6000

**RE.61**

Email: jbowman@omm.com
*ATTORNEY TO BE NOTICED*

**Kelsey A Chandrasoma**
O'Melveny and Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071
213-430-6000
Email: kchandrasoma@omm.com
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **21 States and the District of Columbia** | represented by | **Ester Murdukhayeva**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Joshua Patashnik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**Intervenor**

| | | |
|---|---|---|
| **State of New Jersey** | represented by | **Amanda I. Morejon**<br>New Jersey Office of the Attorney General<br>Division of Law<br>124 Halsey Street<br>Ste Floor 5<br>Newark, NJ 07102<br>973-648-2489<br>Email: amanda.morejon@law.njoag.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Ashleigh B Shelton**<br>Home<br>2 Canal Crossing<br>Burlington, NJ 08016<br>302-220-0589<br>Email: ashleigh.shelton@law.njoag.gov<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Glenn J Moramarco**<br>Richard J. Hughes, Justice Complex<br>25 Market Street, 1st Floor<br>Trenton, NJ 08625-0116<br>609-376-3232 |

Email: Glenn.Moramarco@law.njoag.gov
*TERMINATED: 05/29/2020*
*LEAD ATTORNEY*

**Jeremy M Feigenbaum**
Office of the New Jersey Attorney General
RJ Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
609-376-2690
Email: jeremy.feigenbaum@njoag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel L Rubinstein**
New Jersey Office of the Attorney General,
Division of Law
124 Halsey St, PO Box 45029
Ste Fl 5
Newark, NJ 07101
609-902-9574
Email: samuel.rubinstein@law.njoag.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shireen A. Farahani**
Office of the New Jersey Attorney General
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, NJ 07101
609-826-6763
Email: shireen.farahani@law.njoag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian De Vito**
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Neward, NJ 07101
973-877-1405
Email: brian.devito@law.njoag.gov
*TERMINATED: 08/21/2020*
*PRO HAC VICE*

**Elspeth L. Faiman Hans**
New Jersey Office of the Attorney General
*TERMINATED: 05/22/2023*

**Eric L Apar**
Office of the New Jersey Attorney General
*TERMINATED: 05/22/2023*

**Jeremy Hollander**
Office of Attorney General
124 Halsey St
Newark, NJ 07101
973-648-7453
Email: jeremy.hollander@law.njoag.gov
*TERMINATED: 05/22/2023*

**Katherine Anne Gregory**
New Jersey Attorney General Office
124 Halsey St
Newark, NJ 07101
973-648-2500
Email: Katherine.Gregory@law.njoag.gov
*TERMINATED: 08/25/2019*
*ATTORNEY TO BE NOTICED*

**Kenneth S Levine**
New Jersey Office of Attorney General
124 Halsey St
5th Fl
Newark, NJ 07101
973-648-2881
Email: kenneth.levine@law.njoag.gov
*TERMINATED: 05/22/2023*
*ATTORNEY TO BE NOTICED*

**Mary Kelly Persyn**
(See above for address)
*TERMINATED: 06/21/2019*
*PRO HAC VICE*

**Melissa Medoway**
New Jersey Office of the Attorney General
124 Halsey St.
PO Box 45029
Newark, NJ 07101
609-575-4958
Fax: 973-648-3956
Email: melissa.medoway@njoag.gov
*TERMINATED: 03/09/2023*

**Nicholas J Dolinsky**
New Jersey Attorney General Office
124 Halsey St
Newark, NJ 07101
973-648-2500
Email: nicholas.dolinsky@law.njoag.gov
*TERMINATED: 08/21/2020*

**Paul H. Juzdan**
New Jersy Attorney General's Office

**RE.64**

124 Halsey St
Newark, NJ 07101
973-648-3183
Email: paul.juzdan@law.njoag.gov
*TERMINATED: 08/25/2019*
*ATTORNEY TO BE NOTICED*

**Rachel Wainer Apter**
New Jersey Office of the Attorney General
25 Market St
8th Fl
Trenton, NJ 08625
609-376-2702
Email: Rachel.Apter@njoag.gov
*TERMINATED: 05/22/2023*
*ATTORNEY TO BE NOTICED*

**Tim Sheehan**
Office of the New Jersey Attorney General
25 Market Street
Trenton, NJ 08625
609-815-2604
Email: tim.sheehan@law.njoag.gov
*ATTORNEY TO BE NOTICED*

**Mayur P Saxena**
NJ Attorney General
Division of Law
124 Halsey Street
5th Floor
Newark, NJ 07101
609-775-5846
Fax: 973-648-3956
Email: mayur.saxena@law.njoag.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2018 | 1 | COMPLAINT against All Defendants (Filing fee $ 400 receipt number 0541-19989656) filed by State of Nebraska, State Of Texas, State of Arkansas, State of South Carolina, State or Alabama, State of Louisiana, State of West Virginia. (Attachments: # 1 Civil Cover Sheet)(Disher, Todd) (Entered: 05/01/2018) |
| 05/01/2018 | 2 | ORDER TRANSFERRING CASE. Case reassigned to Judge Andrew S Hanen for all further proceedings. Judge Rolando Olvera no longer assigned to the case(Signed by Judge Rolando Olvera) Parties notified.(bcampos, 1) (Entered: 05/01/2018) |
| 05/01/2018 | 3 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 7/31/2018 at 01:30 PM in Courtroom 6 before Judge Andrew S |

**RE.65**

| | | |
|---|---|---|
| | | Hanen(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Entered: 05/01/2018) |
| 05/02/2018 | 4 | Unopposed MOTION for Leave to File Excess Pages by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 5/23/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 05/02/2018) |
| 05/02/2018 | 5 | MOTION for Preliminary Injunction by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 5/23/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 05/02/2018) |
| 05/02/2018 | 6 | First APPENDIX re: 5 MOTION for Preliminary Injunction by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Supplement Table of Contents)(Disher, Todd) (Entered: 05/02/2018) |
| 05/02/2018 | 7 | Second APPENDIX re: 5 MOTION for Preliminary Injunction by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 05/02/2018) |
| 05/02/2018 | 8 | Third APPENDIX re: 5 MOTION for Preliminary Injunction by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 05/02/2018) |
| 05/02/2018 | 9 | Fourth APPENDIX re: 5 MOTION for Preliminary Injunction by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 05/02/2018) |
| 05/04/2018 | 10 | MOTION for Jeffrey S. Robins to Appear Pro Hac Vice by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 5/25/2018. (Robins, Jeffrey) (Additional attachment(s) added on 5/4/2018: # 1 Attorney Verification) (bcampos, 1). (Entered: 05/04/2018) |
| 05/07/2018 | 11 | Request for Issuance of Summons as to All Defendants, filed. (Attachments: # 1 Kirstjen M. Nielsen, # 2 Kevin K. McLeenan, # 3 Thomas D. Homan, # 4 L. Francis Cissna, # 5 Carla L. Provost)(Disher, Todd) (Entered: 05/07/2018) |
| 05/07/2018 | 12 | ORDER granting 10 Motion for Jeffrey S. Robins to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Entered: 05/07/2018) |
| 05/08/2018 | | Summons Issued as to 1.) L. Francis Cissna, 2.) Thomas D. Homan, 3.) Kevin K. McAleenan, 4.) Kirstjen M. Nielsen, 5.) Carla L. Provost, 6.) U.S. Attorney General. Issued summons returned to plaintiff by First-class mail, filed.(bcampos, 1) |

| | | |
|---|---|---|
| | | (Entered: 05/08/2018) |
| 05/08/2018 | 13 | MOTION to Intervene by Karla Perez, Maria Rocha, Jose Magana-Salgado, Nanci J Palacios Godinez, Elly Marisol Estrada, Karina Ruiz De Diaz, Carlos Aguilar Gonzalez, Karla Lopez, Luis A Rafael, Darwin Velasquez, Jin Park, Oscar Alvarez, Nancy Adossi, Denise Romero, Pratishtha Khanna, Jung Woo Kim, Angel Silva, Moses Kamau Chege, Hyo-Won Jeon, Elizabeth Diaz, Maria Diaz, Blanca Gonzalez, filed. Motion Docket Date 5/29/2018. (Attachments: # 1 Exhibit Proposed Answer, # 2 Proposed Order)(Perales, Nina) (Entered: 05/08/2018) |
| 05/08/2018 | 14 | MEMORANDUM in Support re: 13 MOTION to Intervene by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Appendix A, # 2 Appendix B)(Perales, Nina) (Entered: 05/08/2018) |
| 05/09/2018 | 15 | ORDER entered by the Court. The Court will hold a Scheduling Conference set for 5/15/2018 at 10:30 AM before Judge Andrew S Hanen. The District Clerk's Office will provide each counsel with the appropriate call-in-number. (Signed by Judge Andrew S Hanen) Parties notified.(dbenavides, 1) (Entered: 05/09/2018) |
| 05/09/2018 | 16 | ORDER granting 4 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(dbenavides, 1) (Entered: 05/09/2018) |
| 05/09/2018 | | *** Emailed sent to parties with the appropriate call-in number as per 15 Order., filed. (csustaeta, 1) (Entered: 05/09/2018) |
| 05/10/2018 | 17 | NOTICE of Appearance by Daniel D. Hu on behalf of L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Hu, Daniel) (Entered: 05/10/2018) |
| 05/14/2018 | 18 | NOTICE of Appearance by Adam Arthur Biggs on behalf of State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Biggs, Adam) (Entered: 05/14/2018) |
| 05/14/2018 | 19 | NOTICE of Appearance by Brantley Starr on behalf of State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Starr, Brantley) (Entered: 05/14/2018) |
| 05/14/2018 | 20 | MOTION for Brett A. Shumate to Appear Pro Hac Vice by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 6/4/2018. (Robins, Jeffrey) (Additional attachment(s) added on 5/15/2018: # 1 Verified |

**RE.67**

| | | membership status) (bcampos, 1). (Entered: 05/14/2018) |
|---|---|---|
| 05/15/2018 | | Minute Entry for proceedings held before Judge Andrew S Hanen. TELEPHONE CONFERENCE held on 5/15/2018. Appearances: Attys for Plaintiff: T.Disher, A.Biggs, B.Starr; Attys for Defts: J. Robins, D. Hu, B.Shumate; Attys for Intervenos: N.Perales, C. Moreno, J. Salmon;(Court Reporter: S. Perales)(10:30-10:40). 13 Motion to Intervene not opposed by parties-GRANTED. 20 Motion for Brett A. Shumate to Appear Pro Hac Vice-GRANTED. Parties are to submit an agreed scheduling order as to 5 Preliminary Injuction by 05/25/18. If parties do not agree to a scheduling order each party is to submit their own scheduling order by 05/25/18. Scheduling Conference set for 05/30/18 at 11:00 am in Brownsville., filed.(csustaeta, 1) (Entered: 05/15/2018) |
| 05/15/2018 | 21 | ORDER granting 20 Motion for Brett A. Shumate to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dbenavides, 1) (Entered: 05/15/2018) |
| 05/15/2018 | | ***Set/Reset Hearings: Scheduling Conference set for 5/30/2018 at 11:00 AM in Courtroom 6 before Judge Andrew S Hanen in Brownsville, Tx. (csustaeta, 1) (Entered: 05/15/2018) |
| 05/15/2018 | 22 | ORDER granting 13 Motion to Intervene. The Court having considered the papers submitted in connection with said motion, and such other relevant information and evidence as was presented to this Court, and good cause appearing, it is hereby ordered that: (1) Motion for Leave to Intervene is granted; (2) Movants be entered as Defendant-Intervenors and their counsel served with all relevant papers in the above-captioned action; and (3) The Clerk of Court shall docket Movants' Answer to Plaintiffs' Complaint, attached as Exhibit 1 to Movants' Motion for Leave to Intervene..(Signed by Judge Andrew S Hanen) Parties notified.(jtabares, 1) (Entered: 05/16/2018) |
| 05/15/2018 | 23 | ANSWER to 1 Complaint, by Defendants-Intervenors Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed.(jtabares, 1) (Entered: 05/16/2018) |
| 05/16/2018 | 24 | CERTIFICATE OF INTERESTED PARTIES by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 05/16/2018) |
| 05/17/2018 | 25 | RETURN of Service of SUMMONS Executed as to United States of America served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 26 | |

| | | |
|---|---|---|
| | | RETURN of Service of SUMMONS Executed as to Kirstjen M. Nielsen served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 27 | RETURN of Service of SUMMONS Executed as to Kevin K. McAleenan served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 28 | RETURN of Service of SUMMONS Executed as to Thomas D. Homan served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 29 | RETURN of Service of SUMMONS Executed as to L. Francis Cissna served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 30 | RETURN of Service of SUMMONS Executed as to Carla L. Provost served on 5/16/2018, answer due 7/16/2018, filed.(Disher, Todd) (Entered: 05/17/2018) |
| 05/17/2018 | 31 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Scheduling Conference by phone on 05/15/18 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Sheila Perales, filed. (Perales, Nina) (Entered: 05/17/2018) |
| 05/17/2018 | 32 | MOTION for Kenneth S. Levine to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 6/7/2018. (scastillo, 1) (Entered: 05/18/2018) |
| 05/17/2018 | 33 | MOTION for Rachel Wainer Apter to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 6/7/2018. (scastillo, 1) (Entered: 05/18/2018) |
| 05/18/2018 | 34 | TRANSCRIPT re: Telephonic Conference held on May 15, 2018 before Judge Andrew S Hanen. Court Reporter/Transcriber sperales. Ordering Party Ms. Karen C. Tumlin Release of Transcript Restriction set for 8/16/2018., filed. (sperales, ) (Entered: 05/18/2018) |
| 05/21/2018 | 35 | Notice of Filing of Official Transcript as to 34 Transcript. Party notified, filed. (scastillo, 1) (Entered: 05/21/2018) |
| 05/21/2018 | 36 | MOTION for Scheduling Order by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 6/11/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 05/21/2018) |
| 05/21/2018 | 37 | NOTICE of Appearance by Adam N. Bitter on behalf of State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Bitter, Adam) (Entered: 05/21/2018) |
| 05/21/2018 | 38 | RESPONSE in Opposition to 36 MOTION for Scheduling Order, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, |

| | | |
|---|---|---|
| | | Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 05/21/2018) |
| 05/21/2018 | 39 | MOTION to Intervene by State of New Jersey, filed. Motion Docket Date 6/11/2018. (hler, 4) (Entered: 05/22/2018) |
| 05/21/2018 | 40 | MEMORANDUM re: 39 MOTION to Intervene by State of New Jersey, filed.(hler, 4) (Entered: 05/22/2018) |
| 05/21/2018 | 41 | MOTION for Paul H Juzdan to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 6/11/2018. (hler, 4) (Entered: 05/22/2018) |
| 05/22/2018 | 42 | AMENDED MEMORANDUM In Support of Proposed Defendant Intervenor's 39 Motion to Intervene by State of New Jersey, filed.(gkelner, 4) (Entered: 05/22/2018) |
| 05/22/2018 | 43 | ORDER granting 32 Motion for Kenneth S. Levine to Appear Pro Hac Vice for State of New Jersey. (Signed by Judge Andrew S Hanen) Parties notified.(sanderson, 4) (Entered: 05/22/2018) |
| 05/22/2018 | 44 | ORDER granting 33 Motion for Rachel Walner Apter to Appear Pro Hac Vice for State of New Jersey. (Signed by Judge Andrew S Hanen) Parties notified.(sanderson, 4) (Entered: 05/22/2018) |
| 05/22/2018 | 45 | ORDER granting 41 Motion for Paul H. Juzdan to Appear Pro Hac Vice for State of New Jersey. (Signed by Judge Andrew S Hanen) Parties notified.(sanderson, 4) (Entered: 05/22/2018) |
| 05/22/2018 | 46 | REPLY in Support of 36 MOTION for Scheduling Order, filed by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Bitter, Adam) (Entered: 05/22/2018) |
| 05/23/2018 | 47 | ORDER re: 39 Motion to Intervene as a Defendant. Lead counsel for the proposed defendant-interveners is hereby ordered to attend the status conference scheduled for 11:00 AM, Wednesday, May 30th, 2018.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 05/23/2018) |
| 05/25/2018 | 48 | Opposed PROPOSED ORDER *by Proposed Defendant-Intervenor State of New Jersey*, filed. (Attachments: # 1 Proposed Order Exhibit 1 Proposed Order)(Apter, Rachel) (Entered: 05/25/2018) |
| 05/25/2018 | 49 | STATUS REPORT by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed.(Robins, Jeffrey) (Entered: 05/25/2018) |
| 05/25/2018 | 50 | ADVISORY by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly |

| | | |
|---|---|---|
| | | Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Proposed Order)(Salmon, John) (Entered: 05/25/2018) |
| 05/29/2018 | 51 | Opposed MOTION to Dismiss *Without Prejudice or, in the Alternative, to Transfer or Stay Proceedings* by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/19/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 05/29/2018) |
| 05/29/2018 | 52 | MEMORANDUM re: 51 Opposed MOTION to Dismiss *Without Prejudice or, in the Alternative, to Transfer or Stay Proceedings* by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15)(Perales, Nina) (Entered: 05/29/2018) |
| 05/30/2018 | | Minute Entry for proceedings held before Judge Andrew S Hanen. SCHEDULING CONFERENCE held on 5/30/2018. Appearances: Attys for Plaintiffs: T. Disher, A. Biggs, B. Starr; Attys for Defendants: J. Robbins, D. Hu, B. Shumate; Attys for Intervenor Defendants: N. Perales, C. Garcia, J. Salmon; Atty for Proposed Defendant-Intervenor: R. Apter. (Court Reporter: S. Perales)(11:05-12:05). Oral argument as to 39 Motion to Intervene by State of New Jersey - objected by Plaintiffs and Defendants; Intervenor Defendants No Objections. 39 under advisement by Court. As to 39 Plaintiffs Response Brief due June 6, 2018 and Proposed Defendant-Intervenor reply due June 11, 2018. Oral argument as to 51 Opposed Motion to Dismiss filed by Intervenors Defendants - DENIED w/o prejudice and leave is given by court allowing Intervenors Defendants to bring up motion at a later time. Oral argument as to 36 Motion for Scheduling Order heard. Hearing set for 7/17/2018 at 11:00 AM at Courtroom 6 before Judge Andrew S Hanen. Court order will follow. filed.(csustaeta, 1) (Entered: 05/30/2018) |
| 05/30/2018 | 53 | ORDER denying 51 Motion to Dismiss; Response to New Jersey's motion to intervene is due 6/6/2018; response to |

**RE.71**

| | | |
|---|---|---|
| | | plaintiff's motion for preliminary injunction due 6/8/2018; reply to response to New Jersey's motion to intervene due 6/11/2018; experts must be disclosed by 6/15/2018; discovery must be completed by 6/29/2018; post-discovery briefing is due 7/7/2018; responses to post-discovery briefings are due 7/13/2018; Preliminary Injunction Hearing is set for 11:00 AM in Brownsville unless changed by subsequent order on 7/17/2018.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 05/30/2018) |
| 05/30/2018 | | ***Set/Reset Deadlines as to 39 MOTION to Intervene : Deft Expert Report due by 6/15/2018. Deft Expert Witness List due by 6/15/2018. Discovery due by 6/29/2018. Pltf Expert Report due by 6/15/2018. Pltf Expert Witness List due by 6/15/2018. Preliminary Injunction Hearing set for 7/17/2018 at 11:00 AM in Courtroom 6 before Judge Andrew S Hanen Responses due by 6/6/2018. (dnoriega, 1) (Entered: 05/30/2018) |
| 05/30/2018 | | ***Set/Reset Deadlines as to 39 MOTION to Intervene, 5 MOTION for Preliminary Injunction : Responses due by 6/8/2018. Replies due by 6/11/2018 (dnoriega, 1) (Entered: 05/30/2018) |
| 05/31/2018 | 54 | AO 435 TRANSCRIPT REQUEST by Todd Lawrence Disher for Transcript of Initial Pretrial Conference on 05/30/18 before Hon. Andrew S. Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Sheila Perales, filed. (Disher, Todd) (Entered: 05/31/2018) |
| 05/31/2018 | 55 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Initial Pretrial Conference on 05/30/2018 before Hon. Andrew S. Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Sheila Perales, filed. (Perales, Nina) (Entered: 05/31/2018) |
| 05/31/2018 | 56 | AO 435 TRANSCRIPT REQUEST by Daniel Hu for Transcript of Initial Pretrial Conference on 5/30/18 before Judge Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Sheila Perales, filed. (Hu, Daniel) (Entered: 05/31/2018) |
| 05/31/2018 | 57 | AO 435 TRANSCRIPT REQUEST by Proposed Defendant Intervenor State of New Jersey/Rachel Wainer Apter for Transcript of Scheduling Conference on 5/30/18 before Judge Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Sheila Perales, filed. (Apter, Rachel) (Entered: 05/31/2018) |
| 06/05/2018 | 58 | MOTION for Lawrence J. Joseph to Appear Pro Hac Vice on behalf of party U.S. Rep. Steve King et al (amicus coalition of Members of Congress), filed. Motion Docket Date 6/26/2018. (dbenavides, 1) (Entered: 06/05/2018) |
| 06/05/2018 | 59 | ORDER granting 58 Motion for Lawrence J. Joseph to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties |

| | | |
|---|---|---|
| | | notified.(dnoriega, 1) (Entered: 06/05/2018) |
| 06/06/2018 | 60 | RESPONSE in Opposition to 39 MOTION to Intervene, filed by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 06/06/2018) |
| 06/06/2018 | 61 | RESPONSE in Opposition to 39 MOTION to Intervene, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 06/06/2018) |
| 06/07/2018 | 62 | MOTION for Jeremy E. Hollander to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 6/28/2018. (Levine, Kenneth) (Additional attachment(s) added on 6/11/2018: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice)) (jtabares, 1). (Entered: 06/07/2018) |
| 06/07/2018 | 63 | NOTICE of Appearance by Andrew L. Schlafly on behalf of U.S. Rep. Steve King, et al., filed. (Schlafly, Andrew) (Entered: 06/07/2018) |
| 06/07/2018 | 64 | MOTION for Leave to File Amicus Brief by U.S. Rep. Steve King, et al., filed. Motion Docket Date 6/28/2018. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Schlafly, Andrew) (Entered: 06/07/2018) |
| 06/07/2018 | 65 | Opposed MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/28/2018. (Attachments: # 1 Exhibit Exhibit 1 - Email Exchange, # 2 Proposed Order Proposed Granted Leave to Defendant-Intervenors to Conduct Discovery of Federal Defendants)(Perales, Nina) (Entered: 06/07/2018) |
| 06/08/2018 | 66 | RESPONSE to 5 MOTION for Preliminary Injunction , filed by State of New Jersey. (Levine, Kenneth) (Entered: 06/08/2018) |
| 06/08/2018 | 67 | MOTION for Denise Hulett to Appear Pro Hac Vice by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/29/2018. (Perales, Nina) (Additional attachment(s) added on 6/11/2018: # 1 Atty License Verification) (rnieto, 1). (Entered: 06/08/2018) |
| 06/08/2018 | 68 | RESPONSE in Opposition to 5 MOTION for Preliminary Injunction, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria |

**RE.73**

| | | |
|---|---|---|
| | | Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 06/08/2018) |
| 06/08/2018 | 69 | ORDER granting 64 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 06/08/2018) |
| 06/08/2018 | 70 | MEMORANDUM of Law re: 5 MOTION for Preliminary Injunction by U.S. Rep. Steve King, et al., filed.(dnoriega, 1) (Entered: 06/08/2018) |
| 06/08/2018 | 71 | RESPONSE to 5 MOTION for Preliminary Injunction , filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Appendix Unreported Authorities)(Robins, Jeffrey) (Entered: 06/08/2018) |
| 06/11/2018 | 72 | ORDER granting 67 Motion for Denise Hulett to Appear Pro Hac Vice. (Signed by Judge Andrew S Hanen) Parties notified.(mperez, 1) (Entered: 06/11/2018) |
| 06/11/2018 | 73 | REPLY in Support of 39 MOTION to Intervene, filed by State of New Jersey. (Levine, Kenneth) (Entered: 06/11/2018) |
| 06/12/2018 | 74 | MOTION for Priscilla Orta to Appear Pro Hac Vice by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/3/2018. (Perales, Nina) (Additional attachment(s) added on 6/13/2018: # 1 Atty License Verification) (rnieto, 1). (Entered: 06/12/2018) |
| 06/12/2018 | 75 | MOTION for Nicholas Dolinsky to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 7/3/2018. (Levine, Kenneth) (Additional attachment(s) added on 6/13/2018: # 1 Atty License Verification) (rnieto, 1). (Entered: 06/12/2018) |
| 06/12/2018 | 76 | NOTICE of Appearance by Ernest I. Herrera on behalf of Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Perales, Nina) (Entered: 06/12/2018) |
| 06/12/2018 | 77 | ORDER granting 62 Motion for Jeremy Hollander to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties |

| | | |
|---|---|---|
| | | notified.(bcampos, 1) (Entered: 06/12/2018) |
| 06/13/2018 | 78 | MOTION for Katherine Gregory to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 7/5/2018. (Levine, Kenneth) (Additional attachment(s) added on 6/13/2018: # 1 Atty License Verification) (rnieto, 1). (Entered: 06/13/2018) |
| 06/13/2018 | 79 | ORDER, entered. Defendant-Intervenors are hereby ordered to file with the Court those discovery devices, and any others for which they request court intervention. (Signed by Judge Andrew S Hanen) Parties notified.(mperez, 1) (Entered: 06/13/2018) |
| 06/13/2018 | 80 | Supplemental MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/5/2018. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3)(Perales, Nina) (Entered: 06/13/2018) |
| 06/14/2018 | 81 | ORDER granting 75 Motion for Nicholas Dolinsky to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Main Document 81 replaced on 6/14/2018) (bcampos, 1). (Entered: 06/14/2018) |
| 06/14/2018 | 82 | ORDER granting 74 Motion for Priscilla Orta to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Entered: 06/14/2018) |
| 06/14/2018 | 83 | ORDER granting 78 Motion for Katherine Gregory to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Entered: 06/14/2018) |
| 06/14/2018 | 84 | MOTION for Leave to File Amended Complaint by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 7/5/2018. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Bitter, Adam) (Entered: 06/14/2018) |
| 06/14/2018 | 85 | RESPONSE in Opposition to 80 Supplemental MOTION for Discovery, 65 Opposed MOTION for Discovery, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Robins, Jeffrey) (Entered: 06/14/2018) |
| 06/15/2018 | 86 | Opposed MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, |

| | | |
|---|---|---|
| | | Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/6/2018. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Perales, Nina) (Entered: 06/15/2018) |
| 06/15/2018 | 87 | EMERGENCY MOTION, MOTION to Quash Deposition Notices and Subpoenas( Motion Docket Date 7/6/2018.) by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Robins, Jeffrey) (Entered: 06/15/2018) |
| 06/15/2018 | 88 | NOTICE of Setting. Parties notified. Telephone Conference set for 6/18/2018 at 03:30 PM by telephone before Judge Andrew S Hanen, filed. RE: Discovery Motions. Case Manager will send an email as to the telephone number to call in. (csustaeta, 1) (Entered: 06/15/2018) |
| 06/15/2018 | 89 | ORDER entered. Motion-related deadline set re: 84 MOTION for Leave to File Amended Complaint. Defendant-Intervenors Responses due by 6/21/2018.(Signed by Judge Andrew S Hanen) Parties notified.(bcampos, 1) (Entered: 06/15/2018) |
| 06/15/2018 | 90 | Exhibit List by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez(Perales, Nina) (Entered: 06/15/2018) |
| 06/17/2018 | 91 | Opposed MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/9/2018. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order Granting Leave to Submit Testimony)(Perales, Nina) (Entered: 06/17/2018) |
| 06/18/2018 | 92 | NOTICE of Appearance by Cristina M. Moreno on behalf of State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Disher, Todd) (Entered: 06/18/2018) |
| 06/18/2018 | 93 | NOTICE of Appearance by P. Trent Peroyea on behalf of State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Disher, Todd) (Entered: 06/18/2018) |
| 06/18/2018 | 94 | |

| | | |
|---|---|---|
| | | RESPONSE in Opposition to 80 Supplemental MOTION for Discovery, 65 Opposed MOTION for Discovery, filed by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 06/18/2018) |
| 06/18/2018 | 95 | RESPONSE to 91 Opposed MOTION for Discovery filed by State of New Jersey. (Apter, Rachel) (Entered: 06/18/2018) |
| 06/18/2018 | 96 | RESPONSE in Opposition to 87 EMERGENCY MOTION MOTION to Quash Deposition Notices and Subpoenas, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 06/18/2018) |
| 06/18/2018 | | Minute Entry for proceedings held before Judge Andrew S Hanen. TELEPHONE CONFERENCE held on 6/18/2018. Appearances: Plaintiffs Attys: T.Disher, A.Biggs, T. Peroyea; Defendants Attys: J. Robbins; Intervenor Defendants Attys: N. Perales, E. Herrera; Proposed Defendant Intervenor Attys: K.Levine, R. Wainer Apter, J. Hollander;(Court Reporter: S. Perales)(03:30-03:55). Discussion held as to discovery motions. Court order will follow., filed.(csustaeta, 1) (Entered: 06/18/2018) |
| 06/20/2018 | 97 | ORDER entered. The federal defendants are not required to respond to the defendant-intervenors' first set of discovery requests; the federal defendants are ordered to respond to defendant-intervenors third set of discovery requests by 7/6/2018; the defendant-intervenors may depose Mr. Kenneth Palinkas; the federal defendants have until the end of Friday, 6/22/2018, to respond to defendant-intervenors' motion for leave to submit teestimony.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 06/20/2018) |
| 06/21/2018 | 98 | RESPONSE in Opposition to 84 MOTION for Leave to File Amended Complaint, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 06/21/2018) |
| 06/22/2018 | 99 | RESPONSE in Opposition to 91 Opposed MOTION for Discovery, filed by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A)(Bitter, Adam) (Entered: 06/22/2018) |

| | | |
|---|---|---|
| 06/22/2018 | 100 | NOTICE *of Filing* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, filed. (Attachments: # 1 Exhibit)(Robins, Jeffrey) (Entered: 06/22/2018) |
| 06/22/2018 | 101 | RESPONSE in Opposition to 91 Opposed MOTION for Discovery, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Robins, Jeffrey) (Entered: 06/22/2018) |
| 06/25/2018 | 102 | REPLY in Support of 91 Opposed MOTION for Discovery, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 06/25/2018) |
| 06/25/2018 | 103 | ORDER granting 84 Motion for Leave to File Amended Complaint and granting the States of New Jersey's Amended Motion for leave to Intervene 42 .(Signed by Judge Andrew S Hanen) Parties notified.(dbenavides, 1) (Entered: 06/25/2018) |
| 06/25/2018 | 104 | AMENDED COMPLAINT against All Defendants filed by State of Texas, State of Louisiana, State of Nebraska, State of West Virginia, State of Arkansas, State of South Carolina, State of Alabama. Related document: 1 Complaint, filed by State of Alabama, State of Texas, State of Arkansas, State of Nebraska, State of West Virginia, State of South Carolina, State of Louisiana.(dbenavides, 1) (Entered: 06/25/2018) |
| 06/25/2018 | 105 | Opposed MOTION to Exclude Testimony from Untimely Designated Witnesses by State of Alabama, State of Arkansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 7/16/2018. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Disher, Todd) (Entered: 06/25/2018) |
| 06/26/2018 | 106 | MOTION for Aaron S. Goldsmith to Appear Pro Hac Vice by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, United States of America, filed. Motion Docket Date 7/17/2018. (Goldsmith, Aaron) (Additional attachment(s) added on 6/28/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 06/26/2018) |
| 06/27/2018 | 107 | Opposed MOTION for Extension of Time Post-discovery briefing by State of New Jersey, filed. Motion Docket Date 7/18/2018. (Attachments: # 1 Exhibit Order in NAACP v. Trump, # 2 Proposed Order)(Apter, Rachel) (Entered: 06/27/2018) |
| 06/28/2018 | 108 | MOTION for Brian DeVito to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 7/19/2018. (Levine, |

| | | |
|---|---|---|
| | | Kenneth) (Additional attachment(s) added on 6/28/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 06/28/2018) |
| 06/28/2018 | 109 | Cross MOTION to Exclude Plaintiffs' Evidence of Non-Disclosed Witnesses by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/19/2018. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Perales, Nina) (Entered: 06/28/2018) |
| 06/28/2018 | | Minute Entry for proceedings held before Judge Andrew S Hanen. TELEPHONE CONFERENCE held on 6/28/2018. Appearances: T. Disher, Atty f/Plaintiffs; A. Goldsmith, Atty f/Defendants; N. Perales, Atty f/Intervenor Defendants; R. Apter, Atty f/State of New Jersey;(ERO:Juanita Tabares)(02:00-02:23) All Parties participated telephonically. Plaintiffs Attorney T.Disher said no pending motions to be addressed today. 109 Cross Motion to Exclude Plaintiffs Evidence of Non-Disclosed Witnesses addressed. Denied depositions as to certain witnesses depending on answers w/o prejudice. 106 Motion for Aaron S. Goldsmith-GRANTED. 107 Opposed Motion for Extension of Time Post-discovery briefing by State of New Jersey-GRANTED. Court adopts the dates on on motion 107 Discovery Cutoff- due 07/13/18; Post-discovery briefing due 07/21818; Responses to post-discovery briefing due 07/27/18 and Hearing reset to 08/08/18. Court is interested in certain things and those items where discussed. Discussion held as to deposition. Telephone conference ended., filed.(csustaeta, 1) (Entered: 06/28/2018) |
| 06/29/2018 | 110 | AO 435 TRANSCRIPT REQUEST by Judge Hanen for Transcript of Telephonic Conference held on 6-28-18 before Judge Andrew S. Hanen. Hourly turnaround requested. Court Reporter/Transcriber: Exceptional Reporting Services, filed. (rnieto, 1) (Entered: 06/29/2018) |
| 06/29/2018 | 111 | TRANSCRIPT re: TELEPHONE CONFERENCE held on 6/28/18 before Judge Andrew S Hanen. Court Reporter/Transcriber EXCEPTIONAL REPORTING. Ordering Party JUDGE ANDREW S. HANEN Release of Transcript Restriction set for 9/27/2018., filed. (thudson, ) (Entered: 06/29/2018) |
| 06/29/2018 | 112 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Telephone Conference, 06/28/2018, Judge Andrew Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Exceptional Reporting Services, filed. (Perales, Nina) Modified on 7/2/2018 (dnoriega, 1). *Electronically forwarded to Exceptional on 7/2/2018. Transcript Completion Date: 7/6/2018.* (Entered: 06/29/2018) |

| | | |
|---|---|---|
| 06/29/2018 | 113 | AO 435 TRANSCRIPT REQUEST by United States of America et al for Transcript of 06/28/2018. 3-Day turnaround requested. Court Reporter/Transcriber: Exceptional Reporting Services, filed. (Goldsmith, Aaron) Modified on 7/2/2018 (dnoriega, 1). ***Electronically forwarded to Exceptional on 7/2/2018. Estimated Transcript Completion Date: 7/2/2018.*** (Entered: 06/29/2018) |
| 07/02/2018 | 114 | Notice of Filing of Official Transcript as to 111 Transcript. Party notified, filed. (JenniferLongoria, 1) (Entered: 07/02/2018) |
| 07/02/2018 | | (Court only) ***Attorney Aaron Steven Goldsmith for United States of America added. (pyebernetsky, 4) (Entered: 07/02/2018) |
| 07/02/2018 | 115 | MOTION for Extension of Time File an Answer by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, United States of America, filed. Motion Docket Date 7/23/2018. (Attachments: # 1 Proposed Order)(Goldsmith, Aaron) (Entered: 07/02/2018) |
| 07/02/2018 | 116 | ORDER denying 91 Motion for Discovery; granting 107 Motion for Extension of Time. Discovery from the Federal Defendants must be completed by 7/13/2018. The Preliminary Injunction hearing will be on 8/8/2018 at 10:00 AM. The hearing will be held in Brownsville, Texas unless counsel are notified otherwise..(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/02/2018) |
| 07/02/2018 | | ***Set/Reset Deadlines/Hearings: Injunction Hearing set for 8/8/2018 at 10:00 AM in Courtroom 3 before Judge Andrew S Hanen (dnoriega, 1) (Entered: 07/02/2018) |
| 07/02/2018 | 117 | ORDER granting 115 Motion for Extension of Time. It is hereby ordered that the date for defendants to respond to plaintiffs' amended complaint, filed 6/25/2018, is hereby extended to 7/23/2018.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/02/2018) |
| 07/05/2018 | 118 | MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction* by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/26/2018. (Attachments: # 1 Memorandum in Support of Motion, # 2 Proposed Order)(Perales, Nina) (Entered: 07/05/2018) |
| 07/05/2018 | 119 | MOTION for Douglas H. Hallward-Driemeier to Appear Pro Hac Vice by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, |

| | | |
|---|---|---|
| | | Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/26/2018. (Perales, Nina) (Additional attachment(s) added on 7/6/2018: # 1 Attorney Verification) (scastillo, 1). (Entered: 07/05/2018) |
| 07/06/2018 | 120 | ORDER entered ; Motion-related deadline set re: 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction* Responses due by 7/20/2018.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/06/2018) |
| 07/09/2018 | 121 | MOTION for Thomas J. Perrelli to Appear Pro Hac Vice by Proposed Amici Institutions of Higher Education, filed. Motion Docket Date 7/30/2018. (verified) (dbenavides, 1) Modified on 7/9/2018 (dbenavides, 1). (Entered: 07/09/2018) |
| 07/09/2018 | 122 | MOTION for Ishan K Bhabha to Appear Pro Hac Vice by Proposed Amici Institutions of Higher Education, filed. Motion Docket Date 7/30/2018. (verified) (dbenavides, 1) Modified on 7/9/2018 (dbenavides, 1). (Entered: 07/09/2018) |
| 07/09/2018 | 123 | MOTION for Lindsay C. Harrison to Appear Pro Hac Vice by Proposed Amici Institutions of Higher Education, filed. Motion Docket Date 7/30/2018. (verified) (dbenavides, 1) Modified on 7/9/2018 (dbenavides, 1). (Entered: 07/09/2018) |
| 07/09/2018 | 124 | MOTION for Jennifer J. Yun to Appear Pro Hac Vice by Proposed Amici Institutions of Higher Education, filed. Motion Docket Date 7/30/2018. (verified) (dbenavides, 1) Modified on 7/9/2018 (dbenavides, 1). (Entered: 07/09/2018) |
| 07/10/2018 | 125 | ORDER granting 119 Motion for Douglas H. Hallward-Driemeier to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/10/2018) |
| 07/10/2018 | 126 | ORDER granting 124 Motion for Jennifer J. Yun to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/10/2018) |
| 07/10/2018 | 127 | ORDER granting 121 Motion for Thomas J. Perrelli to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/10/2018) |
| 07/10/2018 | 128 | ORDER granting 122 Motion for Ishan K. Bhabha to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/10/2018) |
| 07/10/2018 | 129 | ORDER granting 123 Motion for Lindsay C. Harrison to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/10/2018) |
| 07/11/2018 | 130 | MOTION for Gavin J. Rooney to Appear Pro Hac Vice by Proposed Amici New Jersey Businesses, filed. (verified) Motion Docket Date 8/1/2018. (dbenavides, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 131 | MOTION for Craig Dashiell to Appear Pro Hac Vice by |

| | | |
|---|---|---|
| | | Proposed Amici New Jersey Businesses, (verified) filed. Motion Docket Date 8/1/2018. (dbenavides, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 132 | MOTION for David Leit to Appear Pro Hac Vice by Proposed Amici New Jersey Businesses filed. (verified) Motion Docket Date 8/1/2018. (dbenavides, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 133 | ORDER granting 106 Motion for Aaron S. Goldsmith to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 134 | ORDER granting 108 Motion for Brian De Vito to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 135 | MOTION to Enforce July 2, 2018 Order and Quash Subpoena to the President of the National Citizenship and Immigration Council of the AFGE, AFL-CIO as to 116 Order on Motion for Discovery,, Order on Motion for Extension of Time, by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 8/1/2018. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order)(Disher, Todd) (Entered: 07/11/2018) |
| 07/11/2018 | 136 | ORDER granting 135 Motion to Enforce. (Signed by Judge Andrew S Hanen) Parties notified.(csustaeta, 1) (Entered: 07/11/2018) |
| 07/11/2018 | 137 | RESPONSE in Opposition to 135 MOTION to Enforce July 2, 2018 Order and Quash Subpoena to the President of the National Citizenship and Immigration Council of the AFGE, AFL-CIO as to 116 Order on Motion for Discovery,, Order on Motion for Extension of Time,, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit A)(Perales, Nina) (Entered: 07/11/2018) |
| 07/11/2018 | 138 | Renewed MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/1/2018. (Attachments: # 1 Exhibit A)(Perales, Nina) (Entered: 07/11/2018) |
| 07/12/2018 | 139 | RESPONSE in Opposition to 138 Renewed MOTION for Discovery, filed by L. Francis Cissna, Thomas D. Homan, Kevin |

| | | |
|---|---|---|
| | | K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Robins, Jeffrey) (Entered: 07/12/2018) |
| 07/13/2018 | 140 | MOTION for Zachary Kolodin to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. (verified) Motion Docket Date 8/3/2018. (dbenavides, 1) (Entered: 07/13/2018) |
| 07/13/2018 | 141 | MOTION for Adeel A. Mangi to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. (verified) Motion Docket Date 8/3/2018. (dbenavides, 1) (Entered: 07/13/2018) |
| 07/13/2018 | 142 | MOTION for Michael N Fresco to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. (verified) Motion Docket Date 8/3/2018. (dbenavides, 1) (Entered: 07/13/2018) |
| 07/13/2018 | 143 | MOTION for Lawrence S. Lustberg to Appear Pro Hac Vice by Proposed Amici Health Care Professionals, filed. (Verified) Motion Docket Date 8/3/2018. (dbenavides, 1) (Entered: 07/13/2018) |
| 07/16/2018 | 144 | MOTION for Hasan Shafiqullah to Appear Pro Hac Vice by The Legal Aid Society, filed. Motion Docket Date 8/6/2018. Verified Status of Bar Membership for Motion Pro Hac Vice.(JenniferLongoria, 1) (Entered: 07/16/2018) |
| 07/16/2018 | 145 | MOTION for Jessa Irene DeGroote to Appear Pro Hac Vice by The Legal Aid Society, filed. Motion Docket Date 8/6/2018. Verified Status of Bar Membership for Motion Pro Hac Vice.(JenniferLongoria, 1) (Entered: 07/16/2018) |
| 07/16/2018 | 146 | MOTION for Maureen P. Alger to Appear Pro Hac Vice by Proposed Amici Legal Services Organization, filed. Motion Docket Date 8/6/2018. (Attanasio, Michael) (Additional attachment(s) added on 7/18/2018: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice) (jtabares, 1). (Entered: 07/16/2018) |
| 07/16/2018 | 147 | MOTION for Monique R. Sherman to Appear Pro Hac Vice by Proposed Amici Legal Services Organization, filed. Motion Docket Date 8/6/2018. (Attanasio, Michael) (Additional attachment(s) added on 7/18/2018: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice) (jtabares, 1). (Entered: 07/16/2018) |
| 07/16/2018 | 148 | MOTION for Michael J. McMahon to Appear Pro Hac Vice by Proposed Amici Legal Services Organization, filed. Motion Docket Date 8/6/2018. (Attanasio, Michael) (Additional attachment(s) added on 7/18/2018: # 1 Verified Status of Bar Membership for Motion Pro Hac Vice) (jtabares, 1). (Entered: 07/16/2018) |
| 07/16/2018 | 149 | MOTION for Joan R. Li to Appear Pro Hac Vice by Proposed Amici Legal Services Organization, filed. Motion Docket Date 8/6/2018. (Attanasio, Michael) (Additional attachment(s) added on 7/18/2018: # 1 Verified Status of Bar Membership for Motion |

| | | |
|---|---|---|
| | | Pro Hac Vice) (jtabares, 1). (Entered: 07/16/2018) |
| 07/16/2018 | 150 | MOTION for Peter Karanjia to Appear Pro Hac Vice by Proposed Amicus United We Dream, filed. Motion Docket Date 8/6/2018. (dbenavides, 1) (Entered: 07/16/2018) |
| 07/16/2018 | 151 | MOTION for Geoffrey S. Brounell to Appear Pro Hac Vice by Proposed Amicus United We Dream, filed. Motion Docket Date 8/6/2018. (DesireeSillas, 4) (Entered: 07/16/2018) |
| 07/16/2018 | 152 | ORDER granting 130 Motion for Gavin J. Rooney to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 153 | ORDER granting 131 Motion for Craig Dashiell to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 154 | ORDER granting 132 Motion for David Leit to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 155 | ORDER granting 140 Motion for Zachary Kolodin to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 156 | ORDER granting 141 Motion for Adeel A. Mangi to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 158 | ORDER granting 143 Motion for Lawrence S. Lustberg to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 159 | ORDER granting 144 Motion for Hasan Shafiqullah to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/16/2018 | 160 | ORDER granting 145 Motion for Jessa DeGroote to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/17/2018 | 157 | ORDER granting 142 Motion for Michael N. Fresco to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/17/2018 | 161 | ORDER entered. The Preliminary Injunction Hearing scheduled to take place on 8/8/2018 at 10:00 AM will now be held in Houston, Texas, in Courtroom 9C before Judge Andrew S Hanen. In light of the Preliminary Injunction hearing, the initial pretrial conference scheduled for 7/31/2018, is hereby canceled. No joint case management plan need be filed.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/17/2018) |
| 07/17/2018 | 162 | ORDER granting 151 Motion for Geoffrey S. Brounell to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties |

**RE.84**

| | | |
|---|---|---|
| | | notified.(JenniferLongoria, 1) (Entered: 07/17/2018) |
| 07/17/2018 | 163 | ORDER granting 150 Motion for Peter Karanjia to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/17/2018) |
| 07/17/2018 | 164 | Unopposed MOTION for Leave to File Excess Pages by State of New Jersey, filed. Motion Docket Date 8/7/2018. (Attachments: # 1 Proposed Order)(Levine, Kenneth) (Entered: 07/17/2018) |
| 07/17/2018 | 165 | REPLY in Support of 138 Renewed MOTION for Discovery, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/17/2018) |
| 07/18/2018 | 166 | Unopposed MOTION for Leave to File Excess Pages by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/8/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 07/18/2018) |
| 07/18/2018 | 167 | ORDER entered. Should any party wish to respond to this motion, any such response shall be filed on or before 7/20/2018 at 5:00 PM, Central Daylight Time.(Signed by Judge Andrew S Hanen) Parties notified.(dnoriega, 1) (Entered: 07/18/2018) |
| 07/18/2018 | 168 | Unopposed MOTION for Extension of Time Answer by Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, filed. Motion Docket Date 8/8/2018. (Attachments: # 1 Proposed Order)(Goldsmith, Aaron) (Entered: 07/18/2018) |
| 07/18/2018 | 169 | MOTION for Andrew W. Amend to Appear Pro Hac Vice by Proposed Amici States, filed. Motion Docket Date 8/8/2018. (jtabares, 1) (Entered: 07/18/2018) |
| 07/18/2018 | 170 | MOTION for Jeffrey M. Davidson to Appear Pro Hac Vice by Proposed Amicus Kevin Johnson, filed. Motion Docket Date 8/8/2018. (jtabares, 1) (Entered: 07/18/2018) |
| 07/18/2018 | 171 | RESPONSE in Opposition to 168 Unopposed MOTION for Extension of Time Answer, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/18/2018) |

| 07/19/2018 | 172 | MOTION for Jonathan Samuel Kolodner to Appear Pro Hac Vice by Proposed Amicus Curia The Legal Aid Society, filed. Motion Docket Date 8/9/2018. (jtabares, 1) (Entered: 07/19/2018) |
|---|---|---|
| 07/19/2018 | 173 | MOTION for Mark H. Lynch to Appear Pro Hac Vice by Proposed Amicus Kevin Johnson, filed. Motion Docket Date 8/9/2018. (jtabares, 1) (Entered: 07/19/2018) |
| 07/19/2018 | 174 | MOTION for William D. Coston to Appear Pro Hac Vice by Proposed Amici Public Interest Groups, filed. Motion Docket Date 8/9/2018. (jdav, 4) (Entered: 07/20/2018) |
| 07/19/2018 | 175 | MOTION for Martin L. Saad to Appear Pro Hac Vice by Proposed Amici Public Interest Groups, filed. Motion Docket Date 8/9/2018. (jdav, 4) (Entered: 07/20/2018) |
| 07/19/2018 | 176 | MOTION for Sameer P. Sheikh to Appear Pro Hac Vice by Proposed Amici Public Interest Groups, filed. Motion Docket Date 8/9/2018. (jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 177 | ORDER granting 169 Motion for Andrew W. Amend to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 178 | ORDER granting 170 Motion for Jeffrey M. Davidson to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 179 | ORDER granting 173 Motion for Mark H. Lynch to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 180 | ORDER granting 174 Motion for William D. Coston to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 181 | ORDER granting 172 Motion for Jonathan Samuel Kolodner to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 182 | ORDER granting 176 Motion for Sameer P Sheikh to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 183 | ORDER granting 175 Motion for Martin L. Saad to Appear Pro Hac Vice.(Signed by Judge Melinda Harmon) Parties notified.(jdav, 4) (Entered: 07/20/2018) |
| 07/20/2018 | 184 | Unopposed MOTION for Leave to File Amicus brief by United We Dream, filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Amicus brief, # 2 Proposed Order)(Karanjia, Peter) (Entered: 07/20/2018) |
| 07/20/2018 | 185 | Unopposed MOTION for Leave to File Excess Pages by Phil Bryant, Paul R. LePage, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of |

| | | |
|---|---|---|
| | | Texas, State of West Virginia, filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 07/20/2018) |
| 07/20/2018 | 186 | Amicus Curiae APPEARANCE by The Legal Aid Society, filed.(Kolodner, Jonathan) (Entered: 07/20/2018) |
| 07/20/2018 | 187 | Amicus Curiae APPEARANCE by The Legal Aid Society, filed.(DeGroote, Jessa) (Entered: 07/20/2018) |
| 07/20/2018 | 188 | RESPONSE in Opposition to 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction*, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Disher, Todd) (Entered: 07/20/2018) |
| 07/20/2018 | 189 | RESPONSE to 138 Renewed MOTION for Discovery filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 07/20/2018) |
| 07/20/2018 | 190 | Unopposed MOTION for Leave to File Amicus Brief by U.S. Rep. Steve King, et al., filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Schlafly, Andrew) (Entered: 07/20/2018) |
| 07/20/2018 | 191 | Unopposed MOTION for Leave to File Amicus brief by Proposed Amici Religious Organizations, filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Declaration of Adeel A. Mangi, # 2 Exhibit A, (proposed) Amicus brief)(Mangi, Adeel) (Entered: 07/20/2018) |
| 07/20/2018 | 192 | MOTION for Leave to File Amici Brief by Proposed Amici New Jersey Businesses, filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Leit, David) (Entered: 07/20/2018) |
| 07/20/2018 | 193 | RESPONSE to 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction* filed by State of New Jersey. (Attachments: # 1 Appendix)(Juzdan, Paul) (Entered: 07/20/2018) |
| 07/20/2018 | 194 | RESPONSE to 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction* filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 07/20/2018) |
| 07/20/2018 | 195 | MOTION for Leave to File Amici Curiae Brief (Legal Services Organizations) by Proposed Amici Legal Services Organization, filed. Motion Docket Date 8/10/2018. (Attachments: # 1 Exhibit Exhibit A - Amici Curiae Brief (Legal Services Organizations), # 2 Appendix Appendix of Amici Curiae Brief, # 3 Proposed |

| | | |
|---|---|---|
| | | Order)(Attanasio, Michael) (Entered: 07/20/2018) |
| 07/20/2018 | <u>196</u> | NOTICE of Appearance by Ryan K. Yagura on behalf of Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, Georgetown University, George Washington University, Harvard University, Massachusetts Institute of Technology, Northwestern University, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University, filed. (Yagura, Ryan) (Entered: 07/20/2018) |
| 07/20/2018 | <u>197</u> | Unopposed MOTION for Leave to File Brief of Amici Curiae Nineteen Universities in Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction by Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, George Washington University, Georgetown University, Harvard University, Massachusetts Institute of Technology, Northwestern University, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University, filed. Motion Docket Date 8/10/2018. (Attachments: # <u>1</u> Memorandum of Law, # <u>2</u> Proposed Order)(Yagura, Ryan) (Entered: 07/20/2018) |
| 07/20/2018 | <u>198</u> | MOTION for Jennifer Sokoler to Appear Pro Hac Vice by Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, George Washington University, Georgetown University, Harvard University, Massachusetts Institute of Technology, Northwestern University, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University, filed. Motion Docket Date 8/10/2018. (Yagura, Ryan) (Additional attachment(s) added on 7/23/2018: # <u>1</u> Atty License Verification) (csustaeta, 1). (Entered: 07/20/2018) |
| 07/20/2018 | <u>199</u> | MOTION for Anton Metlitsky to Appear Pro Hac Vice by Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, George Washington University, Georgetown University, Harvard University, Massachusetts Institute of Technology, Northwestern University, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University, filed. Motion Docket Date 8/10/2018. (Yagura, Ryan) (Additional attachment(s) added on 7/23/2018: # <u>1</u> Atty License Verification) (csustaeta, 1). (Entered: 07/20/2018) |
| 07/21/2018 | <u>200</u> | |

| | | |
|---|---|---|
| | | Amicus Curiae APPEARANCE by Proposed Amici Companies and Associations, filed.(Ranlett, Kevin) (Entered: 07/21/2018) |
| 07/21/2018 | 201 | MOTION for Andrew J. Pincus to Appear Pro Hac Vice by Proposed Amici Companies and Associations, filed. Motion Docket Date 8/13/2018. (Ranlett, Kevin) (Additional attachment(s) added on 7/23/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 07/21/2018) |
| 07/21/2018 | 202 | MOTION for Lauren Goldman to Appear Pro Hac Vice by Proposed Amici Companies and Associations, filed. Motion Docket Date 8/13/2018. (Ranlett, Kevin) (Additional attachment(s) added on 7/23/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 07/21/2018) |
| 07/21/2018 | 203 | MOTION for Karen W. Lin to Appear Pro Hac Vice by Proposed Amici Companies and Associations, filed. Motion Docket Date 8/13/2018. (Ranlett, Kevin) (Additional attachment(s) added on 7/23/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 07/21/2018) |
| 07/21/2018 | 204 | Unopposed MOTION for Leave to File Amici Curiae Brief by Proposed Amici Companies and Associations, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Appendix of Amici Curiae Brief - Table of Contents, # 3 Appendix of Amici Curiae Brief - Volume 1, # 4 Appendix of Amici Curiae Brief - Volume 2, # 5 Appendix of Amici Curiae Brief - Volume 3, # 6 Proposed Order re Motion for Leave to File Amici Curiae Brief)(Ranlett, Kevin) (Entered: 07/21/2018) |
| 07/21/2018 | 205 | Unopposed AMENDED 166 MOTION by Darwin Velasquez, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 07/21/2018) |
| 07/21/2018 | 206 | Unopposed MOTION for Leave to File to File Brief as Amici Curiae by Proposed Amici Institutions of Higher Education, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Exhibit BRIEF FOR AMICI CURIAE RICE UNIVERSITY AND OTHER INSTITUTIONS OF HIGHER EDUCATION IN SUPPORT OF DEFENDANT-INTERVENORS, # 2 Proposed Order)(Ramon, Sofia) Modified on 7/23/2018 (JenniferLongoria, 1). (Entered: 07/21/2018) |
| 07/21/2018 | 207 | Unopposed MOTION for Leave to File Amici Curiae Brief by Proposed Amicus Kevin Johnson, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Proposed Order Granting Motion for Leave)(Davidson, Jeffrey) (Entered: 07/21/2018) |
| 07/21/2018 | 208 | NOTICE of Appearance by Andrew W. Amend on behalf of Proposed Amici States, filed. (Amend, Andrew) (Entered: 07/21/2018) |
| 07/21/2018 | 209 | Unopposed MOTION for Leave to File Memorandum of Law as Amici Curiae, Unopposed MOTION for Leave to File Excess |

| | | |
|---|---|---|
| | | Pages( Motion Docket Date 8/13/2018.) by Proposed Amici States, filed. (Attachments: # 1 Memorandum of Law, # 2 Appendix, # 3 Proposed Order)(Amend, Andrew) (Entered: 07/21/2018) |
| 07/21/2018 | 210 | NOTICE of Appearance by Lawrence S. Lustberg on behalf of Proposed Amici Health Care Professionals, filed. (Lustberg, Lawrence) (Entered: 07/21/2018) |
| 07/21/2018 | 211 | RESPONSE to 5 MOTION for Preliminary Injunction filed by Proposed Amici Public Interest Groups. (Garza, Jose) (Entered: 07/21/2018) |
| 07/21/2018 | 212 | Unopposed MOTION for Leave to File Amici Curiae Brief by Proposed Amici Health Care Professionals, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Proposed Order)(Lustberg, Lawrence) (Entered: 07/21/2018) |
| 07/21/2018 | 213 | Unopposed MOTION for Leave to File Amicus Brief by Proposed Amici Public Interest Groups, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Ertas, Alper) (Entered: 07/21/2018) |
| 07/21/2018 | 214 | Unopposed MOTION for Leave to File Amicus Brief by The Legal Aid Society, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amicus Brief, # 2 Appendix to Proposed Amicus Brief, # 3 Proposed Order)(Kolodner, Jonathan) (Entered: 07/21/2018) |
| 07/21/2018 | 215 | Opposed RESPONSE in Opposition to 5 MOTION for Preliminary Injunction, filed by State of New Jersey. (Attachments: # 1 Appendix)(Juzdan, Paul) (Entered: 07/21/2018) |
| 07/21/2018 | 216 | Unopposed MOTION for Leave to File Amici Curiae Brief by Proposed Amici Health Care Professionals, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Proposed Order)(Lustberg, Lawrence) (Entered: 07/21/2018) |
| 07/21/2018 | 217 | Supplemental RESPONSE to 5 MOTION for Preliminary Injunction filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Robins, Jeffrey) (Entered: 07/21/2018) |
| 07/21/2018 | 218 | BRIEF *Post-Discovery Brief in Support of Motion for Preliminary Injunction* re: 5 MOTION for Preliminary Injunction by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 07/21/2018) |
| 07/21/2018 | 219 | Supplemental APPENDIX re: 5 MOTION for Preliminary Injunction by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West |

| | | |
|---|---|---|
| | | Virginia, filed. (Attachments: # 1 Exhibit 21, # 2 Exhibit 22, # 3 Exhibit 23, # 4 Exhibit 24, # 5 Exhibit 25, # 6 Exhibit 26, # 7 Exhibit 27, # 8 Exhibit 28, # 9 Exhibit 29, # 10 Exhibit 30, # 11 Exhibit 31, # 12 Exhibit 32, # 13 Exhibit 33, # 14 Exhibit 34, # 15 Exhibit 35, # 16 Exhibit 36, # 17 Exhibit 37, # 18 Exhibit 38, # 19 Exhibit 39, # 20 Exhibit 40, # 21 Exhibit 41, # 22 Exhibit 42)(Disher, Todd) (Entered: 07/21/2018) |
| 07/21/2018 | 220 | NOTICE of Appearance by Thomas S. Leatherbury on behalf of Houston Hispanic Chamber of Commerce, Texas Association of Business, Brazoria County Hispanic Chamber of Commerce, El Paso Hispanic Chamber of Commerce, Greater Austin Hispanic Chamber of Commerce, International Bancshares Corporation, Marek Brothers Construction, Inc., Midland Hispanic Chamber of Commerce, Rio Grande Valley Hispanic Chamber of Commerce, San Antonio Hispanic Chamber of Commerce, Southwest Airlines, Texas Border Coalition, United Airlines, Inc., filed. (Leatherbury, Thomas) (Entered: 07/21/2018) |
| 07/21/2018 | 221 | Unopposed MOTION for Leave to File Amici Curiae Brief by Brazoria County Hispanic Chamber of Commerce, El Paso Hispanic Chamber of Commerce, Greater Austin Hispanic Chamber of Commerce, Houston Hispanic Chamber of Commerce, International Bancshares Corporation, Marek Brothers Construction, Inc., Midland Hispanic Chamber of Commerce, Rio Grande Valley Hispanic Chamber of Commerce, San Antonio Hispanic Chamber of Commerce, Southwest Airlines, Texas Association of Business, Texas Border Coalition, United Airlines, Inc., filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Appendix of Amici Curiae Brief, # 3 Proposed Order re Motion for Leave to File Amici Curiae Brief)(Leatherbury, Thomas) (Entered: 07/21/2018) |
| 07/21/2018 | 222 | Unopposed MOTION for Leave to File Brief of Amici Curiae by Current and Former Prosecutors and Law Enforcement Leaders, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Exhibit Proposed Brief, # 2 Proposed Order)(Badlani, Chirag) (Entered: 07/21/2018) |
| 07/21/2018 | 223 | MOTION for Chirag G. Badlani to Appear Pro Hac Vice by Current and Former Prosecutors and Law Enforcement Leaders, filed. Motion Docket Date 8/13/2018. (Badlani, Chirag) (Additional attachment(s) added on 7/23/2018: # 1 Atty License Verification) (csustaeta, 1). (Entered: 07/21/2018) |
| 07/21/2018 | 224 | RESPONSE in Opposition to 5 MOTION for Preliminary Injunction, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Appendix Table of Contents, # 2 Affidavit Volume 1)(Perales, Nina) (Entered: 07/21/2018) |
| 07/21/2018 | 225 | Supplemental APPENDIX re: 224 Response in Opposition to Motion,, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Volume 2, # 2 Volume 3, # 3 Volume 4, # 4 Volume 5, # 5 Volume 6, # 6 Volume 7)(Perales, Nina) (Entered: 07/22/2018) |
| 07/22/2018 | 226 | Supplemental APPENDIX re: 224 Response in Opposition to Motion,, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Volume 8, # 2 Volume 9, # 3 Volume 10)(Perales, Nina) (Entered: 07/22/2018) |
| 07/22/2018 | 227 | Supplemental APPENDIX re: 224 Response in Opposition to Motion,, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Volume 11, # 2 Volume 12, # 3 Volume 13)(Perales, Nina) (Entered: 07/22/2018) |
| 07/22/2018 | 228 | ORDER granting 185 Plaintiff States' Unopposed Motion to Exceed Page Limits.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/23/2018) |
| 07/22/2018 | 229 | ORDER granting 166 Defendant-Intervenors' Unopposed Motion to Exceed Page Limits.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/23/2018) |
| 07/23/2018 | | (Court only) ***Motion(s) terminated: 185 Unopposed MOTION for Leave to File Excess Pages. (JenniferLongoria, 1) (Entered: 07/23/2018) |
| 07/23/2018 | 230 | MOTION for Mary Kelly Persyn to Appear Pro Hac Vice by Karla Perez-Defendant-Intervenors and State of New Jersey-Defendant-Intervenor, filed. Motion Docket Date 8/13/2018. (rnieto, 1) (verified) Modified on 7/23/2018 (rnieto, 1). (Entered: 07/23/2018) |
| 07/23/2018 | 231 | MOTION for Johnathan James Smith to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. Motion Docket |

| | | |
|---|---|---|
| | | Date 8/13/2018. (rnieto, 1) (verified) Modified on 7/23/2018 (rnieto, 1). (Entered: 07/23/2018) |
| 07/23/2018 | 232 | MOTION for Juvaria Khan to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. Motion Docket Date 8/13/2018. (rnieto, 1) (verified) Modified on 7/23/2018 (rnieto, 1). (Entered: 07/23/2018) |
| 07/23/2018 | 233 | MOTION for Sirine Shebaya to Appear Pro Hac Vice by Proposed Amici Religious Organizations, filed. Motion Docket Date 8/13/2018. (rnieto, 1) (verified) Modified on 7/23/2018 (rnieto, 1). (Entered: 07/23/2018) |
| 07/23/2018 | 234 | ANSWER to 104 Amended Complaint/Counterclaim/Crossclaim etc., by State of New Jersey, filed.(Juzdan, Paul) (Entered: 07/23/2018) |
| 07/23/2018 | 235 | Amicus Curiae APPEARANCE by National Immigrant Justice Center, filed.(Roth, Charles) (Entered: 07/23/2018) |
| 07/23/2018 | 236 | Unopposed MOTION Leave to Appear Amicus Curiae by National Immigrant Justice Center, filed. Motion Docket Date 8/13/2018. (Attachments: # 1 Memorandum of Law, # 2 Appendix Appendix of Authorities)(Roth, Charles) (Entered: 07/23/2018) |
| 07/23/2018 | 237 | ANSWER to 104 Amended Complaint/Counterclaim/Crossclaim etc., by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed.(Perales, Nina) (Entered: 07/23/2018) |
| 07/23/2018 | 240 | ORDER denying 168 Motion for Extension of Time.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/23/2018 | 247 | ORDER granting 205 Motion to exceed page limits.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/23/2018 | 254 | MEMORANDUM of law of American Professional Society of the Abuse of Children in support of unopposed motion for leave to file a brief Amicus Curiae in support of defendant -intervenors, filed.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 238 | ORDER granting 230 Motion for MARY KELLY PERSYN to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) Modified on 7/24/2018 (scastillo, 1). (Entered: 07/24/2018) |
| 07/24/2018 | 239 | Second REPLY in Support of 91 Opposed MOTION for Discovery, 138 Renewed MOTION for Discovery, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses |

**RE.93**

| | | |
|---|---|---|
| | | Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/24/2018) |
| 07/24/2018 | 241 | ORDER granting 198 Motion for Jennifer Sokoler to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | | (Court only) ***Attorney Jennifer Sokoler for Brown University,Jennifer Sokoler for California Institute of Technology,Jennifer Sokoler for Columbia University,Jennifer Sokoler for Cornell University,Jennifer Sokoler for Dartmouth College,Jennifer Sokoler for Duke University,Jennifer Sokoler for Emory University,Jennifer Sokoler for George Washington University,Jennifer Sokoler for Georgetown University,Jennifer Sokoler for Harvard University,Jennifer Sokoler for Massachusetts Institute of Technology,Jennifer Sokoler for Northwestern University,Jennifer Sokoler for Princeton University,Jennifer Sokoler for Stanford University,Jennifer Sokoler for University of Chicago,Jennifer Sokoler for University of Pennsylvania,Jennifer Sokoler for Vanderbilt University,Jennifer Sokoler for Washington University in St. Louis,Jennifer Sokoler for Yale University added. (scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 242 | ORDER granting 199 Motion for Anton Metitsky to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | | (Court only) ***Attorney Anton Metlitsky for Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, George Washington University, Georgetown University, Harvard University, Massachusetts Institute of Technology, Northwestern University, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University added. (scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 243 | ORDER granting 201 Motion for Andrew J. Pincus to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 244 | ORDER granting 190 Motion for Leave to File; 191 Motion for Leave to File; 192 Motion for Leave to File; 195 Motion for Leave to File; 197 Motion for Leave to File; 204 Motion for Leave to File; 206 Motion for Leave to File; 207 Motion for Leave to File; 209 Motion for Leave to File 213 Motion for Leave to File; 214 Motion for Leave to File; 216 Motion for Leave to File 221 Motion for Leave to File; 222 Motion for Leave to File; 236 Motion.(Signed by Judge Andrew S Hanen) |

| | | |
|---|---|---|
| | | Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 245 | ORDER granting 164 Motion. Defendant-Intervenor State of New Jersey shall be permitted to file a "Post- Discovery" Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction of up to 49 pages.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) Modified on 7/24/2018 (scastillo, 1). (Entered: 07/24/2018) |
| 07/24/2018 | 246 | ORDER granting 202 Motion for Lauren Goldman to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | | (Court only) ***Attorney Lauren Goldman for Proposed Amici Companies and Associations, Proposed Amici Health Care Professionals, Proposed Amici Institutions of Higher Education, Proposed Amici Legal Services Organization, Proposed Amici New Jersey Businesses, Proposed Amici Public Interest Groups, Proposed Amici Religious Organizations, Proposed Amici States, Proposed Amicus Kevin Johnson, Proposed Amicus United We Dream added. (scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 248 | ORDER granting 223 Motion for Chirag G. Badlani to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | | (Court only) ***Party Proposed Amici Current and Former Prosecutors and Law Enforcement Leaders added. (scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 249 | ORDER granting 231 Motion for Johnathan James Smith to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 250 | ORDER granting 232 Motion for Juvaria Khan to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 251 | ORDER granting 233 Motion for Sirine Shebaya to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 252 | ORDER granting 184 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified.(scastillo, 1) (Entered: 07/24/2018) |
| 07/24/2018 | 253 | BRIEF in support of defendant-intervenor's Opposition to Plaintiff's Motion for a preliminary Injunction by United We Dream, filed.(scastillo, 1) (Entered: 07/24/2018) |
| 07/25/2018 | 255 | Opposed MOTION for Protective Order by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise |

| | | |
|---|---|---|
| | | Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/15/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 07/25/2018) |
| 07/25/2018 | 256 | Sealed Event, filed. (With attachments) (Entered: 07/25/2018) |
| 07/25/2018 | 257 | ORDER granting 138 Motion for Discovery.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/25/2018) |
| 07/25/2018 | 263 | ORDER granting 148 Motion for Michael McMahon to Appear Pro Hac Vice as to Proposed Amici Legal Services Orgainzation.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 258 | RESPONSE in Opposition to 255 Opposed MOTION for Protective Order, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Disher, Todd) (Entered: 07/26/2018) |
| 07/26/2018 | 259 | MOTION for Extension of Time to Extend the Post-Discovery Response Brief Filing Deadline by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/16/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 07/26/2018) |
| 07/26/2018 | | (Court only) ***Attorney Karen W Lin for Proposed Amici Companies and Associations added. (jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 260 | ORDER granting 203 Motion for Karen W. Lin to Appear Pro Hac Vice as to Proposed Amici Companies and Associations.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 261 | RESPONSE in Opposition to 259 MOTION for Extension of Time to Extend the Post-Discovery Response Brief Filing Deadline, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 07/26/2018) |
| 07/26/2018 | 262 | ORDER granting 149 Motion for Joan Li to Appear Pro Hac Vice for Proposed Amici Legal Services Organization.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 264 | ORDER granting 146 Motion for Maureen Alger to Appear Pro Hac Vice as to Proposed Amici Legal Services |

| | | |
|---|---|---|
| | | Organization..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 265 | ORDER granting 147 Motion for Monique Sherman to Appear Pro Hac Vice as to Proposed Amici Legal Services Organization.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 07/26/2018) |
| 07/26/2018 | 266 | ORDER denying 259 Motion for Extension of Time. The Court hereby denies Defendant-Intervenors motion without prejudice for failing to include a certificate of conference. Defendant-Intervenors shall confer with counsel for each other party in the case before refiling the motion.(Signed by Judge Andrew S Hanen) Parties notified.(JenniferLongoria, 1) (Entered: 07/26/2018) |
| 07/26/2018 | 267 | Renewed MOTION for Extension of Time by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/16/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 07/26/2018) |
| 07/26/2018 | 268 | RESPONSE in Opposition to 267 Renewed MOTION for Extension of Time, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Bitter, Adam) (Entered: 07/26/2018) |
| 07/27/2018 | 269 | REPLY in Support of 255 Opposed MOTION for Protective Order, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/27/2018) |
| 07/27/2018 | 270 | ORDER granting 267 Joint Motion for Extending the Post-Discovery Response Brief Filing Deadline Responses due by 8/3/2018. (Signed by Judge Andrew S Hanen) Parties notified.(mperez, 1) (Entered: 07/27/2018) |
| 07/27/2018 | 271 | ORDER denying 255 Motion for Entry of Protective Order. (Signed by Judge Andrew S Hanen) Parties notified.(mperez, 1) (Entered: 07/27/2018) |
| 07/27/2018 | 272 | Opposed MOTION for Extension of Time Respond to Plaintiffs' Amended Complaint by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 8/17/2018. (Attachments: # 1 Proposed Order)(Robins, Jeffrey) (Entered: |

| | | 07/27/2018) |
|---|---|---|
| 07/29/2018 | 273 | RESPONSE in Opposition to 272 Opposed MOTION for Extension of Time Respond to Plaintiffs' Amended Complaint, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/29/2018) |
| 07/30/2018 | 274 | ORDER. The date for Defendants to respond to Plaintiffs' Amended Complaint is hereby extended 30 days after the Court rules on the pending Application for Preliminary Injunction. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/30/2018) |
| 07/30/2018 | 275 | REPLY in Support of 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction*, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 07/30/2018) |
| 08/01/2018 | 276 | Unopposed MOTION for Leave to Join Brief of Amici Curiae by American Business Immigration Coalition, Ascension Texas, Dallas Regional Chamber, Dallas Hispanic Chamber of Commerce, Irving-Las Colinas Chamber of Commerce, Health Management Systems, National Association for Latino Community Asset Builders, San Antonio Chamber of Commerce, Texas Opportunity Roundtable, Texas Restaurant Association, VisitDallas, filed. Motion Docket Date 8/22/2018. (Attachments: # 1 Proposed Order)(Leatherbury, Thomas) (Entered: 08/01/2018) |
| 08/02/2018 | 277 | TRANSCRIPT re: Scheduling Conference Hearing held on May 30, 2018 before Judge Andrew S Hanen. Court Reporter/Transcriber sperales. Release of Transcript Restriction set for 10/31/2018., filed. (sperales, ) (Entered: 08/02/2018) |
| 08/03/2018 | 278 | Notice of Filing of Official Transcript as to 277 Transcript. Party notified, filed. (jtabares, 1) (Entered: 08/03/2018) |
| 08/03/2018 | 279 | ORDER GRANTING 276 UNOPPOSED MOTION FOR LEAVE TO JOIN BRIEF OF AMICI CURIAE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/03/2018) |
| 08/03/2018 | 280 | MOTION for Leave to File Excess Pages by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, |

| | | |
|---|---|---|
| | | State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 8/24/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 08/03/2018) |
| 08/03/2018 | 281 | Unopposed MOTION for Leave to File Excess Pages by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/24/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 08/03/2018) |
| 08/03/2018 | 282 | BRIEF *Post-Discovery Response Brief* re: 5 MOTION for Preliminary Injunction by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 08/03/2018) |
| 08/03/2018 | 283 | NOTICE *of Filing* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit)(Robins, Jeffrey) (Entered: 08/03/2018) |
| 08/03/2018 | 284 | APPENDIX re: 282 Brief, by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibit 43, # 2 Exhibit 44, # 3 Exhibit 45, # 4 Exhibit 46, # 5 Exhibit 47, # 6 Exhibit 48, # 7 Exhibit 49, # 8 Exhibit 50, # 9 Exhibit 51, # 10 Exhibit 52, # 11 Exhibit 53, # 12 Exhibit 54, # 13 Exhibit 55, # 14 Exhibit 56, # 15 Exhibit 57, # 16 Exhibit 58, # 17 Exhibit 59, # 18 Exhibit 60, # 19 Exhibit 61, # 20 Exhibit 62, # 21 Exhibit 63, # 22 Exhibit 64, # 23 Exhibit 65, # 24 Exhibit 66, # 25 Exhibit 67)(Disher, Todd) (Entered: 08/03/2018) |
| 08/03/2018 | 285 | Unopposed MOTION for Leave to File Excess Pages by State of New Jersey, filed. Motion Docket Date 8/24/2018. (Attachments: # 1 Proposed Order)(Levine, Kenneth) (Entered: 08/03/2018) |
| 08/03/2018 | 286 | Opposed REPLY to Response to 5 MOTION for Preliminary Injunction, filed by State of New Jersey. (Attachments: # 1 Appendix)(Juzdan, Paul) (Entered: 08/03/2018) |
| 08/03/2018 | 287 | Opposed MOTION Motion to Deny or Defer Consideration of Summary Judgment by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/24/2018. (Attachments: # 1 Exhibit A - Declaration, # 2 |

| | | |
|---|---|---|
| | | Proposed Order)(Perales, Nina) (Entered: 08/03/2018) |
| 08/03/2018 | 288 | Supplemental RESPONSE in Opposition to 5 MOTION for Preliminary Injunction, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 08/04/2018) |
| 08/04/2018 | 289 | APPENDIX re: 288 Response in Opposition to Motion, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Volume 1, # 2 Volume 2, # 3 Volume 3, # 4 Volume 4, # 5 Volume 5)(Perales, Nina) (Entered: 08/04/2018) |
| 08/04/2018 | 290 | Supplemental APPENDIX re: 5 MOTION for Preliminary Injunction by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibit 68)(Disher, Todd) (Entered: 08/04/2018) |
| 08/04/2018 | 291 | Supplemental EXHIBITS by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez (Attachments: # 1 Exhibit 151, # 2 Exhibit 306)(Perales, Nina) (Entered: 08/04/2018) |
| 08/06/2018 | 292 | Unopposed MOTION to Withdraw by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/27/2018. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 08/06/2018) |
| 08/06/2018 | 293 | NOTICE of Filing by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Robins, Jeffrey) (Entered: 08/06/2018) |

| 08/06/2018 | 295 | Mail Returned Undeliverable as to attorney Mark H Lynch as to Proposed Amicus Kevin Johnson re: 178 Order on Motion to Appear Pro Hac Vice, filed. (dnoriega, 1) (Entered: 08/07/2018) |
|---|---|---|
| 08/06/2018 | 296 | Mail Returned Undeliverable as to attorney Mark H Lynch re: 181 Order on Motion to Appear Pro Hac Vice, filed. (jmarks, 2) (Entered: 08/07/2018) |
| 08/06/2018 | 297 | Mail Returned Undeliverable as to attorney Mark H Lynch as to Proposed Amicus Kevin Johnson re: 183 Order on Motion to Appear Pro Hac Vice, filed. (bmendoza, 5) (Entered: 08/07/2018) |
| 08/07/2018 | 294 | RESPONSE in Opposition to 287 Opposed MOTION Motion to Deny or Defer Consideration of Summary Judgment, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 08/07/2018) |
| 08/08/2018 | 298 | Mail Returned Undeliverable as to attorney Mark H Lynch as to Proposed Amicus Kevin Johnson re: 182 Order on Motion to Appear Pro Hac Vice, filed. (rguerrero, 4) (Entered: 08/08/2018) |
| 08/08/2018 | | Minute Entry for proceedings held before Judge Andrew S Hanen. Preliminary INJUNCTION HEARING held on 8/8/2018. The Court made an opening statement. The Court heard the opening statements of the parties, followed by argument of the parties. The Court ordered the parties to file further briefing not to exceed 5 pages by close of business 8/13/2018. Hearing concluded. Appearances: Todd Disher, Brantley Starr, Adam Biggs, Adam Bitter, Kyle Hawkins, Cristina Moreno, Trent Peroyea, Nina Perales, Rachel Apter, Ken Levine, Celina Moreno, Alejandra Avila, Emerson Siegle, Douglas Hallward-Driemeier, Carlos Garcia, Brett Shumate, Jeffrey Robins, Daniel Hu.(Court Reporter: K. Miller), filed.(rhawkins) (Entered: 08/08/2018) |
| 08/08/2018 | 299 | AO 435 TRANSCRIPT REQUEST by Daniel Hu for Transcript of Hearing on 8/08/18. 3-Day turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Hu, Daniel) (Entered: 08/08/2018) |
| 08/08/2018 | 300 | AO 435 TRANSCRIPT REQUEST by State of New Jersey/Katherine Anne Gregory for Transcript of Preliminary INJUNCTION HEARING held on 8/8/2018 before Judge Andrew S. Hanen. 3-Day turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Gregory, Katherine) (Entered: 08/08/2018) |
| 08/09/2018 | 301 | AO 435 TRANSCRIPT REQUEST by Texas, et al./Todd Lawrence Disher for Transcript of Preliminary Injunction Hearing on 08/08/18 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Disher, Todd) (Entered: 08/09/2018) |

| | | |
|---|---|---|
| 08/10/2018 | 302 | TRANSCRIPT re: Hearing held on August 8, 2018 before Judge Andrew S Hanen. Court Reporter/Transcriber Kathleen Miller. Ordering Party Daniel Hu Release of Transcript Restriction set for 11/8/2018., filed. (kmiller, ) (Entered: 08/10/2018) |
| 08/13/2018 | 303 | Notice of Filing of Official Transcript as to 302 Transcript. Party notified, filed. (dnoriega, 1) (Entered: 08/13/2018) |
| 08/13/2018 | 304 | Mail Returned Undeliverable as to attorney Mark H Lynch re: 180 Order on Motion to Appear Pro Hac Vice, filed. (bmendoza, 5) (Entered: 08/13/2018) |
| 08/13/2018 | 305 | SUPPLEMENT by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed.(Robins, Jeffrey) (Entered: 08/13/2018) |
| 08/13/2018 | 306 | Supplemental BRIEF by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 08/13/2018) |
| 08/13/2018 | 307 | SUPPLEMENT by State of New Jersey, filed. (Attachments: # 1 Appendix)(Levine, Kenneth) (Entered: 08/13/2018) |
| 08/13/2018 | 308 | Supplemental RESPONSE in Opposition to 5 MOTION for Preliminary Injunction, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 08/13/2018) |
| 08/14/2018 | 309 | Amicus Curiae Brief by William F. Reade, Jr.(pro se), filed.(dbenavides, 1) (Entered: 08/14/2018) |
| 08/15/2018 | 310 | NOTICE of Filing by L. Francis Cissna, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit)(Robins, Jeffrey) (Entered: 08/15/2018) |
| 08/16/2018 | 311 | NOTICE of Filing by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Exhibit 1)(Perales, Nina) (Entered: 08/16/2018) |
| 08/16/2018 | 314 | Amicus BRIEF by Christine Timmons, filed.(jdav, 4) (Entered: 08/21/2018) |
| 08/17/2018 | 312 | RESPONSE to 311 Notice (Other), *Plaintiff States' Response to Defendant-Intervenors' Notice of Filing*, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of |

| | | |
|---|---|---|
| | | Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 08/17/2018) |
| 08/17/2018 | 313 | NOTICE *of Filing* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Robins, Jeffrey) (Entered: 08/17/2018) |
| 08/27/2018 | 315 | Mail Returned Undeliverable as to attorney Mark H Lynch as to Proposed Amicus Kevin Johnson re: 179 Order on Motion to Appear Pro Hac Vice, filed. (agarcia, 7) (Entered: 08/27/2018) |
| 08/30/2018 | 321 | Letter from Christine Timmon, filed. (SamanthaWarda, 4) (Entered: 08/31/2018) |
| 08/31/2018 | 316 | ORDER. The Court GRANTS the Unopposed Motion to Withdraw Exhibit 76 and ORDERS the Clerk's Office to withdraw Defendant-Intervenors' Exhibit 76, filed under Dkt. 225-3 at 183-204, from the record.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/31/2018) |
| 08/31/2018 | 317 | ORDER GRANTING Plaintiff States' Motion to Exclude Testimony from Untimely Designated Witnesses. Exhibits 12, 15, 26-51, 59 and 60 on Defendant-Intervenors exhibit list (see ECF No. 90) are EXCLUDED.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/31/2018) |
| 08/31/2018 | 318 | ORDER GRANTING Defendant-Intervenors' Cross Motion to Exclude Plaintiffs' Evidence of Non-Disclosed Witnesses. Plaintiffs' declarations of undisclosed witnesses, found at Dkt. 6 at 332-36, 335-403, 414-21, 474-91, are EXCLUDED from the evidence in this case.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/31/2018) |
| 08/31/2018 | 319 | MEMORANDUM OPINION AND ORDER. The Court DENIES the request for preliminary injunctive relief.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/31/2018) |
| 08/31/2018 | 320 | INTERLOCUTORY APPEAL ORDER (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/31/2018) |
| 08/31/2018 | | (Court only) ***Motion terminated: 5 MOTION for Preliminary Injunction per 319 Memorandum Opinion and Order entered this date. (rhawkins) (Entered: 08/31/2018) |
| 09/04/2018 | 322 | Letter from Christine Timmon re: immigration, filed. (dwilkerson, 3) (Entered: 09/06/2018) |
| 09/05/2018 | 323 | EMERGENCY MOTION to Intervene to Settle the Courts Underlying Order, MOTION to Compel that Invervenor's "DACA Solution Underwriting" be Submitted to President Trump for Urgent Review/Execution, with Brief in Support( Motion Docket Date 9/26/2018.) by Stephen P Wallace, filed. |

**RE.103**

| | | |
|---|---|---|
| | | (dperez, 3) (Entered: 09/06/2018) |
| 09/12/2018 | 324 | MOTION to Lift Stay by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 10/3/2018. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 09/12/2018) |
| 09/14/2018 | 325 | Second EMERGENCY MOTION to Intervene by Stephen P Wallace, filed. Motion Docket Date 10/5/2018. (SamanthaWarda, 4) (Entered: 09/14/2018) |
| 09/17/2018 | 326 | RESPONSE in Opposition to 324 MOTION to Lift Stay, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 09/17/2018) |
| 09/17/2018 | 327 | RESPONSE to 324 MOTION to Lift Stay , filed by State of New Jersey. (Attachments: # 1 Exhibit A (email))(Levine, Kenneth) (Entered: 09/17/2018) |
| 09/18/2018 | 328 | Letter, filed. (mmarquez, 5) (Entered: 09/21/2018) |
| 09/26/2018 | 329 | RESPONSE in Opposition to 325 EMERGENCY MOTION, 323 MOTION to Intervene MOTION to Compel that Invervenor's "DACA Solution Underwriting" be Submitted to President Trump for Urgent Review/Execution, with Brief in Support, filed by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 09/26/2018) |
| 09/28/2018 | 330 | MOTION for Glenn Moramarco to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 10/19/2018. (Levine, Kenneth) (Additional attachment(s) added on 10/1/2018: # 1 Attorney Verification) (scastillo, 1). (Entered: 09/28/2018) |
| 10/01/2018 | | (Court only) ***Attorney Glenn J Moramarco for State of New Jersey, added. (jdav, 4) (Entered: 10/01/2018) |
| 10/01/2018 | 331 | ORDER granting 330 Motion for Glenn J. Moramarco to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/01/2018) |
| 10/01/2018 | 332 | ANSWER to 104 Amended Complaint/Counterclaim/Crossclaim etc., by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed.(Robins, Jeffrey) (Entered: 10/01/2018) |

**RE.104**

| 10/10/2018 | 333 | NOTICE of Setting. Parties notified. Initial Conference set for 11/14/2018 at 10:00 AM in Courtroom 704 before Magistrate Judge Frances H Stacy, filed. (bwhite, 4) (Entered: 10/10/2018) |
|---|---|---|
| 10/22/2018 | 334 | Opposed MOTION to Strike 332 Answer to Amended Complaint by State of New Jersey, filed. Motion Docket Date 11/13/2018. (Attachments: # 1 Appendix Unreported Cases, # 2 Proposed Order)(Levine, Kenneth) (Entered: 10/22/2018) |
| 10/31/2018 | 335 | JOINT DISCOVERY/CASE MANAGEMENT PLAN by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 10/31/2018) |
| 11/13/2018 | 336 | RESPONSE in Opposition to 334 Opposed MOTION to Strike 332 Answer to Amended Complaint , filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Appendix)(Robins, Jeffrey) (Entered: 11/13/2018) |
| 11/14/2018 | 337 | Minute Entry for proceedings held before Magistrate Judge Frances H Stacy. SCHEDULING CONFERENCE held on 11/14/2018. Scheduling/ Docket Control Order issued. All pending motions will be ripe by Thanksgiving. Appearances:Raishay Lin, John Paul Salmon, Alejandra Avila, Douglas H Hallward-Driemeier, Nina Perales, Todd Lawrence Disher, Adam Arthur Biggs, Adam Nicholas Bitter, Glenn J Moramarco, Kenneth S Levine.(Digital # 10:14-10:28)(ERO:P. Yebernetsky), filed.(gclair, 4) (Entered: 11/14/2018) |
| 11/14/2018 |  | ***Set/Reset Scheduling Order and Trial Settings: Amended Pleadings and Joinder of Parties due by 1/15/2019. Pltf Expert Report due by 2/28/2019. Deft Expert Report due by 4/30/2019. Deft Intervenors Expert Report due by 6/30/2019. Discovery due by 8/21/2019. Dispositive and Non-Dispositive Motion Filing due by 11/14/2019. Joint Pretrial Order due by 5/5/2020. Docket Call set for 5/15/2020 at 01:30 PM before Judge Andrew S Hanen. Trial is set for the two weeks starting 5/18/2020. (gclair, 4) (Entered: 11/14/2018) |
| 11/15/2018 | 338 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Scheduling Conference, 11/14/18, Magistrate Judge Frances Stacy. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Digital Scroll Transcription Services, filed. (Perales, Nina) Electronically forwarded to JTT (Digital Scroll not accepting orders at this time). Estimated completion date is November 23.Modified on 11/16/2018 (JenniferOlson, 4). (Entered: 11/15/2018) |
| 11/21/2018 | 339 | REPLY in Support of 334 Opposed MOTION to Strike 332 Answer to Amended Complaint , filed by State of New Jersey. (Attachments: # 1 Exhibit A (email chain), # 2 Appendix unpublished cases)(Levine, Kenneth) (Entered: 11/21/2018) |

**RE.105**

| 11/26/2018 | 340 | TRANSCRIPT re: Initial Conference held on November 14, 2018 before Magistrate Judge Frances H Stacy. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Ordering Party Nina Perales Release of Transcript Restriction set for 2/25/2019., filed. (mahenry, ) (Entered: 11/26/2018) |
|---|---|---|
| 11/27/2018 | 341 | Notice of Filing of Official Transcript as to 340 Transcript,. Party notified, filed. (dnoriega, 1) (Entered: 11/27/2018) |
| 11/28/2018 | 342 | ORDER denying as moot 287 Opposed MOTION Motion to Deny or Defer Consideration of Summary Judgment, 281 Unopposed MOTION for Leave to File Excess Pages, 109 Cross MOTION to Exclude Plaintiffs' Evidence of Non-Disclosed Witnesses, 39 MOTION to Intervene, 87 EMERGENCY MOTION MOTION to Quash Deposition Notices and Subpoenas, 86 Opposed MOTION for Discovery, 292 Unopposed MOTION to Withdraw, 65 Opposed MOTION for Discovery, 212 Unopposed MOTION for Leave to File Amici Curiae Brief, 280 MOTION for Leave to File Excess Pages, 80 Supplemental MOTION for Discovery, 118 MOTION to Dismiss *with Prejudice for Lack of Subject Matter Jurisdiction*, 36 MOTION for Scheduling Order, 285 Unopposed MOTION for Leave to File Excess Pages, 105 Opposed MOTION to Exclude Testimony from Untimely Designated Witnesses, 272 Opposed MOTION for Extension of Time Respond to Plaintiffs' Amended Complaint (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins, 4) (Entered: 11/28/2018) |
| 11/30/2018 | 343 | ORDER denying 323 Motion to Intervene; denying 323 Motion to Compel; denying as moot 324 Motion to Lift Stay; denying 325 Motion for Emergency.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/30/2018) |
| 12/03/2018 | 344 | Unopposed MOTION for Adam N. Bitter to Withdraw as Attorney by Phil Bryant, Paul R. LePage, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 12/24/2018. (Attachments: # 1 Proposed Order)(Bitter, Adam) (Entered: 12/03/2018) |
| 12/05/2018 | 345 | MOTION for Celina Moreno to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 12/26/2018. (Attachments: # 1 Proposed Order)(Salmon, John) (Entered: 12/05/2018) |
| 01/07/2019 | 346 | ORDER granting 344 Motion to Withdraw as Attorney. Attorney Adam Nicholas Bitter terminated..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 01/07/2019) |
| 01/07/2019 | 347 | |

**RE.106**

| | | |
|---|---|---|
| | | ORDER granting 345 Motion to Withdraw as Attorney. Attorney Celina Ysela Moreno terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 01/08/2019) |
| 01/09/2019 | 348 | ORDER granting in part and denying in part 334 Motion to Strike. Federal Defendants are ordered to replead their answer by February 15, 2019..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 01/09/2019) |
| 01/11/2019 | 349 | Opposed MOTION to Postpone All Deadlines in Rule 16 Scheduling Order by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 2/1/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Proposed Order)(Avila, Alejandra) (Entered: 01/11/2019) |
| 01/22/2019 | 350 | NOTICE of Appearance by Michael Toth on behalf of Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Toth, Michael) (Entered: 01/22/2019) |
| 01/22/2019 | 351 | Joint RESPONSE in Opposition to 349 Opposed MOTION to Postpone All Deadlines in Rule 16 Scheduling Order, filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 01/22/2019) |
| 01/25/2019 | 352 | Unopposed MOTION to Dismiss *Janet Mills, Governor of Maine* by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 2/15/2019. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 01/25/2019) |
| 01/29/2019 | 353 | Opposed MOTION for Extension of Time Replead Answer by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 2/19/2019. (Attachments: # 1 Proposed Order)(Robins, Jeffrey) (Entered: 01/29/2019) |
| 02/01/2019 | 354 | RESPONSE in Opposition to 349 Opposed MOTION to Postpone All Deadlines in Rule 16 Scheduling Order, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 02/01/2019) |
| 02/04/2019 | 355 | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Leave to File Excess Pages by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 2/25/2019. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 02/04/2019) |
| 02/04/2019 | 356 | MOTION for Summary Judgment by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 2/25/2019. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 02/04/2019) |
| 02/04/2019 | 357 | BRIEF in Support re: 356 MOTION for Summary Judgment by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 02/04/2019) |
| 02/04/2019 | 358 | APPENDIX re: 356 MOTION for Summary Judgment by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33)(Disher, Todd) (Entered: 02/04/2019) |
| 02/05/2019 | 359 | MOTION for James J Walker to Appear Pro Hac Vice, filed. Motion Docket Date 2/26/2019. (ccassady, 4) (Additional attachment(s) added on 2/6/2019: # 1 Atty License Verification) (rnieto, 1). (Entered: 02/05/2019) |
| 02/06/2019 | 360 | ORDER granting 352 Motion to Dismiss Janet Mills, Governor of Main; granting 353 Motion for Extension of Time. Federal Defendants' have until March 6, 2019 to replead their answer..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/06/2019) |
| 02/07/2019 | 361 | ORDER granting 355 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/08/2019) |
| 02/11/2019 | | (Court only) ***Attorney James Joseph Walker for Carla L. Provost, James Joseph Walker for United States of America, James Joseph Walker for United States of America, added. (jdav, 4) (Entered: 02/11/2019) |
| 02/11/2019 | 362 | |

| | | |
|---|---|---|
| | | REPLY in Support of 349 Opposed MOTION to Postpone All Deadlines in Rule 16 Scheduling Order, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit A)(Avila, Alejandra) (Entered: 02/11/2019) |
| 02/14/2019 | 363 | Opposed MOTION to Deny or Defer Consideration of Summary Judgment, or in the Alternative to Grant Defendant-Intervenors an Extension of Time to Respond by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 3/7/2019. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Perales, Nina) (Entered: 02/14/2019) |
| 02/20/2019 | 364 | Unopposed MOTION for Leave to File Amicus Brief in Support of Pls Mot Summ J by U.S. Rep. Steve King, filed. Motion Docket Date 3/13/2019. (Attachments: # 1 Exhibit Proffered Amicus Brief, # 2 Proposed Order Proposed Order)(Joseph, Lawrence) (Entered: 02/20/2019) |
| 02/22/2019 | 365 | ORDER granting 359 Motion for James J. Walker to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/22/2019) |
| 02/25/2019 | 366 | RESPONSE to 356 MOTION for Summary Judgment filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 02/25/2019) |
| 02/26/2019 | 368 | ORDER granting 364 Motion for Leave to File a memorandum of law as amici curiae in support of Plaintiffs' Motion for Summary Judgment..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/27/2019) |
| 02/27/2019 | 367 | ORDER granting 349 Opposed motion to postpone all deadlines for 19 days..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/27/2019) |
| 02/27/2019 | 369 | MEMORANDUM Of Law In Support re: 357 Brief in support re: entry # 356 Motion for Summary Judgment by U.S. Rep. Steve King, filed.(jdav, 4) (Entered: 02/27/2019) |
| 03/06/2019 | 370 | AMENDED ANSWER to 104 Amended Complaint/Counterclaim/Crossclaim etc., by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Robins, Jeffrey) (Entered: 03/06/2019) |

**RE.109**

| 03/07/2019 | 371 | REPLY in Support of 356 MOTION for Summary Judgment , filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 03/07/2019) |
| --- | --- | --- |
| 03/07/2019 | 372 | RESPONSE in Opposition to 363 Opposed MOTION to Deny or Defer Consideration of Summary Judgment, or in the Alternative to Grant Defendant-Intervenors an Extension of Time to Respond, filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 03/07/2019) |
| 03/07/2019 | 373 | RESPONSE in Opposition to 363 Opposed MOTION to Deny or Defer Consideration of Summary Judgment, or in the Alternative to Grant Defendant-Intervenors an Extension of Time to Respond, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 03/07/2019) |
| 03/18/2019 | 374 | REPLY in Support of 363 Opposed MOTION to Deny or Defer Consideration of Summary Judgment, or in the Alternative to Grant Defendant-Intervenors an Extension of Time to Respond, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit 1)(Salmon, John) (Entered: 03/18/2019) |
| 04/05/2019 | 375 | MOTION for Jack Salmon to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 4/26/2019. (Attachments: # 1 Proposed Order)(Salmon, John) (Entered: 04/05/2019) |
| 04/12/2019 | 376 | MOTION for Brett A. Shumate to Withdraw as Attorney by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 5/3/2019. (Attachments: # 1 Proposed Order)(Robins, Jeffrey) (Entered: 04/12/2019) |
| 04/26/2019 | 377 | ORDER granting 375 Motion to Withdraw as Attorney. Attorney John Paul Salmon and Brett A Shumate terminated; granting 376 Motion to Withdraw as Attorney. Attorney John Paul Salmon and Brett A Shumate terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 04/26/2019) |

**RE.110**

| 05/01/2019 | 378 | ORDER Setting Hearing on Motion 356 MOTION for Summary Judgment : Motion Hearing set for 7/8/2019 at 10:00 AM in Courtroom 9C before Judge Andrew S Hanen. Those who wish to respond to the Motion for Summary Judgment must do so by June 14, 2019, the Plaintiff-States replies due by June 28, 2019. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 05/02/2019) |
|---|---|---|
| 05/01/2019 | 379 | Mail Returned Undeliverable as to attorney James Joseph Walker re: 367 Order on Motion for Miscellaneous Relief, filed. (mmarquez, 5) (Entered: 05/02/2019) |
| 05/02/2019 | 380 | Mail Returned Undeliverable as to attorney James Joseph Walker as to Defendants re: 368 Order on Motion for Leave to File, filed. (mmarquez, 5) (Entered: 05/02/2019) |
| 05/13/2019 | 381 | MOTION for James J. Walker to Appear Pro Hac Vice by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 6/3/2019. (Walker, James) (Additional attachment(s) added on 5/14/2019: # 1 Verified Motion) (dnoriega, 1). (Entered: 05/13/2019) |
| 05/14/2019 | 382 | MOTION for Priscilla Orta to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/4/2019. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 05/14/2019) |
| 05/14/2019 | 383 | MOTION to Compel Discovery from Plaintiff State of Texas and to Dismiss all Other Plaintiff States by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/4/2019. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Proposed Order)(Avila, Alejandra) (Entered: 05/14/2019) |
| 05/15/2019 | 384 | MOTION for Zachary Kolodin to Withdraw as Attorney by Proposed Amici Religious Organizations, filed. Motion Docket Date 6/5/2019. (Mangi, Adeel) (Entered: 05/15/2019) |
| 05/17/2019 | 385 | ORDER. Plaintiffs are ordered to respond to 383 Motion to Compel by May 29, 2019. (Signed by Judge Andrew S Hanen) Parties notified. (LaurenWebster, 4) (Entered: 05/17/2019) |

| 05/17/2019 | 386 | MOTION to Compel Discovery from Federal Defendants by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/7/2019. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Proposed Order)(Avila, Alejandra) (Entered: 05/17/2019) |
|---|---|---|
| 05/29/2019 | 387 | RESPONSE to 383 MOTION to Compel Discovery from Plaintiff State of Texas and to Dismiss all Other Plaintiff States filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Proposed Order)(Disher, Todd) (Entered: 05/29/2019) |
| 06/04/2019 | 388 | ORDER granting 381 Motion for James J. Walker to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 06/04/2019) |
| 06/04/2019 | 389 | ORDER granting 382 Motion to Withdraw as Attorney. Attorney Zachary Kolodin and Priscilla Orta terminated; granting 384 Motion to Withdraw as Attorney. Attorney Zachary Kolodin and Priscilla Orta terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 06/05/2019) |
| 06/05/2019 | 390 | MOTION to Strike *Plaintiffs' Experts* by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 6/26/2019. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order)(Avila, Alejandra) (Entered: 06/05/2019) |
| 06/07/2019 | 391 | REPLY in Support of 383 MOTION to Compel Discovery from Plaintiff State of Texas and to Dismiss all Other Plaintiff States, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Avila, Alejandra) (Entered: 06/07/2019) |
| 06/07/2019 | 392 | |

| | | |
|---|---|---|
| | | RESPONSE in Opposition to 386 MOTION to Compel Discovery from Federal Defendants, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Exhibit Renaud Declaration, # 2 Exhibit Monica Declaration, # 3 Exhibit Hoefer Declaration, # 4 Exhibit Bellisime Declaration)(Robins, Jeffrey) (Entered: 06/07/2019) |
| 06/07/2019 | 393 | Opposed MOTION for Protective Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 6/28/2019. (Robins, Jeffrey) (Entered: 06/08/2019) |
| 06/10/2019 | 394 | NOTICE *of Errata* re: 392 Response in Opposition to Motion, by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Appendix)(Robins, Jeffrey) (Entered: 06/10/2019) |
| 06/10/2019 | 395 | NOTICE *of Errata* re: 393 Opposed MOTION for Protective Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Appendix)(Robins, Jeffrey) (Entered: 06/10/2019) |
| 06/14/2019 | 396 | Unopposed MOTION for Leave to File Excess Pages by State of New Jersey, filed. (Levine, Kenneth) (Entered: 06/14/2019) |
| 06/14/2019 | 397 | RESPONSE in Opposition to 356 MOTION for Summary Judgment , filed by State of New Jersey. (Attachments: # 1 Appendix)(Levine, Kenneth) (Entered: 06/14/2019) |
| 06/14/2019 | 398 | Unopposed MOTION for Leave to File Excess Pages by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Avila, Alejandra) (Entered: 06/14/2019) |
| 06/14/2019 | 399 | RESPONSE in Opposition to 356 MOTION for Summary Judgment , filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Avila, Alejandra) (Entered: 06/14/2019) |
| 06/15/2019 | 400 | APPENDIX re: 399 Response in Opposition to Motion, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios |

| | | |
|---|---|---|
| | | Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Exhibit 1-6, # 2 Exhibit 7-12, # 3 Exhibit 13-18, # 4 Exhibit 19-29, # 5 Exhibit 30-34, # 6 Exhibit 35, # 7 Exhibit 36-48, # 8 Exhibit 49-61, # 9 Exhibit 62)(Avila, Alejandra) (Entered: 06/15/2019) |
| 06/17/2019 | 401 | REPLY in Support of 386 MOTION to Compel Discovery from Federal Defendants, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Avila, Alejandra) (Entered: 06/17/2019) |
| 06/18/2019 | 402 | NOTICE *OF ERRATA* re: 399 Response in Opposition to Motion, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Exhibit 62-J)(Perales, Nina) (Entered: 06/18/2019) |
| 06/18/2019 | 403 | Notice of Telephone Hearing set for 6/20/2019 at 01:30 PM before Judge Andrew S Hanen. (Signed by Judge Andrew S Hanen) Parties notified.(EdnitaPonce, 1) (Entered: 06/18/2019) |
| 06/18/2019 | 404 | NOTICE of Setting. Parties notified. Telephone Conference set for 6/20/2019 at 01:30 PM before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 06/18/2019) |
| 06/19/2019 | | (Court only) ***Deadlines terminated. (rhawkins) (Entered: 06/19/2019) |
| 06/19/2019 | 405 | NOTICE of Setting. Parties notified. Miscellaneous Hearing set for 6/24/2019 at 01:30 PM in Courtroom 9C before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 06/19/2019) |
| 06/20/2019 | 406 | NOTICE of Appearance by Ryan L. Bangert on behalf of Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Bangert, Ryan) (Entered: 06/20/2019) |
| 06/21/2019 | 407 | ADVISORY by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed.(Perales, Nina) (Entered: |

**RE.114**

| | | 06/21/2019) |
|---|---|---|
| 06/21/2019 | 408 | RESPONSE in Opposition to 393 Opposed MOTION for Protective Order, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Avila, Alejandra) (Entered: 06/21/2019) |
| 06/21/2019 | | (Court only) *** Attorney Mary Kelly Persyn terminated. (rhawkins) (Entered: 06/24/2019) |
| 06/24/2019 | 409 | ORDER granting 396 Motion for Leave to File Excess Pages; granting 398 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 06/24/2019) |
| 06/24/2019 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MOTION HEARING held on 6/24/2019. The Court held discussions with counsel off the record after which rulings regarding discovery issues were made as indicated on the record. The Court will cancel the hearing on the motion for summary judgment and reset it to 10/28/2019 at 10:00 a.m. Notice to follow. Appearances: Alejandra Avila, Nina Perales, Ryan L Bangert, Todd Lawrence Disher, Philip Trent Peroyea, Jeffrey S Robins, Daniel David Hu, Glenn J Moramarco.(Court Reporter: F. Warner), filed.(rhawkins) (Entered: 06/24/2019) |
| 06/24/2019 | 410 | NOTICE of Resetting. Parties notified. Motion Hearing set for 10/28/2019 at 10:00 AM in Courtroom 9C before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 06/24/2019) |
| 06/26/2019 | 411 | RESPONSE to 390 MOTION to Strike *Plaintiffs' Experts* , filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Disher, Todd) (Entered: 06/26/2019) |
| 06/26/2019 | 412 | ORDER, denying without prejudice 393 Opposed MOTION for Protective Order, denying without prejudice 363 Opposed MOTION to Deny or Defer Consideration of Summary Judgment, or in the Alternative to Grant Defendant-Intervenors an Extension of Time to Respond, denying without prejudice 383 MOTION to Compel Discovery from Plaintiff State of Texas and to Dismiss all Other Plaintiff States, denying without prejudice 386 MOTION to Compel Discovery from Federal Defendants ; The hearing on Plaintiff-States' 356 MOTION for Summary Judgment previously scheduled for July 8, 2019 at 10:00 AM is RE-SET, for 10/28/2019 at 10:00 AM in Courtroom 9C before Judge Andrew S Hanen) (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 06/27/2019) |

| 06/28/2019 | 413 | REPLY in Support of 356 MOTION for Summary Judgment , filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 06/28/2019) |
|---|---|---|
| 07/01/2019 | 414 | AO 435 TRANSCRIPT REQUEST by Jeffrey Robins for Transcript of Motion Hearing on 6/24/2019 before Judge Andrew S. Hannen. 3-Day turnaround requested. Court Reporter/Transcriber: Fred Warner, filed. (Hu, Daniel) (Entered: 07/01/2019) |
| 07/08/2019 | 415 | REPLY in Support of 390 MOTION to Strike *Plaintiffs' Experts*, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Avila, Alejandra) (Entered: 07/08/2019) |
| 07/18/2019 | 416 | Joint MOTION to Modify June 24 Order as to Federal Defendants by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 8/8/2019. (Attachments: # 1 Proposed Order)(Robins, Jeffrey) (Entered: 07/18/2019) |
| 07/18/2019 | 417 | LETTER OF AGREEMENT re: Modification of Scheduling Deadlines by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 07/18/2019) |
| 07/26/2019 | 418 | Unopposed MOTION for Alejandra Avila to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, filed. Motion Docket Date 8/16/2019. (Avila, Alejandra) (Entered: 07/26/2019) |
| 07/31/2019 | 419 | Unopposed MOTION for Brantley Starr to Withdraw as Attorney by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 8/21/2019. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 07/31/2019) |
| 08/02/2019 | 420 | Second MOTION to Compel Discovery from Federal Defendants by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla |

| | | |
|---|---|---|
| | | Perez, Luis A Rafael, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 8/23/2019. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Perales, Nina) (Entered: 08/02/2019) |
| 08/02/2019 | 421 | ORDER granting 416 Joint MOTION to Modify June 24 Order as to Federal Defendants, granting 418 Unopposed MOTION for Alejandra Avila to Withdraw as Attorney,granting 419 Unopposed MOTION for Brantley Starr to Withdraw as Attorney. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/05/2019) |
| 08/02/2019 | | (Court only) *** Attorney Alejandra Avila and Brantley Starr terminated. (jdav, 4) (Entered: 08/05/2019) |
| 08/15/2019 | 422 | MOTION for Ramon A. Soto to Appear Pro Hac Vice by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 9/5/2019. (Perales, Nina) (Additional attachment(s) added on 8/16/2019: # 1 verified status) (dbenavides, 1). (Entered: 08/15/2019) |
| 08/15/2019 | 423 | Unopposed MOTION for Katherine Gregory and Paul Juzdan to Withdraw as Attorney by State of New Jersey, filed. Motion Docket Date 9/5/2019. (Attachments: # 1 Proposed Order)(Levine, Kenneth) (Entered: 08/15/2019) |
| 08/22/2019 | 424 | NOTICE *Withdrawing Perez Defendant-Intervenors' Second Motion to Compel Discovery (Doc. 420)* re: 420 Second MOTION to Compel Discovery from Federal Defendants by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Perales, Nina) (Entered: 08/22/2019) |
| 08/22/2019 | | (Court only) ***Motion(s) terminated: 420 Second MOTION to Compel Discovery from Federal Defendants per 424 notice withdrawing motion. (rhawkins) (Entered: 10/10/2019) |
| 08/25/2019 | 425 | ORDER granting 423 Motion to Withdraw as Attorney. Attorney Katherine Anne Gregory and Paul H. Juzdan terminated..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/26/2019) |
| 08/25/2019 | 426 | ORDER granting 422 Motion for Ramon A. Soto to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/26/2019) |
| 08/28/2019 | 427 | |

**RE.117**

| | | |
|---|---|---|
| | | Opposed MOTION to Stay by State of New Jersey, filed. Motion Docket Date 9/18/2019. (Attachments: # 1 Proposed Order, # 2 Appendix)(Levine, Kenneth) (Entered: 08/28/2019) |
| 09/18/2019 | 428 | RESPONSE in Opposition to 427 Opposed MOTION to Stay , filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 09/18/2019) |
| 09/23/2019 | 429 | Opposed MOTION for Discovery by Nancy Adossi, Carlos Aguilar Gonzalez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 10/15/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(Perales, Nina) (Entered: 09/23/2019) |
| 09/26/2019 | 430 | REPLY in Support of 427 Opposed MOTION to Stay , filed by State of New Jersey. (Levine, Kenneth) (Entered: 09/26/2019) |
| 09/26/2019 | 431 | NOTICE of Setting as to 429 Opposed MOTION for Discovery, 427 Opposed MOTION to Stay . Parties notified. Motion Hearing set for 10/8/2019 at 01:30 PM in Courtroom 9C before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 09/26/2019) |
| 10/01/2019 | 432 | MOTION for Leave to File Supplemental Briefing and to Continue Hearing Set for October 28, 2019 by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 10/22/2019. (Attachments: # 1 Affidavit of Nina Perales, # 2 Proposed Order)(Perales, Nina) (Entered: 10/01/2019) |
| 10/07/2019 | 433 | RESPONSE to 429 Opposed MOTION for Discovery filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Proposed Order)(Disher, Todd) (Entered: 10/07/2019) |
| 10/07/2019 | 434 | REPLY in Support of 429 Opposed MOTION for Discovery, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, |

**RE.118**

| | | |
|---|---|---|
| | | Darwin Velasquez. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Perales, Nina) (Entered: 10/07/2019) |
| 10/08/2019 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MOTION HEARING held on 10/8/2019. The Court heard argument on 427 Motion to Stay and 429 Motion for Discovery. The Court denies as moot 429 Motion for Discovery. The Court further cancelled the motion hearing set for 10/28/2019 and will enter an order for further briefing. Appearances: Ramon A Soto, Nina Perales, Todd Lawrence Disher, Adam Arthur Biggs, Philip Trent Peroyea, Daniel David Hu, Glenn J Moramarco.(Court Reporter: J. Sanchez), filed.(rhawkins) (Entered: 10/08/2019) |
| 10/08/2019 | 435 | ORDER denying as moot 429 Motion for Discovery. The parties are instructed to submit briefing to the Court by October 28, 2019 on the issue of whether the Court may consider evidence outside of the administrative record in its ruling on Plaintiffs' Motion for Summary Judgment (DE 356 ). (Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 10/08/2019) |
| 10/09/2019 | 436 | AO 435 TRANSCRIPT REQUEST by Daniel D. Hu for Transcript of Motion to Stay Hearing 427 10/8/2019 Judge Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Johnny Sanchez, filed. (Hu, Daniel) (Entered: 10/09/2019) |
| 10/09/2019 | 437 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Motion to Stay & Motion for Discovery, October 8, 2019, Judge Andrew Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Johnny Sanchez, filed. (Perales, Nina) (Entered: 10/09/2019) |
| 10/09/2019 | 438 | AO 435 TRANSCRIPT REQUEST by Todd Lawrence Disher for Transcript of Motion to Stay & Motion for Discovery Hearing; October 8, 2019; Judge Andrew Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Johnny Sanchez, filed. (Disher, Todd) (Entered: 10/09/2019) |
| 10/22/2019 | 439 | RESPONSE to 432 MOTION for Leave to File Supplemental Briefing and to Continue Hearing Set for October 28, 2019 , filed by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A)(Disher, Todd) (Entered: 10/22/2019) |
| 10/28/2019 | 440 | Supplemental BRIEF *Regarding the Administrative Record* re: 435 Order on Motion for Discovery, by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, |

| | | |
|---|---|---|
| | | filed. (Attachments: # 1 Appendix)(Perales, Nina) (Entered: 10/28/2019) |
| 10/28/2019 | 441 | BRIEF *Regarding the Scope of the Court's Review* re: 435 Order on Motion for Discovery, by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Disher, Todd) (Entered: 10/28/2019) |
| 10/28/2019 | 442 | BRIEF re: 435 Order on Motion for Discovery, by State of New Jersey, filed.(Levine, Kenneth) (Entered: 10/28/2019) |
| 10/28/2019 | 443 | RESPONSE to 435 Order on Motion for Discovery, , filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Robins, Jeffrey) (Entered: 10/28/2019) |
| 11/01/2019 | 444 | REPLY in Support of 432 MOTION for Leave to File Supplemental Briefing and to Continue Hearing Set for October 28, 2019, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 11/01/2019) |
| 11/05/2019 | 445 | TRANSCRIPT re: Motion Hearing held on October 8, 2019 before Judge Andrew S Hanen. Court Reporter J. Sanchez. Ordering Party Daniel Hu Release of Transcript Restriction set for 2/3/2020., filed. (jsanchez, ) (Entered: 11/05/2019) |
| 11/06/2019 | 446 | Notice of Filing of Official Transcript as to 445 Transcript. Party notified, filed. (scastillo, 1) (Entered: 11/06/2019) |
| 11/22/2019 | 447 | ORDER granting 427 Motion to Stay.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 11/22/2019) |
| 11/22/2019 | 448 | ORDER granting 432 Motion for Leave to File Supplemental Briefing, denying as moot motion to continue hearing set for October 28, 2019. Deadline to file supplemental briefing to be set when a new docket control order is entered..(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 11/22/2019) |
| 02/11/2020 | 449 | Unopposed MOTION for Denise Hulett to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 3/3/2020. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 02/11/2020) |

| 02/13/2020 | 450 | ORDER granting 449 Motion to Withdraw as Attorney. Attorney Denise Hulett terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jguajardo, 4) (Entered: 02/13/2020) |
|---|---|---|
| 02/13/2020 | 451 | Unopposed MOTION for Todd Lawrence Disher to Withdraw as Attorney by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 3/5/2020. (Attachments: # 1 Proposed Order)(Bangert, Ryan) (Entered: 02/13/2020) |
| 02/14/2020 | 452 | ORDER denying 390 Motion to Strike without prejudice. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 02/14/2020) |
| 02/25/2020 | 453 | ORDER granting 451 Motion to Withdraw as Attorney. Attorney Todd Lawrence Disher terminated, Ryan L. Bangert added as Attorney in Charge for Plaintiff States..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/25/2020) |
| 02/28/2020 | 454 | MOTION for Karen Lin to Withdraw as Attorney by Proposed Amici Companies and Associations, filed. Motion Docket Date 3/20/2020. (Attachments: # 1 Proposed Order)(Ranlett, Kevin) (Entered: 02/28/2020) |
| 02/28/2020 | 455 | NOTICE *OF WITHDRAWAL OF COUNSEL Re: Jennifer B. Sokoler* by Brown University, California Institute of Technology, Columbia University, Cornell University, Dartmouth College, Duke University, Emory University, George Washington University, Georgetown University, Harvard University, Massachusetts Institute of Technology, Princeton University, Stanford University, University of Chicago, University of Pennsylvania, Vanderbilt University, Washington University in St. Louis, Yale University, filed. (Yagura, Ryan) (Entered: 02/28/2020) |
| 03/06/2020 | 456 | ORDER granting 454 Motion to Withdraw as Attorney. Attorney Karen W Lin terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/06/2020) |
| 03/16/2020 | 457 | MOTION for Michael N. Fresco to Withdraw as Attorney by Proposed Amici Religious Organizations, filed. Motion Docket Date 4/6/2020. (Mangi, Adeel) (Entered: 03/16/2020) |
| 05/01/2020 | 458 | Unopposed MOTION for Glenn J. Moramarco to Withdraw as Attorney by State of New Jersey, filed. Motion Docket Date 5/22/2020. (Attachments: # 1 Proposed Order)(Levine, Kenneth) (Entered: 05/01/2020) |
| 05/29/2020 | 459 | ORDER granting 458 Motion to Withdraw as Attorney. Attorney Glenn J Moramarco terminated. Jeremy E. Hollander is designated as Attorney in Charge for New Jersey in this case..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 06/01/2020) |
| 05/29/2020 | 460 | |

**RE.121**

| | | |
|---|---|---|
| | | ORDER granting 457 Motion to Withdraw as Attorney. Attorney Michael N Fresco terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 06/01/2020) |
| 06/18/2020 | 461 | ORDER. Pursuant to this Court's stay order (DE 447 ), parties are to file a joint status report and an agreed schedule by July 24, 2020 given the Supreme Court's ruling today in *Dep't of Homeland Sec. v. Regents of Univ. of Cal.* (Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 06/18/2020) |
| 06/18/2020 | 462 | NOTICE of Appearance by Todd Lawrence Disher on behalf of State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Disher, Todd) (Entered: 06/18/2020) |
| 07/24/2020 | 463 | STATUS REPORT by Phil Bryant, State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Disher, Todd) (Entered: 07/24/2020) |
| 07/24/2020 | 464 | MOTION to Substitute Party State of Mississippi in place of Phil Bryant by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, State of Mississippi, filed. Motion Docket Date 8/14/2020. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 07/24/2020) |
| 07/27/2020 | 465 | Affirmation in Support of MOTION to Intervene Under FRcvP Rule 24 by the Trustees of the Ad Hoc New Yorker Republican Committee by Christopher Earl Strunk, filed. Motion Docket Date 8/17/2020. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Cover Letter)(JenniferLongoria, 1) (Additional attachment(s) added on 7/27/2020: # 9 Unredacted attachment Exhibit 5) (JenniferLongoria, 1). (Entered: 07/27/2020) |
| 08/03/2020 | 466 | VERIFICATION AFFIDAVIT of INTERVENER Van Allen, filed.(JenniferLongoria, 1) (Entered: 08/03/2020) |
| 08/04/2020 | 467 | ORDER. Federal Defendant will file a certified copy of the administrative record concerning DACA memorandum by 8/25/2020 along with a printed courtesy copy to the Court if over 100 pages. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 08/04/2020) |
| 08/05/2020 | 468 | NOTICE *of related litigation* by United States of America, filed. (Hu, Daniel) (Entered: 08/05/2020) |
| 08/14/2020 | 469 | NOTICE *Perez Defendant-Intervenors' Consent to Plaintiff States' Motion to Substitute State of Mississippi* by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla |

| | | |
|---|---|---|
| | | Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Perales, Nina) (Entered: 08/14/2020) |
| 08/17/2020 | 470 | RESPONSE in Opposition to 465 MOTION to Intervene, filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 08/17/2020) |
| 08/19/2020 | 471 | Unopposed MOTION for Mayur P. Saxena, Melissa L. Medoway, Eric L. Apar, Elspeth L. Faiman Hans, and Tim Sheehan to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 9/9/2020. (Attachments: # 1 Affidavit Mayur Saxena (pro hac vice), # 2 Affidavit Melissa Medoway (pro hac vice), # 3 Affidavit Eric Apar (pro hac vice), # 4 Affidavit Elspeth L. Faiman Hans (pro hac vice), # 5 Affidavit Tim Sheehan (pro hac vice), # 6 Proposed Order Proposed Order)(Levine, Kenneth) (Additional attachment(s) added on 8/20/2020: # 7 Verified Status of Bar Membership) (EdnitaPonce, 1). (Entered: 08/19/2020) |
| 08/21/2020 | 472 | NOTICE *Filing of Administrative Record* re: 467 Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 AR part 1, # 2 AR part 2, # 3 AR part 3, # 4 AR part 4, # 5 AR part 5, # 6 AR part 6)(Walker, James) (Entered: 08/21/2020) |
| 08/21/2020 | 473 | ORDER denying without prejudice 356 MOTION for Summary Judgment . Plaintiff States are given leave to re-file the motion for summary judgment, due by October 2, 2020. The Federal Defendants and the Defendant-Intervenors response due by October 30, 2020. The Plaintiff States reply due by November 6, 2020. Defendant or any of the Intervenors response due by November 6, 2020. Discovery deadline: September 30, 2020. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/24/2020) |
| 08/21/2020 | 474 | ORDER granting 464 Motion to Substitute Party. State of Mississippi added, Tate Reeves, Governor of Mississippi terminated..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/24/2020) |
| 08/21/2020 | 475 | ORDER denying 465 Motion to Intervene as to the Trustees of the Ad Hoc New Yorker Republican Committee. The Trustees are welcome to participate as amicus curiae..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/24/2020) |
| 08/21/2020 | | (Court only) ***Attorney Mayur P Saxena for State of New Jersey, Melissa Medoway for State of New Jersey, Eric L Apar for State of New Jersey, Elspeth L. Faiman Hans for State of New Jersey, Tim Sheehan for State of New Jersey, added. (jdav, 4) (Entered: 08/24/2020) |

**RE.123**

| | | |
|---|---:|---|
| 08/21/2020 | 476 | ORDER granting 471 Motion for Mayur P. Saxena, Melissa Medoway, Eric L. Apar, Elspeth L. Faiman Hans and Tim Sheehan to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) (Attachments: # 1 Order Granting Melissa Medoway to Proceed Pro Hac Vice, # 2 Order Granting Eric L. Apar to Proceed Pro Hac Vice, # 3 Order Granting Elspeth L. Faiman Hans to Proceed Pro Hac Vice, # 4 Order Granting Tim Sheehan to Proceed Pro Hac Vice) Parties notified.(jdav, 4) (Entered: 08/24/2020) |
| 08/21/2020 | 477 | ORDER, Jeremy E. Hollander, Nicholas Dolinsky and Brian De Vito are withdrawn as counsel of record for the State of New Jersey in this case; Mayur P. Saxena is designated as Attorney in Charge for the State of New Jersey in this case. Nicholas Dolinsky and Brian De Vito are removed from all further electronic notifications regarding this case. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/24/2020) |
| 08/31/2020 | 478 | Unopposed MOTION for Ernest I. Herrera to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 9/21/2020. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 08/31/2020) |
| 09/29/2020 | 479 | ORDER granting Motion to Appear Pro Hac Vice as to Charles A. Breiterman.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 09/29/2020) |
| 09/30/2020 | 480 | Opposed MOTION for Extension of Time Schedule by One Week by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 10/21/2020. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Perales, Nina) (Entered: 09/30/2020) |
| 09/30/2020 | 481 | PROPOSED ORDER re: 480 Opposed MOTION for Extension of Time Schedule by One Week, filed.(Perales, Nina) (Entered: 09/30/2020) |
| 10/01/2020 | 482 | ORDER granting 480 Motion for Extension of Time. All deadlines in docket entry no. 473 are extended by 7 days..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/01/2020) |
| 10/06/2020 | 483 | Notice of Motion for Reconsideration by Ad Hoc New Yorker Republican Committee/ Christopher Earl Strunk, Trustee, filed. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Notice of Motion, # 2 Memorandum in Support of Motion to Reconsider, # 3 Proposed Order, # 4 Certificate of Service, # 5 Affirmation In Support of Notice of Motion to Reconsider, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(jdav, 4) (Entered: 10/07/2020) |
| 10/07/2020 | 484 | Opposed MOTION to Compel and Extend Discovery Period, or in the Alternative, to Exclude Evidence by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 10/28/2020. (Attachments: # 1 Proposed Order to Compel, # 2 Proposed Order to Exclude, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G)(Perales, Nina) (Entered: 10/07/2020) |
| 10/09/2020 | 485 | Unopposed MOTION for Leave to File Excess Pages by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 10/30/2020. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 10/09/2020) |
| 10/09/2020 | 486 | MOTION for Summary Judgment by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 10/30/2020. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 10/09/2020) |
| 10/09/2020 | 487 | APPENDIX re: 486 MOTION for Summary Judgment by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35)(Disher, Todd) (Entered: 10/09/2020) |
| 10/13/2020 | 488 | ORDER granting 485 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 10/14/2020) |
| 10/16/2020 | 489 | First MOTION for Leave to File Excess Pages by Charles A Breiterman, filed. Motion Docket Date 11/6/2020. (Breiterman, Charles) (Entered: 10/16/2020) |

**RE.125**

| | | |
|---|---|---|
| 10/16/2020 | 490 | Unopposed MOTION for P. Trent Peroyea to Withdraw as Attorney by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 11/6/2020. (Attachments: # 1 Proposed Order)(Peroyea, Philip) (Entered: 10/16/2020) |
| 10/21/2020 | 491 | AFFIDAVIT of Ad Hoc New York Republican Committee Trustee Christopher Ear Strunk Amicus, filed. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(ckrus, 4) (Entered: 10/23/2020) |
| 10/23/2020 | 492 | Unopposed MOTION for Leave to File Amicus Brief in Support of Plaintiffs by U.S. Rep. Steve King, filed. Motion Docket Date 11/13/2020. (Attachments: # 1 Exhibit Proposed Amicus Memo of Law, # 2 Proposed Order proposed order)(Joseph, Lawrence) (Entered: 10/23/2020) |
| 10/28/2020 | 493 | RESPONSE to 484 Opposed MOTION to Compel and Extend Discovery Period, or in the Alternative, to Exclude Evidence filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Disher, Todd) (Entered: 10/28/2020) |
| 10/29/2020 | 494 | MOTION for Leave to File Amicus Curiae Brief by Charles A Breiterman, filed. Motion Docket Date 11/19/2020. (Breiterman, Charles) (Entered: 10/29/2020) |
| 10/29/2020 | 495 | Brief of Charles A. Breiterman as Amicus Curiae in Support of Plaintiffs' Motion for Summary Judgment, filed.(Breiterman, Charles) (Entered: 10/29/2020) |
| 10/30/2020 | 496 | REPLY in Support of 484 Opposed MOTION to Compel and Extend Discovery Period, or in the Alternative, to Exclude Evidence, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Perales, Nina) (Entered: 10/30/2020) |
| 10/30/2020 | 497 | ORDER denying 483 Motion for Reconsideration. As previously stated, the Trustees are welcome to participate in this case as amicus curiae..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/02/2020) |
| 11/03/2020 | 500 | AMICUS DECLARATION SUPPLEMENT SUPPORT TO DOCKET ITEMS #491 and #483 OPPOSES ITEMS #209 and #492: RE SCOTUS RULING IN NO. 18- 587 AND DOCKET ITEM #461 STAY ORDER WITH LOCAL RULE 5-2 RELATED CASES OF AMICUS CHRISTOPHER EARL |

**RE.126**

23-40653.125

| | | |
|---|---|---|
| | | STRUNK, THE NATURAL-BORN-CITIZEN (NBC) BIRTHER TRUSTEE FOR THE AD BOC NEW YORKER REPUBLICAN COMMITTEE, STATUS RECONSIDERATION MOTION FOR FRCvP RULE 6S(b) RELIEF AT DOCKET ITEM #483, AFFIRMATION IN OPPOSITION TO THE STATES AMICI CURIAE MOTION FOR RELIEF AT DOCKET ITEM #209 BY: NEW YORK, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW MEXICO, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VIRGINIA, VERMONT, WASHINGTON, AND THE DISTRICT OF COLUMBIA IN OPPOSITION TO PLAINTIFFS' REQUEST FOR INJUNCTION AGAINST THE DEFERRED ACTION FOR CHILDHOOD ARRIVAL (DACA) by Christopher Earl Strunk, Trustee for the Ad Hoc New Yorker Republican Committee, filed.(jdav, 4) (Entered: 11/06/2020) |
| 11/05/2020 | 498 | Unopposed MOTION for Leave to File Excess Pages by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, filed. Motion Docket Date 11/27/2020. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 11/05/2020) |
| 11/06/2020 | 499 | MOTION Unopposed Motion for Leave to Exceed Page Limit by State of New Jersey, filed. Motion Docket Date 11/27/2020. (Attachments: # 1 Proposed Order)(Medoway, Melissa) (Entered: 11/06/2020) |
| 11/06/2020 | 501 | RESPONSE to 486 MOTION for Summary Judgment filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Exhibit Exhibits)(Walker, James) (Entered: 11/06/2020) |
| 11/06/2020 | 502 | RESPONSE in Opposition to 486 MOTION for Summary Judgment , filed by State of New Jersey. (Attachments: # 1 Appendix NJ Appendix - Vol. I, # 2 Appendix NJ Appendix - Vol. 2, # 3 Appendix NJ Appendix - Vol. 3, # 4 Proposed Order Order Denying Summary Judgment)(Medoway, Melissa) (Entered: 11/06/2020) |
| 11/06/2020 | 503 | MOTION for Summary Judgment by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 11/27/2020. (Perales, Nina) (Entered: 11/06/2020) |

| 11/06/2020 | 504 | RESPONSE in Opposition to 486 MOTION for Summary Judgment , filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit 1 - Nina Perales Declaration, # 2 Exhibit 2 - Appendix Vol. 1, # 3 Exhibit 3 - Appendix Vol. 2)(Perales, Nina) (Entered: 11/06/2020) |
|---|---|---|
| 11/09/2020 | 505 | Unopposed MOTION for Extension of Time to Reply in Support of Motion for Summary Judgment by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 11/30/2020. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 11/09/2020) |
| 11/09/2020 | 506 | NOTICE of Setting. Parties notified. Motion Hearing set for 12/22/2020 at 10:00 AM in Courtroom 9C before Judge Andrew S Hanen, filed. (rhawkins) (Entered: 11/09/2020) |
| 11/09/2020 | 507 | Unopposed MOTION for Extension of Time to Respond to Defendant-Intervenors' Responses by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 11/30/2020. (Attachments: # 1 Proposed Order)(Walker, James) (Entered: 11/09/2020) |
| 11/09/2020 | 509 | ORDER granting 489 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/10/2020) |
| 11/09/2020 | 510 | ORDER granting 478 Motion to Withdraw as Attorney. Attorney Ernest I. Herrera terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/10/2020) |
| 11/09/2020 | 511 | ORDER granting 492 Motion for Leave to File a memorandum of law as amici curiae in support of plaintiffs' motion for summary judgment..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/10/2020) |
| 11/09/2020 | 512 | Memorandum of Law by Congressman Steve King and Congressman Paul A. Gosar, D.D.S, as Amici Curiae in support of Plaintiffs' 486 MOTION for Summary Judgment , filed. (jdav, 4) (Entered: 11/10/2020) |
| 11/09/2020 | 513 | ORDER granting 490 Motion to Withdraw as Attorney. Attorney Philip Trent Peroyea terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/10/2020) |
| 11/10/2020 | 508 | NOTICE of Errata re: 501 Response to Motion by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. |

**RE.128**

| | | (Attachments: # 1 Appendix of Unpublished Authorities)(Walker, James) (Entered: 11/10/2020) |
|---|---|---|
| 11/10/2020 | 514 | MOTION for Michael Joseph Dundas to Appear Pro Hac Vice for City of Los Angeles, filed. Motion Docket Date 12/1/2020. (mmapps, 4) (Entered: 11/10/2020) |
| 11/10/2020 | 515 | ORDER granting 507 Motion for Extension of Time.(Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 11/10/2020) |
| 11/10/2020 | 516 | ORDER granting 505 Motion for Extension of Time.(Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 11/10/2020) |
| 11/11/2020 | 517 | Unopposed MOTION for Extension of Time to File Response to Federal Defendants' Response to Plaintiff States' Motion for Summary Judgment by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 12/2/2020. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 11/11/2020) |
| 11/12/2020 | 518 | ORDER granting 517 Motion for Extension of Time.(Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 11/12/2020) |
| 11/12/2020 | | (Court only) ***Party City of Los Angeles added. (LaurenWebster, 4) (Entered: 11/12/2020) |
| 11/12/2020 | | (Court only) ***Attorney Michael Joseph Dundas for City of Los Angeles, added. (LaurenWebster, 4) (Entered: 11/12/2020) |
| 11/12/2020 | 519 | ORDER granting 514 Motion for Michael Dundas to Appear Pro Hac Vice for the City of Los Angeles.(Signed by Judge Andrew S Hanen) Parties notified.(LaurenWebster, 4) (Entered: 11/12/2020) |
| 11/12/2020 | 520 | NOTICE of Appearance by Michael Dundas on behalf of City of Los Angeles, filed. (Dundas, Michael) (Entered: 11/12/2020) |
| 11/13/2020 | 521 | MOTION for Margaret L. Carter to Appear Pro Hac Vice by Proposed Amici Local Governments and Local Government Advocacy Organizations, filed. Motion Docket Date 12/4/2020. (Whilt, Nicholas) (Additional attachment(s) added on 11/16/2020: # 1 Attorney Verification) (dnoriega, 1). (Entered: 11/13/2020) |
| 11/13/2020 | 522 | MOTION for Daniel R. Suvor to Appear Pro Hac Vice by Proposed Amici Local Governments and Local Government Advocacy Organizations, filed. Motion Docket Date 12/4/2020. (Whilt, Nicholas) (Additional attachment(s) added on |

| | | |
|---|---|---|
| | | 11/16/2020: # 1 Attorney Verification) (dnoriega, 1). (Entered: 11/13/2020) |
| 11/13/2020 | 523 | NOTICE of Appearance by Nicholas Whilt on behalf of Proposed Amici Local Governments and Local Government Advocacy Organizations, filed. (Whilt, Nicholas) (Entered: 11/13/2020) |
| 11/13/2020 | 524 | Unopposed MOTION for Leave to File Amici Curiae Brief by Proposed Amici Local Governments and Local Government Advocacy Organizations, filed. Motion Docket Date 12/4/2020. (Attachments: # 1 Proposed Amici Curiae Brief, # 2 Proposed Order)(Whilt, Nicholas) (Entered: 11/13/2020) |
| 11/16/2020 | | (Court only) ***Attorney Margaret Carter for Proposed Amici Local Governments and Local Government Advocacy Organizations, added. (jdav, 4) (Entered: 11/16/2020) |
| 11/16/2020 | 525 | ORDER granting 521 Motion for Margaret L. Carter to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/16/2020) |
| 11/16/2020 | | (Court only) ***Attorney Daniel R Suvor for Proposed Amici Local Governments and Local Government Advocacy Organizations, added. (jdav, 4) (Entered: 11/16/2020) |
| 11/16/2020 | 526 | ORDER granting 522 Motion for Daniel R. Suvor to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/16/2020) |
| 11/20/2020 | 527 | RESPONSE to 503 MOTION for Summary Judgment filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Walker, James) (Entered: 11/20/2020) |
| 11/20/2020 | 528 | RESPONSE to 501 Response to Motion *for Summary Judgment*, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 11/20/2020) |
| 11/20/2020 | 529 | REPLY in Support of 486 MOTION for Summary Judgment , filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Disher, Todd) (Entered: 11/20/2020) |
| 11/23/2020 | 530 | MOTION for Jeremy M. Feigenbaum to Appear Pro Hac Vice by State of New Jersey, filed. Motion Docket Date 12/14/2020. (Medoway, Melissa) (Additional attachment(s) added on 11/24/2020: # 1 Attorney Verification) (scastillo, 1). (Entered: 11/23/2020) |

**RE.130**

| 11/24/2020 | | (Court only) ***Attorney Jeremy M Feigenbaum for State of New Jersey, added. (jdav, 4) (Entered: 11/25/2020) |
|---|---|---|
| 11/24/2020 | 531 | ORDER granting 530 Motion for Jeremy M. Feigenbaum to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 11/25/2020) |
| 11/30/2020 | 532 | REPLY in Support of 503 MOTION for Summary Judgment , filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 11/30/2020) |
| 12/02/2020 | 533 | NOTICE of Appearance by Eric A. Hudson on behalf of State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Hudson, Eric) (Entered: 12/02/2020) |
| 12/03/2020 | 534 | Unopposed MOTION for Ryan L. Bangert to Withdraw as Attorney by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 12/24/2020. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 12/03/2020) |
| 12/03/2020 | 535 | Unopposed MOTION for Adam Arthur Biggs to Withdraw as Attorney by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 12/24/2020. (Attachments: # 1 Proposed Order)(Biggs, Adam) (Entered: 12/03/2020) |
| 12/03/2020 | 536 | ORDER granting 534 Motion to Withdraw Ryan L. Bangers. Attorney Ryan L Bangert terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 12/03/2020) |
| 12/03/2020 | 537 | ORDER granting 535 Motion to Withdraw Adam Arthur Biggs. Attorney Adam Arthur Biggs terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 12/03/2020) |
| 12/07/2020 | 538 | Opposed MOTION for Continuance of Hearing Set for December 22, 2020 or to Hear Argument Remotely by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 12/28/2020. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Proposed Order)(Perales, Nina) (Entered: |

**RE.131**

| | | |
|---|---|---|
| | | 12/07/2020) |
| 12/08/2020 | 539 | RESPONSE to 538 Opposed MOTION for Continuance of Hearing Set for December 22, 2020 or to Hear Argument Remotely filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order)(Disher, Todd) (Entered: 12/08/2020) |
| 12/10/2020 | 540 | REPLY in Support of 538 Opposed MOTION for Continuance of Hearing Set for December 22, 2020 or to Hear Argument Remotely, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Perales, Nina) (Entered: 12/10/2020) |
| 12/15/2020 | 541 | MOTION Appear on Behalf of the Attorney-in-Charge by State of New Jersey, filed. Motion Docket Date 1/5/2021. (Attachments: # 1 Proposed Order NJ Proposed Order)(Medoway, Melissa) (Entered: 12/15/2020) |
| 12/16/2020 | 542 | MOTION for John Coghlan to Appear Pro Hac Vice by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 1/6/2021. (Walker, James) (Additional attachment(s) added on 12/17/2020: # 1 Motion for Pro Hac) (rnieto, 1). (Entered: 12/16/2020) |
| 12/16/2020 | 543 | Unopposed MOTION to Appear on Behalf of Attorney-in-Charge by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 1/6/2021. (Walker, James) (Entered: 12/16/2020) |
| 12/16/2020 | 544 | ORDER denying 538 Motion for Continuance.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 12/16/2020) |
| 12/18/2020 | | (Court only) ***Attorney John Coghlan for All Federal Defendants added. (jguajardo, 4) (Entered: 12/18/2020) |
| 12/18/2020 | 545 | ORDER Granting 542 Motion for John Coghlan to Appear Pro Hac Vice.(Signed by Judge Andrew S Hanen) Parties notified.(jguajardo, 4) (Entered: 12/18/2020) |
| 12/18/2020 | 546 | ORDER granting 541 Motion for Jeremy M. Feigenbaum.(Signed by Judge Andrew S Hanen) Parties notified.(jguajardo, 4) (Entered: 12/18/2020) |
| 12/22/2020 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MOTION HEARING held on 12/22/2020. The Court |

**RE.132**

| | | |
|---|---|---|
| | | heard the argument of counsel as to <u>503</u> Motion for Summary Judgment. The Court will take the matter under advisement and make a ruling in due course. Appearances: Todd Disher, Eric Hudson, Elizabeth Murrill, Nina Perales, Douglas Hallward-Driemer, Jeffrey Feigenbaum, John Coghlan, Daniel Hu(Court Reporter: L. Smith), filed.(rhawkins) (Entered: 12/22/2020) |
| 12/22/2020 | | (Court only) ***Motion(s) terminated: <u>543</u> Unopposed MOTION to Appear on Behalf of Attorney-in-Charge. Motion granted on the record at hearing. (rhawkins) (Entered: 01/07/2021) |
| 12/22/2020 | | (Court only) ***Motion(s) terminated: <u>499</u> MOTION Unopposed Motion for Leave to Exceed Page Limit, <u>524</u> Unopposed MOTION for Leave to File Amici Curiae Brief. Ruled on at hearing on 12/22/2020. (rhawkins) (Entered: 02/05/2021) |
| 01/07/2021 | <u>547</u> | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Motion Hearing on 12/22/2020 before Judge Andrew Hanen. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Lanie Smith, filed. (Perales, Nina) (Entered: 01/07/2021) |
| 01/07/2021 | <u>548</u> | Unopposed MOTION for Ramon A. Soto to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 1/28/2021. (Attachments: # <u>1</u> Proposed Order)(Perales, Nina) (Entered: 01/07/2021) |
| 01/21/2021 | <u>549</u> | Unopposed MOTION for John V. Coghlan to Withdraw as Attorney by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 2/11/2021. (Attachments: # <u>1</u> Proposed Order)(Walker, James) (Entered: 01/21/2021) |
| 01/21/2021 | <u>550</u> | NOTICE of *Presidential Memorandum* by Nancy Adossi, filed. (Attachments: # <u>1</u> Exhibit A)(Perales, Nina) (Entered: 01/21/2021) |
| 01/22/2021 | <u>551</u> | TRANSCRIPT re: Motion proceedings held on 12/22/2020 before Judge Andrew S Hanen. Court Reporter/Transcriber Lanie Smith. Ordering Party Defendant Release of Transcript Restriction set for 4/22/2021., filed. (LanieSmith, ) (Entered: 01/22/2021) |
| 01/22/2021 | <u>552</u> | RESPONSE to <u>550</u> Notice (Other) , filed by L. Francis Cissna, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Walker, James) (Entered: |

| | | |
|---|---|---|
| | | 01/22/2021) |
| 01/25/2021 | 553 | Notice of Filing of Official Transcript as to 551 Transcript. Party notified, filed. (rnieto, 1) (Entered: 01/25/2021) |
| 01/26/2021 | 554 | RESPONSE to 550 Notice (Other) *of Presidential Memorandum*, filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Disher, Todd) (Entered: 01/26/2021) |
| 02/05/2021 | 555 | ORDER granting 549 Motion to Withdraw as Attorney. Attorney John Coghlan terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/05/2021) |
| 02/05/2021 | 556 | ORDER granting 548 Motion to Withdraw as Attorney. Attorney Ramon Andres Soto terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/05/2021) |
| 02/12/2021 | 557 | Unopposed MOTION for Cristina M. Moreno to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 3/5/2021. (Attachments: # 1 Proposed Order)(Moreno, Cristina) (Entered: 02/12/2021) |
| 02/17/2021 | 558 | ORDER granting 557 Motion to Withdraw as Attorney. Attorney Cristina Maria Moreno terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 02/17/2021) |
| 03/19/2021 | 559 | Order. Status Conference set for 3/30/2021 at 11:00 AM in Courtroom 9C before Judge Andrew S Hanen(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 03/19/2021) |
| 03/19/2021 | 560 | NOTICE of Appearance by William T. Thompson on behalf of State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Thompson, William) (Entered: 03/19/2021) |
| 03/19/2021 | 561 | Unopposed MOTION for Todd Lawrence Disher to Withdraw as Attorney by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 4/9/2021. (Attachments: # 1 Proposed Order)(Disher, Todd) (Entered: 03/19/2021) |
| 03/22/2021 | 562 | ORDER granting 561 Motion to Withdraw as Attorney. Attorney Todd Lawrence Disher terminated. William T. Thompson is entered as Attorney in Charge for the Plaintiff States..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/22/2021) |
| 03/26/2021 | 563 | NOTICE *of DHS Pending Action on DACA* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Robins, Jeffrey) (Entered: 03/26/2021) |

**RE.134**

| | | |
|---|---|---|
| 03/30/2021 | | Minute Entry for proceedings held before Judge Andrew S Hanen. STATUS CONFERENCE held on 3/30/2021. The Court heard the parties on the possible impact of the American Dream and Promise Act on the substantive and procedural aspects of this litigation. The parties have until 4/9/2021 to file any further written responses. Appearances: Patrick Sweeten, Will Thompson, Douglas H Hallward-Driemeier, Nina Perales, Jeffrey S Robins, Daniel David Hu, Mayur P Saxena.(Court Reporter: S. Gumm), filed.(rhawkins) (Entered: 03/31/2021) |
| 04/01/2021 | 564 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Status Conference on 3/30/2021 before Judge Andrew Hanen. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Sean Gumm, filed. (Perales, Nina) (Entered: 04/01/2021) |
| 04/05/2021 | 565 | TRANSCRIPT re: Status Conference Hearing held on 3/30/2021 before Judge Andrew S Hanen. Release of Transcript Restriction set for 7/6/2021., filed. (SeanGumm, ) Modified on 11/14/2023 (BerthaVasquez, 1). (Entered: 04/05/2021) |
| 04/06/2021 | 566 | Notice of Filing of Official Transcript as to 565 Transcript. Party notified, filed. (dnoriega, 1) (Entered: 04/06/2021) |
| 04/09/2021 | 567 | Mail Returned Undeliverable as to Stephen P Wallace re: 562 Order on Motion to Withdraw as Attorney, filed. (mmapps, 4) (Entered: 04/09/2021) |
| 04/09/2021 | 568 | Supplemental BRIEF *Regarding Impact of Recent Developments* by Karla Perez, filed. (Attachments: # 1 Affidavit Declaration of Nina Perales, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4)(Perales, Nina) (Entered: 04/09/2021) |
| 04/09/2021 | 569 | Supplemental BRIEF Opposition re: 486 MOTION for Summary Judgment by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed.(Walker, James) (Entered: 04/09/2021) |
| 04/12/2021 | 570 | AO 435 TRANSCRIPT REQUEST by Daniel Hu for Transcript of Status Conference, 3/30/21 before Judge Andrew Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Sean Gumm, filed. (Hu, Daniel) (Entered: 04/12/2021) |
| 05/18/2021 | 571 | NOTICE *of Withdrawal of Counsel (Margaret L. Carter)* by Proposed Amici Local Governments and Local Government Advocacy Organizations, filed. (Suvor, Daniel) (Entered: 05/18/2021) |
| 07/16/2021 | 572 | ORDER regarding 494 Motion for Leave to File Amicus Curiae Brief.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/16/2021) |
| 07/16/2021 | 573 | ORDER granting in part and denying in part 484 Motion to Compel.(Signed by Judge Andrew S Hanen) Parties |

| | | |
|---|---|---|
| | | notified.(rhawkins) (Entered: 07/16/2021) |
| 07/16/2021 | 574 | ORDER denying 390 Defendant-Intervenors' Motion to Strike Plaintiff's Experts (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/16/2021) |
| 07/16/2021 | 575 | MEMORANDUM AND ORDER regarding 486 Plaintiff States' Motion for Summary Judgment and regarding 503 Defendant-Intervenors' Motion for Summary Judgment. (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/16/2021) |
| 07/16/2021 | 576 | ORDER OF PERMANENT INJUNCTION.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/16/2021) |
| 07/19/2021 | 577 | NOTICE of Compliance with the Court's Order re: 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit 1. DHS.gov DACA Posting, # 2 Exhibit 2. USCIS.gov DACA Posting)(Walker, James) (Entered: 07/19/2021) |
| 07/27/2021 | 578 | NOTICE OF COMPLIANCE WITH THE COURTS ORDER (SECOND) re: 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit A - Declaration of Tracy L. Renaud, # 2 Exhibit B - USCIS FAQs)(Robins, Jeffrey) (Entered: 07/27/2021) |
| 08/19/2021 | 579 | ORDER. In the Order of Permanent Injunction (Doc. No. 576), the Court retained jurisdiction of the matter for purposes of construction, modification, and enforcement of this Permanent Injunction. As there are no further matters pending, the Court will administratively close this case. This case is STAYED and ADMINISTRATIVELY (statistically) CLOSED. The parties may move to reinstate the case on the Court's active docket at such time in the future as deemed appropriate. A copy of this Order shall be attached as an exhibit to any motion to reinstate. (Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 08/19/2021) |
| 08/19/2021 | | (Court only) Set/Cleared Flags. (jdav, 4) (Entered: 08/19/2021) |
| 08/30/2021 | 580 | Mail Returned Undeliverable as to attorney Jeremy M Feigenbaum as to State of New Jersey re: 579 Order,,, filed. No updated address found (MarySanchez, 3) (Entered: 09/02/2021) |
| 09/10/2021 | 581 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 575 Memorandum and Order, 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed.(Walker, James) Modified on 11/28/2022 (SaraCelis, 1). (Entered: 09/10/2021) |
| 09/10/2021 | 582 | |

| | | |
|---|---|---|
| | | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 575 Memorandum and Order, 576 Permanent Injunction by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez (Filing fee $ 505, receipt number 0541-27029574), filed. (Perales, Nina) Modified on 11/28/2022 (SaraCelis, 1). (Entered: 09/10/2021) |
| 09/13/2021 | 583 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 575 Memorandum and Order, 576 Permanent Injunction by State of New Jersey (Filing fee $ 505, receipt number 0541-27031407), filed.(Sheehan, Tim) Modified on 11/28/2022 (SaraCelis, 1). (Entered: 09/13/2021) |
| 09/14/2021 | 584 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 581 Notice of Appeal,. Fee status: GOV. Reporter(s): S. Perales, F. Warner, filed. (Attachments: # 1 Notice of Appeal) (JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/14/2021 | | Appeal Review Notes re: 581 Notice of Appeal,. Fee status: GOV. The appellant is a U.S. government agency, and no fee is required.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Eight (8) transcripts were produced. Number of DKT-13 Forms expected: 10, filed.(JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/14/2021 | 585 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 582 Notice of Appeal,,. Fee status: Paid. Reporter(s): S. Perales, F. Warner, filed. (Attachments: # 1 Notice of Appeal) (JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/14/2021 | | Appeal Review Notes re: 582 Notice of Appeal,,. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Eight (8) transcripts were produced. Number of DKT-13 Forms expected: 10, filed.(JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/14/2021 | 586 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 583 Notice of Appeal. Fee status: Paid. Reporter(s): S. Perales, F. Warner, filed. (Attachments: # 1 Notice of Appeal) (JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/14/2021 | | Appeal Review Notes re: 583 Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of |

| | | |
|---|---|---|
| | | appeal.Eight (8) transcripts were produced. Number of DKT-13 Forms expected: 10, filed.(JenniferLongoria, 1) (Entered: 09/14/2021) |
| 09/17/2021 | | Notice of Assignment of USCA No. 21-40680 re: 582 Notice of Appeal,, 581 Notice of Appeal, 583 Notice of Appeal, filed.(jtabares, 1) (Entered: 09/17/2021) |
| 09/21/2021 | | (Court only) ***(PRIVATE ENTRY) ROA requested from USCA, due on 10/05/2021, filed. (dbenavides, 1) (Entered: 09/21/2021) |
| 09/21/2021 | 587 | TRANSCRIPT re: Telephone Conference Hearing held on June 18, 2018 before Judge Andrew S Hanen. Court Reporter/Transcriber sperales. Ordering Party Ms. Nina Perales Release of Transcript Restriction set for 12/20/2021., filed. (sperales, ) (Entered: 09/21/2021) |
| 09/21/2021 | 588 | NOTICE *OF COMPLIANCE WITH THE COURTS ORDER (THIRD)* re: 575 Memorandum and Order, 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Declaration of Tracy L. Renaud)(Walker, James) (Entered: 09/21/2021) |
| 09/21/2021 | 592 | Mail Returned Undeliverable as to attorney Jeremy M Feigenbaum as to State of New Jersey re: 579 Order,,, filed. (dnoriega, 1) (Entered: 09/23/2021) |
| 09/22/2021 | 589 | TRANSCRIPT re: Motion Hearing held on June 24, 2019 before Judge Andrew S Hanen. Court Reporter/Transcriber FWarner. Ordering Party JRobins Release of Transcript Restriction set for 12/21/2021., filed. (fwarner, ) (Entered: 09/22/2021) |
| 09/23/2021 | 590 | Notice of Filing of Official Transcript as to 589 Transcript, 587 Transcript. Party notified, filed. (dbenavides, 1) (Entered: 09/23/2021) |
| 09/23/2021 | 591 | DKT13 TRANSCRIPT ORDER REQUEST by Federal Defendants-Appellants/James J. Walker. Transcript is already on file in Clerks office regarding no additional transcripts requested. (No transcript is needed). Court Reporter/Transcriber: N/A. This order form relates to the following: 583 Notice of Appeal, filed.(Walker, James) (Entered: 09/23/2021) |
| 09/23/2021 | 593 | DKT13 TRANSCRIPT ORDER REQUEST by Nina Perales. Transcript is already on file in Clerks office regarding Motion Proceedings Hearing, 12/22/2020 before Judge Hanen. (No transcript is needed). Court Reporter/Transcriber: Lanie Smith. This order form relates to the following: 582 Notice of Appeal,,, filed.(Perales, Nina) (Entered: 09/23/2021) |
| 09/23/2021 | 594 | DKT13 TRANSCRIPT ORDER REQUEST by Appellant State of New Jersey/Tim Sheehan. Transcript is already on file in Clerks office regarding Motion Hearing, 12/22/2020 before Judge Hanen. (No transcript is needed). Court |

**RE.138**

| | | |
|---|---|---|
| | | Reporter/Transcriber: Lanie Smith. This order form relates to the following: 583 Notice of Appeal, filed.(Sheehan, Tim) (Entered: 09/23/2021) |
| 09/27/2021 | 595 | NOTICE *of Issuance of Notice of Proposed Rulemaking* re: 575 Memorandum and Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Walker, James) (Entered: 09/27/2021) |
| 10/04/2021 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: 583 Notice of Appeal USCA No. 21-40680, filed.(dbenavides, 1) (Entered: 10/04/2021) |
| 10/12/2021 | | Electronic Access to Record on Appeal Provided re: 581 Notice of Appeal, 583 Notice of Appeal, 582 Notice of Appeal,, to Douglas Hallward-Driemeier. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 21-40680), filed.(dnoriega, 1) (Entered: 10/12/2021) |
| 12/03/2021 | 596 | NOTICE *OF COMPLIANCE WITH THE COURTS ORDER (FOURTH)* re: 575 Memorandum and Order, 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Declaration of David A. Blair)(Walker, James) (Entered: 12/03/2021) |
| 12/06/2021 | 597 | Fifth Circuit Court of Appeals LETTER advising Attached is a revised caption, which should be used on all future filings in the case (USCA No. 21-40680), filed.(dnoriega, 1) (Entered: 12/06/2021) |
| 02/07/2022 | 598 | Order of USCA re: 582 Notice of Appeal,, 581 Notice of Appeal, 583 Notice of Appeal ; USCA No. 21-40680. The court has granted the motion of attorney Bradley Garcia to withdraw as counsel, filed.(JenniferLongoria, 1) (Entered: 02/07/2022) |
| 06/02/2022 | | Electronic Access to Record on Appeal Provided re: 581 Notice of Appeal, 583 Notice of Appeal, 582 Notice of Appeal,, to Brian Boynton. Attorneys of record at the Circuit may download the record from the Court of Appeals. (USCA No. 21-40680), filed.(DahlilaRodriguez, 1) (Entered: 06/02/2022) |
| 06/07/2022 | 599 | NOTICE *of Filing in a Related Case* re: 576 Permanent Injunction by L. Francis Cissna, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit A - Batalla Vidal plaintiffs' motion, # 2 Exhibit B - NY plaintiffs' brief in support, # 3 Exhibit C - Gov's opposition, # 4 Exhibit D - Batalla Vidal plaintiffs' reply)(Walker, James) (Entered: 06/07/2022) |
| 08/24/2022 | 600 | NOTICE *of Final DACA Rule Issuance* re: 576 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Walker, James) (Entered: 08/24/2022) |

**RE.139**

| 10/07/2022 | 601 | ORDER Miscellaneous Conference set for 10/14/2022 at 10:00 AM at Courtroom 9D before Judge Andrew S Hanen(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 10/07/2022) |
|---|---|---|
| 10/14/2022 | 602 | NOTICE of Appearance by Samantha Serna on behalf of Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Perales, Nina) (Entered: 10/14/2022) |
| 10/14/2022 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MISCELLANEOUS HEARING held on 10/14/2022. In light of the Fifth Circuit opinion, the Court discussed with the parties the next steps to be taken in these proceedings as indicated on the record. Appearances: Nina Perales, James Joseph Walker, Daniel David Hu, William Thomas Thompson, Mayur P Saxena, Ryan Walters, Samantha Serna.(Court Reporter: K. Miller), filed.(rhawkins) (Entered: 10/14/2022) |
| 10/14/2022 | 603 | ORDER (Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 10/14/2022) |
| 10/14/2022 | 604 | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Miscellaneous Hearing on 10-14-2022 before Judge Hanen. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Perales, Nina) (Entered: 10/14/2022) |
| 10/14/2022 | 605 | AO 435 TRANSCRIPT REQUEST by Daniel D. Hu for Transcript of Miscellaneous Conference on 10/14/22 before Judge Hanen. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Hu, Daniel) (Entered: 10/14/2022) |
| 10/17/2022 | 606 | AO 435 TRANSCRIPT REQUEST by Will Thompson for Transcript of Conf hearing on 10/14/22 before Judge Andrew Hanen. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Kathleen Miller, filed. (Thompson, William) (Entered: 10/17/2022) |
| 11/03/2022 | 607 | NOTICE of Filing Rulemaking Administrative Record by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Certification, Index, Sec 1, # 2 Sec 2.1, # 3 Sec 2.2, # 4 Sec 3.1, # 5 Sec 3.2)(Walker, James) (Entered: 11/03/2022) |
| 11/03/2022 | 608 | NOTICE of Filing Rulemaking Administrative Record (part 2) by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Sec. 3.3, # 2 Sec 3.4, # 3 Sec 3.5, # 4 |

**RE.140**

| | | |
|---|---|---|
| | | Sec 4.1, # 5 Sec 4.2)(Walker, James) (Entered: 11/04/2022) |
| 11/04/2022 | 609 | NOTICE *of Filing Rulemaking Administrative Record (part 3)* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Sec 4.3, # 2 Sec 4.4, # 3 Sec 4.5, # 4 Sec 4.6)(Walker, James) (Entered: 11/04/2022) |
| 11/04/2022 | 610 | NOTICE *of Filing Rulemaking Administrative Record (part 4)* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Sec 4.7, # 2 Sec 4.8, # 3 Sec 4.9, # 4 Sec 5.1)(Walker, James) (Entered: 11/04/2022) |
| 11/04/2022 | 611 | NOTICE *of Filing Rulemaking Administrative Record (part 5)* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Sec 5.2, # 2 Sec 5.3, # 3 Sec 6, # 4 Sec 7)(Walker, James) (Entered: 11/04/2022) |
| 11/08/2022 | 612 | Unopposed MOTION for Melissa Medoway to Withdraw as Attorney by State of New Jersey, filed. Motion Docket Date 11/29/2022. (Attachments: # 1 Proposed Order)(Medoway, Melissa) (Entered: 11/08/2022) |
| 11/16/2022 | 613 | NOTICE of Appearance by Ryan D. Walters on behalf of State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Walters, Ryan) (Entered: 11/16/2022) |
| 11/28/2022 | 614 | Order of USCA; Judgment issued as mandate 11/28/2022 re: 582 Notice of Appeal, 581 Notice of Appeal, 583 Notice of Appeal ; USCA No. 21-40680. IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED IN PART and REMANDED to the District Court, rather than DHS for further proceedings in accordance with the opinion of this Court. IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court, filed. (SaraCelis, 1) (Entered: 11/28/2022) |
| 11/28/2022 | 615 | Order of USCA Per Curiam re: 582 Notice of Appeal, 581 Notice of Appeal, 583 Notice of Appeal ; USCA No. 21-40680. The judgment of the district court is AFFIRMED in part. This case is REMANDED to the district court, rather than DHS. The motion for a partial stay is GRANTED pending a further order of this court or the Supreme Court, filed. (SaraCelis, 1) (Entered: 11/28/2022) |
| 11/29/2022 | 616 | TRANSCRIPT re: Hearing held on October 14, 2022 before Judge Andrew S Hanen. Court Reporter/Transcriber Kathleen Miller. Ordering Party Daniel Hu Release of Transcript Restriction set for 2/27/2023., filed. (Miller, Kathleen) (Entered: 11/29/2022) |
| 11/29/2022 | 617 | |

| | | ORDER regarding scheduling.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 11/29/2022) |
|---|---|---|
| 11/30/2022 | 618 | Notice of Filing of Official Transcript as to 616 Transcript. Party notified, filed. (SaraCelis, 1) (Entered: 11/30/2022) |
| 12/14/2022 | 619 | Joint MOTION for Proposed Scheduling Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 1/4/2023. (Attachments: # 1 Proposed Order)(Walker, James) (Entered: 12/14/2022) |
| 12/15/2022 | 621 | ORDER granting 619 Joint MOTION for Proposed Scheduling Order. Deadline for Plaintiffs to file a supplemental complaint, 12/16/2022. Deadline for Plaintiffs to file a motion for summary judgment, January 31, 2023. Deadline for Federal Defendants and Defendant-Intervenors to file briefs in opposition of Plaintiffs' motion for summary judgment and file any cross-motions for summary judgment, March 2, 2023. Deadline for Plaintiffs to file a reply in support of their motion for summary judgment, March 16, 2023. Deadline to file responses to any cross-motions for summary judgment, March 30, 2023. Deadline to file replies in support of cross-motions for summary judgment, April 6, 2023. IT IS FURTHER ORDERED that any response deadline to Plaintiffs' supplemental complaint is stayed pending resolution of any summary judgment motions.(Signed by Judge Andrew S Hanen) Parties notified. (jdav, 4) (Entered: 12/19/2022) |
| 12/16/2022 | 620 | Unopposed MOTION for Leave to File Supplemental Complaint by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 1/6/2023. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Walters, Ryan) (Entered: 12/16/2022) |
| 01/03/2023 | 622 | ORDER granting 620 Motion for Leave to File A Supplemental Complaint.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 01/03/2023) |
| 01/03/2023 | 623 | SUPPLEMENTAL COMPLAINT against All Defendants filed by State of Texas, State of Louisiana, State of Nebraska, State of Kansas, State of South Carolina, State of Mississippi, State of West Virginia, State of Arkansas, State of Alabama.(jdav, 4) (Entered: 01/03/2023) |
| 01/31/2023 | 624 | NOTICE of Appearance by Leif A. Olson on behalf of State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Olson, Leif) (Entered: 01/31/2023) |
| 01/31/2023 | 625 | Unopposed MOTION for Leave to File Excess Pages by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, |

| | | |
|---|---|---|
| | | State of Texas, State of West Virginia, filed. Motion Docket Date 2/21/2023. (Attachments: # 1 Plaintiffs' Motion for Summary Judgment, # 2 Proposed Order Granting Plaintiffs' Motion for Summary Judgment, # 3 Proposed Order Granting Plaintiffs' Motion to Exceed Pages)(Olson, Leif) (Entered: 01/31/2023) |
| 01/31/2023 | 626 | APPENDIX re: 625 Unopposed MOTION for Leave to File Excess Pages by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Exhibits 1 - 5 in Support of Plaintiffs' Motion for Summary Judgment, # 2 Exhibits 6 - 34 in Support of Plaintiffs' Motion for Summary Judgment, # 3 Exhibits 35 - 39 in Support of Plaintiffs' Motion for Summary Judgment, # 4 Ex. 40 Declaration of Ryan D. Walters)(Olson, Leif) (Entered: 01/31/2023) |
| 02/08/2023 | 627 | Brief of Charles Breiterman as Amicus Curiae in Support of Plaintiffs' Motion for Summary Judgment by Charles A Breiterman, filed. (Attachments: # 1 Proposed Order Motion For Leave To File)(Breiterman, Charles) Modified on 2/9/2023 (jtabares, 1). (Entered: 02/08/2023) |
| 02/08/2023 | 628 | Pro Hac Vice's Motion for Leave for Later Filing Under FRAP Rule 29(a)(6) by Charles A Breiterman, filed.(Breiterman, Charles) Modified on 2/9/2023 (jtabares, 1). (Entered: 02/08/2023) |
| 02/10/2023 | 629 | MOTION for William T. Thompson to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 3/3/2023. (Attachments: # 1 Proposed Order)(Thompson, William) (Entered: 02/10/2023) |
| 02/20/2023 | 630 | Unopposed MOTION for Leave to File Amicus Brief by Immigration Reform Law Institute, filed. Motion Docket Date 3/13/2023. (Attachments: # 1 Brief of Immigration Reform Law Institute as Amicus Curiae in Support of Plaintiffs' Motion for Summary Judgment, # 2 Proposed Order)(Crapo, Matt) (Entered: 02/20/2023) |
| 02/20/2023 | 631 | MOTION for Matt A. Crapo to Appear Pro Hac Vice by Immigration Reform Law Institute, filed. Motion Docket Date 3/13/2023. (Attachments: # 1 Certificate of Good Standing)(Crapo, Matt) (Additional attachment(s) added on 2/21/2023: # 2 Verified Status of Bar Membership for Motion Pro Hac Vice) (jtabares, 1). (Entered: 02/20/2023) |
| 02/21/2023 | 632 | Mail Returned Undeliverable as to Stephen P Wallace re: 621 Order on Motion for Miscellaneous Relief, filed. (Address update not found) (MarcelleLaBee, 4) (Entered: 02/22/2023) |
| 02/21/2023 | 633 | Mail Returned Undeliverable as to Stephen P Wallace re: 622 Order on Motion for Leave to File, filed. (Address update not found) (MarcelleLaBee, 4) (Entered: 02/22/2023) |
| 02/21/2023 | 634 | |

| | | |
|---|---|---|
| | | Mail Returned Undeliverable as to Stephen P Wallace re: 617 Order, filed. (Address update not found) (MarcelleLaBee, 4) (Entered: 02/22/2023) |
| 03/01/2023 | 635 | MOTION for Joshua Patashnik to Appear Pro Hac Vice by Proposed Amici States, filed. Motion Docket Date 3/22/2023. (Patashnik, Joshua) (Additional attachment(s) added on 3/2/2023: # 1 Verified MPHV) (scastillo, 1). (Entered: 03/01/2023) |
| 03/02/2023 | 636 | Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by State of New Jersey, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Proposed Order, # 2 Affidavit, # 3 Appendix)(Saxena, Mayur) (Entered: 03/02/2023) |
| 03/02/2023 | 637 | Unopposed MOTION for Leave to File Excess Pages by State of New Jersey, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Proposed Order)(Saxena, Mayur) (Entered: 03/02/2023) |
| 03/02/2023 | 638 | Unopposed MOTION for Leave to File Excess Pages by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Proposed Order Proposed Order)(Walker, James) (Entered: 03/02/2023) |
| 03/02/2023 | 639 | Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Appendix Defendants' Exhibits, # 2 Proposed Order Proposed Order)(Walker, James) (Entered: 03/02/2023) |
| 03/02/2023 | 640 | Unopposed MOTION for Leave to File Excess Pages by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Proposed Order Proposed Order)(Perales, Nina) (Entered: 03/02/2023) |
| 03/02/2023 | 641 | Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 3/23/2023. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 03/02/2023) |

**RE.144**

| 03/02/2023 | 642 | BRIEF in Support *of Defendant-Intervenors Motion for Summary Judgment and in Opposition to Plaintiffs Motion for Summary Judgment* re: 641 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. (Attachments: # 1 Affidavit Declaration of Nina Perales, # 2 Appendix Appendix)(Perales, Nina) (Entered: 03/02/2023) |
|---|---|---|
| 03/03/2023 | 643 | Unopposed MOTION to Modify Scheduling Order as to 621 Order on Motion for Miscellaneous Relief,,, by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 3/24/2023. (Attachments: # 1 Proposed Order)(Walters, Ryan) (Entered: 03/03/2023) |
| 03/09/2023 | 644 | Agreed MOTION for Leave to File Memorandum of Law as Amici Curiae by Proposed Amici States, filed. Motion Docket Date 3/30/2023. (Attachments: # 1 Exhibit Amicus Memorandum of Law, # 2 Proposed Order)(Patashnik, Joshua) (Entered: 03/09/2023) |
| 03/09/2023 | 645 | Unopposed MOTION for Leave to File Brief of Amici Curiae 43 Local Governments and Local Government Officials and Advocacy Organizations in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' and Defendants-Intervenors' Motions for Summary Judgment by 43 local governments and local government officials and advocacy organizations, filed. Motion Docket Date 3/30/2023. (Attachments: # 1 Brief of Amici Curiae 43 Local Governments and Local Government Officials and Advocacy Organizations in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' and Defendants-Intervenors' Motions for Summary Judgment, # 2 Proposed Order)(Whilt, Nicholas) (Entered: 03/09/2023) |
| 03/09/2023 | 646 | MOTION for Kelsey Chandrasoma to Appear Pro Hac Vice by 43 local governments and local government officials and advocacy organizations, filed. Motion Docket Date 3/30/2023. (Chandrasoma, Kelsey) (Additional attachment(s) added on 3/10/2023: # 1 Verified Status of Bar Membership) (jtabares, 1). (Entered: 03/09/2023) |
| 03/09/2023 | 647 | MOTION for James Bowman to Appear Pro Hac Vice by 43 local governments and local government officials and advocacy organizations, filed. Motion Docket Date 3/30/2023. (Bowman, James) (Additional attachment(s) added on 3/10/2023: # 1 Verified Status of Bar Membership) (jtabares, 1). (Entered: 03/09/2023) |

**RE.145**

| 03/09/2023 | 648 | ORDER granting 643 Motion to Modify Scheduling Order. Any response deadline to Plaintiffs' supplemental complaint is stayed pending resolution of any summary judgment motions..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/10/2023) |
| --- | --- | --- |
| 03/09/2023 | 649 | ORDER granting 629 Motion to Withdraw as Attorney. Attorney William Thomas Thompson terminated, Attorney Ryan D. Walters added..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/10/2023) |
| 03/09/2023 | 650 | ORDER granting 612 Motion to Withdraw as Attorney. Attorney Melissa Medoway terminated.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/10/2023) |
| 03/10/2023 | 651 | ORDER granting 646 Motion for Kelsey A. Chandrasoma to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/13/2023) |
| 03/10/2023 | 652 | ORDER granting 647 Motion for James A. Bowman to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/13/2023) |
| 03/10/2023 | 653 | ORDER granting 645 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/13/2023) |
| 03/10/2023 | 654 | BRIEF OF AMICI CURIAE by 43 local governments and local government officials and advocacy organizations In Opposition to Plaintiffs' Motion for Summary Judgment and In Support of Defendants' and Defendants-Intervenors' Motions for Summary Judgment., filed.(jdav, 4) (Entered: 03/13/2023) |
| 03/10/2023 | 655 | ORDER granting 644 Motion for Leave to File A Memorandum of Law as Amici Curiae.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/13/2023) |
| 03/10/2023 | 656 | MEMORANDUM OF LAW OF AMICI CURIAE by 21 States and the District of Columbia IN OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS CROSS-MOTIONS FOR SUMMARY JUDGMENT, filed.(jdav, 4) (Entered: 03/13/2023) |
| 03/14/2023 | 657 | ORDER granting 625 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/14/2023) |
| 03/14/2023 | 658 | ORDER granting 640 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/14/2023) |
| 03/14/2023 | 659 | |

**RE.146**

| | | |
|---|---|---|
| | | ORDER granting 635 Motion for Joshua Patashnik to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/14/2023) |
| 03/14/2023 | 660 | ORDER granting 638 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/14/2023) |
| 03/14/2023 | 661 | ORDER granting 631 Motion for Matt A. Crapo to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/15/2023) |
| 03/22/2023 | 662 | Unopposed MOTION to Modify The Scheduling Order by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, filed. Motion Docket Date 4/12/2023. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 03/22/2023) |
| 03/27/2023 | 663 | Mail Returned Undeliverable as to Stephen P Wallace re: 652 Order on Motion to Appear Pro Hac Vice,, filed. (agould, 3) (Entered: 03/27/2023) |
| 03/27/2023 | 664 | Mail Returned Undeliverable as to Stephen P Wallace re: 651 Order on Motion to Appear Pro Hac Vice,, filed. (agould, 3) (Entered: 03/27/2023) |
| 03/27/2023 | 665 | Mail Returned Undeliverable as to Stephen P Wallace re: 648 Order on Motion to Modify, filed. (RobertTenorio, 5) (Entered: 03/27/2023) |
| 03/27/2023 | 666 | ORDER granting 662 Motion to Modify. The deadline for Plaintiffs to file a reply in support of their motion for summary judgment and in response to Defendants' cross-motions for summary judgment is reset to April 6, 2023, and the deadline for Defendants to file replies in support of their cross-motions for summary judgment is reset to April 27, 2023..(Signed by Judge Andrew S Hanen) Parties notified.(jdav, 4) (Entered: 03/28/2023) |
| 03/28/2023 | 667 | Mail Returned Undeliverable as to Stephen P Wallace re: 659 Order on Motion to Appear Pro Hac Vice,, filed. (JenniferLongoria, 1) (Entered: 03/28/2023) |
| 03/28/2023 | 668 | Mail Returned Undeliverable as to Stephen P Wallace re: 658 Order on Motion for Leave to File Excess Pages, filed. (JenniferLongoria, 1) (Entered: 03/28/2023) |
| 03/28/2023 | 669 | Mail Returned Undeliverable as to Stephen P Wallace re: 661 Order on Motion to Appear Pro Hac Vice,, filed. |

| | | |
|---|---|---|
| | | (JenniferLongoria, 1) (Entered: 03/28/2023) |
| 03/28/2023 | 670 | Mail Returned Undeliverable as to Stephen P Wallace re: 657 Order on Motion for Leave to File Excess Pages, filed. (JenniferLongoria, 1) (Entered: 03/28/2023) |
| 04/06/2023 | 671 | Unopposed MOTION for Jeremy Hollander et al. to Withdraw as Attorney by State of New Jersey, filed. Motion Docket Date 4/27/2023. (Attachments: # 1 Exhibit PHV Admission Motion Rubinstein, # 2 Exhibit PHV Admission Motion Morejon, # 3 Exhibit PHV Admission Motion Farahani, # 4 Proposed Order)(Saxena, Mayur) (Entered: 04/06/2023) |
| 04/06/2023 | 672 | MOTION for Leave to File Excess Pages by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 4/27/2023. (Attachments: # 1 Proposed Order)(Walters, Ryan) (Entered: 04/06/2023) |
| 04/06/2023 | 673 | RESPONSE in Opposition to 641 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, 625 Unopposed MOTION for Leave to File Excess Pages, 639 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, 636 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, filed by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia. (Walters, Ryan) (Entered: 04/06/2023) |
| 04/06/2023 | 674 | APPENDIX re: 673 Response in Opposition to Motion,, by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. (Attachments: # 1 Appendix)(Walters, Ryan) (Entered: 04/06/2023) |
| 04/07/2023 | 675 | Mail Returned Undeliverable as to Stephen P Wallace re: 650 Order on Motion to Withdraw as Attorney, filed. (hlerma, 4) (Entered: 04/07/2023) |
| 04/07/2023 | 676 | Mail Returned Undeliverable as to Stephen P Wallace re: 649 Order on Motion to Withdraw as Attorney, filed. (hlerma, 4) (Entered: 04/07/2023) |
| 04/07/2023 | 677 | Mail Returned Undeliverable as to Stephen P Wallace re: 666 Order on Motion to Modify,, filed. (TerriHanniable, 4) (Entered: 04/07/2023) |
| 04/25/2023 | 678 | NOTICE of Appearance by Ethan Szumanski on behalf of State of Texas, filed. (Szumanski, Ethan) (Entered: 04/25/2023) |
| 04/27/2023 | 679 | REPLY in Support of 636 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary* |

| | | |
|---|---|---|
| | | *Judgment*, filed by State of New Jersey. (Saxena, Mayur) (Entered: 04/27/2023) |
| 04/27/2023 | 680 | REPLY in Support of 641 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, filed by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Affidavit, # 2 Appendix)(Perales, Nina) (Entered: 04/27/2023) |
| 04/27/2023 | 681 | REPLY in Support of 639 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Attachments: # 1 Affidavit In Support of Rule 56(d) Request for Discovery)(Walker, James) (Entered: 04/27/2023) |
| 04/28/2023 | 682 | AFFIDAVIT of Nina Perales re: 680 Reply in Support of Motion,,, filed.(Perales, Nina) (Entered: 04/28/2023) |
| 05/09/2023 | 683 | Unopposed MOTION for Motions for Summary Judgment Hearing by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Elizabeth Diaz, Maria Diaz, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 5/30/2023. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 05/09/2023) |
| 05/16/2023 | 684 | ORDER granting 683 Motion for Oral Argument on Motions for Summary Judgment Motion Hearing set for 6/1/2023 at 10:00 AM in Courtroom 9D before Judge Andrew S Hanen.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 05/17/2023) |
| 05/22/2023 | 685 | ORDER granting 630 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 05/22/2023) |
| 05/22/2023 | 686 | ORDER granting 637 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 05/22/2023) |
| 05/22/2023 | 687 | ORDER granting 672 Motion for Leave to File Excess Pages.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 05/22/2023) |
| 05/22/2023 | 688 | ORDER granting 628 Motion for Leave for Later Filing..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 05/22/2023) |

**RE.149**

| 05/22/2023 | | (Court only) ***Attorney Samuel L Rubinstein for State of New Jersey added. Attorney Elspeth L. Faiman Hans; Jeremy Hollander; Kenneth S Levine; Eric L Apar and Rachel Wainer Apter terminated. (JoanDavenport, 4) (Entered: 05/22/2023) |
|---|---|---|
| 05/22/2023 | | (Court only) ***Attorney Shireen L Farahani,Amanda L Morejon for State of New Jersey added. (JoanDavenport, 4) (Entered: 05/22/2023) |
| 05/22/2023 | 689 | ORDER granting 671 Motion to Withdraw as Attorney AS TO Eric L. Apar, Elspeth L. Faiman Hans, Jeremy Hollander, Kenneth S. Levin and Rachel Wainer Apter are withdrawn as counsel of record for the State of New Jersey. Shireen A. Farahani, Amanda I. Morejon and Samuel L. Rubinstein are admitted Pro Hac Vice..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 05/22/2023) |
| 05/27/2023 | 690 | Opposed MOTION for Leave to File SUR-REPLY TO DEFENDANTS REPLY BRIEFS by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 6/20/2023. (Attachments: # 1 Exhibit 1 -PLAINTIFF STATES SUR-REPLY TO DEFENDANTS REPLY BRIEFS, # 2 Proposed Order)(Walters, Ryan) (Entered: 05/27/2023) |
| 05/30/2023 | 691 | MOTION for Eric Hudson to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 6/20/2023. (Attachments: # 1 Proposed Order)(Walters, Ryan) (Entered: 05/30/2023) |
| 05/30/2023 | 692 | MOTION for Michael Toth to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 6/20/2023. (Attachments: # 1 Proposed Order)(Walters, Ryan) (Entered: 05/30/2023) |
| 05/30/2023 | 693 | Mail Returned Undeliverable as to Stephen P Wallace re: 684 Order on Motion for Hearing, filed. (MarcelleLaBee, 4) (Entered: 05/30/2023) |
| 05/31/2023 | 694 | RESPONSE in Opposition to 690 Opposed MOTION for Leave to File SUR-REPLY TO DEFENDANTS REPLY BRIEFS, filed by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America. (Walker, James) (Entered: 05/31/2023) |
| 06/01/2023 | | Minute Entry for proceedings held before Judge Andrew S Hanen. MOTION HEARING held on 6/1/2023. The Court heard argument from all parties regarding the pending Cross Motions 636 639] for Summary Judgment. The Court will take the matter under advisement and issue an Order in due course. Appearances: Carlos Garcia, Nina Perales, Emerson Siegle, Philip Ehrlich, Samantha Serna, Fatima Menendez, James Joseph Walker, Jeffrey S Robins, Daniel Hu, Ryan Walters, Mayur Saxena, Ethan Szumanski.(Court Reporter: G. Dye), filed.(rhawkins) (Entered: 06/01/2023) |
| 06/01/2023 | 695 | |

**RE.150**

| | | |
|---|---|---|
| | | AO 435 TRANSCRIPT REQUEST by Nina Perales for Transcript of Motion Hearing on 6/1/2023 before Judge Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Perales, Nina) (Entered: 06/01/2023) |
| 06/02/2023 | 696 | AO 435 TRANSCRIPT REQUEST by State of New Jersey/Samuel Rubinstein for Transcript of Motion Hearing on 6/1/23 before Judge Andrew S. Hanen. Expedited (7 days) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Rubinstein, Samuel) (Entered: 06/02/2023) |
| 06/02/2023 | 697 | AO 435 TRANSCRIPT REQUEST by Daniel D. Hu for Transcript of Motion Hearing on 6/1/23 before Judge Andrew Hanen. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Hu, Daniel) (Entered: 06/02/2023) |
| 06/08/2023 | 698 | AO 435 TRANSCRIPT REQUEST by State of Texas/Ryan Walters for Transcript of 6/1/23. Ordinary (30 days) turnaround requested. Court Reporter/Transcriber: Gayle Dye, filed. (Walters, Ryan) (Entered: 06/08/2023) |
| 06/08/2023 | 699 | TRANSCRIPT re: Motion Hearing held on June 1, 2023, before Judge Andrew S Hanen. Court Reporter/Transcriber Dye. Release of Transcript Restriction set for 9/6/2023., filed. (Dye, Gayle) (Entered: 06/08/2023) |
| 06/09/2023 | 700 | Notice of Filing of Official Transcript as to 699 Transcript. Party notified, filed. (SaraCelis, 1) (Entered: 06/09/2023) |
| 06/19/2023 | 701 | Unopposed MOTION for Samantha Serna to Withdraw as Attorney by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishta Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/10/2023. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 06/19/2023) |
| 06/20/2023 | 702 | RESPONSE in Opposition to 690 Opposed MOTION for Leave to File SUR-REPLY TO DEFENDANTS REPLY BRIEFS, filed by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez. (Attachments: # 1 Exhibit Exhibit A-Declaration of Nina Perales, # 2 Exhibit Appendix and Exhibits 1-8)(Perales, Nina) (Entered: 06/20/2023) |
| 06/20/2023 | 703 | |

| | | |
|---|---|---|
| | | MOTION for Leave to File Notice of Supplemental Authority by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/11/2023. (Attachments: # 1 Exhibit Exhibit A-Notice of Supplemental Authority, # 2 Exhibit Exhibit 1-Haaland v. Brackeen, # 3 Proposed Order Proposed Order for Motion for Leave to File Notice of Supplemental Authority)(Perales, Nina) (Entered: 06/20/2023) |
| 06/21/2023 | 704 | Unopposed MOTION for Leave to File Notice of Supplemental Authority by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 7/12/2023. (Attachments: # 1 Exhibit Notice of Supplemental Authority)(Walker, James) (Entered: 06/21/2023) |
| 06/29/2023 | 705 | Unopposed MOTION for Leave to File Notice of Supplemental Authority by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez, filed. Motion Docket Date 7/20/2023. (Attachments: # 1 Proposed Order, # 2 Exhibit Notice of Supplemental Authority, # 3 Exhibit Opinion in TX v US)(Perales, Nina) (Entered: 06/29/2023) |
| 07/05/2023 | 706 | Unopposed MOTION for Leave to File Notice of Supplemental Authority by L. Francis Cissna, Thomas D. Homan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 7/26/2023. (Attachments: # 1 Exhibit Notice of Supplemental Authority, # 2 Proposed Order Proposed Order)(Walker, James) (Entered: 07/05/2023) |
| 07/06/2023 | 707 | ORDER granting 690 Motion for Leave to File; granting 691 Motion to Withdraw as Attorney; granting 692 Motion to Withdraw as Attorney; granting 701 Motion to Withdraw as Attorney; granting 703 Motion for Leave to File; granting 704 Motion for Leave to File; granting 705 Motion for Leave to File; granting 706 Motion for Leave to File.(Signed by Judge Andrew S Hanen) Parties notified.(rhawkins) (Entered: 07/06/2023) |
| 07/07/2023 | 708 | ADVISORY by State of Alabama, State of Arkansas, State of Kansas, State of Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed.(Walters, Ryan) (Entered: 07/07/2023) |
| 07/14/2023 | 709 | Unopposed MOTION for Leave to File Response to Notices of Supplemental Authority and Notice of Supplemental Authority by State of Alabama, State of Arkansas, State of Kansas, State of |

| | | |
|---|---|---|
| | | Louisiana, State of Mississippi, State of Nebraska, State of South Carolina, State of Texas, State of West Virginia, filed. Motion Docket Date 8/4/2023. (Attachments: # 1 Exhibit 1 - Response to Notices of Supplemental Authority, # 2 Exhibit 2 - Notice of Supplemental Authority Biden v. Nebraska, # 3 Proposed Order)(Walters, Ryan) (Entered: 07/14/2023) |
| 07/17/2023 | 710 | NOTICE of Referral of Motion to Magistrate Judge Sam S Sheldon re 709 Unopposed MOTION for Leave to File Response to Notices of Supplemental Authority and Notice of Supplemental Authority, filed. (JoanDavenport, 4) (Entered: 07/17/2023) |
| 07/17/2023 | 711 | ORDER granting 709 Motion for Leave to File a Response to Notices of Supplemental Authority and Notice of Supplemental Authority..(Signed by Judge Sam S. Sheldon) Parties notified.(rhawkins, 4) (Entered: 07/17/2023) |
| 07/17/2023 | 712 | Plaintiff States' Notice of Supplemental Authority, filed.(JoanDavenport, 4) (Entered: 07/17/2023) |
| 07/17/2023 | 713 | Plaintiff States' Response to Notices of Supplemental Authority, filed.(JoanDavenport, 4) (Entered: 07/17/2023) |
| 07/31/2023 | 714 | MOTION for Ashleigh B. Shelton to Appear Pro Hac Vice by State of New Jersey, filed. (Attachments: # 1 Proposed Order Draft Order, # 2 Proposed Order Form Motion (flattened))(Rubinstein, samuel) (Additional attachment(s) added on 8/1/2023: # 3 Verified MPHV) (SarahCastillo, 1). (Entered: 07/31/2023) |
| 07/31/2023 | 715 | Unopposed MOTION for Leave to File Response to Notice of Supplemental Authority by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. Motion Docket Date 8/21/2023. (Attachments: # 1 Exhibit Response to Notice of Supplemental Authority, # 2 Proposed Order)(Walker, James) (Entered: 07/31/2023) |
| 08/02/2023 | 716 | ORDER granting 715 Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority. Federal Defendants have leave to file their Response..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 08/06/2023) |
| 08/02/2023 | 717 | RESPONSE to 712 Plaintiff's Notice of Supplemental Authority filed by the Federal Defendants.. (JoanDavenport, 4) (Entered: 08/06/2023) |
| 08/08/2023 | 718 | Unopposed MOTION for Leave to File Notice of Supplemental Authority by Nancy Adossi, Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Pratishtha Khanna, Jung Woo Kim, Karla Lopez, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Karla Perez, Luis A Rafael, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel |

| | | |
|---|---|---|
| | | Silva, Darwin Velasquez, filed. Motion Docket Date 8/29/2023. (Attachments: # 1 Proposed Order, # 2 Notice of Supplemental Authority, # 3 Exhibit Exhibit A to Notice)(Perales, Nina) (Entered: 08/08/2023) |
| 08/14/2023 | | (Court only) ***Attorney Ashleigh B Shelton for State of New Jersey added. (JoanDavenport, 4) (Entered: 08/16/2023) |
| 08/14/2023 | 719 | ORDER granting 714 Motion for Ashleigh B. Shelton to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found** here.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 08/16/2023) |
| 08/14/2023 | 720 | ORDER granting 718 Motion for Leave to File a response to Plaintiff States' Notice of Supplemental Authority..(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 08/16/2023) |
| 08/14/2023 | 721 | RESPONSE OF DEFENDANT-INTERVENORS Elizabeth Diaz, et al, to Plaintiff States' Notice of Supplemental Authority.. (JoanDavenport, 4) (Entered: 08/16/2023) |
| 08/30/2023 | 722 | Mail Returned Undeliverable as to Stephen P Wallace re: 716 Order on Motion for Leave to File, filed. (FrancesCarbia, 2) (Entered: 08/30/2023) |
| 09/05/2023 | 723 | Mail Returned Undeliverable as to attorney Ashleigh B Shelton as to State of New Jersey re: 719 Order on Motion to Appear Pro Hac Vice,, filed. (AndyGould, 3) (Entered: 09/06/2023) |
| 09/05/2023 | 724 | Mail Returned Undeliverable as to attorney Ashleigh B Shelton as to State of New Jersey re: 720 Order on Motion for Leave to File, filed. (AndyGould, 3) (Entered: 09/06/2023) |
| 09/05/2023 | 725 | Mail Returned Undeliverable as to Stephen P Wallace re: 720 Order on Motion for Leave to File, filed. (AndyGould, 3) (Entered: 09/06/2023) |
| 09/06/2023 | 726 | MOTION to Appear Pro Hac Vice for Grace X. Zhou (Fee Paid: $100, receipt number ATXSDC-30467269) by Proposed Amici States, filed. Motion Docket Date 9/27/2023. (Zhou, Grace) (Entered: 09/06/2023) |
| 09/06/2023 | 727 | MOTION to Appear Pro Hac Vice for Ester Murdukhayeva (Fee Paid: $100, receipt number ATXSDC-30469870) by Proposed Amici States, filed. Motion Docket Date 9/27/2023. (Murdukhayeva, Ester) (Entered: 09/06/2023) |
| 09/13/2023 | 728 | MEMORANDUM AND ORDER (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 09/13/2023) |
| 09/13/2023 | 729 | SUPPLEMENTAL ORDER OF INJUNCTION (Signed by Judge Andrew S Hanen) Parties notified.(RhondaHawkins) (Entered: 09/13/2023) |
| 09/13/2023 | | |

**RE.154**

| | | |
|---|---|---|
| | | (Court only) ***Motion(s) terminated: 641 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, 636 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, 639 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*. (RhondaHawkins) (Entered: 09/13/2023) |
| 09/30/2023 | 730 | NOTICE *of Compliance* re: 729 Permanent Injunction by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Attachments: # 1 Exhibit DHS Public Notice, # 2 Exhibit USCIS Public Notice)(Walker, James) (Entered: 09/30/2023) |
| 11/02/2023 | 731 | ORDER granting 727 Motion for Ester Murdukhayeva to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Andrew S Hanen) Parties notified.(JoanDavenport, 4) (Entered: 11/03/2023) |
| 11/09/2023 | 732 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 729 Permanent Injunction, 728 Memorandum and Order by L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, Carla L. Provost, United States of America, filed. (Walker, James) (Entered: 11/09/2023) |
| 11/09/2023 | 733 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 729 Permanent Injunction, 728 Memorandum and Order by Carlos Aguilar Gonzalez, Oscar Alvarez, Moses Kamau Chege, Elizabeth Diaz, Maria Diaz, Elly Marisol Estrada, Blanca Gonzalez, Hyo-Won Jeon, Jung Woo Kim, Jose Magana-Salgado, Nanci J Palacios Godinez, Jin Park, Maria Rocha, Denise Romero, Karina Ruiz De Diaz, Angel Silva, Darwin Velasquez (Filing fee $ 505, receipt number ATXSDC-30788932), filed.(Perales, Nina) (Entered: 11/09/2023) |
| 11/10/2023 | 734 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 729 Permanent Injunction, 728 Memorandum and Order by State of New Jersey (Filing fee $ 505, receipt number ATXSDC-30792317), filed.(Saxena, Mayur) (Entered: 11/10/2023) |
| 11/13/2023 | 735 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 732 Notice of Appeal,. Fee status: GOV, filed. (Attachments: # 1 NOA) (DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | | Appeal Review Notes re: 732 Notice of Appeal,. Fee status: GOV. The appellant is a U.S. government agency, and no fee is required.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | 736 | |

| | | |
|---|---|---|
| | | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 733 Notice of Appeal,. Fee status: Paid, filed. (Attachments: # 1 NOA) (DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | | Appeal Review Notes re: 733 Notice of Appeal,. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | 737 | Unopposed MOTION for Andrew Amend to Withdraw as Attorney by 21 States and the District of Columbia, filed. Motion Docket Date 12/4/2023. (Attachments: # 1 Proposed Order)(Murdukhayeva, Ester) (Entered: 11/13/2023) |
| 11/13/2023 | 738 | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 734 Notice of Appeal. Fee status: Paid, filed. (Attachments: # 1 NOA) (DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | | Appeal Review Notes re: 734 Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(DorinaReyna, 1) (Entered: 11/13/2023) |
| 11/13/2023 | | Notice of Assignment of USCA No. 23-40653 re: 733 Notice of Appeal,, filed.(BerthaVasquez, 1) (Entered: 11/13/2023) |
| 11/14/2023 | | (Court only) ***(PRIVATE ENTRY) EROA requested by the Fifth Circuit, due on 11/28/2023. [23-40653] (CCR), filed. (BerthaVasquez, 1) (Entered: 11/14/2023) |
| 11/14/2023 | | (Court only) Cleared Flags. APPEAL_NAT flag cleared. (BerthaVasquez, 1) (Entered: 11/14/2023) |

**RE.156**

**Tab 2**

Notice of Appeal

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| |
|---|
| STATE OF TEXAS, *et al.*,<br><br> Plaintiffs,<br><br> v.<br><br> UNITED STATES OF AMERICA, *et al.*,<br><br> Defendants,<br><br> *and*<br><br> KARLA PEREZ, *et al.*,<br><br> and<br><br> NEW JERSEY,<br><br> Defendant-Intervenors. |

Case No. 18-cv-00068

**NOTICE OF APPEAL**

23-40653.36411

PLEASE TAKE NOTICE that the United States and the other Federal Defendants hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Court's Memorandum and Order of September 13, 2023 [ECF No. 728], granting Plaintiffs' Motion for Summary Judgment [ECF No. 625] and denying Federal Defendants' cross-motion for summary judgment [ECF No. 639], and from the Court's Order of Permanent Injunction of September 13, 2023 [ECF No. 729].

Dated: November 9, 2023

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Attorney-in-Charge
Deputy Director

Respectfully submitted,

*/s/ James J. Walker*
JAMES J. WALKER
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4468
Fax: (202) 305-7000
Email: james.walker3@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 9, 2023, this document was electronically filed with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to all counsel of

record.

/s/ James J. Walker
JAMES J. WALKER

**Tab 3**

Memorandum and Order (Sept. 13, 2023)

United States District Court
Southern District of Texas
**ENTERED**
September 13, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| *v.* | § | Civil Action No. 1:18-CV-00068 |
| | § | |
| THE UNITED STATES OF AMERICA, *et al.*, | § | |
| Defendants, | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, *et al.*; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| Defendant-Intervenors. | § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Summary Judgment filed by the Plaintiff States.[1] (Doc. No. 625-1). Defendant-Intervenor New Jersey filed a combined response and cross-motion for Summary Judgment, as did the individual Defendant-Intervenors.[2] (Doc. Nos. 636, 641). The primary Defendant is the United States of America, and the following individuals with some supervisory role over the Deferred Action for Childhood Arrivals ("DACA") program have also been named: Alejandro Mayorkas, Troy A. Miller, Tae D. Johnson, Ur M. Jaddou, and Raul L. Ortiz (the "Federal Defendants"). Collectively, the Federal Defendants have filed a combined cross-motion for summary judgment and response in opposition to the Plaintiff States' motion. (Doc. No. 639). The parties have filed various responses, replies, and sur-replies. Additionally,

---

[1] The Plaintiff States are comprised of Texas, Alabama, Arkansas, Kansas, Louisiana, Mississippi, Nebraska, South Carolina, and West Virginia.

[2] The Defendant-Intervenors are 22 individual DACA recipients plus the State of New Jersey. The Court will refer to them collectively as "Defendant-Intervenors" unless there is a need for them to be referred to separately. When that occurs, the Court will denote the DACA recipients as the "individual Defendant-Intervenors" and the state as "New Jersey."

23-40653.36360

this Court has allowed multiple entities to participate as *amici curiae*. At the request of the parties, the Court held oral argument and various parties have, to a limited extent, filed additional post-argument authorities.

The focus of all parties is on the recently adopted DACA "Final Rule" promulgated by the Department of Homeland Security ("DHS"). This rule was promulgated following a notice and comment period as prescribed by the Administrative Procedure Act ("APA"). 5 U.S.C. § 500 *et seq*. The Final Rule was to become effective on October 31, 2022.[3] Before that date arrived, however, the United States Court of Appeals for the Fifth Circuit affirmed this Court's opinion and order enjoining DACA. *Texas v. United States*, 549 F.Supp.3d 572 (S.D. Tex. 2021), *aff'd Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) (hereinafter, "*Texas II*"). As discussed below, that affirmance had one exception—the legality of the "new" Final Rule. The Fifth Circuit, lacking the complete administrative record, remanded the consideration of the Final Rule to this Court. Following the remand, the parties agreed prior to the effective date that the Final Rule would be subject to this Court's earlier injunction of the DACA program pending a ruling by this Court.[4] Thus, the Final Rule has never been implemented.

In its opinion, the Fifth Circuit requested this Court rule expeditiously. *Texas II*, 50 F.4th at 512. Nevertheless, since the parties agreed to subject the Final Rule to the terms of the existing injunction, the need for immediate action was somewhat alleviated. Moreover, given the subject matter's importance, the Court allowed the parties to create their own briefing schedule to enable them to fully address the Final Rule. They agreed upon a schedule, fully briefed the issues in accordance with that schedule, and presented the case to the Court at oral argument. Prior to the

---

[3] 87 Fed. Reg. 53,152 (Aug. 30, 2022) (to be codified at 8 C.F.R. pts. 106, 236, and 274a).

[4] (Doc. No. 603).

hearing, the Court reviewed the administrative record in detail.[5] Thus, the issues are now ripe for resolution.

The Plaintiff States' attack on the Final Rule falls into two categories. The Plaintiff States argue that the Final Rule: (1) substantively violates the APA; and (2) violates the Take Care Clause of the United States Constitution. 5 U.S.C. § 500 *et seq.*; U.S. CONST. art. II, § 3.[6] Not surprisingly, the Defendants and the Defendant-Intervenors disagree.

## I.    Legal Standard

As contemplated by the parties, the issues concerning the Final Rule have been raised via competing motions for summary judgment. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding

---

[5] The administrative record submitted to the Court is approximately 7,600 pages in length. *See* (Doc. Nos. 607–611).

[6] The Court, while using initial caps for ease of readability, acknowledges as it has before that "Take Care Clause" more often appears in print as "take Care Clause," which uses a lowercase initial letter in the word "take." This latter approach has been adopted by many scholars and authors because that is how it appears in most copies of the Constitution.

a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## II.    Background

In 2012, after years of waiting for Congress to pass an act granting lawful status for individuals illegally brought to the United States as children, the Secretary of the Department of Homeland Security, Janet Napolitano, issued a three-page memorandum (the "2012 DACA Memorandum") that announced the creation of the Deferred Action for Childhood Arrivals ("DACA") program.[7] Among other provisions, the 2012 DACA Memorandum directed that the removal of certain aliens who entered the United States unlawfully as children should be deferred and that these immigrants should receive certain benefits.

Briefly, the 2012 DACA Memorandum directed immigration enforcement officers not to remove "certain young people who were brought to this country as children" who met specific delineated criteria. For those who qualify, DACA allows them to remain in the country indefinitely through a renewable two-year period of "deferred action."[8] An illegal alien[9] is eligible for DACA

---

[7] (Doc. No. 487, Ex. 1, Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012)).

[8] In at least one place in the Code of Federal Regulations, "deferred action" is characterized as "an act of administrative convenience to the government which gives some cases lower priority." 8 C.F.R § 274a.1(c)(14); *see also Reno v. AAADC*, 525 U.S. 471, 483–84 (1999) (describing deferred action as the Executive abandoning the deportation endeavor "for humanitarian reasons or simply for its own convenience").

[9] The Court understands that some may find the phrase "illegal alien" offensive; however, to be eligible for DACA under either the 2012 DACA Memorandum or the Final Rule, one must be an alien who is in the United States illegally, or "not in a lawful immigration status." AR2022_100264, 87 Fed. Reg. 53,221, (Doc. No. 607-1 at 286). Indeed, the DHS in its discussion acknowledges that it uses the term "alien" because it is a legal term of art defined by the Immigration and Nationalization Act. AR2022_100295, 87 Fed. Reg. 53,252, (Doc. No. 607-1 at 317). Additionally, the Court uses this term because it is used in official government documents as quoted by the Supreme Court in its seminal pronouncement pertaining to this area of law. *See Arizona v. United States*, 567 U.S. 387, 397 (2012). Moreover, "alien" and "immigrant" are defined statutory terms. *See* 8 U.S.C. §§ 1101(a)(3), (15). Furthermore, the Fifth Circuit explained why "illegal alien" is a preferable (and not pejorative) term in a case like this:

if he or she:

- came to the United States under the age of sixteen;

- has continuously resided in the United States for at least five years preceding [June 15, 2012] and is present in the United States on [June 15, 2012];

- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and

- is not above the age of thirty.

The 2012 DACA Memorandum made up to 1.9 million otherwise removable aliens eligible

for the program.[10] The DACA program started with approximately 152,431 applications in 2012.

---

The usual and preferable term in [American English] is *illegal alien*. The other forms have arisen as needless euphemisms, and should be avoided as near-gobbledygook. The problem with *undocumented* is that it is intended to mean, by those who use it in this phrase, 'not having the requisite documents to enter or stay in the country legally.' But the word strongly suggests 'unaccounted for' to those unfamiliar with this quasi-legal jargon, and it may therefore obscure the meaning.

More than one writer has argued in favor of *undocumented alien* . . . [to] avoid[] the implication that one's unauthorized presence in the United States is a crime . . . . Moreover, it is wrong to equate illegality with criminality, since many illegal acts are not criminal. *Illegal alien* is not an opprobrious epithet: it describes one present in a country in violation of the immigration laws (hence 'illegal').

*Texas v. United States*, 809 F.3d 134, 148 n.14 (5th Cir. 2015) (quoting Bryan A. Garner, Garner's Dictionary of Legal Usage 912 (Oxford 3d ed. 2011)); *see also* Matthew Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69, 76 (2015) ("[I]llegal alien has going for it both history and well-documented, generally accepted use.").

[10] No one knows the exact number of DACA-eligible individuals. Estimates provided to the Court differ. According to evidence provided by the Defendant-Intervenors, this number could be as high as 1.9 million. (Doc. No. 225-4, Ex. 125 at 514, R. Gonzales et al., *Taking Giant Leaps Forward: Experiences of a Range of DACA Beneficiaries at the 5-Year Mark*, Ctr. for Am. Progress (June 22, 2017)) (describing DACA as "a policy that temporarily defers deportations . . . for up to an estimated 1.9 million eligible unauthorized young adults"). Other estimates are more conservative. (*See e.g.*, Doc. No. 225-3, Ex. 74 at 148, Decl. of M. Ray Perryman) (estimating "1.3 million people nationwide are eligible to apply for DACA. . . ."); J. Passel & M. Lopez, *Up to 1.7 Million Unauthorized Immigrant Youth May Benefit From New Deportation Rules*, Pew Research Center (Aug. 14, 2012). Rather than relying on extrinsic sources, arguments of counsel, or government statistics that frequently change, the Court will use a midrange number of approximately 1.5 million eligible individuals when needed.

DHS then approved 370,521 applicants in 2013, and 158,397 in 2014.[11] As of 2018, 814,000 individuals had applied for and received "lawful presence" through DACA.[12] The United States Citizenship and Immigration Services ("USCIS") reported that there were 634,650 active DACA participants as of December 31, 2020.[13]

In turn, having deferred action makes DACA recipients eligible for various benefits. For example, aliens are generally not eligible for any "[f]ederal public benefit," 8 U.S.C. § 1611(a), but aliens who are "lawfully present in the United States," are eligible to apply for Social Security and Medicare, *id.* §§ 1611 (b)(2), (3). A pre-existing regulation defining "lawfully present in the United States" includes "aliens currently in deferred action status."[14] 8 C.F.R. § 1.3(a)(4)(vi).

Additionally, deferred action status makes recipients eligible to apply for work authorization pursuant to a pre-existing regulation, *see* 8 C.F.R. § 274a.12(c)(14), and the 2012 DACA Memorandum instructs USCIS to consider DACA applicants for work authorization. DACA took the further step of *requiring* its recipients to apply for work authorization.[15] Once a recipient has work authorization, he or she is eligible for a Social Security number, along with its attendant benefits.[16] 20 C.F.R. §§ 422.104(a)(2), 422.105(a); 8 C.F.R. § 1.3(a)(4)(vi). Further, an

---

[11] (Doc. No. 224-2 at 450, USCIS, Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by FY, Quarter, Intake, Biometrics and Case Status FY 2012-2017 (March 31, 2018)).

[12] (Doc. No. 225-3, Ex. 73 ¶ 16, Decl. of Dr. D. Massey).

[13] AR2022_600011, (Doc. No. 611-3 at 11, USCIS, *Deferred Action for Childhood Arrivals (DACA) Recipients: Characteristics and Trends*).

[14] DACA recipients must still meet the normal criteria to qualify for these benefits. Without lawful presence, however, even an alien who met those criteria would still be ineligible for the benefits. *See Texas v. United States*, 809 F.3d 134, 148–49 (5th Cir. 2015). In addition to Social Security and Medicare benefits, DACA recipients also can become eligible for benefits under the Railroad Retirement Act of 1974 and the Railroad Unemployment Insurance Act. 8 U.S.C. § 1611(b)(4).

[15] (Doc. No. 9, Ex. 20, USCIS, *DACA Toolkit: Resources for Community Partners*).

[16] Among these benefits are earned income tax credits, which require a Social Security number, *see* 26 U.S.C. §§ 32(c)(1)(E), (m); *Texas v. United States*, 809 F.3d 134, 149 (5th Cir. 2015); and perhaps even the stimulus payments under the American Rescue Plan Act of 2021. *See* Kelly Anne Smith, *Third Stimulus Check: Do Non-U.S. Citizens Qualify?*, Forbes, Mar. 12, 2021. The Department of Health and Human Services has recently proposed a rule change to make DACA recipients eligible for Medicaid and Affordable Care Act coverage. Clarifying Eligibility for a

award of DACA status makes the recipients eligible for certain state benefits, such as Texas's

state-subsidized work-study program. *See* Tex. Educ. Code § 56.075(a)(1); 19 Tex. Admin. Code

§ 21.24(d)(5).

Despite these benefits, the 2012 DACA Memorandum specifically concluded: "This

memorandum confers no substantive right, immigration status or pathway to citizenship. Only the

Congress, acting through its legislative authority, can confer these rights."[17]

In 2014, the DHS attempted to create a sister program, Deferred Action for Parents of

Americans and Lawful Permanent Residents ("DAPA"), and at the same time attempted to expand

the DACA program ("Expanded DACA"). The total population of illegal aliens with lawful

presence due to DACA, Expanded DACA, and DAPA could have been 5.8 million[18] (or over 50%

of the then-estimated 11.3 million illegal aliens in the country).[19] Twenty-six states, including the

---

Qualified Health Plan Through an Exchange, 88 Fed. Reg. 25,313 (proposed Apr. 26, 2023) (to be codified at 42 C.F.R. pts. 435, 457, and 600, and 45 C.F.R. pts. 152 and 155). The following is an inexhaustive list of the federal benefits that DACA status enables DACA recipients to seek access to: (1) various learning and service opportunities such as AmeriCorps VISTA Program, various youth outdoor programs, American Job Centers program, Job Corps, and YouthBuild; (2) various financial programs including FHA financing and HUD counseling agencies; (3) financial/consumer benefits such as tax credits, CFPB Resources, and CFPB Immigrant Initiative; (4) various healthcare programs such as access to Health Resources & Services Administration Health Centers, Emergency Medicaid, public health programs, pregnancy and breast feeding support, maternal mental health support, nutrition assistance (WIC), and many more federal programs and opportunities. According to a recent White House Fact Sheet, there are many more benefits that DACA provides. Fact Sheet, The White House, *President Biden Announces Plan to Expand Health Coverage to DACA Recipients* (Apr. 13, 2023), https://whitehouse.gov/briefing-room/statements-releases/2023/04/13/fact-sheet-fact-sheet-president-biden-announces-plan-to-expand-health-coverage-to-daca-recipients/.

[17] (Doc. No. 487, Ex. 1 at 4).

[18] *United States v. Texas*, 809 F.3d 134, 148 (5th Cir. 2015).

[19] Some parties, experts, and governmental units rely on an estimate that there are 11.3 million illegal aliens in the United States. That number seems to have originated with a study done by the Pew Research Center that estimated the illegal alien population as of March 2013. (*See* Doc. No. 225-2, Ex. 52, J. Passel et al., *As Growth Stalls, Unauthorized Immigrant Population Becomes More Settled*, Pew Research Center (Sept. 3, 2014)). This study is now a decade old, and it is arguable whether the number is accurate. A more recent study by Yale University and the Massachusetts Institute of Technology pegs the number at closer to 22 million. M. Fazel-Zarandi et al., *The Number of Undocumented Immigrants in the United States: Estimates Based on Demographic Modeling with Data From 1990 to 2016*, PLOS One (Sept. 21, 2018). Given the nature of individuals being in the country illegally, no person, entity, or governmental unit can really know the number of illegal aliens living in the United States.

Plaintiff States, sued to enjoin the implementation of DAPA and Expanded DACA, which this

Court preliminarily enjoined in 2015. *Texas v. United States*, 86 F.Supp.3d 591 (S.D. Tex. 2015).

That injunction was affirmed by the Fifth Circuit Court of Appeals, *Texas v. United States*, 809

F.3d 134 (5th Cir. 2015), and then by a split vote in the Supreme Court of the United States. *United*

*States v. Texas*, 136 S. Ct. 2271 (2016). This litigation will be referred to as *Texas I*.

Upon remand, the parties in *Texas I* asked this Court to postpone entering a scheduling

order that would have governed the proceedings to a final conclusion on the merits. Throughout

this time, the 2012 DACA Memorandum remained in force. Ultimately, the parties all agreed to

dismiss the case:

> On June 15, 2017, the U.S. Department of Homeland Security released a
> memorandum entitled *Rescission of November 20, 2014 Memorandum Providing*
> *for Deferred Action for Parents of Americans and Lawful Permanent Residents*
> *("DAPA")*. On September 5, 2017, the Department released a memorandum
> entitled *Rescission of the June 15, 2012 Memorandum Entitled "Exercising*
> *Prosecutorial Discretion with Respect to Individuals Who Came to the United*
> *States as Children."* Given these memoranda rescinding the DAPA program and
> phasing out the DACA and Expanded DACA programs, Plaintiffs file this
> stipulation of voluntary dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (allowing
> plaintiffs to dismiss an action, without court order, by filing a stipulation of
> dismissal by all parties who have appeared).[20]

This stipulation of dismissal was signed by the attorneys for the plaintiffs (a group that

included all of the Plaintiff States in this case), the United States and the federal government

defendants, and the putative DAPA recipients who had intervened. As is evident from its text, the

stipulation was partly based upon the Government "phasing out the DACA . . . program[]." All

parties agreed to the stipulation, otherwise such a dismissal would have required court action.

---

[20] (Doc. No. 473, 1:14-CV-00254, *Texas I*).

**A.  Rescission of DACA and *Regents***

After *Texas I*, the Government attempted to phase out DACA, as it represented to the Plaintiff States it would, but other courts around the nation were asked to enjoin or vacate the attempt to end the program. These lawsuits included: *Batalla Vidal v. Trump*, 279 F.Supp.3d 401 (E.D.N.Y. 2018); *NAACP v. Trump*, 298 F.Supp.3d 209 (D.D.C. 2018); *Regents of Univ. of Cal. v. United States Dep't of Homeland Sec.*, 279 F.Supp.3d 1011 (N.D. Cal. 2018); and *Casa de Md. v. United States*, 284 F.Supp.3d 758 (D. Md. 2018). The courts in the first three cases entered injunctions against the attempted DACA rescission. These cases were eventually appealed to and heard together by the Supreme Court in the case styled: *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (hereinafter, "*Regents*").

Meanwhile, in May 2018, the Plaintiff States filed the current case challenging the lawfulness of DACA as it was enacted through the 2012 DACA Memorandum. The Plaintiff States now seek the same result they thought they achieved with the stipulation of dismissal in *Texas I*— that is, the cessation of DACA. While finding that they would likely succeed on the merits, this Court denied the Plaintiff States' request for a preliminary injunction.[21] Over the objections of the Plaintiff States, the Court stayed the resolution of this case pending the ruling in *Regents* because it was important to have the benefit of the Supreme Court's analysis before proceeding, particularly as that decision could have mooted this case.

The *Regents* opinion dealt with DACA's attempted recission. In 2017, the Attorney General concluded that DACA was unlawful and sent a letter to then-Acting DHS Secretary Elaine Duke to that effect. *Regents*, 140 S. Ct. at 1903. Relying upon that letter, Duke issued a memorandum rescinding the DACA program. *Id.* Various stakeholders sued to enjoin the

---

[21] (Doc. No. 319).

rescission. *Id.* The Chief Justice succinctly set out the exact questions the *Regents* Court needed to address: "The issues raised here are (1) whether the APA claims are reviewable, (2) if so, whether the rescission was arbitrary and capricious in violation of the APA, and (3) whether the plaintiffs have stated an equal protection claim." *Id.* at 1905.

In *Regents*, the Supreme Court found the Government's decision to rescind DACA was judicially reviewable. There is a general presumption of reviewability that can be rebutted by a showing that the action is committed to "agency discretion by law." 5 U.S.C. § 701(a)(2). An argument in *Regents*, in *Texas I*, and at the preliminary injunction stage in this litigation was that DACA was an agency decision not to institute enforcement proceedings and, as such, neither its creation nor rescission was reviewable.

The Supreme Court disagreed with this argument and recognized that "DACA is not simply a non-enforcement policy." *Regents*, 140 S. Ct. at 1906. Instead, the 2012 DACA Memorandum created standardized proceedings by which USCIS solicits and reviews applications from eligible aliens. *Id.* The proceedings are effectively "adjudications," and the result of the adjudications is an affirmative act of approval. *Id.* The Supreme Court concluded that the 2012 DACA Memorandum therefore "created a program for conferring affirmative immigration relief. The creation of that program—and its rescission—is an action that provides a focus for judicial review." *Id.* (cleaned up).

Having determined that the rescission of DACA was subject to judicial review, the Supreme Court found that "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Id.* at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). It continued on to explain: "Considering only contemporaneous explanations for agency action also instills confidence that the reasons given are not simply convenient litigating

position[s]." *Id.* at 1909 (quotations omitted). Additionally, the *Regents* Court emphasized that procedural compliance, in the context of rescission, "promote[s] agency accountability, by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority." *Id.* (citations and quotations omitted). It also noted that the APA procedural requirement of notice and comment, a pivotal issue in the instant case, was not before it. *Id.* at 1903 n.1.

Central to the *Regents* decision was whether DACA was subject to the requirements of the APA and whether the rescission of DACA, under the circumstances presented, was arbitrary and capricious. The Court held that the APA did apply and that, in light of the Attorney General's reliance on the *Texas I* litigation that did not question DHS's authority to forbear removal, the Acting Secretary's explanation for rescinding all of DACA (benefits *and forbearance*) was arbitrary and capricious under the APA. *Id.* at 1912–13. Additionally, the Acting Secretary's failure to consider the significant reliance interests that DACA had engendered was another independent reason that the rescission was arbitrary and capricious. *Id.* at 1913–14. Thus, the 2017 attempt to rescind DACA was thwarted.

Once the Supreme Court ruled, this Court gave the parties in this case adequate time to update their motions and briefs to include any relevant analysis of the *Regents* opinion. The Court then held a hearing and allowed the parties to present their competing positions and the Court proceeded to rule.

**B.    DACA After *Regents***

After the *Regents* decision, DHS issued a series of letters and memoranda that attempted to limit the DACA program ("New DACA"). New DACA spurred more litigation that was addressed in *Batalla Vidal v. Wolf*, 16-CV-4756, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020).

23-40653.36370

There, the district court held that New DACA was unlawful because it found then-Acting Secretary of Homeland Security, Chad Wolf, was without authority to serve as Acting Secretary of DHS. *Id.* at, *1. As a result, the district court vacated the memoranda and found DACA was governed by the same terms as it was in 2012, before any attempted rescission. The *Batalla Vidal* plaintiffs, in a motion to modify, asked the court to "clear up the ambiguity" created by that court's December 2020 order and this Court's July 2021 injunction. *Batalla Vidal v. Mayorkas*, 618 F.Supp.3d 119, 122 (E.D.N.Y. Aug. 3, 2022). The plaintiffs sought clarification on "what the government can and cannot do" in light of this Court's 2021 injunction. *Id.* at 120. The court denied their motion, stating the relief sought "sweeps well beyond the purpose of [the] prior injunction." *Id.* In the wake of the Final Rule promulgated by DHS in 2022, as seen below, New DACA has little bearing on the present litigation.

## C.    Final Rule DACA

In July 2021, this Court ruled that the 2012 DACA Memorandum was unlawful on both procedural and substantive grounds and issued an injunction prohibiting DHS from processing new DACA applications.[22] It also remanded, pursuant to the Federal Defendants' request, certain matters back to the DHS for further consideration. Simultaneously, the Federal Defendants appealed this Court's rulings on the merits to the Fifth Circuit.[23] While the appeal was pending, a proposed DACA rule was put through notice and comment and a final rule was promulgated by DHS.[24] On appeal, the Plaintiff States argued that the Final Rule was materially the same as the 2012 DACA Memorandum and asked the Fifth Circuit to enjoin it as well. The Fifth Circuit

---

[22] (Doc. Nos. 575, 576). It also entered an order vacating the DACA program but stayed this order during the pendency of the appeal.

[23] (Doc. No. 581).

[24] 87 Fed. Reg. 53,152 (Aug. 30, 2022) (to be codified at 8 C.F.R. pts. 106, 236, and 274a).

23-40653.36371

affirmed this Court's ruling as to the 2012 DACA Memorandum but remanded the Final Rule to this Court for consideration. *Texas II*, 50 F.4th at 512. Importantly, the Fifth Circuit held that: (1) Texas had standing under Article III; (2) the 2012 DACA Memorandum's adoption without notice and comment violated the procedural requirements of the APA; and (3) the program contravened the Immigration and Nationality Act ("INA"); and thus, it failed to comply with substantive requirements of the APA. *Id.* The Fifth Circuit has directed this Court to determine whether the Final Rule suffers from the same fatal deficiencies as the 2012 DACA Memorandum. As noted above, the parties entered into an agreed injunction, or standstill agreement, whereby the Final Rule would not become effective until this Court rules on the remanded issues.

This Court is now tasked with reviewing the Final Rule in light of its administrative record,[25] the applicable briefs of the parties, and the arguments related thereto. The Court will address the limited nature of the remand issued by the Fifth Circuit first. It will then discuss standing, as this argument has been raised again by all Defendants; and then it will proceed to analyze the substantive issues presented by the remand. Finally, it will address the possible application of the Final Rule's severability clause.

## III.   Limited Remand

The competing motions for summary judgment before the Court encompass an array of issues surrounding the legality of the Final Rule. It is important to note, however, the Fifth Circuit's instructions on remand. The Fifth Circuit remanded the Final Rule back to this Court for consideration with a more complete record than the one that existed at the appellate level. That remand was not a general remand of the entire case, but was instead a very specific, limited remand.

---

[25] (Doc. Nos. 607–611)

23-40653.36372

> We cannot determine **whether there are material differences in that record and the record before the district court regarding the 2012 DACA Memorandum.** The DACA Memorandum remains in effect until October 31, 2022. To the extent our determinations about questions of law in the present appeal would also apply to the Final Rule, those issues of law should be resolved sooner rather than later to move this case forward as expeditiously as possible. A district court is in the best position to review the administrative record in the rulemaking proceeding and **determine whether our holdings as to the 2012 DACA Memorandum fully resolve issues concerning the Final Rule.**
>
> \* \* \*
>
> …we remand to the district court for further proceedings that the parties may pursue regarding the Final Rule.

*Texas II*, 50 F.4th at 512 (emphases added).

The Fifth Circuit specifically mandated this Court to determine if there are material differences between the Final Rule and the 2012 DACA Memorandum, and, if so, whether the already established rulings concerning the 2012 DACA Memorandum apply to the Final Rule. While this limited remand does not prohibit the Court from proceeding on the currently filed motions, it clearly does not permit the parties to relitigate previously established issues. The Court need not reconsider those issues as if on a motion for rehearing; nor does it need to rule on issues originally bypassed, such as the Plaintiff States' Take Care Clause allegations.

A.      **Standing**

Despite the Fifth Circuit's instructions, the Federal Defendants and the Defendant-Intervenors are attempting to relitigate a different set of issues than the one remanded to the Court, perhaps because it is abundantly clear from the administrative record that the Final Rule is merely a more formal enactment of the 2012 DACA Memorandum and thus subject to the same deficiencies. For example, the Defendant-Intervenors and the Federal Defendants have asked this Court to reconsider whether the Plaintiff States (and, specifically, Texas, the lead Plaintiff) have standing.

This Court has addressed the topic of standing in great detail and has found that standing exists, and that finding has been affirmed by the Fifth Circuit.[26] Thus, unless ultimately set aside by the Fifth Circuit *en banc* or by the Supreme Court, the Plaintiff States have established standing. Accordingly, the topic of standing is not before this Court. Nevertheless, if called upon to revisit the standing issue, this Court would again find it exists, especially in light of recent developments.

The first development is DHS's admission in the administrative record that DACA "could result in some indirect fiscal effects on State and local governments, the size and even the direction of the effects is dependent on many factors...."[27] The Plaintiff States have argued that those costs would be alleviated, or at least diminished, if DACA were eliminated because some DACA recipients would leave the country, and they have provided some evidence to this effect.[28] There are portions of the administrative record that also support this contention.[29] Further, the admission by DHS that the Plaintiff States will bear some costs resulting from the Final Rule also helps confirm standing for the Plaintiff States.

The other developments emanate from a recent opinion by the Supreme Court. *United States v. Texas*, 143 S. Ct. 1964 (2023). In that case, the Supreme Court found that standing for a state to question immigration enforcement guidelines did not exist. Critically important to this case, the opinion then shifted to explain when a state has standing and can challenge certain DHS

---

[26] *Texas v. United States*, 328 F.Supp.3d 662, 690–705 (S.D. Tex. Aug. 31, 2018); *Texas II*, 549 F.Supp.3d at 584–96; *Texas II*, 50 F.4th at 513–20.

[27] AR2022_100216, 87 Fed. Reg. 53,173, (Doc. No. 607-1 at 238).

[28] (Doc. No. 625-1 at 42); (Doc. No. 626-2 at 367, Ex. 31); (*Id.* at 371–72, Ex. 32).

[29] In the record DHS also acknowledges some, albeit not many, DACA recipients would leave the country if the program were rescinded. AR2022_100208, 87 Fed. Reg. 53,165, (Doc. No. 607-1 at 230). Thus, it impliedly concedes that rescinding DACA would alleviate some costs to states for whatever percentage of DACA recipients actually leave or are deported. In fact, one part of the record suggests that some DACA recipients have already left the United States due to the legal wrangling that has occurred over the past few years. AR2022_501536, (Doc. No. 611-1 at 546, Monsy Alvarado, *As Supreme Court considers end to DACA, some Dreamers are already leaving U.S. behind*, NorthJersey.com (May 7, 2020)).

decisions. It directly addressed DACA and DACA-related cases as exceptions to the no standing rule:

> In holding that Texas and Louisiana lack standing, we do not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions.
>
> *   *   *
>
> …**a challenge to an Executive Branch policy that involves both the Executive Branch's arrest or prosecution priorities *and* the Executive Branch's provision of legal benefits or legal status could lead to a different standing analysis.** That is because the challenged policy might implicate more than simply the Executive's traditional enforcement discretion. […] (**benefits such as work authorization and Medicare eligibility accompanied by nonenforcement meant that the policy was "more than simply a non-enforcement policy"**); *Texas v. United States*, 809 F. 3d 134, 154 (CA5 2015) (*Linda R. S.* "concerned only nonprosecution," which is distinct from "both nonprosecution and the conferral of benefits"), aff'd by an equally divided Court, 579 U. S. 547 (2016).

*Id.* at *7–8 (emphases added).

This "non-prosecution" vs. "non-prosecution with benefits" difference is a key distinction that both this Court and the Fifth Circuit made in *Texas I* and *Texas II*. In fact, in both cases, this Court emphasized that no part of its orders should be read as interfering with the enforcement, non-enforcement, or prosecutorial decisions that are an inherent part of DHS's field of operations. Consequently, in light of this overt adoption of the *Texas I* opinion by the Supreme Court, there is no question that standing exists in this case.

The Supreme Court, in that same opinion, goes on to describe another reason that the Plaintiff States have standing here. In listing exceptions to the no-standing rule, it stated:

> [T]he standing calculus might change if the Executive Branch wholly abandoned its statutory responsibilities to make arrests or bring prosecutions. **Under the Administrative Procedure Act, a plaintiff arguably could obtain review of agency non-enforcement if an agency "has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities."** *Heckler*, 470 U.S. at 833, n. 4, 105 S.Ct. 1649 (internal quotation marks omitted); see *id.*, at 839, 105 S.Ct. 1649 (Brennan, J., concurring); cf. 5

U.S.C. § 706(1). **So too, an extreme case of non-enforcement arguably could exceed the bounds of enforcement discretion and support Article III standing.**

*Id.* at *7 (emphases added).

Texas and the other Plaintiff States have clearly raised that very issue in this case. They have repeatedly pleaded that DHS has abdicated or abandoned its enforcement duties and, by doing so, violated the Take Care Clause of the Constitution.[30] They have consistently urged this Court to address this issue and even raised it again after the remand. This Court has followed the general jurisprudential rule of constitutional avoidance in declining to address this contention. *Texas I* and *Texas II* were both resolved on issues related to the Administrative Procedure Act; however, the fact that this Court has declined to address the Take Care Clause issue does not mean that the Plaintiff States have not pleaded such a cause of action. Standing has never been determined solely by those issues upon which the Court ultimately rules. The Plaintiff States have clearly pleaded into this very exception to the "no standing" rule outlined by the Supreme Court.

The Defendants should be wary of wanting this Court to address standing *ab initio* because the standing of the Plaintiff States is about to be buttressed by the Executive Branch's pending action. The Executive Branch has recently proposed expanding the Affordable Care Act and Medicaid coverage to DACA recipients.[31]

This new rule proposed by the Department of Health and Human Services (HHS) adds a powerful weapon to the Plaintiff States' standing arsenal. As of year-end 2020, Texas had 104,570

---

[30] (Amended Complaint, Doc. No. 104 at 4–5, 67, ¶¶ 11, 14, 319); (Supplemental Complaint, Doc. No. 623 at 22–23, ¶¶ 86–87); (Plaintiffs' Motion for Summary Judgment, Doc. No. 625-1 at 28–29).

[31] The White House, *President Biden Announces Plan to Expand Health Coverage to DACA Recipients* (Apr. 13, 2023); Clarifying Eligibility for a Qualified Health Plan Through an Exchange, 88 Fed. Reg. 25,313 (proposed Apr. 26, 2023) (to be codified at 42 C.F.R. pts. 435, 457, and 600, and 45 C.F.R. pts. 152 and 155). Currently, DACA recipients are ineligible for these benefits. *See e.g.*, AR2022_400283, (Doc. No. 608-4 at 283).

DACA recipients—the second largest DACA population after California.[32] HHS Secretary Becerra has announced that 34% of the DACA population does not have insurance.[33] The new proposed rule would make DACA recipients "eligible to enroll in a Qualified Health Plan (QHP) through an Exchange; a Basic Health Program (BHP)… and for some State Medicaid and Children's Health Insurance Programs (CHIPs)."[34] The New York Times estimates this to cost $5,000 per year, per person covered.[35] The proposed rule estimates that the individual states will have to bear at least 50% of these costs.[36] Therefore, hypothetically, if adopted and applicable to Texas, the uninsured DACA recipients who reside in Texas (which number 35,554 based upon the Executive Branch's figures) would directly cost Texas an additional $88,885,000 annually. These costs will be clearly DACA-specific and will be directly attributable to the existence of DACA.[37] Thus, if that rule becomes effective, the Executive Branch's current actions would conclusively establish standing in favor of the Plaintiff States.

For all of the above reasons, in addition to those already discussed in prior opinions, had this Court been called upon to rule on standing, it would again find that standing exists.

---

[32] AR2022_600016, (Doc No. 611-3 at 16).

[33] 88 Fed. Reg. 25,315.

[34] 88 Fed. Reg. 25,313.

[35] Zolan Kanno-Yongs, *Biden Will Expand Health Care Access for DACA Immigrants*, N.Y. Times, April 13, 2023, https://www.nytimes.com/2023/04/13/us/politics/biden-health-care-daca-immigrants.html.

[36] 88 Fed. Reg. 25,323 ("[W]e elected to use the higher end estimate that the States would contribute 50 percent of the costs.…").

[37] Additionally, Texas recently resurrected its argument that standing exists due to the costs incurred by the state in issuing driver's licenses to DACA recipients. (Doc. No. 673 at 49–52). This issue helped establish standing in *Texas I* and was specifically cited by the Fifth Circuit as one of the reasons that standing existed as to the attack on DAPA and Expanded DACA. *Texas I*, 809 F.3d at 156. The Defendant-Intervenors objected to Texas's reassertion of this claim at oral argument. Transcript of Oral Argument at 13:25–15:7; 50:6–51:11 (Jun. 1, 2023) (Doc. No. 699). Clearly, if this Court were to reconsider standing it would also have to consider this contention.

## IV.    The Final Rule

At the request of the Federal Defendants, when this Court entered the order of vacatur and injunction it also remanded certain issues back to the DHS so that it had the opportunity to take whatever remedial action with regard to the 2012 DACA Memorandum that it deemed appropriate. Beyond providing it with the opportunity, this Court did not specifically instruct the DHS as to what steps it should or should not take or what facets it could address.

While the rulings in *Regents* and *Texas I* might have seemingly provided some motivation and direction, the actions DHS took to institute notice and comment and then push through the Final Rule were, by its own statements, done in response to President Biden's memorandum issued January 20, 2021, titled "Preserving and Fortifying Deferred Action for Childhood Arrivals (DACA)."[38] In that memorandum, President Biden directed the Secretary of Homeland Security to "take all actions he deems appropriate […] to preserve and fortify DACA."[39]

Shortly after the remand, DHS published a notice of proposed rulemaking that it hoped would "preserve and fortify DHS's DACA policy."[40] DHS published the proposed rule in the Federal Register on September 28, 2021. While DHS explicitly disagreed with this Court's ruling that the 2012 DACA Memorandum was required to comply with the procedural requirements of the APA, it did concede that by following the notice and comment formula prescribed by the statute through the enactment of the Final Rule, it was putting "DACA on a stronger legal footing."[41] With respect to the more substantive problems noted by this Court and the Fifth Circuit, however,

---

[38] AR2022_200346, 86 Fed. Reg. 7053, (Doc. No. 607-3 at 205).

[39] *Id.* at § 2.

[40] AR2022_100001, 86 Fed. Reg. 53,736, (Doc. No. 607-1 at 23).

[41] AR2022_100195, 87 Fed. Reg. 53,152, (Doc. No. 607-1 at 217); AR2022_100234, 87 Fed. Reg. 53,191, (Doc. No. 607-1 at 256) ("DHS agrees that undertaking notice and comment through the proposed rule puts DACA on stronger legal footing in light of the district court's decision in *Texas* and other pertinent litigation.").

DHS, while complying with the injunction, expressed its disagreement and purposefully made no attempt to have the Final Rule vary from the substantive aspects of the 2012 DACA Memorandum.[42]

> The final rule does not introduce new criteria for consideration, expand the population eligible for consideration, change standards of review, provide lawful immigration status, or alter the forbearance from removal or employment authorization structure that has been in place for a decade.[43]

Thus, the easy response to the assignment given to this Court on remand is: there are no material differences between the Final Rule and the 2012 DACA Memorandum, and while the record underlying the Final Rule certainly supports the argument that DACA has been beneficial for the DACA recipients and that the DACA recipients are, with certain exceptions, beneficial to the country, DHS did nothing to change or resolve the substantive problems found by this Court or the Fifth Circuit.[44] Indeed, much to their counsel's credit, the Federal Defendants candidly admit that the Final Rule suffers from the same problems as the 2012 DACA Memorandum and that it is contrary to the Fifth Circuit's opinion in *Texas II*.

> **Federal Defendants and Plaintiffs agree that the Final Rule is substantively the same policy as the DACA Memorandum.** *Texas II*, 50 F.4th at 512. **Federal Defendants do not seek to relitigate before this Court any matter currently foreclosed by the Fifth Circuit's prior decision in this case, but they incorporate by reference and preserve for further review all previously raised arguments regarding Plaintiffs' lack of standing and the lawfulness of the policies now embodied in the Final Rule.** Those arguments are outlined below, along with Federal Defendants' responses to new points raised by Plaintiffs; under the proper view of those matters, Defendants, not Plaintiffs, are entitled to summary judgment. Moreover, as reflected by Plaintiffs' own proposed remedy, this Court has equitable discretion in crafting relief for any legal violation it finds in this case. **Assuming this Court finds such a violation under the Fifth Circuit's prior**

---

[42] *See e.g.*, AR2022_100252, 87 Fed. Reg. 53,209, (Doc. No. 607-1 at 274) ("DHS has further considered the district and appellate court opinions concerning DHS's authority to deem DAPA or DACA recipients 'lawfully present' for certain purposes, and respectfully disagrees with those decisions for the reasons explained in the proposed rule.").

[43] AR2022_100222, 87 Fed. Reg. 53,179, (Doc. No. 607-1 at 244).

[44] Thus, the Final Rule is flawed for the same substantive reasons as the 2012 DACA Memorandum. *See Texas II*, 549 F.Supp.3d at 603–21; *Texas II*, 50 F.4th at 525–28.

**decision in this case, it must therefore choose a remedy in light of the Supreme Court's observations regarding the scope of DHS's discretion in choosing the means of winding down the DACA program if it is determined to be unlawful, as well as the Fifth Circuit's previous decision to "preserve the stay as to existing [DACA] recipients."** *Texas II*, 50 F.4th at 531.[45]

This admission was no doubt compelled by countless statements to the same effect found throughout the administrative record. The Court recounts just a few: "The final rule codifies without material change the threshold criteria that have been in place for a decade…"[46] "This rule preserves and fortifies in regulation a policy that has been in place for 10 years. This rule does not establish a new program…."[47]

> As explained in the proposed rule and elsewhere in this rule, DHS seeks to retain the threshold criteria of the DACA policy as applied by USCIS since 2012 in part due to recognition of the significant reliance interests in the continued existence of the DACA policy of individuals who previously have received DACA grants, and those similarly situated who have not yet requested DACA, and their families, employers, schools, and communities.[48]

"Furthermore, DHS has determined that retaining the criteria as set forth in the Napolitano Memorandum defines the population of those who may request DACA to those who are likely to continue to be a low priority for removal under the Department's general enforcement priorities."[49]

> DHS agrees that it has legal authority to modify or remove these age caps through notice-and-comment rulemaking. However, as discussed elsewhere in the [Notice of Proposed Rulemaking] and this rule, DHS has determined as a matter of policy to focus this rulemaking on preserving and fortifying DACA by generally retaining the threshold criteria of the Napolitano Memorandum. Retaining the criteria fortifies the longstanding policy upon which the DACA population and their families, employers, school, and communities have relied for a decade.[50]

---

[45] (Doc. No. 639 at 6–7) (emphases added).

[46] AR2022_100333, 87 Fed. Reg. 53,290, (Doc. No. 607-1 at 355).

[47] AR2022_100221, 87 Fed. Reg. 53,178, (Doc. No. 607-1 at 243).

[48] AR2022_100271, 87 Fed. Reg. 53,228, (Doc. No. 607-1 at 293).

[49] AR2022_100273, 87 Fed. Reg. 53,230, (Doc. No. 607-1 at 295). The Federal Defendants and the record frequently refer to the 2012 DACA Memorandum as the "Napolitano Memorandum."

[50] AR2022_100277, 87 Fed. Reg. 53,234, (Doc. No. 607-1 at 299).

The Final Rule "is intended to preserve and fortify the existing DACA policy; it does not alter DACA eligibility criteria, grant lawful immigration status or citizenship for noncitizens or provide a means for entry into the United States. Therefore, DHS anticipates no change in U.S. population as a direct effect of this rule."[51]

The Court could quote example after example from the administrative record where the DHS has stressed that the Final Rule merely incorporates the 2012 DACA Memorandum and that it will interpret the Final Rule similarly, as it viewed that path as the best way to implement President Biden's directive. The Court cannot speculate as to whether that was the President's intention when he issued the directive. Nevertheless, it is clear that with little change (and no substantive changes), the Final Rule simply takes the 2012 DACA Memorandum and reincorporates it. The creation and adoption of the Final Rule took no steps to avoid any of the substantive pitfalls that have been pointed out by the Fifth Circuit and other courts—perhaps because DHS did not want to, or perhaps because it was not possible to do so and retain the DACA program as currently constituted.[52] Regardless, substantively, DACA remains the same. All of the

_____

[51] AR2022_100300, 87 Fed. Reg. 53,257, (Doc. No. 607-1 at 322).

[52] The Court, while pointing out that DHS made no effort to correct the substantive faults found in the 2012 DACA Memorandum when it adopted it as the Final Rule, is not stating that there was no mention of these problems. For example, it has long been recognized that one of Congress's goals in its enactment of the immigration scheme is the protection of the American workers. AR2022_200215–16, 51 Fed. Reg. 39,386, (Doc. No. 607-3 at 504). One author in the record quotes a prominent immigration historian to the effect that it is difficult to "determine where immigration policy ends and labor policy begins" because the two are so closely interrelated. AR2022_501463, (Doc. No. 611-1 at 473). The record also quotes Senator Edward Kennedy urging Congress to enact stricter immigration laws and that those laws be enforced in order to protect native workers. "We must . . . intensify the enforcement of existing laws . . . . Vigorous and effective enforcement of these laws will reduce the incentive for employers to hire undocumented workers." AR2022_501468–69, (Doc. No. 611-1 at 478–79) (quoting Senator Kennedy when he was introducing the amendment that would become IRCA § 111(d) of the Immigration Reform and Control Act that provides funds to deter the employment of illegal aliens) (*see also id.* Senator Alan Simpson's comments). DHS admitted that in principle DACA recipients take jobs that could otherwise be filled by American citizens or other aliens legally in the country. DHS discounted this effect because it found the data "unquantifiable." AR2022_100210, 87 Fed. Reg. 53,167, (Doc. No. 607-1 at 232). In other places in the record, DHS claimed that since the number of DACA recipient

23-40653.36381

deficiencies noted before by this Court and the Fifth Circuit still exist and the Court adopts its earlier opinions in that regard.

This Court has noted many of these problems in its earlier opinion and incorporates its earlier analysis here.[53] Instead of repeating the entirety of its analysis, the Court will focus on two simple aspects which highlight DHS's intention for the Final Rule to follow in the footsteps of the 2012 DACA Memorandum. The following two examples (one old and one new) demonstrate some of the ongoing problems with the Final Rule.

First, as noted in earlier opinions, the topic of advance parole for DACA recipients is problematic. Advance parole allows an alien to leave the United States with the advance assurance that he or she will be allowed back into the United States upon return. This has been a troubling

---

employees is small and the length of employment is of limited duration, the overall effect on the American workforce is quite minimal. AR2022_200222–23, 52 Fed. Reg. 46,092–93, (Doc. No. 607-3 at 81–82).

These statements are incompatible with each other and with other portions of the record. First, while it claimed that DACA employment is of limited duration, in other portions of the record DHS assumed that the employment authorizations (I-765) will continue indefinitely. AR2022_300664, (Doc. No. 607-4 at 664). Moreover, DACA itself is over ten years old. That hardly qualifies as temporary. Second, DHS stated the data is unquantifiable, but that seems implausible as the nature of the jobs held by DACA recipients and the skillset involved in those jobs could easily be mined from the DACA recipients themselves. It seems somewhat questionable that the record contains the fact that DACA recipients pay $566.7 million in annual mortgage payments, yet DHS cannot obtain or analyze their employment data. AR2022_100003, 86 Fed. Reg. 53,738, (Doc. No. 607-1 at 25). Moreover, if the data is unquantifiable, how can DHS conclude the effect is minimal?

Finally, the record (and the briefing in the Court) is replete with examples and statistics about the economic impact and the financial contributions made by the DACA recipients and the benefits they receive primarily due to their ability to work. Again, depending on the nature of the employment, those benefits could have gone to workers who were either American citizens or other legally employable aliens.

Using the data found in the record, a reasonable estimate of one aspect of the financial impact can be made. DHS estimates that 78% of the DACA recipients work and they make an average of $67,769 annually. AR2022_100323, 87 Fed. Reg. 53,280, (Doc. No. 607-1 at 345). This means that at least 470,000 DACA recipients work, and that figure could rise to as many as 1,170,000 workers if all who are eligible apply. That translates into salaries of between $31,851,430,000 and $79,289,730,000 annually. Even by governmental expenditure standards, these figures rise well above what a reasonable person would consider to be "minimal."

[53] *See Texas II*, 549 F.Supp.3d at 603–22.

aspect of DACA since its inception.[54] The Final Rule leaves it just as it was under the 2012 DACA Memorandum. This privilege, as exercised by certain DACA recipients, has been the subject of great criticism as it supplies approximately 50% of the DACA population with a shortened pathway to citizenship. Absent DACA, as a general rule, illegal aliens are not eligible to apply for advance parole. DACA makes some of the recipients eligible. In addition to DHS's generous interpretation of the phrases "urgent humanitarian reasons" and "significant public benefit" for DACA recipients, the Final Rule's allocation of advance parole to some DACA recipients subverts statutory law in two other ways: (1) it allows certain individuals to adjust illegal status by curing the "inadmissibility bar," and (2) it lets recipients avoid the statutory "unlawful presence bars."[55]

Setting that pathway issue aside, advance parole by statute is supposed to be available only for "urgent humanitarian reasons" or those in furtherance of a "significant public benefit." 8 U.S.C. § 1182(d)(5). DHS has traditionally construed its authority to grant advance parole for "urgent humanitarian" reasons to be limited to urgent medical, family, and related needs, and its authority to grant advance parole for "significant public benefit" to be limited to those individuals aiding

---

[54] In summary, DACA allows its recipients to apply for advance parole—a status for which they would not otherwise be eligible. Advance parole allows aliens to leave the country and return lawfully without being denied reentry. DACA's use of advance parole violates Congress's immigration scheme in two ways. First, immigrants who have entered the country illegally (without inspection) cannot adjust their status because they were not admitted to the country legally. This category includes approximately one half of all DACA recipients. Through DACA, those who have illegally entered the country can avoid this inadmissibility bar because once they leave the United States and return via advance parole, they have now entered the country legally and can adjust their status. Over 14,000 DACA recipients have adjusted their status in this fashion. AR2022_100293, 87 Fed. Reg. 53,250, (Doc. No. 607-1 at 315). Second, DACA recipients who use advance parole can avoid the unlawful presence bar found in 8 U.S.C. § 1182(a)(9)(B)(i). That statute dictates that those who have entered this country illegally or remained in the country beyond their allotted time (a population that describes all of the DACA recipients) must remain out of the United States for either three years (for those in the country illegally for more than 180 days) or ten years (for those who have been in the country illegally for more than a year) before they are allowed to adjust their status. By definition, all of the DACA recipients would otherwise be subject to this ten-year bar. Nevertheless, by leaving the country and returning via advance parole, they avoid this waiting period. Therefore, DACA allows its recipients on advance parole to avoid complying with the laws as written by Congress.

[55] See (Doc. No. 219, Ex. 3, Lena Graber & Jose Magaña-Salgado, *DACA, Advance Parole, and Family Petitions*, Immigr. Legal Res. Ctr. (June 2016)).

23-40653.36383

law enforcement—such as a witness.[56] Despite these two narrowly crafted circumstances, the

supporting documentation for the Final Rule states that DACA recipients, under the Final Rule,

just like under the 2012 DACA Memorandum, do not have to fall within these two Congressionally

limited exceptions to gain advance parole.[57] DHS admits in the record that it does not have the

legal authority to broaden these two categories.[58] Nevertheless, according to the record, DACA

recipients can receive advance parole for academic research, semesters abroad, interviews,

overseas assignments, training, and meetings with clients. A field trip abroad or a meeting with a

client in Bermuda hardly equate to an urgent humanitarian situation, nor do they provide any public

benefit, significant or otherwise. It seems highly suspect that the DHS admitted it lacks the

authority to expand the application of advance parole, but then turned around and expanded it

anyway.[59]

At one point during the course of this litigation, the parties informed the Court that during

the prior Administration, USCIS had somewhat restricted these categories. "USCIS had not

granted advance parole based on the standards associated with DACA since September 5, 2017."[60]

The Final Rule clearly has resurrected them.

> On June 15, 2012, the Secretary of Homeland Security issued a memorandum that
> outlines guidelines that should be used when considering whether to defer removal
> proceedings or the execution of removal orders. Known as DACA, this is a case-
> by-case exercise of prosecutorial discretion relating to individuals who were
> brought to the United States as children and meet certain threshold guidelines. The

---

[56] AR2022_400210, (Doc. No. 608-4 at 210).

[57] AR2022_100346, (Doc. No. 607-1 at 368).

[58] AR2022_100294, 87 Fed. Reg. 53,251, (Doc. No. 607-1 at 316).

[59] In the case of *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), the Biden Administration argued that it had the power to create what was, in effect, an entirely new student loan program because the HEROES Act authorized the Secretary to "waive or modify any statutory or regulatory provision" of title IV of the Education Act. *Id.* at 2358. The Supreme Court held that this limited authorization did not give the Secretary the power to rewrite the Act. *Id.* at 2368–76. Here, the Secretary of Homeland Security is essentially rewriting various immigration acts (including the one concerning advance parole) without even a hint of statutorily delegated power.

[60] (Doc. No. 504-2, Ex. 2 at 33 n.7).

instructions for Form I-131 and USCIS policy provides that USCIS will generally grant advance parole to DACA recipients traveling outside the United States for educational purposes, employment purposes, or humanitarian purposes;

  (a) Educational purposes include but are not limited to semester abroad programs or academic research;
  (b) Employment purposes include but are not limited to overseas assignments, interviews, conferences, training, or meetings with clients; or
  (c) Humanitarian purposes include but are not limited to travel to obtain medical treatment, attend funeral services for a family member, or visit an ailing relative.[61]

Consequently, DHS, just as before, has decided not to comply with the requirements dictated by Congress—instead, it is just reinstating the same criteria derived from the 2012 DACA Memorandum and professes its intent to interpret the criteria the same.

As discussed, employment and educational opportunities are *not* part of the Congressionally limited categories eligible for advance parole. More importantly, DHS indicates that it will not limit advance parole to the two narrowly approved categories. Instead, it plans to use the same unjustifiable criteria and interpret the Final Rule the same way it did under the 2012 DACA Memorandum. Thus, there are no material changes to the Final Rule from the 2012 DACA Memorandum that the Fifth Circuit held to be illegal.

Second, DHS's position on the lack of temporal limits is a new problem the administrative record reveals. When the 2012 DACA Memorandum was issued, the President described it as a temporary measure.[62] Similarly, in the past, DHS has indicated that DACA was always intended as a short-term aid to its enforcement mission. DHS admits it "does not have the authority to provide a permanent solution absent action by Congress."[63] Perhaps that was once its intention because, as the Fifth Circuit noted in *Texas I* and *Texas II*, deferred action programs have always

---

[61] AR2022_100380–81, (Doc. No. 607-1 at 402–03).

[62] AR2022_401447, (Doc. No. 610-3 at 156) ("It's not a permanent fix. This is a temporary stopgap measure…..").

[63] AR2022_100237, 87 Fed. Reg. 53,194, (Doc. No. 607-1 at 259).

been short term adjuncts to forthcoming Congressional action. The Fifth Circuit described this

relationship as deferred action being "interstitial to a statutory legalization scheme." *Texas I*, 809

F.3d at 185; *Texas II*, 50 F.4th at 572.

Despite these earlier announcements, DHS, in responding to comments concerning the

Final Rule, indicates a shifting position. It has no plans to ever terminate the program unless and

until Congress adopts DACA.

> [The DHS] reiterates the purpose of the rule **to preserve and fortify DACA, a policy that has been in place for 10 years**.
>
> Regarding a commenter's concern that DACA was intended to be a temporary policy, DHS notes that the Napolitano Memorandum **did not impose temporal limits to the policy or otherwise indicate a temporary intent**. To the extent that the policy was described as a temporary measure by President Barack Obama when he announced it in 2012, DHS notes that President Obama also stated that, "[i]n the absence of any immigration action from Congress to fix our broken immigration system, what we've tried to do is focus our immigration enforcement resources in the right places," and that DACA is a measure "that lets us focus our resources wisely while giving a degree of relief and hope to talented, driven, patriotic young people."[64]

This makes clear that DHS views the immigration system as instituted by Congress as

faulty, so it is instituting its own solution, regardless of the dictates of Congress. Moreover, it has

no intention that the program be temporary.[65] Indeed, as noted, DHS views DACA employment

authorizations to go on indefinitely. When explaining its methodology for I-765 employment

authorizations, it assumed "the DACA program will continue indefinitely."[66] Thus, to the extent

that anyone makes the argument that this deferred action program is merely a temporary bridge to

Congressional action, the current DHS position, as demonstrated in the record, dispels that notion.

---

[64] AR2022_100226, 87 Fed. Reg. 53,183, (Doc. No. 607-1 at 248) (emphases added).

[65] Temporary is defined as "lasting for a time only; existing or continuing for a limited (usually short) time; transitory." Black's Law Dictionary (10th ed. 1990).

[66] AR2022_300664, (Doc. No. 607-4 at 664).

DACA has now entered its second decade and DHS clearly intends to continue this Congressionally unauthorized program indefinitely. While this Court and others—including at least two Presidents and two DHS Secretaries—have suggested that only Congress has the authority to implement a permanent DACA-like program, DHS's current position seems to indicate a contrary intention. This is epitome of "the Executive seizing the power of the Legislature." *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023).

The foregoing are only two examples of DHS's intention to reinstitute, without any pretense of temporal limitations, the original 2012 DACA Memorandum through the Final Rule. The original problems that the Fifth Circuit and this Court pointed out in earlier opinions concerning the 2012 DACA Memorandum persist in the Final Rule. Suffice it to say, the record makes it clear that DHS intends to interpret and operate DACA for the unforeseeable future exactly as it has been run in the past because the Final Rule is, in all pertinent parts, exactly the same as the 2012 DACA Memorandum.

Consequently, the Final Rule substantively violates the APA and is unlawful for the same reasons as the 2012 DACA Memorandum. The Plaintiff States' Motion for Summary Judgment[67] in this respect is hereby granted, and the Cross-Motions for Summary Judgment filed by the Federal Defendants and the Defendant-Intervenors[68] are hereby denied.

## V.    Severability

Having held that the Final Rule merely reiterates the 2012 DACA Memorandum and therefore substantively violates the APA, the Court must determine whether any part of the rule is

---

[67] (Doc. No. 625-1).

[68] (Doc. Nos. 636, 639, and 641).

23-40653.36387

severable.[69] Despite the dearth of cases from this Circuit, it seems well-settled that the APA allows courts to set aside the offending parts of the rule while keeping the remaining parts of the rule intact. *See e.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). To utilize this tool, a court must first find the rule satisfies two conditions. First, the court must determine that "the agency would have adopted the same disposition regarding the unchallenged portion [of the regulation] if the challenged portion were subtracted." *Sierra Club v. FERC*, 867 F.3d 1357, 1366 (D.C. Cir. 2017). Second, the parts of the regulation that remain must "function sensibly without the stricken provision." *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 351 (D.C. Cir. 2019).[70] It is important to note that inclusion of an express severability clause is "an aid merely; not an inexorable command." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, n. 49 (1997) (citations omitted).

By the mere inclusion of a severability clause, one might conclude that the DHS contemplates that the Final Rule contains problematic sections, and that it desires severability. Indeed, parts of the administrative record express the agency's intent that the Court should sever any unlawful portions of the Final Rule.[71] In fact, the Federal Defendants generally request the Court "sever any aspect of the Rule it considers inconsistent with the statute, but leave in effect

---

[69] This issue was not previously addressed by this Court or the Fifth Circuit because the 2012 DACA Memorandum did not have a severability clause. In fact, the only substantive change from the 2012 DACA Memorandum found in the Final Rule is that the latter contains a severability clause. 8 C.F.R. § 236.24.

[70] Given the relatively small number of APA cases brought in the Fifth Circuit, the case law concerning severability of an APA rule is scant. That said, the parties seem to agree that the two-part analysis is the correct test to use when determining whether a regulation is severable. (*See* Doc. Nos. 681 at 20, 673 at 30).

[71] *See e.g.*, 8 C.F.R. § 236.24(a) (explaining that if any provision of Final Rule is held "invalid and unenforceable in all circumstances," it "shall be severable from the remainder of this subpart and shall not affect the remainder thereof."); *id.* § 236.24(b) ("The provisions in § 236.21(c)(2) through (4) and § 274a.12(c)(14) and 274a.12(c)(33) are intended to be severable from one another, from this subpart and any grant of forbearance from removal resulting from this subpart...."); 87 Fed. Reg. 53,248–49 (responding to comments and maintaining severability "is preferable"); *id.* at 53,256 (a policy of forbearance only "would carry substantial benefits").

the remaining parts, undisturbed by any remedial order."[72] The Plaintiff States, on the other hand, challenge whether severability is proper, arguing the Final Rule would "not function sensibly without the stricken provision."[73]

While the Court is perplexed as to why DHS feels that this Court should try to tailor the Final Rule when the agency made no attempt to do so, the Court will follow the established two-part test to determine whether, and to what extent, severability is proper. The most obvious approach to apply the severability clause would be to separate forbearance from the benefits. This approach was mentioned frequently by commenters in the record. None of the parties suggest a different approach—in fact, they have not argued for any severability approach.

### 1. Would DHS Have Adopted the Final Rule Without the Benefits Provisions?

As mentioned above, the Court must first ask whether "the agency would have adopted the same disposition regarding the unchallenged portion [of the regulation] if the challenged portion were subtracted." *Sierra Club*, 867 F.3d at 1366. In other words, the Court must determine whether DHS would have adopted DACA without the benefits provisions.

Upon examination of the administrative record, it is clear that the DHS would not have adopted DACA without the benefits provisions. First, it expressly rejected that path when it adopted the Final Rule.[74] Second, the DHS does not need the Final Rule to exercise forbearance as to the DACA recipient population. The DHS has always had the right and the power to prosecute or forbear from prosecution any person illegally present in the country, even without an administrative rule or memorandum. Thus, forbearance with no benefits would be superfluous.[75]

---

[72] (Doc. Nos. 639 at 9, 681 at 20–22).

[73] (Doc. No. 673 at 35).

[74] *See e.g.*, AR2022_100237, 87 Fed. Reg. 53,194, (Doc. No. 607-1 at 259).

[75] It is important to note that neither this Court's nor the Fifth Circuit's orders impair that prosecutorial function. DHS has always had the right to exercise prosecution discretion on a case-by-case basis. Consequently, a rule that only

As noted, the record is replete with evidence showing that the DHS would not have adopted the Final Rule without the benefits provisions. For example, DHS argues employment authorization is an important component of the DACA policy with a myriad of positive impacts on recipients, families, and communities.[76] In response to comments about how DACA has increased educational opportunities for DACA recipients, DHS admitted that the purpose of formalizing its existing non-prosecutorial policy was to provide these benefits.[77] Thus, the award of deferred action status with its attendant benefits is the key feature.

In support of its decision to combine benefits with forbearance, DHS explained that a forbearance only policy would "disrupt the reliance of interests of hundreds of thousands of people, as well as the families, employers, and communities that rely on them [and]… would produce a great deal of human suffering, including harms to dignitary interests, associated with lost income and ability to self-support."[78] Later in the administrative record, DHS stated that a forbearance only policy would have substantially lowered the net benefit since it "would result in hundreds of thousands of prime-working-age people remaining in the United States while lacking authorization to work lawfully to support either themselves or their families."[79]

To suggest that this Court should now sever virtually every section or benefit that was considered essential by the Federal Defendants and the Defendant-Intervenors would be contrary

---

encompasses forbearance is a statement of the obvious and reiterates what DHS was already doing before the issuance of the 2012 DACA Memorandum. A forbearance only policy adds nothing to the equation and would leave the DACA recipients where they were in 2011.

[76] AR2022_100238, 87 Fed. Reg. 53,195, (Doc. No. 607-1 at 260).

[77] AR2022_100207, 87 Fed. Reg. 53,164, (Doc. No. 607-1 at 229) ("DHS acknowledges that by applying a more formal administrative framework to forbearance from enforcement with respect to DACA recipients, DHS has enabled a range of additional benefits to this population, including increased educational and professional opportunities that benefit DACA recipients and society at large.").

[78] AR2022_100299, 87 Fed. Reg. 53,256, (Doc. No. 607-1 at 321).

[79] AR2022_100336, 87 Fed. Reg. 53,293, (Doc. No. 607-1 at 358).

to the intentions of the former and to the interests of the latter. If this Court were to sever out the grant of deferred action and then, by necessity, the various components that accompany that status, that would mean those DACA recipients currently employed would lose, among other things, their employment eligibility—a result against which the Defendant-Intervenors have fought for years. Further, if the DACA recipients lost their employment status, the reliance interests that weigh heavily in their favor would shift in favor of the Plaintiff States.

Several commenters also weighed in on this issue, reinforcing the point that "deferred action and work authorization are not separate."[80] DHS agreed with those comments, and in response, explained that it "considered a forbearance-only alternative" and "agrees that a policy of forbearance without work authorization—while still a policy that would carry substantial benefits—would harm the substantial reliance interest of thousands of DACA recipients, their families, employers, and communities."[81] It did not explain the benefits that a forbearance only policy would bestow.

Despite many court decisions to the contrary, DHS maintains that DACA is merely an exercise of prosecutorial discretion. The DHS does not need the 2012 DACA Memorandum or the Final Rule to defer prosecution. This position is also undermined by the administrative record. The Department of Justice set out certain factors that fall under the doctrine of prosecutorial discretion and what does not.[82]

> It is important to recognize not only what prosecutorial discretion is, but also what it is not. The doctrine of prosecutorial discretion applies to law enforcement decisions whether, and to what extent, to exercise the coercive power of the Government over liberty or property, as authorized by law in cases when individuals have violated the law. **Prosecutorial discretion does not apply to affirmative acts of approval, or grants of benefits, under a statute or other**

---

[80] *See* AR2022_100298, 87 Fed. Reg. 53,255, (Doc. No. 607-1 at 320).

[81] AR2022_100299, 87 Fed. Reg. 53,256, (Doc. No. 607-1 at 321).

[82] AR2022_300063–75, (Doc. No. 607-4 at 63–75).

> **applicable law that provides requirements for determining when the approval
> should be given.** For example, the INS has prosecutorial discretion not to place a
> removable alien in proceedings, but it does not have prosecutorial discretion to
> approve a naturalization application by an alien who is ineligible for that benefit
> under the INA.[83]

Perhaps aware of this advisory and other similar ones, various commenters suggested that

DHS should "unbundle" its discretion to forego prosecution or deportation of the putative DACA

recipients from the award of deferred action and the other benefits that DACA status brings. DHS

made clear in its response to those comments that the effects of DACA would be greatly

diminished if it opted to separate these aspects, and it refused to do so.

Additionally, it is well understood that "an agency's decision not to prosecute or enforce"

is "generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831

(1985). Long before DACA was instituted, DHS had already categorized[84] the population of what

would later become DACA recipients as low priority prosecutorial prospects.[85] In fact, at that time,

to even go forward with a civil immigration enforcement or removal action for an individual in

this category, a DHS officer had to get pre-approval.[86] Thus, there was, and is, no need for a formal

---

[83] AR2022_300065, (Doc. No. 607-4 at 65, Immigr. and Naturalization Serv., U.S. Dep't of Just., "Memorandum from Doris Meissner, Exercising Prosecutorial Discretion" (Nov. 17, 2000)) (emphasis added).

[84] AR2022_301637–642, (Doc. No. 608-3 at 47–52, U.S. Immigr. and Customs Enf't., DHS, "Memorandum from John Morton, Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens" (Jun. 17, 2011)).

[85] Indeed, concomitant with the issuance of the 2012 DACA Memorandum, President Obama emphasized that the future DACA recipients were the Dreamers who were already not targets of law enforcement.

> In the absence of any immigration action from Congress to fix our broken immigration system, what we've tried to do is focus our immigration enforcement resources in the right places. So we prioritized border security, putting more boots on the southern border than at any time in our history—today, there are fewer illegal crossings than at any time in the past 40 years. **We focused and used discretion about whom to prosecute, focusing on criminals who endanger our communities rather than students who are earning their education.** And today, deportation of criminals is up 80 percent. We've improved on that discretion carefully and thoughtfully. Well, today, we're improving it again.

AR2022_401446, (Doc. No. 610-3 at 155, White House Off. of the Press Sec'y, "Remarks by the President on Immigration" (June 15, 2012)) (emphasis added).

[86] AR2022_301648, (Doc. No. 608-3 at 58).

policy such as DACA, aside from awarding the recipients some level of formal status and the benefits that accompany that status.[87] This is reinforced by the fact that DHS has no formal program to enforce the law against those who let their DACA status lapse—further proof that the forbearance aspect is not the pivotal point of the program.[88]

An earlier legal memorandum from the Department of Justice stressed the same distinction. That advice seems as if it were written just for this situation.

> While a decision to grant nation-wide relief to a class of illegal aliens could be subject to legal challenges, it is unlikely that a court would reverse the Attorney General's decision not to prosecute this particular class of aliens. Generally, the courts have applied a limited review standards when reviewing the Attorney General's prosecutorial discretion (citing authority).[89]

This is the same distinction the Supreme Court just reinforced in *United States v. Texas*, 143 S. Ct. 1964 (2023).

Despite the advice of various commenters to the Final Rule, DHS purposefully did not decouple the decision not to prosecute from the award of benefits, and in its refusal, stressed that doing so would undermine the entire program. It is clear that DHS had the chance to and purposefully chose not to adopt an unbundled DACA program. It rejected that very suggestion on multiple occasions. The Final Rule fails the first severability factor. Therefore, severability is not proper. Having answered the first part of test in the negative, the Court does not need to further

---

[87] In oral argument in *Texas I*, this Court suggested a variation of this very thing: the issuance of a "non-prosecution" identification card. Such an approach would accomplish the alleged goal of saving CBP and ICE agents time and effort in the field while not violating the law. The Government rejected this suggestion.

[88] In fact, in its 2017 Answers to Frequently Asked Questions, DHS responded that if one lost their DACA status, it did not automatically mean a former DACA recipient had to leave the country. AR2022_400160, (Doc. No. 608-4 at 160). DHS replied that decision is "a separate issue." *Id.* Thus, while DACA provides the protection of "deferred action" status, that benefit (or lack thereof) is separate and apart from any eventual immigration enforcement decision.

[89] AR2022_300082, (Doc. No. 607-4 at 82, Immigr. and Naturalization Serv., U.S. Dep't of Just., Decision Memo 8715, "Memorandum from Office of General Counsel to Alan C. Nelson, Legal Considerations on the Treatment of Family Members Who Are Not Eligible for Legalization" (May 29, 1987)) (emphasis in original). This same memorandum quotes the Senate Judiciary Committee to the effect that one of the goals of the Immigration Reform and Control Act of 1986 (IRCA) is that immigrants will be required to "wait in line"—a goal DACA certainly undermines. AR2022_300081, (Doc. No. 607-4 at 81).

address severability. Nevertheless, the Court will discuss the second question for purposes of being thorough.

## 2. Would the Final Rule Function Sensibly Without the Benefits Provisions?

The second part of the severability analysis examines whether the regulation would "function sensibly" without the stricken provision(s). Again, the answer is no. As previously noted by the Supreme Court in *Regents* and as expressly discussed throughout the administrative record, DACA is primarily a benefits rule. 140 S. Ct. at 1906, 1913[90] ("the benefits attendant to deferred action provide further confirmation that DACA is more than simply a non-enforcement policy [….] the DACA Memorandum does not announce a passive non-enforcement policy; it created a program for conferring affirmative immigration relief."). The Final Rule would not function sensibly as a forbearance only policy. A review of the administrative record (and even the many briefs to this Court) demonstrates the variety of benefits that DACA status has bestowed on the DACA recipients and in turn the benefits that DACA recipients have bestowed on the country. None of this would have been possible under a forbearance only program.

As discussed earlier, various commenters suggested unbundling the various components of the DACA program if for no other reason than to protect it from being vulnerable to legal challenges. DHS refused, taking the position that it was the judiciary's duty to do the sorting. This Court disagrees.

First, it is not the judiciary's duty or role to write or rewrite regulations or rules, especially those that substantively contravene existing legislation. This is especially true when the DHS knew about these deficiencies and purposefully chose to ignore them. Second, if the Court were to do as

---

[90] *Regents*, of course, dealt with the validity of the attempted rescission of the 2012 DACA Memorandum, but as discussed *supra*, the substance of the 2012 DACA Memorandum and the Final Rule are for all practical purposes identical.

23-40653.36394

some suggest, the remaining regulation, stripped of the benefits it directly or indirectly bestows, would become a nullity. As noted, DHS has always had the inherent power—on a case-by-case basis—to exercise prosecutorial discretion with or without a regulation. It was already doing this before 2012, so a forbearance only policy changes nothing. If this Court were to take away the deferred action status (and all the resulting benefits), the DACA recipients would be back where they were—in the country illegally, but not active targets of the DHS. As stated previously, the DHS does not even have a policy to pursue individuals who have lost or failed to renew their DACA status, much less those with DACA status. DHS does not need a rule to enable it to not prosecute someone. While there may be a difference of opinion as to whether prosecutorial discretion is actually being exercised in the DACA arena, neither this Court nor the Fifth Circuit has encroached on the Executive Branch's role in that regard and no formal regulation is needed for it to perform that function.

This Court has written at length on the reliance interests that DACA recipients have in the continuation of this program. It has also acknowledged the many benefits, both financial and otherwise, that DACA recipients bestow on their communities and this country.[91] More importantly, vast portions of the record underlying the Final Rule do the same. If this Court were to slice away all of the DACA associated benefits, it would completely gut the program.[92] Moreover, it would undermine much of the reasoning that exists behind this Court's earlier decision to stay the injunction. Those reliance interests would no longer be part and parcel of DACA, and, consequently, would not figure into this Court's analysis.[93] This Court does not see

---

[91] *See e.g.*, (Doc. No. 319 at 112–15).

[92] *See e.g.*, AR2022_100076, 86 Fed. Reg. 53,811, (Doc. No. 607-1 at 98).

[93] Many of the benefits are not directly bestowed by the Final Rule or even the Federal Government. They are an indirect result of the DHS awarding deferred action status, which in turn bestows legal presence. These associated

a meaningful way to apply the severability clause and leave the program with any functionality. Thus, it fails the second prong of the severability test.

Setting aside the legal conditions that must be satisfied for a court to utilize severability, such an exercise in this instance would undermine virtually every aspect of this program. Congressional action, not administrative rulemaking or judicial rewriting, is what is required to "fix" this program. Congress was the proper place for any such program to originate, and it is the proper branch of the government to remedy the current situation.

This was noted by President Obama and Secretary Napolitano in 2012. Prior to and even following the adoption of the 2012 DACA Memorandum, President Obama specifically noted that he did not have the power to institute a DACA-like program.[94] In the very memorandum establishing DACA, Secretary Napolitano admitted that only Congress can solve the problem of the so-called Dreamers.[95] President Biden and DHS Secretary Mayorkas have likewise acknowledged the same limitations.[96] This Court agrees that under our Constitution, only Congress

---

benefits may vary from state to state and there is no meaningful way for any court to make determinations as to these benefits based upon this record.

[94] "With respect to the notion that I can just suspend deportations through executive order, that's just not the case, because there are laws on the books that Congress has passed...." Univision town hall meeting, Mar. 28, 2011, https://www.youtube.com/watch?v=TfZ3kaKZoIw, (starting at the 1:07 mark). "My job is to execute laws that are passed, and Congress right now has not changed what I consider to be a broken immigration system....we've kind of stretched our administrative flexibility as much as we can." Google+ Hangout Interview, Feb. 14, 2013, https://www.youtube.com/watch?v=-gU09bWifFo, (starting at the 19:27 mark). *See also* AR2022_401447, (Doc. No. 610-3 at 156).

[95] "This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." (Doc. No. 487, Ex. 1, Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012)).

[96] "While Vice President Harris and I will continue fighting to pass legislation to protect Dreamers and create a path to citizenship, only Congress can provide permanent and lasting stability for these young people and their families. Congress must act to protect our Dreamers." Statement from President Joe Biden on the Anniversary of DACA, June 15, 2023, https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/15/statement-from-president-joe-biden-on-the-anniversary-of-daca/. "We are taking action to preserve and fortify DACA. This is in keeping with the President's memorandum. It is an important step, but only the passage of legislation can give full protection and a path to citizenship to the Dreamers who know the U.S. as their home." Statement by Homeland Security Secretary Mayorkas on DACA, March 26, 2021, https://www.dhs.gov/news/2021/03/26/statement-homeland-security-secretary-mayorkas-daca.

can legislate and only Congress has the power to establish immigration laws. U.S. CONST. art. I, §
8.[97] This Court has consistently refused to legislate from the bench, and it will not take up DHS's
offer to do so here.

For the reasons discussed, the Final Rule does not meet either of the preconditions that
warrant an exercise of the severability clause. Therefore, severability is neither proper nor sensible
based upon on the current record.

## IV.    Conclusion

Litigation revolving around the legality of DACA, in one form or another, has existed for
nearly a decade. While sympathetic to the predicament of DACA recipients and their families, this
Court has expressed its concerns about the legality of the program for some time. The solution for
these deficiencies lies with the legislature, not the executive or judicial branches. Congress, for
any number of reasons, has decided not to pass DACA-like legislation. Defendant-Intervenors
argue that this program is supported by the vast majority of Americans[98] and that the failure to
enact it is inexcusable; but Congress's alleged failure to pass, or, stated differently, its decision not
to enact legislation, does not empower the Executive Branch to "legislate" on its own—especially
when that "legislation" is contrary to actual existing legislation. The Executive Branch cannot
usurp the power bestowed on Congress by the Constitution—even to fill a void.

---

[97] Congress itself understands it is the body that must either solve the DACA dilemma or decide that the law should
remain as written. Nancy Pelosi, the then-Speaker of the House of Representatives, has repeatedly indicated that she
wanted Congress to take up this issue—a clear indication that Congress understands the ball is in their court—not this
one. "Pelosi Statement on the 10th Anniversary of DACA", (Jun. 15, 2022), https://pelosi.house.gov/news/press-
releases/pelosi-statement-on-the-10th-anniversary-of-daca; Benjamin Wermund, Dems plan big push to protect
Dreamers, THE HOUSTON CHRONICLE, Nov. 16, 2022 ("House Speaker Nancy Pelosi and Majority Leader Steny
Hoyer both told House Democrats on Tuesday that taking a final shot at codifying the [DACA] program is a priority
in the lame duck session.…").

[98] *See e.g.*, J. Krogstad, *Americans Broadly Support Legal Status for Immigrants Brought to the U.S. Illegally as
Children*, Pew Research Center (June 17, 2020) ("…74% of Americans favor a law that would provide permanent
legal status to immigrants who came to the U.S. illegally as children.…").

DHS takes a somewhat skewed view of its power to act when Congress has not. It seems

to suggest that it has the power to do what Congress has rejected, despite having no legislative or

constitutional authority.

> When Congress does not act, it might be for a wide variety of reasons, including competing priorities and the sheer press of business…By declining to enact the DREAM Act, then, Congress has not rejected or otherwise spoken to the Secretary's authority to establish the DACA policy. It bears repeating that, though well aware of DHS's longstanding administrative practice, including the [2012 DACA] Memorandum, Congress has not taken any action to override or prohibit the use of deferred action.[99]

There are three very troublesome aspects of this position. First, there are many actions

Congress has not taken—perhaps with very good reasons. Its inaction, whether justifiable or not,

does not give DHS *carte blanche* to take any action it wants. Second, DHS cites the 2012 DACA

Memorandum as authority for it to enact the Final Rule, but that Memorandum was illegally

enacted. Citing an illegally enacted policy as authority is hardly comforting. Third, the foregoing

quote implies that DHS takes the position that it is empowered to do whatever it wants and that it

is up to Congress to stop it. This kind of reasoning simply turns the Constitution upside down.

What this Court must do is continue to interpret the law and the Constitution as written,

and in this instance, to resolve the question posed to it by the Fifth Circuit. Here, the Final Rule

was purposefully designed to preserve the 2012 DACA Memorandum as written. DHS has merely

formalized the 2012 DACA Memorandum, a program the Fifth Circuit already found to be

wanting. It also intends for it to be interpreted just as it has been for the last decade. While the

Final Rule may have used somewhat different wording in a few places, the substantive portions

are materially the same as the 2012 DACA Memorandum. DHS purposefully based the Final Rule

on the 2012 DACA Memorandum due to the directive it received from the President. It made no

---

[99] AR2022_100019, 86 Fed. Reg. 53,754, (Doc. No. 607-1 at 41).

effort in the Final Rule to cure any of the substantive problems noted by this Court and confirmed by the Fifth Circuit.

That being the case, the Court finds that the Final Rule, like the 2012 DACA Memorandum before it, is subject to this Court's (and the Fifth Circuit's) prior rulings. There are no material differences between the two programs. As such, the Final Rule suffers from the same legal impediments. The Plaintiff States' Motion for Summary Judgment[100] is granted. The Cross Motions for Summary Judgment[101] are denied. The existing injunction and vacatur order are supplemented to include the Final Rule. The remaining provisions of that injunction order remain intact. To be clear, neither this order nor the accompanying supplemental injunction requires the DHS or the Department of Justice to take any immigration, deportation, or criminal action against any DACA recipient, applicant, or any other individual that would otherwise not be taken.

Signed this 13 day of September, 2023.

Andrew S. Hanen
United States District Judge

---

[100] (Doc. No. 625-1).

[101] (Doc. Nos. 636, 639, and 641).

23-40653.36399

**Tab 4**

Supplemental Order of Injunction (Sept. 13, 2023)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| *v.* | § | Civil Action No. 1:18-CV-00068 |
| | § | |
| THE UNITED STATES OF AMERICA, *et al.*, | § | |
| *Defendants*, | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, *et al.*; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| *Defendant-Intervenors*. | § | |

## SUPPLEMENTAL ORDER OF INJUNCTION

On July 16, 2021, this Court vacated the DACA program created by the 2012 DACA Memorandum and enjoined the United States of America, its departments, agencies, officers, agents, and employees from administering the DACA program and from granting new (post-July 15, 2021) DACA applications. This judgment was affirmed by the Fifth Circuit Court of Appeals. That analysis and order are hereby reaffirmed, and the original injunction and order of vacatur is hereby expanded to cover Final Rule DACA—the program found at 8 C.F.R. pts. 106, 236, and 274a. That program is vacated, and the Department of Homeland Security (DHS) is enjoined from implementing Final Rule DACA until a further order of this Court, the Fifth Circuit Court of Appeals, or the Supreme Court of the United States.

The Court, as it did before, hereby stays the effective date of the vacatur order as to all DACA recipients who received their initial DACA status prior to July 16, 2021. The Defendants may continue to administer the program as to those individuals, and that administration may

include processing and granting DACA renewal applications for those individuals. DHS may continue to accept initial applications if it so chooses, but it may not grant any.

The remaining provisions of the original injunction are to remain in place and are to be applicable to Final Rule DACA. DHS should post a public notice of this Supplemental Injunction on its website and on all of the websites of the relevant agencies involved in DACA administration or processing.

This Court retains jurisdiction of this matter for purposes of construction, modification, and/or enforcement of the terms of the original and this Supplemental Injunction. Moreover, the Court notes that its Memorandum and Opinion issued today concerning Final Rule DACA as well as this supplemental injunction and the original injunction are part of the ongoing case in 1:18-cv-00068. A Final Judgment has not been entered in this case, so all matters not being addressed by an appellate court are still pending in this Court and subject to its jurisdiction. To be clear, neither this Supplemental Order of Injunction nor the Memorandum and Order that accompanies it requires DHS or the Department of Justice to take any immigration, deportation, or criminal action against any DACA recipient, applicant, or any other individual that would not otherwise be taken.

Signed this ⟶ 13 day of September, 2023.

_____
Andrew S. Hanen
United States District Judge

23-40653.36401

**Tab 5**

Memorandum and Order (July 16, 2021)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., | § | |
| *Plaintiffs,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| THE UNITED STATES OF AMERICA, ET AL., | § | Civil Action No. 1:18-CV-00068 |
| *Defendants,* | § | |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| *Defendant-Intervenors.* | § | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court are the Motion for Summary Judgment filed by the Plaintiff States[1] (Doc. No. 486) and the competing Motion for Summary Judgment filed by the individual Defendant-Intervenors.[2] (Doc. No. 503). The Defendant-Intervenors have filed responses in opposition to the Plaintiff States' motion (Doc. Nos. 502, 504) and the Defendants[3] have also responded. (Doc. No. 501). The Plaintiff States combined their reply to these responses with their response to the individual Defendant-Intervenors' motion. (Doc. No. 529). The Defendants have also responded to the individual Defendant-Intervenors' motion. (Doc. No. 527). Finally, the Defendant-

---

[1] While the roster changed somewhat over the history of the case, the Plaintiff States are comprised of Texas, Alabama, Arkansas, Kansas, Louisiana, Mississippi, Nebraska, South Carolina, and West Virginia.

[2] The Defendant-Intervenors are 22 individual DACA recipients plus the State of New Jersey. The Court will refer to them collectively as "Defendant-Intervenors" unless there is a need to refer to them separately. When that occurs, the Court will refer to the DACA recipients as "individual Defendant-Intervenors" and the state as "New Jersey."

[3] The primary defendant is the United States of America, although the following individuals with some supervisory role over DACA have also been named: L. Francis Cissna, Thomas D. Homan, Kevin K. McAleenan, Kirstjen M. Nielsen, and Carla L. Provost. They may be referred to collectively as the "Government" or "Defendants." (The Government has not sought to substitute as parties the new Administration's personnel.)

Intervenors have replied to both of the responses to the individual Defendant-Intervenors' motion. (Doc. Nos. 528, 532).

The Plaintiff States argue in their motion and briefs that the Deferred Action for Childhood Arrivals (DACA) program is illegal because its creation violated, and its continued existence violates, the procedural and substantive aspects of the Administrative Procedure Act (APA). 5 U.S.C. § 500 *et seq*. The Plaintiff States also claim that the Executive Branch violated the "Take Care Clause"[4] of the United States Constitution when it instituted DACA. U.S. CONST. art. II, § 3.

In the individual Defendant-Intervenors' Motion for Summary Judgment, they argue that they are entitled to summary judgment because the Plaintiff States have not carried their burden to establish Article III standing. They emphasize that the Plaintiff States have not introduced evidence sufficient to show that they have suffered any concrete injury or that the remedy they seek would redress any such alleged injury. Defendant-Intervenors also contend that the Plaintiff States have failed to establish *parens patriae* standing or that they should be afforded special solicitude. Additionally, they claim that there is no actual case or controversy within the meaning of Article III because this case lacks adverseness. For these reasons, Defendant-Intervenors conclude that these threshold issues preclude this Court's review on the merits.

## I.     Factual Background

**A.     Creation of DACA**

In 2012, after multiple failed attempts by Congress to pass an act granting lawful status to aliens who were illegally brought to this country as children, then-Department of Homeland Security (DHS) Secretary Janet Napolitano announced a new program called DACA. Her

---

[4] The Court, while using initial caps for ease of readability, acknowledges that "Take Care Clause" more often appears in print as "take Care Clause," which uses a lowercase initial letter in the word "take." This latter approach has been adopted by many scholars and authors because that is how it appears in most copies of the Constitution.

instructions were set forth in a three-page memorandum dated June 15, 2012 (the "DACA Memorandum").[5] The DACA Memorandum directed immigration enforcement officers not to remove "certain young people who were brought to this country as children" who met specific delineated criteria. For those who qualify, DACA allows them to remain in the country temporarily through a renewable two-year period of "deferred action."[6] An illegal alien[7] is eligible for DACA if he or she:

- came to the United States under the age of sixteen;

- has continuously resided in the United States for at least five years preceding [June 15, 2012] and is present in the United States on [June 15, 2012];

- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

---

[5] Doc. No. 487, Ex. 1, Memorandum from Janet Napolitano, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012).

[6] In at least one place in the Code of Federal Regulations, "deferred action" is characterized as "an act of administrative convenience to the government which gives some cases lower priority." 8 C.F.R § 274a.1(c)(14); *see also Reno v. AAADC*, 525 U.S. 471, 483–84 (1999) (describing deferred action as the Executive abandoning the deportation endeavor "for humanitarian reasons or simply for its own convenience").

[7] The Court understands that some may find the phrase "illegal alien" offensive. The Court uses this term because it is used in official government documents as quoted by the Supreme Court in its seminal pronouncement pertaining to this area of law. *See Arizona v. United States*, 567 U.S. 387, 397 (2012). Moreover, "alien" and "immigrant" are defined statutory terms. *See* 8 U.S.C. §§ 1101(a)(3), (15). Furthermore, the Fifth Circuit explained why "illegal alien" is a preferable (and not pejorative) term in a case like this:

> "The usual and preferable term in [American English] is *illegal alien*. The other forms have arisen as needless euphemisms, and should be avoided as near-gobbledygook. The problem with *undocumented* is that it is intended to mean, by those who use it in this phrase, 'not having the requisite documents to enter or stay in the country legally.' But the word strongly suggests 'unaccounted for' to those unfamiliar with this quasi-legal jargon, and it may therefore obscure the meaning.

> More than one writer has argued in favor of *undocumented alien* . . . [to] avoid[] the implication that one's unauthorized presence in the United States is a crime . . . . Moreover, it is wrong to equate illegality with criminality, since many illegal acts are not criminal. *Illegal alien* is not an opprobrious epithet: it describes one present in a country in violation of the immigration laws (hence 'illegal')."

*Texas v. United States*, 809 F.3d 134, 148 n.14 (5th Cir. 2015) (quoting Bryan A. Garner, Garner's Dictionary of Legal Usage 912 (Oxford 3d ed. 2011)); *see also* Matthew Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69, 76 (2015) ("*[I]llegal alien* has going for it both history and well-documented, generally accepted use.").

- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and

- is not above the age of thirty.

In turn, having deferred action makes DACA recipients eligible for various benefits. Generally, aliens are not eligible for any "Federal public benefit." 8 U.S.C. § 1611(a). Aliens who are "lawfully present in the United States," however, are eligible to apply for Social Security and Medicare, *id.* §§ 1611 (b)(2), (3), and a pre-existing regulation defining "lawfully present in the United States" includes "alien currently in deferred action status."[8] 8 C.F.R. § 1.3(a)(4)(vi).

Additionally, deferred action status makes recipients eligible to apply for work authorization pursuant to a pre-existing regulation, *see* 8 C.F.R. § 274a.12(c)(14), and the DACA Memorandum instructs U.S. Citizenship and Immigration Services (USCIS) to consider DACA applicants for work authorization. DACA took the further step of *requiring* its recipients to apply for work authorization. (Doc. No. 9, Ex. 20, USCIS, *DACA Toolkit: Resources for Community Partners*). Once a recipient has work authorization, he or she is eligible for a Social Security number, along with its attendant benefits.[9] 20 C.F.R. §§ 422.104(a)(2), 422.105(a); 8 C.F.R. § 1.3(a)(4)(vi). Further, DACA recipients are also eligible for certain state benefits, such as Texas's state-subsidized work-study program. *See* Tex. Educ. Code § 56.075(a)(1); 19 Tex. Admin. Code § 21.24(d)(5).

---

[8] DACA recipients must still meet the normal criteria to qualify for these benefits. Without lawful presence, however, even an alien who met those criteria would still be ineligible for the benefits. *See Texas I*, 809 F.3d at 148–49. In addition to Social Security and Medicare benefits, DACA recipients also can become eligible for benefits under the Railroad Retirement Act of 1974 and the Railroad Unemployment Insurance Act. 8 U.S.C. § 1611(b)(4).

[9] Among these benefits are earned income tax credits, which require a Social Security number, *see* 26 U.S.C. §§ 32(c)(1)(E), (m); *Texas I*, 809 F.3d at 149, and perhaps even the recent stimulus payments under the American Rescue Plan Act of 2021. *See* Kelly Anne Smith, *Third Stimulus Check: Do Non-U.S. Citizens Qualify?*, Forbes, Mar. 12, 2021.

Despite these benefits, the DACA Memorandum specifically concluded: "This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." The DACA Memorandum made up to 1.9 million otherwise removable aliens eligible for the program.[10] The DACA program started with approximately 152,431 applications in 2012, then DHS approved 370,521 applicants in 2013 and 158,397 in 2014.[11] As of 2018, 814,000 individuals had applied for and received "lawful presence" via DACA. (Doc. No. 225-3, Ex. 73 ¶ 16, Decl. of Dr. D. Massey).

In 2014, the new DHS Secretary, Jeh Johnson, attempted to create a sister program, Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) and to expand the DACA program ("Expanded DACA"). The total population of illegal aliens with lawful presence due to DACA, Expanded DACA, and DAPA could have been 5.8 million[12] (or over 50% of the estimated 11.3 million illegal aliens in the country[13]). Twenty-six states, including the

---

[10] Estimates provided to the Court differ in the total number of DACA-eligible individuals. According to evidence provided by the Defendant-Intervenors, this number could be as high as 1.9 million. (Doc. No. 225-4, Ex. 125 at 514, R. Gonzales et al., *Taking Giant Leaps Forward: Experiences of a Range of DACA Beneficiaries at the 5-Year Mark*, Ctr. for Am. Progress (June 22, 2017)) (describing DACA as "a policy that temporarily defers deportations . . . for up to an estimated 1.9 million eligible unauthorized young adults"). Other estimates are more conservative. (*See, e.g.*, Doc. No. 225-3, Ex. 74 at 148, Decl. of M. Ray Perryman) (estimating "1.3 million people nationwide are eligible to apply for DACA . . . ."); J. Passel & M. Lopez, *Up to 1.7 Million Unauthorized Immigrant Youth May Benefit From New Deportation Rules*, Pew Research Center (Aug. 14, 2012). Rather than relying on extrinsic sources, arguments of counsel, or government statistics that frequently change, the Court instead will use a midrange number of approximately 1.5 million eligible individuals.

[11] Doc. No. 224-2 at 450, USCIS, Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, by FY, Quarter, Intake, Biometrics and Case Status FY 2012-2017 (March 31, 2018).

[12] *See Texas 1*, 809 F.3d at 148.

[13] Some parties, experts, and governmental units rely on an estimate that there are 11.3 million illegal aliens in the United States. That number seems to have originated with a study done by the Pew Research Center that estimated the illegal alien population as of March 2013. (*See* Doc. No. 225-2, Ex. 52, J. Passel et al., Pew Research Center, As Growth Stalls, Unauthorized Immigrant Population Becomes More Settled (Sept. 3, 2014)). This study is now a number of years old and it is arguable whether the number is accurate. A more recent study by Yale University and the Massachusetts Institute of Technology pegs the number at closer to 22 million. M. Fazel-Zarandi et al., *The Number of Undocumented Immigrants in the United States: Estimates Based on Demographic Modeling with Data*

Plaintiff States, sued to enjoin the implementation of DAPA and Expanded DACA, which this Court preliminarily enjoined in 2015. *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015). That injunction was affirmed by the Fifth Circuit Court of Appeals, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), and then later by a split vote in the Supreme Court of the United States. *United States v. Texas*, 136 S. Ct. 2271 (2016). This litigation will be referred to as *Texas I*.

Upon remand, the parties in *Texas I* asked this Court to postpone entering a scheduling order that would have governed the proceedings to a final conclusion on the merits. Throughout this time, the DACA Memorandum remained in force. Ultimately, the parties all agreed to dismiss the case:

> On June 15, 2017, the U.S. Department of Homeland Security released a memorandum entitled *Rescission of November 20, 2014 Memorandum Providing for Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA")*. On September 5, 2017, the Department released a memorandum entitled *Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children."* Given these memoranda rescinding the DAPA program and phasing out the DACA and Expanded DACA programs, Plaintiffs file this stipulation of voluntary dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (allowing plaintiffs to dismiss an action, without court order, by filing a stipulation of dismissal by all parties who have appeared).

(Doc. No. 473, *Texas I*).

This stipulation of dismissal was signed by the attorneys for the plaintiffs (a group that included all of the Plaintiff States in this case), the United States and the federal government defendants, and the putative DAPA recipients who had intervened. As is evident from its text, the stipulation was partly based upon the Government "phasing out the DACA . . . program[]." All

---

*From 1990 to 2016*, PLOS One (Sept. 21, 2018). Given the nature of individuals being in the country illegally, no person, entity, or governmental unit can really know the number of illegal aliens.

parties agreed to the stipulation, otherwise such a dismissal would have required court action.

## B.   Rescission of DACA and *Regents*

After *Texas I*, the Government attempted to phase out DACA, as it represented to the Plaintiff States it would, but other courts around the nation were asked to enjoin or vacate the attempt to end the program. These lawsuits included: *Batalla Vidal v. Trump*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018); *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018); *Regents of Univ. of Cal. v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018); and *Casa de Md. v. United States*, 284 F. Supp. 3d 758 (D. Md. 2018). The courts in the first three cases entered injunctions against the attempted DACA rescission. These cases were eventually appealed to and heard together by the Supreme Court in the case styled: *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (hereinafter "*Regents*").

Meanwhile, in May 2018, the Plaintiff States filed the current case challenging the lawfulness of DACA as it was enacted in 2012. The Plaintiff States now seek the same result they thought they had achieved with the stipulation of dismissal in *Texas I*—that is, cessation of DACA. While finding that they would likely succeed on the merits, this Court denied the Plaintiff States' request for a preliminary injunction. (Doc. No. 319). Over the objections of the Plaintiff States, the resolution of this case was stayed pending the ruling in *Regents* because it was important to have the benefit of the Supreme Court's analysis before proceeding, particularly as the decision could have mooted this case.

Once the Supreme Court ruled, the parties were given adequate time to update their motions and briefs to include any relevant analysis of the *Regents* opinion. The Court then held a hearing at a time when it could be done safely, given the logistical complications presented by the COVID-19 pandemic.

The *Regents* opinion, written by Chief Justice John Roberts, dealt with DACA's attempted recission, but it has some relevance here. In 2017, the Attorney General, based in part on the *Texas I* litigation, concluded that DACA was unlawful and sent a letter to then-Acting DHS Secretary Elaine Duke to that effect. *Regents*, 140 S. Ct. at 1903. Based on that letter, the Acting Secretary issued a memorandum rescinding the DACA program. *Id.* Various stakeholders sued to enjoin the rescission. *Id.* The Chief Justice succinctly set out the exact questions the *Regents* Court needed to address: "The issues raised here are (1) whether the APA claims are reviewable, (2) if so, whether the rescission was arbitrary and capricious in violation of the APA, and (3) whether the plaintiffs have stated an equal protection claim." *Id.* at 1905.

In *Regents*, the Supreme Court found the Government's decision to rescind DACA was judicially reviewable. There is a general presumption of reviewability that can be rebutted by a showing that the action is committed to "agency discretion by law." 5 U.S.C. § 701(a)(2). An argument in *Regents*, in *Texas I*, and at the preliminary injunction stage in this litigation, was that DACA is an agency decision not to institute enforcement proceedings and as such neither its creation nor rescission is reviewable.

The Supreme Court disagreed with this argument and recognized that "DACA is not simply a non-enforcement policy." *Regents*, 140 S. Ct. at 1906. Instead, the DACA Memorandum created standardized proceedings by which USCIS solicits and reviews applications from eligible aliens. *Id.* The proceedings are effectively "adjudications," and the result of the adjudications is an affirmative act of approval. *Id.* The Supreme Court concluded that the DACA Memorandum therefore "created a program for conferring affirmative immigration relief. The creation of that program—and its rescission—is an action that provides a focus for judicial review." *Id.* (cleaned up).

Having determined that the rescission of DACA was subject to judicial review, the Supreme Court found that "judicial review of agency actions is limited to 'the grounds that the agency invoked when it took the action.'" *Id.* at 1907 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). It continued on to explain: "Considering only contemporaneous explanations for agency action also instills confidence that the reasons given are not simply convenient litigating positions." *Id.* at 1909 (quotations omitted). Additionally, the *Regents* Court emphasized that procedural compliance, in the context of rescission, "promote[s] agency accountability, by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority." *Id.* (citations and quotations omitted). It also noted that the APA procedural requirement of notice and comment, a pivotal issue in the instant case, was not before it. *Id.* at 1903 n.1.

Central to the *Regents* decision was whether the rescission of DACA, under the circumstances presented, was arbitrary and capricious. The Court held that, in light of the Attorney General's reliance on the *Texas I* litigation, which did not question DHS's authority to forbear removal, the Acting Secretary's explanation for rescinding all of DACA (benefits *and forbearance*) was arbitrary and capricious under the APA. *Id.* at 1912–13. Additionally, the Acting Secretary's failure to consider the significant reliance interests that DACA had engendered was another, independent, reason that the rescission was arbitrary and capricious. *Id.* at 1913–14.

Justice Sonia Sotomayor (who disagreed with the majority's rejection of the equal protection challenge) and Justice Brett Kavanaugh (who opined that the Court should have considered the agency's later justifications) filed separate opinions. *Id.* at 1917, 1933.

Finally, the dissent filed by Justice Clarence Thomas and joined by Justices Samuel Alito and Neil Gorsuch addressed the ultimate issue that is before this Court—the legality of DACA's

creation. According to the dissenters, DHS was "without any statutory authorization" to create DACA, and, even if DHS did have such authority, the agency needed to go through "the requisite rulemaking process" to create DACA. *Id.* at 1918–19 (Thomas, J., dissenting). DACA was therefore an "unlawful program" whose rescission could not have possibly been arbitrary or capricious. *Id.* While a dissenting opinion does not carry the full force and compelling nature of a majority opinion, it is clear the dissenters found DACA to have been illegal *ab initio*.

Justice Thomas noted that the majority's failure to address DACA's creation was "an effort to avoid a politically controversial but legally correct decision" that would result in future "battles to be fought in this Court." *Id.* at 1919. While this controversial issue may ultimately return to the Supreme Court, the battle Justice Thomas predicted currently resides here and it is not one this Court can avoid.

## C.     DACA After *Regents*

After the *Regents* decision, DHS issued a series of letters and memoranda that attempted to limit the DACA program ("New DACA"). New DACA consisted of Attorney General William Barr's June 30, 2020 letter, Acting Secretary of DHS Chad Wolf's July 28, 2020 memorandum, and USCIS Deputy Director for Policy Joseph Edlow's August 21, 2020 memorandum.

New DACA spurred more litigation, which was addressed in *Batalla Vidal v. Wolf*, 16-CV-4756, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020). There, the district court held that New DACA was unlawful because "Mr. Wolf was without lawful authority to serve as Acting Secretary of DHS." *Id.* at, *1. As a result, the court vacated the memorandum and found that DACA is currently governed by the same terms as it was in 2012, before any attempted rescission. In the wake of *Batalla Vidal*'s resolution, New DACA has little bearing on the present litigation.

## II.     Issues Before and Not Before the Court

The Court is faced with five primary issues to resolve these competing summary judgment motions. Though this Court addressed many of these issues earlier in this litigation, they arose in the context of a request for preliminary injunction and on a somewhat more limited record. The five issues before the Court are:

1)     Do the Plaintiff States have standing to challenge DACA?

2)     Was DHS required by the APA to go through notice and comment rulemaking to institute DACA?

3)     Does DACA violate substantive immigration law in contravention of the APA?

4)     Did the Executive Branch violate the Take Care Clause of the Constitution with the creation and continued operation of DACA?

5)     If the Plaintiff States are correct, what relief should this Court grant?

While many of the amici curiae, and even the parties at times, have suggested or argued that other issues are related and should be addressed, the rulings of the Court are confined to these five issues.

## III.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## IV. Analysis

### A. This Case Presents a Case or Controversy

The Constitution limits the exercise of judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2. Under Article III, a case must present a genuine controversy between adverse parties to be justiciable. *See INS v. Chadha*, 462 U.S. 919, 939 (1983). Defendant-Intervenors initially argued that this case does not present an actual case or controversy because opposing sides are aligned: "[Plaintiff States] and [the Government] agree—DACA is unlawful." (Doc. No. 504 at 39). They also contended that under New DACA, the Government is no longer implementing the challenged policy, 2012 DACA. (Doc. No. 504 at 40).

When the federal government is a party, the "case or controversy" requirement is satisfied if the federal government continues to enforce the challenged policy. *United States v. Windsor*, 570 U.S. 744, 758–59 (2013). In *Windsor*, the Supreme Court considered whether a justiciable controversy existed when the Executive Branch enforced a statute against an individual despite agreeing with her that it was unconstitutional. The Supreme Court held that even where "the Government largely agree[s] with the opposing party on the merits of the controversy," the

23-40653.25195

Government's intent to enforce the challenged law provides sufficient adverseness to maintain jurisdiction over the suit. *Id.* at 759.

The Government's continued operation of DACA is analogous to the continued enforcement of the statute in *Windsor*. The alleged source of the Plaintiff States' injuries is the Government's enforcement of DACA, and this remains true whether or not the Government originally agreed with the Plaintiff States on the merits. Thus, the Defendant-Intervenors' contention that the Plaintiff States and the Government "are, in fact, aligned" is immaterial. (Doc. No. 504 at 39).

Even more to the point, New DACA, which Defendant-Intervenors relied upon to suggest that the Government has ceased to enforce 2012 DACA, is no longer in effect. *See Batalla Vidal*, 2020 WL 7121849, at *1 ("Accordingly, because Mr. Wolf was without lawful authority to serve as Acting Secretary of DHS, [New DACA] is VACATED."). After ruling that New DACA was unlawful, the court held that "all parties agree that the DACA program is currently governed by its terms as they existed prior to the attempted rescission of September 2017." *Id.* In other words, 2012 DACA is the policy in effect now.

Moreover, President Joseph Biden has recently signed a memorandum entitled, "Preserving and Fortifying Deferred Action for Childhood Arrivals (DACA)," which directs the DHS Secretary and the Attorney General to take actions consistent with applicable law "to preserve and fortify DACA." (Doc. No. 550-1). Consequently, the Government is enforcing and preserving the challenged program, 2012 DACA. The Government's latest filing also demonstrates that it staunchly defends DACA and strongly opposes the position of the Plaintiff States.[14] Its arguments

---

[14] A quick review of the argument section of the Table of Contents from the Government's latest brief demonstrates its positions are clearly opposed to those of the Plaintiff States. The headings read as follows: "1) Plaintiffs Lack Standing or a Viable Cause of Action to Challenge DACA; 2) DACA Is Lawful; 2a) DACA Is Substantively Lawful Under the INA; 2b) DACA Did Not Need to Go Through Notice-and-Comment Rulemaking; 3) DACA Does Not

are diametrically opposed to the Plaintiff States' positions and are aligned with the Defendant-Intervenors' positions.

Finally, this Court allowed all the intervenors into this lawsuit in order that they could challenge the Plaintiff States' positions. They have done that vehemently and ably. There can be no doubt that this case presents an Article III controversy. It has been fought hard and professionally by the lawyers for all concerned.

## B.   The Plaintiff States Have Standing

The Constitution's "Cases or Controversies" requirement gives rise to another doctrine to maintain the proper bounds of judicial power—standing to sue. U.S. CONST. art. III, § 2; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A federal court can exercise judicial power only when a plaintiff has demonstrated that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560–61).

Defendant-Intervenors contend that they are entitled to summary judgment because the Plaintiff States lack standing to sue. The Plaintiff States have the burden of establishing that at least one of the plaintiffs has Article III standing. *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). The Court's analysis will concentrate on whether Texas has standing to sue because all parties have focused their standing arguments on DACA's impact in Texas.

---

Violate the Take Care Clause; 4) In the Alternative, the Court Should Craft a Narrow Remedy that Minimizes Disruption to DACA Recipients; and 5) If This Court Grants Plaintiffs Immediate Relief, Then It Should Stay Its Ruling." (Doc. No. 569 at 2).

The Plaintiff States assert several independent theories of standing and contend that under the Supreme Court's ruling in *Massachusetts v. EPA*, 549 U.S. 497 (2007), they are entitled to special solicitude when the Court makes its standing determination. An entitlement to special solicitude would inform the Court's standing analysis, so the Court first considers whether to afford Texas special solicitude. It will then consider whether the Plaintiff States have standing.

### 1.    Special Solicitude

The Supreme Court has explained that "States are not normal litigants for the purposes of invoking federal jurisdiction." *Massachusetts*, 549 U.S. at 518. Rather, a state is afforded "special solicitude" when it alleges that a defendant "violated a congressionally accorded procedural right which affected the State's 'quasi-sovereign' interests in, for instance, its physical territory or lawmaking function." *Texas v. United States*, 6:21-CV-00003, 2021 WL 2096669, at *10 (S.D. Tex. Feb. 23, 2021) (citing *Massachusetts*, 549 U.S. at 520–21 and *Texas I*, 809 F.3d at 151–55). The Supreme Court has not been explicit about the consequences of having special solicitude in a standing analysis, but it appears that recognition of this status would mitigate perceived weaknesses in causation and redressability arguments. *Massachusetts*, 549 U.S. at 524 (finding causation and redressability, and rejecting the premise that "a small incremental step, because it is incremental, can never be attacked in a federal judicial forum").

The Fifth Circuit has explicitly interpreted special solicitude to lower the level of certainty required in the traditional causation and redressability analysis. *See Texas I*, 809 F.3d at 159 ("[T]he government theorizes that Texas's injury is not fairly traceable to DAPA because it is merely an incidental and attenuated consequence of the program. But *Massachusetts v. EPA* establishes that the causal connection is adequate. Texas is entitled to the same 'special solicitude' as was Massachusetts, and the causal link is even closer here."); *see also Texas*, 2021 WL 2096669,

at *20. Applying the law set out in *Massachusetts v. EPA* and *Texas I*, the Court finds that Texas is entitled to special solicitude.

In *Massachusetts v. EPA*, Massachusetts sued to challenge the decision of the Environmental Protection Agency (EPA) not to regulate certain vehicle emissions. The EPA argued that Massachusetts lacked standing to sue and sought dismissal of the case. The Supreme Court found that Massachusetts did have standing, based in part on the difference between a state seeking relief on behalf of its citizens and a normal litigant. *Massachusetts*, 549 U.S. at 518.

The Court came to this conclusion after determining that Massachusetts was entitled to special solicitude due to the presence of two factors: a procedural right to challenge the agency action and a quasi-sovereign interest in the state's territory. The Court first found that Massachusetts had a procedural right to sue because the Clean Air Act—which Massachusetts sued to enforce—provided a concomitant procedural right whereby Massachusetts could challenge the rejection of its rulemaking petition as arbitrary and capricious. *Id.* at 520.

The Supreme Court next emphasized Massachusetts's desire to protect its quasi-sovereign interest in its territory. *Id.* at 519. Expanding on precedent from 1907, it found that Massachusetts's desire to preserve sovereign territory in its coastline from the threat of rising sea levels constituted a quasi-sovereign interest. *See id.* ("Just as Georgia's independent interest 'in all the earth and air within its domain' supported federal jurisdiction a century ago, so too does Massachusetts's well-founded desire to preserve its sovereign territory today.") (quoting *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907)). The Court explained that Congress's command to the EPA to protect Massachusetts from the alleged harm took on a heightened significance because Massachusetts, in exchange for entering the union, had relinquished its "sovereign prerogatives" to regulate for itself the harms associated with air pollutants. *Id.* Finding both factors met, a procedural right to

challenge the inaction of the EPA and a quasi-sovereign interest in protecting its territory, the Supreme Court determined Massachusetts was entitled to special solicitude. *Id.* at 520.

For purposes of this special solicitude analysis, this Court does not write on a clean state. In *Texas I*, the Fifth Circuit ruled that Texas was entitled to special solicitude based upon facts substantially similar to those here. 809 F.3d at 151–55. It held that states had special solicitude to defend against DAPA and Expanded DACA's "institutional injury to their lawmaking authority." *Id.* at 154.

Considering the first factor, the Circuit found that Texas's procedural right under the APA to challenge DAPA and Expanded DACA was analogous to Massachusetts's procedural right to challenge the EPA's decisions not to promulgate emission standards. *Id.* at 152. The Fifth Circuit explained why the analysis from *Massachusetts* was applicable even though the Clean Air Act provided a more specific procedural right than the APA:

> The Clean Air Act's review provision is more specific than the APA's, but the latter is easily adequate to justify "special solicitude" here. The procedural right to challenge EPA decisions created by the Clean Air Act provided important support to Massachusetts because the challenge Massachusetts sought to bring—a challenge to an agency's decision *not to act*—is traditionally the type for which it is most difficult to establish standing and a justiciable issue. Texas, by contrast, challenges DHS's *affirmative decision* to set guidelines for granting lawful presence to a broad class of illegal aliens. Because the states here challenge DHS's decision to act, rather than its decision to remain inactive, a procedural right similar to that created by the Clean Air Act is not necessary to support standing.

*Id.* (second emphasis added). Just as in *Texas I*, the Plaintiff States here seek to challenge DHS's affirmative decision to set guidelines for granting lawful presence to a broad class of illegal aliens. The Fifth Circuit's analysis, as applied to DAPA and Expanded DACA in *Texas I*, is equally applicable to Texas's procedural right to challenge DACA in the instant case. Therefore, Texas easily satisfies the first factor in the special solicitude analysis. Just like Massachusetts had a right to demand that the EPA enforce the Clean Air Act as Congress had commanded, the Plaintiff States

have a right under the APA to demand that DHS administer the immigration laws in the manner dictated by Congress.

The Fifth Circuit's analysis of the second factor, the quasi-sovereign interest, is not as easy to apply here. In *Texas I*, the majority found that DAPA affected the state's quasi-sovereign interest by imposing "substantial pressure" on the states to "change their laws, which provide for issuing driver's licenses to some aliens and subsidizing those licenses." *Id.* at 153. Here, Texas does not allege injury due to driver's license costs. Nevertheless, Texas has demonstrated a quasi-sovereign interest in its own economic well-being and that of its citizens to support its entitlement to special solicitude in the standing analysis.

In *Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, the Supreme Court recognized that a state has a "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." 458 U.S. 592, 607 (1982). It also recalled that it had "long recognized that [such interests] extend beyond mere physical interests to *economic and commercial interests*." *Id.* at 609 (emphasis added). The Supreme Court elaborated that any indirect effects of the challenged conduct must be considered in the determination of whether the state has alleged injury to "a sufficiently substantial segment of its population." *Id.* at 607. The Court remarked that a helpful indicator of a quasi-sovereign interest is "whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.*

Texas has successfully demonstrated a quasi-sovereign interest. Texas seeks to protect its legal residents' economic and commercial interests from labor market distortion caused by DACA. (Doc. No. 486 at 32; Doc. No. 104 ¶ 240). According to the Plaintiff States, DACA bypasses Congress's comprehensive immigration framework to grant lawful presence, and thereafter work authorizations, to unlawfully present individuals. DACA recipients may then compete with legally

23-40653.25201

present individuals for available jobs. (*See* Doc. No. 487, Ex. 14 ¶ 13, Decl. of D. Deere) (asserting that rise in eligible workers due to DACA increases competition in available jobs); (*id.*, Ex. 15 at 6–7, Depo. of I. Brannon) (stating presence of DACA recipients leads to increase in competition among similarly skilled workers in the workplace and impacts wages). Even Defendant-Intervenors' own experts could not escape the reality that DACA congests the workforce: "[W]ork authorizations and deferral from deportation provided by DACA allow recipients to better compete with legally present workers . . . ." (Doc. No. 487, Ex. 24 ¶ 6.a., Decl. of M. Wiehe & M. Hill).[15]

The Plaintiff States further argue that the Patient Protection and Affordable Care Act (ACA) exacerbates this problem. (Doc. No. 486 at 33–34). Under the ACA, certain large employers are generally required to offer health insurance to their full-time employees that provides "minimum essential coverage." *See* 26 U.S.C. § 4980h. An employer who offers coverage that does not provide minimum essential coverage will face a penalty if any of its employees purchases coverage on the insurance exchange and receives a premium subsidy. *See id.* DACA recipients, however, cannot receive a premium subsidy because, as aliens, they are generally prohibited from receiving any federal public benefit. 8 U.S.C. § 1611(A). Accordingly, an employer may offer to DACA-recipient employees coverage that does not provide minimum essential coverage without risking a penalty. This facet of the ACA can make DACA recipients less costly to employ for some employers, thereby incentivizing employers to hire DACA recipients over similarly qualified legal Texas residents. (*See* Doc. No. 487, Ex. 14 ¶ 24) ("[A]s a result of the interaction between the DHS Memorandum and the ACA, there will be relatively less

---

[15] The Supreme Court suggested that a court consider "whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Alfred L. Snapp*, 458 U.S. at 607. Here the Plaintiff States would clearly attempt to address this issue, but they cannot legislate around DACA, because immigration policy falls within the sole ambit of the federal government. *Arizona*, 567 U.S. at 399 ("[T]he States are precluded from regulating conduct in a field that Congress . . . has determined must be regulated by its exclusive governance."). Unable to pass their own laws regarding immigration status or policy, the states are hamstrung by the federal government's action or inaction.

hiring of U.S. citizens and relatively lower wages on average for those who are hired.").

The very existence of a larger eligible workforce, even if one discounts the incentives provided by the ACA, necessarily contributes to a more competitive labor market, which makes it more difficult for legal residents of Texas to obtain work. Thus, Texas, on behalf of the Plaintiff States, has sufficiently shown that DACA conflicts with its own quasi-sovereign interest in the economic and commercial well-being of its legal residents.[16]

Defendant-Intervenors argue that dicta in a recent Supreme Court decision, *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), which was decided after *Texas I*, undermines the validity of the Fifth Circuit's finding that DAPA implicated the quasi-sovereign interests of the states. (Doc. No. 504 at 38). In particular, Defendant-Intervenors emphasize that in *Murphy* the Supreme Court explained that federal legislation that operates as "a direct command to the States" implicates sovereign interests, whereas federal governmental action that directly regulates private individuals does not. *Murphy*, 138 S. Ct. at 1479–81. According to Defendant-Intervenors, because "DACA is the latter, a mere exercise of federal enforcement discretion that directly affects only private parties (*i.e.*, DACA recipients)," it neither strips the states of their powers nor intrudes on their sovereignty in such a way that would support finding a quasi-sovereign interest. (Doc. No. 504 at

---

[16] The Plaintiff States' interest in protecting their residents is one of the hallmarks of special solicitude. In *Batalla Vidal v. Duke*, 295 F. Supp. 3d 127 (E.D.N.Y. 2017), and the associated cases concerning DACA, 13 states and the District of Columbia were all found to have standing under the concept of special solicitude as set out in *Massachusetts v. EPA*. That court emphasized that this was especially true when the federal action in question was not enacted in compliance with the requirements of APA notice and comment. It held:

> Moreover, Washington has standing to challenge the procedures by which Defendants decided to end the DACA program, because "there is some possibility" that, if DHS complied with notice-and-comment . . . rulemaking procedures, it might "reconsider the decision." *See Massachusetts v. EPA*, 549 U.S. at 518, 127 S. Ct. 1438. Because Washington has established its standing to assert substantive and procedural APA . . . claims, the State Plaintiffs therefore have Article III standing to bring these claims. *See FAIR*, 547 U.S. at 53 n.3, 126 S. Ct. 1297.

*Duke*, 295 F. Supp. 3d at 158–59. Certainly, if the Plaintiff States had been given the opportunity to express the concerns raised here through a notice and comment procedure, "there is some possibility" that DHS might have taken a different course of action.

38). *Murphy*, however, does not support this argument.

*Murphy* discussed federal legislation *only* in the context of anti-commandeering[17] and preemption. *Murphy* never mentions special solicitude. In *Murphy*, sports leagues sued to enjoin New Jersey from enforcing a state law that partially repealed the state's prohibition on gambling. 138 S. Ct. at 1472. The Third Circuit affirmed a grant of summary judgment for the sports leagues on the basis that the New Jersey state law violated federal law, the Professional and Amateur Sports Protection Act (PASPA). *Id.* The Circuit opined that PASPA did not violate anti-commandeering principles because it did not force states to take any affirmative action. *Id.* at 1473. The Supreme Court reversed, finding that PASPA's provision making it unlawful for states to authorize sports gambling contravened the anti-commandeering doctrine because the "provision unequivocally dictate[d] what a state legislature may and may not do." *Id.* at 1478.

In reaching its holding, the Supreme Court reviewed some of its prior cases that discuss anti-commandeering and revisited federal laws that it had previously held do not violate the anti-commandeering doctrine. It recognized that those specific federal laws did not infringe on certain state "sovereign authorities" or "sovereign powers," because they "applied equally to state and private actors" and "did not regulate the States' sovereign authority to regulate their own citizens." *Id.* at 1478–79 (quotations omitted).

Defendant-Intervenors try to extrapolate from this Supreme Court review of anti-commandeering law the conclusion that DACA does not intrude upon Texas's quasi-sovereign interests because DACA applies only to private actors. (Doc. No. 504 at 38). First, the premise is

---

[17] According to the Supreme Court, the doctrine of anti-commandeering stands for the proposition that "the Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997).

wrong: DACA does not apply only to private actors. It applies equally to public actors.[18] Texas has over 110,000 DACA recipients and it must treat them as having lawful presence. (*See* Doc. No. 487, Ex. 22 ¶ 13, Supp. Decl. of D. Deere). Their presence and the need for Texas to provide services for them is certainly a public concern. As discussed below, the DACA recipients' presence also represents direct costs in the areas of healthcare, education, and social services.

Second, while the concept of federalism informs both the doctrines of anti-commandeering and special solicitude, there is no precedent cited that relates the anti-commandeering doctrine to special solicitude. Likewise, there is no authority that dictates a state must argue an anti-commandeering violation to establish an entitlement to special solicitude. Here, Texas is not arguing that DACA violates any anti-commandeering principle (nor is there an argument that DACA would be illegal if passed by Congress). There is no clear link between a state's "sovereign interests" in the context of anti-commandeering and a state's *quasi*-sovereign interests in the context of special solicitude. *Murphy* does not mention special solicitude, quasi-sovereign interests, or standing in this context.[19] Accordingly, there is nothing in the decision that challenges the soundness of the Fifth Circuit's previous holding that Texas was entitled to special solicitude or indicates that such a finding is not applicable here. *See Texas I*, 809 F.3d at 154.

When states must "rely on the federal government to protect their interests," *id.*, special

---

[18] In reliance on *Massachusetts v. EPA*, various public actors have been held to have standing to challenge DACA's rescission, despite the fact that they are not DACA recipients, the only party the Defendant-Intervenors claim DACA affects. In *Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, these included the University of California (because the school recruited DACA students who might withdraw if they lost DACA status), California and Minnesota (because they employed DACA recipients whose loss would allegedly hurt their workforce and they wanted to protect the diversity of their public institutions), and the City of San Jose and the County of Santa Clara (due to concerns over the possible loss of employees and the cost to replace them). Even in this case New Jersey intervened to protect its workforce. (Doc. No. 42). Texas's interest in protecting its own workers is no less important.

[19] A concurring opinion in *Murphy* does mention standing in its discussion of the severability doctrine, that "often requires courts to weigh in on statutory provisions that no party has standing to challenge." 138 S. Ct. at 1487 (Thomas, J., concurring). That reference, however, has no bearing here.

solicitude is especially relevant. States undoubtedly rely on the federal government in the area of immigration because they cannot pass or enforce their own immigration laws: "Where Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona*, 567 U.S. at 401. States are even prohibited from enforcing *federal* immigration laws:

> Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders. If § 3 of the Arizona statute were valid, every State could give itself independent authority to prosecute federal registration violations, "diminish[ing] the [Federal Government]'s control over enforcement" and "detract[ing] from the 'integrated scheme of regulation' created by Congress."

*Id.* at 402 (quoting *Wis. Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 288–89 (1986)). The Fifth Circuit has already found that Texas's interest in immigration regulation implicated the very same types of sovereignty concerns as Massachusetts's interest did in *Massachusetts v. EPA*:

> When the states joined the union, they surrendered some of their sovereign prerogatives over immigration. They cannot establish their own classifications of aliens, just as "Massachusetts cannot invade Rhode Island to force reductions in greenhouse gas emissions [and] cannot negotiate an emissions treaty with China or India."

*Texas I*, 809 F.3d at 153 (quoting *Massachusetts*, 549 U.S. at 519). When, as here, a state has ceded its authority to regulate a certain area of the law, special solicitude is particularly warranted.

The primary avenue under our Constitution for a state to protect itself and its residents from unwanted federal action is through its elected officials in Congress. Congress has passed immigration laws, but, according to the Plaintiff States, the Executive Branch has refused to enforce those laws. If the Government's argument that a state lacks standing to complain about the Executive Branch's failure to enforce the law in court is accurate, then a state would have no recourse. This is not how our system of federalism was designed to work. The states gave up

certain rights when they joined the union in return for the promise of the federal government to abide by the Constitution and duly-enacted laws. If the Executive Branch refuses to do that, the courts provide the only avenue for redress.

Just as in *Massachusetts v. EPA* and *Texas I*, the Plaintiff States here must "rely on the federal government to protect their interest," *Texas I*, 809 F.3d at 154, and if the Executive Branch attempts to establish policies contrary to statute, Congress has provided the states a procedural vehicle in the APA to seek redress. Accordingly, the Plaintiff States have shown that Texas is entitled to special solicitude in the Court's standing analysis. To that end, the Plaintiff States are afforded the benefit of a relaxed standard in the traditional causation and redressability analysis of standing. *See id.* at 159.

### 2.    *Parens Patriae* Standing

The Plaintiff States rely, in part, on the doctrine of *parens patriae* to establish an independent basis for standing in their suit. (Doc. No. 486 at 34). *Parens patriae* permits a state to bring suit to protect the interests of its citizens, even if it cannot demonstrate a direct injury to its separate interests as a sovereign entity. *See Alfred L. Snapp*, 458 U.S. at 601. The Supreme Court has explained: "[T]o have such [*parens patriae*] standing the State must assert an injury to what has been characterized as a 'quasi-sovereign' interest." *Id.* The Plaintiff States argue that they may sue under *parens patriae* because DACA injures the economic interests of their legal residents.

Defendant-Intervenors argue that Plaintiff States may not invoke *parens patriae* because of the *Mellon* bar, which prohibits a state from acting in the role of *parens patriae* to sue the federal government to protect its citizens from the operation of a federal statute. *See Massachusetts v. Mellon*, 262 U.S. 447 (1923). According to Defendant-Intervenors, Plaintiff States are suing the federal government to protect their citizens from the operation of DACA. (Doc. No. 504 at 31–

32).[20] Defendant-Intervenors also argue that even if there were *parens patriae* standing available to the Plaintiff States, the Plaintiff States' evidence of their theory of harm—labor market distortion—is inadequate. (*Id.* at 33–34). They further urge that any alleged harm is outweighed by the economic benefits that DACA creates and that DACA, in fact, strengthens the Texas economy. (*Id.*).

Even assuming the *Mellon* bar applies to agency action, it would not operate to bar the Plaintiff States' claims. In *Massachusetts v. EPA*, the Supreme Court, citing *Georgia v. Pa. R.R.*, 324 U.S. 439 (1945), rejected the argument that *parens patriae* standing is categorically barred in suits against the federal government. 549 U.S. at 520 n.17. The majority noted that there is a "critical difference between allowing a State to protect her citizens *from* the operation of federal statutes (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Id.* (emphasis added) (quotations omitted). After *Massachusetts v. EPA*, it is clear the *Mellon* bar prohibits a state's use of *parens patriae* standing to shield its citizens from the operation of federal statutes, but permits a state to assert its rights under federal law.

Here, the Plaintiff States have demonstrated that they wish to assert rights under federal law, just as Massachusetts was asserting its rights under the Clean Air Act. The Plaintiff States bring this APA action to assert their procedural right of notice and comment as it pertains to DACA, to challenge the agency action as outside of DHS's statutory authority, and to enforce the statutory language of the Immigration and Nationality Act (INA) and other immigration provisions. The Plaintiff States are not seeking protection *from* the operation of federal law; they

---

[20] The *Mellon* bar applies to statutes. Throughout their argument, the Defendant-Intervenors attempt to gloss over the fact that the DACA Memorandum is *not* a federal statute.

want the Executive Branch to enforce the law as Congress has written it.[21] The *Mellon* bar is inapplicable.

Regarding the Defendant-Intervenors' challenge to the Plaintiff States' theory of harm, as summarized above in the special solicitude analysis, the Plaintiff States have demonstrated that DACA arguably causes the injury to their quasi-sovereign interest in the economic well-being of their legal residents. DACA causes that injury because it alone grants lawful presence and requires that USCIS accept applications from DACA recipients for work authorization, which enables recipients to compete with lawful workers for jobs. (*See* Doc. No. 487, Ex. 22 ¶ 13) ("[T]he addition of . . . 114,000 [work-eligible individuals] in Texas, will, other things equal, put downward pressure on wages and make it more difficult for some U.S. citizens to find employment."). Further, certain Texas employers are financially incentivized under the ACA to hire a DACA recipient over a legal Texas resident. (*See id.*, Ex. 14 ¶¶ 24–25). Without DACA, there would be fewer eligible workers competing in the Texas workplace.

The Defendant-Intervenors argue that DACA's alleged effect on employer's decision-making falls short of the causation requirement because DACA does not "inexorably" lead to eligibility for certain benefits. (Doc. No. 504 at 35). Contrary to this argument, the Supreme Court held in *Regents* that DACA confers the "benefits attendant to deferred action" and that its rescission would revoke "a deferred action program with associated benefits." 140 S. Ct. at 1906,

---

[21] The laws the Plaintiff States seek to enforce include, for example, the "comprehensive framework" of laws to protect American workers and combat "the employment of illegal aliens." *Arizona*, 567 U.S. at 404. This framework includes laws that make it illegal for employers to hire "unauthorized aliens" and laws that require employers to verify employment authorization status. *See* 8 U.S.C. §§ 1324a(a)(1)(A), (a)(1)(B), (a)(2), (b); 8 C.F.R. § 274a.10. Congress has also imposed sanctions on aliens who illegally accept employment, which include removal from the country, 8 U.S.C. § 1227(a)(1)(C)(i), 8 C.F.R. § 214.1(e), and loss of the ability to adjust status. 8 U.S.C. §§ 1255(c)(2), (8). Finally, Congress made it a crime for an unauthorized alien to obtain employment through fraudulent means. 18 U.S.C. § 1546(b). The Supreme Court found Congress's intent in passing these statutes was to protect state workers. *INS v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183 (1991). These are the laws currently in effect, and the Plaintiff States may sue to enforce them.

1907. Moreover, Texas's entitlement to special solicitude shores up any alleged weaknesses presented by attenuated causation and redressability arguments. *Lujan*, 504 U.S. at 572 n.7 ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.").

A recent decision of a federal district court in Florida supports Texas's injury and causation arguments. *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301 (S.D. Fla. 2020), *motion to certify appeal denied*, 499 F. Supp. 3d 1202 (S.D. Fla. 2020). In that case, the court considered whether a private employer who rejected applicants based on their DACA status violated 42 U.S.C. § 1981. The Court found that § 1981's protection against alienage discrimination extends to DACA recipients, after determining that 1) DACA recipients as a group are protected under § 1981; and 2) there is no meaningful distinction between discrimination on the basis of immigration status as opposed to alienage. *Id.* at 1315.

This ruling reinforces Texas's injury and causation arguments because it holds that employers no longer have the option to categorically choose to hire those with legal status over a DACA recipient. Under that district court's interpretation of § 1981, the law prohibits both public and private employers from facially discriminating against DACA recipients in the hiring process. In other words, an employer would have to give the same consideration to a DACA recipient as it would a citizen or legal resident. This interpretation of the law confirms the traceability of the Plaintiff States' alleged injuries back to DACA.

Finally, the Fifth Circuit has already rejected the Defendant-Intervenors' argument that the economic benefits that may stem from DACA outweigh any injuries caused by it, at least when it comes to standing. *See Texas I*, 809 F.3d at 155–56 ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship

with the defendant."). Thus, this Court need not and cannot engage in the type of "accounting exercise" that Defendant-Intervenors suggest. *Id.* at 156.

Having adequately addressed the concepts of injury and causation under *parens patriae*, the Plaintiff States must finally establish redressability, or the "likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Redressability turns on whether the plaintiff "personally would benefit in a tangible way from the court's intervention." *Id.* at 103 n.5. The Plaintiff States ask the Court to enjoin and set aside DACA. (Doc. No. 486 at 54–55). If this Court were to hold that DACA violated the law and then immediately vacate or enjoin the program, DACA recipients would no longer be entitled to work authorization under existing laws. Without this work authorization, DACA recipients would be far less likely, and perhaps even unable, to compete with the Plaintiff States' citizens and other legally present residents in the labor market. This diminished workforce would relieve the labor market distortion that creates the *parens patriae* injury. Thus, the Plaintiff States and their unemployed "personally would benefit in a tangible way from the court's intervention," satisfying redressability. *Steel Co.*, 523 U.S. at 103 n.5. In conclusion, the Plaintiff States have *parens patriae* standing.

**3.      Standing for Healthcare, Education, and Social Services Costs**

Plaintiff States also assert that they have standing independent of *parens patriae* because DACA has caused them to incur financial injuries "in the form of increased social services costs." (Doc. No. 486 at 36). The parties agree that DACA, by conferring lawful presence, makes recipients eligible for a variety of other state and federal benefits. (*Id.* at 19; Doc. No. 504 at 12). The Court finds the arguments set forth by the Plaintiff States have merit and finds that Texas has standing to sue based on costs incurred as a result of DACA.

23-40653.25211

First, the Plaintiff States have adequately shown that they bear the costs of medical services required by federal law. The Plaintiff States argue that DACA requires states to spend more money on healthcare by incentivizing otherwise unlawfully present aliens to remain in the Plaintiff States. (Doc. No. 486 at 36). For example, Texas spends tens of millions of dollars annually to provide emergency Medicaid services to illegal aliens. (Doc. No. 487, Ex. 27 ¶ 8, Decl. of M. Smoot) ("The total estimated cost to the State for the provision of Emergency Medicaid services to undocumented immigrants residing in Texas was approximately . . . $90 million in SFY 2013; the estimate for SFY 2015 is $73 million."). That figure also encompasses the costs incurred due to non-DACA recipients, but Texas's over 110,000 DACA recipients in all probability make up some of those expenses. (*See* Doc. No. 487, Ex. 22 ¶ 13). Defendant-Intervenors' own expert corroborates that DACA recipients inevitably rely on emergency Medicaid services, part of which are funded by the state. (Doc. No. 487, Ex. 25 at 8:21–24, Depo. of R. Perryman) ("I assume there would be some people in the DACA population who are likely to have some type of care that is reimbursed in some way by the state."). Second, under *Plyer v. Doe*, 457 U.S. 202 (1982), every state must educate all children, regardless of their immigration status. Texas has similarly established for standing purposes that it bears the burden of increased education costs. (*See* Doc. No. 487, Ex. 28 ¶ 3, Decl. of L. Lopez) (speaking in terms of unaccompanied children but setting out annual education costs per child and cost of bilingual education).

In fact, Defendant-Intervenors' own expert estimated that DACA recipients overall impose a cost of over $250,000,000 on Texas per year and another $533,000,000 annually in costs to local Texas communities. (Doc. No. 487, Ex. 29, Estimated Annual Net Fiscal Benefits of DACA Recipients in Texas). If DACA recipients leave, Texas would no longer be obligated to pay for those costs associated with DACA recipients' entitlement to social services. Necessarily, this

would reduce some of the state's financial expenditures.

While the Defendant-Intervenors contest the calculations of the Plaintiff States' alleged injuries as "conjectural" or "overbroad," (Doc. No. 504 at 26), plaintiffs must only show *some* injury, not substantial injury, to establish standing. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("The injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an identifiable trifle. . . . The injury in fact requirement under Article III is qualitative, not quantitative, in nature.") (cleaned up). Texas's evidence demonstrates injury. Though Texas has not demonstrated exactly what percentage of these costs is due to DACA recipients, at this stage, Texas need not prove the exact amount of damages from a particular individual when it otherwise shows it has been injured by the program.[22]

The Plaintiff States' injury argument in this regard is much less attenuated than the injury allegation in *Pennsylvania v. President of United States*, 930 F.3d 543 (3rd Cir. 2019). In that case, the Third Circuit found Pennsylvania had standing to prevent an alleged harm that had not occurred and might not ever occur—that some affected employees might not be able to afford contraceptives and might therefore turn to state-funded sources to pay for their contraceptives. *Pennsylvania*, 930 F.3d at 561–65. That finding was implicitly affirmed by the Supreme Court in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020).[23] In the instant case, the costs incurred by the Plaintiff States are not contingent on two future events. They are incurring costs right now.

Moreover, one of the district court cases giving rise to *Regents* (and likewise had standing

---

[22] Even if the Plaintiff States' experts did not provide exact numbers, the Defendant-Intervenors' expert did and his figures confirm the position of the Plaintiff States. (*See* Doc. No. 487, Ex. 29),

[23] In a recent opinion, Justice Alito confirmed that the Supreme Court implicitly found standing by the fact that it had ruled on the merits. *See California v. Texas*, 141 S. Ct. 2104, 2124 n.2 (Alito, J., dissenting) ("Although our opinion did not address the issue, we are required to consider Article III standing in every case that comes before us.").

implicitly affirmed by the Supreme Court), found that increasing healthcare costs to the state constituted an injury for purposes of Article III. In *Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, the district court determined that Maryland's and Minnesota's allegations that "rescinding DACA will cause many DACA grantees to lose their employer-based health insurance, imposing higher healthcare costs on the state" were "sufficient to confer Article III standing." 279 F. Supp. 3d at 1034. As the Plaintiff States have pointed out, that analysis "acknowledges that DACA recipients without employer-based health insurance are currently imposing healthcare costs on Plaintiff States." (Doc. No. 529 at 18 n.7). It certainly supports the Plaintiff States' argument that healthcare costs to a state are a valid injury for purposes of Article III standing.[24]

Defendant-Intervenors attack the sufficiency of the Plaintiff States' evidence to support the traceability and redressability of the injury alleged to DACA. Some of that evidence includes Texas State Demographer Lloyd B. Potter's statement that "it is reasonable to conclude that some DACA participants would return to their country of origin if they lose or are not given permission to work in the U.S." (*Id.*, Ex. 32 ¶ 8, Decl. of Dr. L. Potter ).[25] It also includes a survey of 3,063 DACA recipients that revealed 22.3% were likely to leave the United States should DACA end.

---

[24] The Plaintiff States have also broadly argued that they have standing because the Supreme Court allowed states to challenge the *rescission* of DACA in *Regents*: "If States had standing to challenge the 2017 DACA rescission, they likewise have standing to challenge DACA." (Doc. No. 486 at 31). Indeed, in this very case, New Jersey pleaded that it had a right to intervene to protect its interests in its workforce (Doc. No. 42)—the very interest Texas is likewise using as a basis for standing. While the states in *Regents* and New Jersey here made similar arguments as the Plaintiff States, and while the rulings pertaining to those states are informative, those circumstances alone do not necessarily *require* the conclusion that the Plaintiff States have standing to sue here, because the injury to states arising from the rescission of DACA is arguably distinct from the injury to states arising from its enactment. Each case must rise or fall on its own merits.

[25] As explained in a separate order, Defendant-Intervenors have complained of Dr. Potter's declarations, and even filed a Motion to Strike (Doc. No. 390), which this Court has denied. Dr. Potter later conceded that that "he assumed loss of work authorization meant that a DACA recipient could not work in any capacity," and that he had not thought through all the implications of DACA recipients losing status. (*Id.* at 18). Regardless, Defendant-Intervenors have not rebutted the crux of his common-sense assertion—which is supported by other evidence—that without work authorization, some DACA recipients may lose their jobs and/or leave the United States.

(*Id.*, Ex. 31 at 4, Survey of T. K. Wong).[26] In fact, DACA recipients have expressed the sentiment that the key factor in their ability to remain in the United States is DACA. (*See, e.g.*, Doc. No. 504-2, Ex. 18 ¶ 8, Decl. of J. Park) ("Receiving deferred action is critical to my ability to live, work, and study in the United States."); (*see also id.*, Exs. 20, 21, 22).

To be sure, there is contrary evidence in the record that some DACA recipients would remain in the United States if the DACA program were terminated. (*See* Doc. No. 288 at 12) (addressing Defendant-Intervenors' testimony about their desire to remain in the country even if DACA ended); (Doc. No. 400-1, Ex. 2 ¶¶ 43–44, Decl. of B. Hines) (expert testifying that the rescission of DACA would not cause DACA recipients to leave the country); (Doc. No. 400-2, Ex. 9 ¶ 36, Decl. of R. Gonzales) (expert testifying that rather than self-deport, DACA recipients who lose DACA status would "return to the shadows"); (Doc. No. 400-2, Ex. 8 ¶¶ 35–36) (citing studies to show that DACA recipients do not return to countries of origin because of ties to the United States).

Nevertheless, the Court does not resolve factual disputes when determining standing. *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) ("When the defendant moves for summary judgment because of lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue."); *see also Harding v. Cnty. of Dall.*, 3:15-CV-0131-D, 2018 WL 1157166, at *7 (N.D. Tex. Mar. 5, 2018), *aff'd* 948 F.3d 302 (5th Cir. 2020) (deciding case should not be dismissed at summary judgment stage for lack of standing due to genuine disputes of fact, without resolving fact issues). The Plaintiff States have adequately alleged and have evidence to support

---

[26] That percentage would equate to over 20,000 individuals in Texas alone.

their claims. The fact that Defendant-Intervenors have contrary evidence at best creates a fact issue as to whether the Plaintiff States have suffered damages.

Defendant-Intervenors have not argued, nor could they, that no DACA recipients would leave the United States should DACA be terminated. Defendant-Intervenors themselves recognized this: "[A]ny federal immigration policy[] is certain to have consequences for whether there are more (or fewer) residents in a given state, with attendant changes in 'healthcare, education, and law enforcement costs.'" (Doc. No. 224 at 41). A plaintiff need not demonstrate that a defendant's actions are "the very last step in the chain of causation." *Bennet v. Spear*, 520 U.S. 154, 169 (1997); *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Because Article III requires no more than *de facto* causality, traceability is satisfied here.") (cleaned up). Especially considering the relaxed causation and redressability standards afforded to the Plaintiff States by their entitlement to special solicitude, any infirmity in Texas's demonstration that its injuries are fairly traceable to DACA, or redressable by a favorable outcome in this Court, is easily remedied. Texas has standing. Since one of the Plaintiff States has standing, this Court need not analyze the standing of any other plaintiff. *See Town of Chester*, 137 S. Ct. at 1651.

## C.   DACA is Reviewable under the APA

In *Regents*, the Supreme Court squarely held that DACA is reviewable under the APA: "In short, the DACA Memorandum does not announce a passive non-enforcement policy; it created a program for conferring affirmative immigration relief. *The creation of that program*—and its rescission—is an 'action [that] provides a focus for judicial review.'" 140 S. Ct. at 1906 (emphasis added) (citations omitted). After *Regents*, there can be no dispute that DACA is reviewable under the APA.

23-40653.25216

## D. Procedural APA Claim

The Plaintiff States argue that they are entitled to summary judgment because DHS did not undergo the notice and comment rulemaking procedure as prescribed by the APA. The APA provides that courts may "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The APA imposes different procedures that agencies must follow to promulgate rules.[27] At issue here is whether DHS was required to comply with the notice and comment rulemaking procedure (or "informal rulemaking" procedure[28]) described in 5 U.S.C. §§ 553(b) and (c) when it promulgated the DACA Memorandum. Those sections of the APA provide that agencies must publish "[g]eneral notice of proposed rule making" in the Federal Register, give "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation," and, after consideration of such comments, "incorporate in the rules adopted a concise general statement of their basis and purpose." There is no dispute that DHS implemented the DACA Memorandum without undergoing notice and comment rulemaking.

The notice and comment procedure's purpose is twofold: to encourage "public participation and fairness to affected parties after governmental authority has been delegated to

---

[27] The parties do not dispute that the DACA Memorandum constitutes a "rule" under the APA. *See* 5 U.S.C. § 551(4) ("'[R]ule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ."); *see also* 5 U.S.C. § 551(5) ("'[R]ule making' means agency process for formulating, amending, or repealing a rule.").

[28] Notice and comment rulemaking is often referred to as "informal rulemaking" to distinguish it from "formal rulemaking" described in sections 556 and 557. *See* 5 U.S.C. § 553(c) ("When rules are required by statute to be made on the record after opportunity for an agency hearing [formal rulemaking], sections 556 and 557 of this title apply instead of this subsection."); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 128 n.5 (2015) (Thomas, J., concurring) ("Although almost all rulemaking is today accomplished through informal notice and comment, the APA actually contemplated a much more formal process for most rulemaking. To that end, it provided for elaborate trial-like hearings in which proponents of particular rules would introduce evidence and bear the burden of proof in support of those proposed rules. *See* 5 U.S.C. § 556.").

unrepresentative agencies, and to assure that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions." *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1044 (D.C. Cir. 1987) (cleaned up). Still, Congress has recognized that agencies need "flexibility in dealing with limited situations where substantive rights are not at stake," *id.* at 1045, and has therefore provided two exceptions that allow an agency to forgo notice and comment. The informal rulemaking procedures do not apply:

> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.[29]

5 U.S.C. § 553(b). The Government and the Defendant-Intervenors argue that the DACA Memorandum is a "general statement of policy" as provided in subsection A such that its adoption did not require notice and comment rulemaking.[30] (*See* Doc. No. 502 at 29).

A general statement of policy is one "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)). The Fifth Circuit has articulated a two-factor test to determine whether an agency rule constitutes a general statement of policy. First, a general statement of policy "acts prospectively"—that is, it "may not have a present effect . . . [and] does not impose any rights and obligations." *Pros. &*

---

[29] None of the parties rely on subsection B.

[30] Even if the DACA Memorandum is a "general statement of policy" that did not have to undergo notice and comment rulemaking, it was still subject to the "publication" requirement of the APA—DHS was required to publish the DACA Memorandum in the Federal Register. 5 U.S.C. § 552(a)(1)(D) ("Each agency shall separately state and currently publish in the Federal Register for the guidance of the public . . . substantive rules of general applicability adopted as authorized by law, and *statements of general policy* or interpretations of general applicability formulated and adopted by the agency.") (emphasis added). None of the parties have cited the Court to any evidence of compliance with this publication requirement.

*Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995). Put another way, the policy "is not finally determinative of the issues or rights to which it is addressed." *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658, 666 (D.C. Cir. 1978). Next, the policy statement "genuinely leaves the agency and its decisionmakers free to exercise discretion." *Shalala*, 56 F.3d at 595. The analysis of these two factors overlaps some "because '[i]f a statement denies the decisionmaker discretion in the area of its coverage . . . then the statement is binding, and creates rights or obligations.'" *Texas I*, 809 F.3d at 171 (quoting *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002)).

In addition, the agency's own characterization of the rule can be instructive in deciding whether it is merely a general statement of policy. The Fifth Circuit accords "some deference" to that characterization, but the focus is primarily "on the actual characteristics of the agency action." *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019). "The label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather, it is what the agency does in fact." *Shalala*, 56 F.3d at 596 (quoting *Brown Express, Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979) (alteration omitted)). The agency's own characterization is viewed with "suspicion," *Texas I*, 809 F.3d at 171 (quoting *Shalala*, F.3d at 595) (alteration omitted), and it is what the agency and policy do in fact that matter more. *See Shalala*, 56 F.3d at 596. In *Texas I*, the Fifth Circuit gave little consideration to the agency's actual label and proceeded to analyze the factors by which a court distinguished between general statements of policy and rules that require informal rulemaking. This Court will follow that same format.[31]

---

[31] The Fifth Circuit's admonition to view an agency's characterization with suspicion is particularly apt in this instance. Here the agency argues DACA is a general statement of policy or, more specifically, an exercise of prosecutorial discretion. While this Court will follow the Fifth Circuit's guidance and proceed to determine whether it actually is a general statement of policy, neither the DACA Memorandum nor its underlying record supports the award of a wide

1.     **Rights and Obligations**

The Supreme Court's *Regents* opinion provides guidance as to the first prong of the test to determine whether an agency's rule is a general statement of policy. In *Regents*, the Supreme Court first had to determine whether the DACA Memorandum constituted a non-enforcement policy whose rescission—and creation—was not reviewable by courts. 140 S. Ct. at 1905–06. The Court found that the DACA Memorandum "did not merely 'refus[e] to institute proceedings' against a particular entity or even a particular class." *Id.* at 1906. Instead, it directed USCIS to establish processes to identify individuals who met the DACA criteria and begin the proceedings for deferred action. *Id.* The Supreme Court characterized these proceedings as "effectively adjudications" and found that the DACA Memorandum "created a program for conferring affirmative immigration relief." *Id.* Further, the Supreme Court recognized that "[t]he benefits attendant to deferred action provide further confirmation that DACA is more than simply a non-enforcement policy." *Id.*

The question this Court must answer is: do the "benefits" that DACA confers, which make it more than a non-enforcement policy, also make it more than a general statement of policy? The Court is convinced that the benefits DACA confers also constitute rights. The Supreme Court recognized that "DACA recipients may request work authorization and are eligible for Social

---

array of benefits as falling in the category of prosecutorial discretion. Additionally, if one views the DACA Memorandum as a policy directed toward the conservation of DHS's resources, there is likewise no supporting data in the record. In fact, the most detailed discussion in the record is found in a letter from the House Judiciary Chair, who questioned this justification:

> Furthermore, we are concerned that DHS continues to use the excuse of 'limited resources' as a justification for its flagrant disregard of the law. The Congress has consistently provided every dollar requested since ICE's creation for immigration enforcement efforts, particularly Enforcement and Removal Operations . . . . We request that ICE utilize the extensive resources available to rigorously enforce the immigration laws of the United States and that ICE's future budget requests include the funds necessary to effectively support the men and women of ICE in executing their critical mission.

(Doc. No. 472-3 at 169–70).

23-40653.25220

Security and Medicare." *Id.* at 1906. DACA recipients have the "right" to these benefits. The record shows that more than 800,000 individuals have already received these rights, and more applicants are likely to come. (*See* Doc. No. 225-3, Ex. 73 ¶ 16). The same "benefits" that made DACA judicially reviewable in *Regents* constitute rights and obligations that distinguish it from a "general statement of policy" using the analysis from the Fifth Circuit.[32]

Additionally, another factor in determining whether a policy confers rights and obligations is whether it "acts prospectively" or instead has a "present effect." *Shalala*, 56 F.3d at 595. The DACA Memorandum was not a statement of future policy; DACA immediately went into effect. The DHS press release announcing the program, issued on the same date as the memorandum, began as follows: "Secretary of Homeland Security Janet Napolitano today announced that *effective immediately* . . . ." (Doc. No. 472-1 at 189) (emphasis added).

The DACA Memorandum was immediately applied to all who met the criteria, including those individuals who were already in removal proceedings and those who were "encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS)." The DACA Memorandum instructed DHS agents to "immediately exercise" their discretion and to "implement this memorandum." It also mandated USCIS to accept applications for work authorizations for anyone granted deferred action. For those not already in proceedings, USCIS was only given 60 days to get the program up and running. In fact, even though the memorandum was not issued until mid-June, by year's end 150,000 people had applied and more than 1,600 had been granted DACA status. (Doc. No. 224-2).

---

[32] This Court has already noted that DACA recipients have successfully defeated summary judgment in an employment rights class action case filed in Florida. That court's opinion put special emphasis on the fact that rejection by employers could undermine the DACA recipients' "deferred action status" as well as their ability "to exist in their community" because "DACA recipients are required to work." *See Rodriguez*, 465 F. Supp. 3d at 1314–15. Clearly, that court found DACA gave its recipients enforceable rights and imposed obligations on private employers.

Finally, the DACA Memorandum imposes obligations on private actors, individual states, and on the federal government. As previously discussed in the section on standing, DACA defers action against its recipients, which in turn gives them lawful presence, which then in turn obligates the states to spend money in various areas, including social services, education, and healthcare. In addition, it obligates the federal government to forebear from implementing immigration enforcement proceedings and, because the recipients have deferred action, extends the "benefits" that *Regents* described. The Court holds, therefore, that the DACA Memorandum imposes rights and obligations.

## 2.    Discretion

Next, the Court must consider whether the DACA Memorandum "genuinely leaves the agency and its decisionmakers free to exercise discretion." *Shalala*, 56 F.3d at 595. "An agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, or is applied by the agency in a way that indicates it is binding." *Texas I*, 809 F.3d at 171 (quoting *Gen. Elec.*, 290 F.3d at 383) (alteration omitted). Accordingly, the Court must consider both whether the DACA Memorandum "appears on its face to be binding" and whether DHS applies DACA "in a way that indicates it is binding." *Id.*

The DACA Memorandum, in places, purports to confer discretion. It instructs agencies to review applications on a case-by-case basis and exercise discretion. The DACA Memorandum characterizes itself as an "exercise of prosecutorial discretion." Therefore, "[t]he DACA . . . Memo[] purport[s] to grant discretion." *Id.* at 173. Nevertheless, this does not end the analysis because "a rule can be binding if it is 'applied by the agency in a way that indicates it is binding.'" *Id.* (quoting *Gen. Elec.*, 290 F.3d at 383).

Determining whether the DACA Memorandum has been applied by DHS in a way that

indicates it is binding depends in part on whether the Court looks outside the Memorandum and its underlying record.[33] The DACA Memorandum itself also includes mandatory language that contradicts its purported conferral of discretion. It instructs agents as to what criteria to consider when determining whether to grant DACA status, and it is compulsory for the agents to use only those prescribed criteria. The Memorandum grants no discretion to the officers to vary from the imposed criteria in any way. Further, the record similarly reveals that, in practice, agency officials are not permitted to diverge from the DACA Memorandum's criteria. Even the Supreme Court in *Regents* found that DACA "instituted a standardized review process . . . ." 140 S. Ct. at 1906.

On the other hand, and assuming this Court is permitted to look beyond the administrative record,[34] there is a factual dispute as to whether agents, in practice, have discretion when determining whether an individual DACA applicant *meets* the prescribed criteria.

The Plaintiff States rely heavily on two different statements from DHS to argue that the personnel reviewing DACA applications are not genuinely free to exercise discretion. First, in *Texas I*, DHS could not find one example of anyone who had met all of the requirements in the DACA Memorandum who was turned down for a discretionary reason. *See Texas I*, 809 F.3d at 172. Second, some years later, Acting DHS Secretary Duke confirmed that "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the [DACA Memorandum], but still has his or her application

---

[33] In response to various arguments made by the parties, the Court ordered the Government to file the complete administrative record. (Doc. No. 467). It subsequently filed that record. (Doc. No. 472).

[34] One could read the *Regents* opinion to indicate that the Court is confined in its examination to the DACA Memorandum and its underlying record. The Supreme Court held that it would not consider later agency explanations for its decision to rescind DACA. *Regents*, 140 S. Ct at 1907–10. The Court held, "[a]n agency must defend its actions based on the reasons it gave when it acted." *Id.* at 1909 (quotations omitted). This analysis does not translate directly to the posture of this case because in *Regents*, the Supreme Court was analyzing whether DACA's rescission, a decision that had not yet taken effect, was arbitrary and capricious. Still, the case may signify that the Court should not look beyond the record when making its ruling. In any event, the Court holds, as explained below, that the DACA Memorandum does not constitute a general statement of policy regardless of whether or not it looks beyond the Memorandum and its record. Accordingly, the Court need not resolve this question.

denied based solely upon discretion." (Doc. No. 6 at 23–24). The Government conceded this fact in earlier oral arguments in this case. (Doc. No. 277 at 36).

The Plaintiff States have brought forth other evidence on this point as well. The USCIS Texas Service Center, which handled DACA applications for many years, has never turned anyone down who met the DACA Memorandum criteria. (Doc. No. 284, Ex. 4). The Plaintiff States have also presented hundreds of pages of DHS manuals and procedures that instruct reviewers on each step they should take and what they may consider as evidence that the DACA applicant has satisfied each of the criteria. For example, in the DACA Toolkit, DHS states only those individuals who can prove through "verifiable documentation" that they meet the DACA Memorandum criteria will be eligible for deferred action. (Doc. No. 9, Ex. 20 at 70).

On the other hand, the Defendant-Intervenors point to an increase in the denial rate of DACA applications in recent years to demonstrate that agents are exercising discretion when determining whether individual applicants meet the set criteria. They also have provided this Court with multiple emails from instructors who teach the DACA processors that suggest a shift may have taken place following this Court's opinion in *Texas I* in early 2015. (*See, e.g.*, Doc. No. 215-1, Exs. 36, 37, 38). After that decision, DHS began denying (even in the Texas Service Center) more applications than it had in the first three years of the DACA program. Finally, Defendant-Intervenors produced a post-*Texas I* email from one instructor who, while talking about applying the established criteria, stated she liked to "jokingly say our standard is whether or not you would want to live next door to the person." (*Id.*, Ex. 38 at 405). While this Court will not opine on whether the "good neighbor" standard is one capable of refined precision or even whether it would be legally enforceable, if it were routinely being used, it would certainly be indicative of some exercise of discretion.

23-40653.25224

This competing summary judgment evidence indicates there is a factual dispute concerning whether agents reviewing DACA applications exercise discretion as to whether an applicant satisfies the fixed criteria. In a summary judgment context, the existence of a disputed fact, however, is only relevant if the fact is material. Here it is not. Even assuming that reviewing officers have some discretion as to whether an applicant meets the criteria delineated by the DACA Memorandum, they had no discretion to vary from the criteria: "If it appears that a so-called policy statement is in purpose or likely one that narrowly limits administrative discretion, it will be taken for what it is[—]a binding rule of substantive law." *Guardian*, 589 F.2d at 666–67; *see also Am. Bus Ass'n v. United States*, 627 F.2d 525, 530 (D.C. Cir. 1980) (policies at issue were "substantive agency action, for they define[d] a fairly tight framework to circumscribe the Board's statutorily broad power") (quotations omitted). The DACA Memorandum clearly "narrowly limits administrative discretion" and establishes "a tight framework," otherwise DHS agents could grant DACA status to applicants who do not meet the prescribed criteria.

Thus, the Court finds it does not need to resolve this factual dispute to answer the immediate question. Some agency orders are so impactful that the existence of some amount of discretion is not determinative. That premise is especially appropriate here, where whatever discretion exists must fit within the dictates of the DACA Memorandum.

Given the Fifth Circuit's description of the factors to determine whether an agency action constitutes a general statement of policy as "criteria" that "[w]e evaluate," *Texas I*, 809 F.3d at 171, this Court previously held that the factors are not essential elements and instead that "the Plaintiff States need not prove . . . both criteria; rather this Court evaluates each independently." (Doc. No. 319 at 103). Again evaluating each independently, the Court concludes that, even assuming the DACA Memorandum "genuinely leaves the agency and its decisionmakers free to

exercise discretion" as to whether the applicant meets the Secretary's criteria, *Shalala*, 56 F.3d at 595, it cannot be considered a general statement of policy under the APA because of the fixed criteria and because of the significant rights and obligations that it confers. A program of such magnitude, even if some discretion exists somewhere in the process, cannot fall within this "narrow" exception to the APA's notice and comment requirements. *Bowen*, 834 F.2d at 1044.

As recounted above, the purpose of the APA's informal rulemaking procedure is twofold. First, it encourages "public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." *Id.* Second, the procedure ensures that "the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions." *Id.* These policy rationales would have undoubtedly been relevant here, confirming the conclusion that DACA cannot be considered a general statement of policy.

In his *Regents* dissent, Justice Thomas agreed with the majority that DACA was more than simply a non-enforcement policy. *See Regents*, 140 S. Ct. at 1918 (Thomas, J., dissenting). He further characterized DACA as a "substantive or legislative rule" that required notice and comment rulemaking, rather than a general statement of policy. *Id.* at 1927. He then posited that the "majority tacitly acknowledges as much, as it must. . . . Otherwise, the majority would have to accept that DACA was nothing more than a policy of prosecutorial discretion, which would make its rescission unreviewable." *Id.* at 1927 n.8 (citations omitted). Thus, according to Justice Thomas, since *Regents* was decided on the merits, each member of the *Regents* Court implicitly or explicitly acknowledged that DACA is not a general statement of policy. This Court agrees with that conclusion.

Accordingly, the Court holds that DHS was required to undergo notice and comment

rulemaking in order to adopt DACA. DHS failed to engage in the statutorily mandated process, so DACA never gained status as a legally binding policy that could impose duties or obligations.

## E.    Substantive APA Claim

In *Texas I*, this Court elected not to address the substantive APA attack against DAPA and Expanded DACA because the entirety of the case was resolved on the procedural claims and courts routinely rule only on those issues necessary to resolve the case. *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, [the court] should resolve the case on that basis without reaching any other issues that might be presented."). This Court would be inclined to follow this principle again, but for the latest filings submitted by the Government. The Government has notified the Court that it "intends to issue Notice of Proposed Rulemaking proposing a new regulation concerning Deferred Action for Childhood Arrivals (DACA) consistent with the President's Memorandum of January 20, 2021." (Doc. No. 563 at 2). That action, if performed appropriately, could resolve the procedural deficiencies discussed above.

The Government also expressed the position that rulemaking "could significantly affect the Court's analysis regarding DACA's substantive legality." (Doc. No. 569 at 19–20). It then asked in an alternative plea for relief that DACA be remanded without vacatur because there is a "likelihood that DHS's rulemaking will resolve many of the Court's concerns with DACA's lawfulness . . . ." (*Id.* at 24).

That being the case, the Court elects to address and rule on the alleged substantive flaws so DHS has a better appreciation of what it must address on remand. Therefore, following the lead of the Fifth Circuit in *Texas I*, the Court rules on these issues. *See Texas I*, 809 F.3d at 178

(affirming district court on procedural APA claim, but also analyzing substantive claim even though district court had not).

"[A]n agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). To that end, the APA provides that courts may "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The Plaintiff States argue, based primarily upon *Texas I*, that they are entitled to summary judgment that the DACA Memorandum was in excess of DHS's statutory jurisdiction or right. (Doc. No. 486 at 43). In their view, DACA is invalid because it violates the comprehensive immigration scheme that Congress has enacted.

In *Texas I*, the Fifth Circuit assumed without deciding that the *Chevron* deference rules applied to the agency's decision to enact DAPA and Expanded DACA. 809 F.3d at 178–79 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). This Court will do the same here. *Chevron* entails a two-step approach. *See City of Arlington v. FCC*, 569 U.S. 290, 296 (2013).

### 1.    Congress has directly spoken on the precise question at issue.

The first step when reviewing an agency's interpretation of a statute that it administers is to apply the ordinary tools of statutory construction and determine whether Congress has directly spoken to the precise question at issue. *See Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. The Plaintiff States contend that Congress has directly spoken, through the INA and other immigration statutes, to the precise issue

23-40653.25228

of whether DHS has the authority to enact DACA. According to them, Congress has expressly foreclosed DHS's adoption of the DACA Memorandum.

In *Texas I*, the Fifth Circuit held that Congress had directly addressed the precise question of whether DHS could adopt DAPA and Expanded DACA. 809 F.3d at 179–81. It held that the comprehensive immigration framework that Congress had passed, with "limited ways in which illegal aliens can lawfully reside in the United States," showed that Congress had spoken on the issue and had precluded DHS from implementing DAPA and Expanded DACA. *Id.* at 179. The Court sees no reason that the Fifth Circuit's holding in *Texas I*, to the extent it applies, does not bind this Court in this case.

### a.   Congress has not granted DHS the statutory authority to adopt DACA.

The Government and Defendant-Intervenors assert that statutes that broadly grant authority to DHS authorize it to implement DACA. In *Texas I*, the Fifth Circuit rejected a similar argument. It held that neither of the two statutes that grant DHS authority broadly, 6 U.S.C. § 202(5)[35] or 8 U.S.C. § 1103,[36] nor any other statute,[37] provided the authority for DHS to implement DAPA or Expanded DACA. *See Texas I*, 809 F.3d at 183–84. The agency's interpretation of the statutes was overly broad, and the statutes did not convey the claimed authority to institute the programs. *Id.*

---

[35] "The Secretary . . . shall be responsible for . . . [e]stablishing national immigration enforcement policies and priorities."

[36] *See* 8 U.S.C. § 1103(a)(3) ("[The Secretary] . . . shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."); § 1103(g)(2) ("The Attorney General shall establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section.").

[37] The court also held that the agency could not rely on 8 U.S.C. § 1324a(h)(3), a "miscellaneous definitional provision" to enact sweeping changes to national immigration policy because "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Texas I*, 809 F.3d at 183 n.186 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

DHS had argued that those statutes allowed it to enact virtually any kind of deferred action program. The Fifth Circuit reasoned that the agency's interpretation of those statutes would allow the Secretary to grant lawful presence and work authorization to every illegal alien in the United States. *Id.* at 184. This possibility was highlighted in questions by Chief Justice Roberts in the arguments before the Supreme Court.[38] Given the INA's intricate system for allocating immigration status, the Fifth Circuit said that this limitless position was "untenable." *Id.* The same problem exists for DACA.

The Government and Defendant-Intervenors also argue that the authority "is inherent to DHS's prosecutorial rule in determining how to allocate its scarce resources to best enforce the nation's immigration laws." (Doc. No. 502 at 41). In other words, the Government argues DHS's authority is found in its inherent right to exercise prosecutorial discretion. While the law certainly grants some discretionary authority to the agency, it does not extend to include the power to institute a program that gives deferred action and lawful presence, and in turn, work authorization and multiple other benefits to 1.5 million individuals who are in the country illegally. The delegations of power to DHS "cannot reasonably be construed as assigning decisions of vast economic and political significance, such as [DACA], to an agency." *Texas I*, 809 F.3d at 183.

Moreover, the claim that DHS has an inherent right to create DACA as an exercise of prosecutorial discretion is unreasonable. "Although prosecutorial discretion is broad, it is not 'unfettered.' Declining to prosecute does not transform presence deemed unlawful by Congress into lawful presence and confer eligibility for otherwise unavailable benefits based on that change." *Id.* at 167.

Secretary Napolitano, when fielding questions from the Senate in April of 2012 (just before

---

[38] Transcript of Oral Argument at 19–20, *United States v. Texas*, 136 S. Ct. 2271 (No. 15-674), as quoted infra at 63–64.

the implementation of DACA), more or less admitted that DHS's power was limited to true forms

of prosecutorial discretion, like administratively closing a case:

> SEN. LEE: [G]iven the fact that the DREAM Act was not passed into law, what assurances can you give us or *what assurances can I give to my constituents when they approach me and suggest that perhaps there might be an effort under way to back-door these same factors in -- through regulatory channels that couldn't be passed through Congress?*

> SEC. NAPOLITANO: Senator, first, let me begin by saying, having worked in this field for decades now, we strongly need overall reform. And we strongly support the DREAM Act as a legislative enactment . . . .

> That being said, *what we have the capacity or only jurisdiction to do is to administratively close a case.* That doesn't give the person involved any kind of a green card or anything of that sort. It simply means their case is effectively suspended and they can remain the United States.

(Doc. No. 472-1 at 54, Hearing Testimony, Oversight of the Department of Homeland Security,

Apr. 25, 2012) (emphases added). This testimony indicates that the Secretary thought that DHS

only had authority to administratively close cases.[39] Mere administrative closure, which according

to the administrative record is the "preferred mechanism" for exercising discretion on a case-by-

case basis (*see* Doc. No. 472-2 at 35–36), would have been within the purview of prosecutorial

discretion.

In the underlying administrative record, DHS employees carefully delineated the difference

between prosecutorial discretion (which inherently accompanies any prosecutorial role) and what

DHS called "adjudicative discretion" (which it said must be based in a statute or regulation):

---

[39] Prior to the institution of DACA, President Barack Obama also agreed publicly that the Executive Branch could not accomplish the goals of the DREAM Act administratively: "With respect to the notion that I can just suspend deportation through executive order, that's just not the case because there are laws on the books that Congress has passed . . . ." Press Release, The White House Office of the Press Secretary, Remarks by the President at Univision Townhall (Mar. 28, 2011); *see also* Press Release, The White House Office of the Press Secretary, Remarks by the President in an Open for Questions Roundtable (Sept. 28, 2011) (answering a question about enacting the DREAM Act administratively with: "You have to pass bills through the Legislature, and then I can sign it. And if all the attention is focused away from the Legislative process, then that is going to lead to a constant dead-end.").

There are significant limitations to prosecutorial discretion, however.

First, in order to be a nonreviewable exercise of prosecutorial discretion, the decision must be a decision to *enforce*, or not to enforce, the law. An enforcement decision must be distinguished from an affirmative act of approval, or grant of a benefit, under a statute or other applicable law that sets guidelines for determining when the approval should be given. *Chaney*, 470 U.S. at 831. An enforcement decision is an exercise or nonexercise of an agency's *coercive* power over an individual's liberty or property. *Id.* at 832.

The doctrine of prosecutorial discretion applies to enforcement decisions, not benefit decisions. For example, a decision to charge, or not to charge, an alien with a ground of deportability is clearly a prosecutorial enforcement decision. By contrast, a grant of an immigration benefit, such as naturalization or adjustment of status, is a benefit decision that is not a subject for prosecutorial discretion. *See Chaney*, 470 U.S. at 831 (distinguishing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)).

(Doc. No. 472-2 at 201). Thus, prior to the institution of DACA, DHS knew that *only* the decision to enforce or not to enforce the law fell in the category of prosecutorial discretion. An award of deferred action, lawful presence, work authorization, and the other benefits attendant to DACA status "is not a subject for prosecutorial discretion." (*Id.*).

The administrative record also includes a document that provides instructional examples of the types of decisions that fall under prosecutorial discretion as opposed to those that fall in the category of adjudicative discretion. To name a few, it characterized decisions about "whom to arrest" and "whether to execute an order of removal" as exercises of prosecutorial discretion, but it described "adjustment of status" and "cancellation of removal" as exercises of adjudicative discretion. (*Id.* at 52–53). These examples strongly indicate that even DHS would have found DACA to be more than an exercise of prosecutorial discretion at the time it was created. The decision to award deferred action, with all of the associated benefits of DACA status, is outside the purview of prosecutorial discretion.

While Congress has allowed the Executive Branch to create regulations and to selectively

grant deferred action in some specific instances, it has reserved for itself the broad authority to regulate immigration. This is further evinced by the fact that Congress had already declined to give a DACA-like population legal status multiple times before DACA's creation:

> Immigrant Children's Educational Advancement and Dropout Prevention Act of 2001, H. R. 1582, 107th Cong., 1st Sess.; Student Adjustment Act of 2001, H. R. 1918, 107th Cong., 1st Sess.; DREAM Act, S. 1291, 107th Cong., 1st Sess. (2001); DREAM Act, S. 1545, 108th Cong., 1st Sess. (2003); Student Adjustment Act of 2003, H. R. 1684, 108th Cong., 1st Sess.; DREAM Act, S. 2863, 108th Cong., 2d Sess., Tit. XVIII (2003); DREAM Act of 2005, S. 2075, 109th Cong., 1st Sess.; Comprehensive Immigration Reform Act of 2006, S. 2611, 109th Cong., 2d Sess., Tit. VI, Subtitle C; American Dream Act, H. R. 5131, 109th Cong., 2d Sess. (2006); DREAM Act of 2007, S. 774, 110th Cong., 1st Sess.; DREAM Act of 2007, S. 2205, 110th Cong., 1st Sess.; STRIVE Act of 2007, H. R. 1645, 110th Cong., 1st Sess., Tit. VI, Subtitle B; Comprehensive Immigration Reform Act of 2007, S. 1348, 110th Cong., 1st Sess., Tit. VI, Subtitle C; DREAM Act of 2009, S. 729, 111th Cong., 1st Sess.; American Dream Act, H. R. 1751, 111th Cong., 1st Sess.; Comprehensive Immigration Reform Act of 2010, S. 3932, 111th Cong., 2d Sess., Tit. V, Subtitle D; DREAM Act of 2010, S. 3827, 111th Cong., 2d Sess.; DREAM Act of 2010, S. 3962, 111th Cong., 2d Sess.; DREAM Act of 2010, S. 3963, 111th Cong., 2d Sess.; DREAM Act of 2010, S. 3992, 111th Cong., 2d Sess.; DREAM Act of 2010, H. R. 6497, 111th Cong., 2d Sess.; DREAM Act of 2011, S. 952, 112th Cong., 1st Sess.

*Regents*, 140 S. Ct. at 1919 n.2 (Thomas, J., dissenting). This consistent rejection shows Congress's clear intent not to take this action. In a related hearing, Secretary Napolitano testified to Congress that she would not take agency action in lieu of legislation to address the issue of aliens who had been brought to this country at a young age. She recognized that such action should come from Congress: "[W]e believe that Congress should address this and provide a legislative fix for this problem." (Doc. No. 472-1 at 139, Hearing Testimony, DREAM Act Senate Hearing, June 28, 2011). Nevertheless, less than a year later, DHS instituted DACA on its own.

On the same day the DACA Memorandum was issued, the President of the United States addressed the reasoning behind the new program. He first chided Congress for not passing the DREAM Act, then he said that DACA was being implemented due to "the absence of any

immigration action from Congress." Press Release, Office of the White House Press Secretary, Remarks by the President on Immigration (June 15, 2012).

Even after the implementation of the DACA Memorandum, Congress has continued to consider and reject proposals to protect a DACA-like population.[40] The Executive Branch cannot just enact its own legislative policy when it disagrees with Congress's choice to reject proposed legislation.

Congress has not given DHS the power to implement DACA, nor can DACA be characterized as authorized by DHS's inherent authority to exercise prosecutorial discretion.

      **b.**     **The INA and related statutes provide a comprehensive statutory scheme for removal and allocation of lawful presence.**

Congress has already determined that the DACA-eligible population is removable through a variety of provisions in the INA. DACA beneficiaries entered the country either by overstaying a visa or by entering without inspection,[41] and the INA instructs that aliens in both classes are removable. Recipients who entered legally but overstayed their legal permission to be in the country are deportable under 8 U.S.C. § 1227(a)(1)(C)(i): "Any alien . . . who has failed to maintain the nonimmigrant status in which the alien was admitted . . . is deportable." An alien who is "deportable" under § 1227 is "removable." *Id.* § 1229a(e)(2).

Those who enter the country illegally are also removable. The INA defines "[a]n alien

---

[40] *See, e.g.*, Border Security, Economic Opportunity, and Immigration Modernization Act, S. 744, 113th Cong., 1st Sess.; BRIDGE Act, S. 3542, 114th Cong., 2nd Sess.; BRIDGE ACT, H. R. 496, 115th Cong., 1st Sess.; Border Security and Immigration Reform Act of 2018, H. R. 6136, 115th Cong., 1st Sess.; S. 166, 116th Cong., 1st Sess.; American DREAM and Promise Act of 2019, H. R. 6, 116th Cong., 1st Sess.; DREAM Act of 2019, S. 874, 116th Cong., 1st Sess.

[41] While the Government has provided no exact number, according to one of the exhibits approximately half of the DACA population is present in the United States because they entered the country without inspection, and half are present because they have overstayed a visa. (*See* Doc. No. 225, Ex. 4, Glenn Kessler, *Did Obama Allow a 'Back Door' to Citizenship Through DACA?*, Wash. Post, Sept. 7, 2017) ("Robert Warren, a demographer and senior visiting fellow at the Center for Migration Studies, estimates that about 50 percent of the 1.258 million people eligible for DACA are visa overstays.").

present in the United States who has not been admitted" as an "applicant for admission," *id.* § 1225(a)(1), and further requires all applicants for admission to "be inspected by immigration officers." *Id.* § 1225(a)(3). "[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [of Title 8]." *Id.* § 1225(b)(2)(A). In a § 1229a removal proceeding, the alien has the burden of proof to show that he or she is not removable for one of two reasons: he or she is "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182"[42] or "by clear and convincing evidence" he or she is "lawfully present in the United States pursuant to a prior admission." *Id.* § 1229a(c)(2)(A)–(B). If the alien cannot carry his or her burden of proof under one of these tests, he or she is deemed "removable." *Id.* § 1229a(e)(2).

Thus, all DACA applicants and recipients fall into a category for removal regardless of their mode of entry. The DACA Memorandum prevents immigration officials from enforcing these provisions of the INA, whether or not the recipient has entered removal proceedings, is "[currently] in removal proceedings," or is "subject to a final order of removal regardless of their age." In other words, DACA prevents the removal of its recipients, despite Congress having dictated their eligibility for removal.[43]

Next, as the Fifth Circuit ruled in *Texas I*, the INA describes several detailed methods by which immigrants may acquire lawful presence in the United States. *See Texas I*, 809 F.3d at 179

---

[42] Section 1182 describes various classifications of "Inadmissible Aliens" who are "ineligible to receive visas and ineligible to be admitted to the United States." *Id.* § 1182(a).

[43] President Obama, before DACA was implemented, agreed with this underlying premise: "If Congress has laws on the books that says that people who are here who are not documented have to be deported, then I can exercise some flexibility in terms of where we deploy our resources. . . . But there's a limit to the discretion that I can show because I am obliged to execute the law. That's what the Executive Branch means. I can't just make the laws up by myself. So the most important thing that we can do is focus on changing the underlying laws." *Transcript of President Barack Obama with Univision*, L.A. Times, Oct. 25, 2010.

("Federal governance of immigration and alien status is extensive and complex.") (citing *Arizona*, 567 U.S. at 395). The INA specifies several particular groups of aliens for whom lawful presence is available[44] and groups of aliens eligible for "discretionary relief allowing [aliens in deportation proceedings] to remain in the country."[45] Congress has also passed a multitude of statutes allocating lawful presence to persons who have served in the armed forces[46] and persons seeking or possessing a higher education.[47] The *Texas I* court recognized that this statutory scheme did not encompass the groups of persons described by the DAPA and Expanded DACA programs at issue in that case. *See Texas I*, 809 F.3d at 179 ("Entirely absent from those specific classes is the group of 4.3 million illegal aliens who would be eligible for lawful presence under DAPA were it not enjoined."). Similarly, the statutory scheme does not encompass the population given lawful presence by DACA.

Where Congress has explicitly described a statutory scheme with the detail present in these circumstances, an agency may not supplant the scheme with its own methods. *See Hearth, Patio*

---

[44] *See, e.g.*, 8 U.S.C. §§ 1101(a)(20), 1255 (lawful-permanent-resident ("LPR") status); 1101(a)(15), 1201(a)(1) (nonimmigrant status); 1101(a)(42), 1157–59, 1231(b)(3) (refugee and asylum status); 1182(d)(5) (humanitarian parole); 1254a (temporary protected status).

[45] *Arizona*, 567 U.S. at 396 (citing 8 U.S.C. §§ 1158 (asylum), 1229b (cancellation of removal), 1229c (voluntary departure)); *see also* 8 U.S.C. § 1227(d) (administrative stays of removal for T-and U-visa applicants (victims of human trafficking, or of various serious crimes, who assist law enforcement)).

[46] *See, e.g.*, 8 U.S.C. §§ 1438(a) (persons who lost United States citizenship because they served in the armed forces of a United States ally during World War II); 1439 (noncitizens who have served honorably in the United States armed forces for at least one year); 1440 (noncitizens who served in the United States armed forces during World War I, World War II, Korean hostilities, Vietnam hostilities, or other periods of military hostilities); 1440-1 (posthumous conferral of United Sates citizenship to noncitizens who died as a result of injuries incurred while serving in periods of hostilities).

[47] *See, e.g.*, 8 U.S.C. §§ 1101(a)(15)(F) (the "F-1" visa for full-time students) (the "F-2 visa" for dependents of full-time students) (the "F-3" visa for students from Canada and Mexico who commute across the border); 1101(a)(15)(H) (the "H-1B" visa for skilled workers) (the "H-4" visa for dependents of "H-1B" visa holders); 1101(a)(15)(J) (the "J-1" visa for students, scholars, trainees, teachers, professors, research assistants, specialists, or leaders in a field of specialized knowledge or skill participating in cultural exchange); 1101(a)(15)(L) (the "L-1A" visa for foreign employees of a corporation, executives or managers) (the "L-1B" visa for foreign employees of a corporation with specialized knowledge of the company's techniques or methodologies); 1101(a)(15)(M) (the "M-1" visa for vocational or technical students) (the "M-2 visa" for dependents of vocational or technical students).

& *Barbecue Ass'n v. U.S. Dep't of Energy*, 706 F.3d 499, 507 (D.C. Cir. 2013) (where Congress "employed specific statutory mechanisms" to delineate agency authority, the agency cannot "simply cho[o]se to ignore" the statutory scheme); *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73 (D.C. Cir. 2016) ("Disagreeing with Congress's expressly codified policy choices isn't a luxury administrative agencies enjoy."). In this instance, Congress's careful plan for the allotment of lawful presence forecloses the possibility that DHS may designate up to 1.5 million people to be lawfully present.

Ultimately, "the INA expressly and carefully provides legal designations allowing defined classes of aliens to be lawfully present," and Congress has not granted the Executive Branch free rein to grant lawful presence to persons outside the ambit of the statutory scheme. *Texas I*, 809 F.3d at 179.

### c.    The INA provides a comprehensive statutory scheme for the allocation of work authorization.

The INA's statutory scheme intricately describes groups to whom Congress wishes to grant work authorization, delineating precise categories of aliens for whom work authorization is available. Where Congress has expressed its intent to provide certain groups of aliens with work authorization, it has promulgated specific laws requiring DHS to do so.[48] Further, Congress has specified particular instances where DHS "may" issue work authorization, specifically delegating to the agency areas in which it may exercise discretion.[49] Neither of these parts of Congress's

---

[48] *See, e.g.*, 8 U.S.C. §§ 1101(i)(2) (human-trafficking victims in lawful-temporary-resident status pursuant to a T-visa); 1158(c)(1)(B), (d)(2) (asylum applicants and grantees); 1160(a)(4) (certain agricultural workers in lawful-temporary resident status); 1184(c)(2)(E), (e)(6) (spouses of L- and E-visa holders), (p)(3)(B) (certain victims of criminal activity in lawful-temporary-resident status pursuant to a U-visa); 1254a(a)(1)(B) (temporary-protected status holders); 1255a(b)(3)(B) (temporary-resident status holders).

[49] *See, e.g.*, 8 U.S.C. §§ 1158(d)(2) (asylum applicants); 1105a(a) (certain battered spouses of nonimmigrants); 1154(a)(1)(K) (grantees of self-petitions under the Violence Against Women Act); 1160(d)(3)(A) (agricultural worker preliminary applicants); 1184(p)(6) (deferred-action U-visa applicants).

statutory scheme include the DACA recipients. Congress has also specified that aliens not lawfully admitted for permanent residency with pending removal proceedings are *ineligible* for work authorization. 8 U.S.C. § 1226(a)(3). DACA specifically applies to individuals in removal proceedings and contradicts Congress's intent, as it enables those aliens to apply for work authorization.

DACA's work authorization also undermines the Immigration Reform and Control Act (IRCA). The Supreme Court has "often recognized that a 'primary purpose in restricting immigration is to preserve jobs for American workers.'" *Nat'l Ctr. for Immigrants' Rights*, 502 U.S. at 194 (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 889 (1984)). In 1986, "Congress enacted IRCA as a comprehensive framework for 'combating the employment of illegal aliens.'" *Arizona*, 567 U.S. at 404 (quoting *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002)). Through criminal and civil penalties for employers and civil penalties for employees, IRCA made it "illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers." *Id.* (citing 8 U.S.C. §§ 1324a(a)(1)(A), (a)(2)). Thus, it is illegal for employers to hire illegal aliens, including those eligible for DACA, but for the fact DACA allows its recipients to obtain work authorization.

DACA actually goes further to undermine Congress's intent to protect American workers as it *requires* applicants to apply for work authorization. (*See* Doc. No. 9, Ex. 20 at 23) ("In addition to the [DACA renewal and application form], all individuals must also submit a Form I-795, Application for Employment Authorization . . . ."). Requiring up to 1.5 million aliens to apply for work authorization contradicts the clear congressional purpose of preserving employment opportunities for those persons legally residing in the United States. The DACA program is therefore contrary to the immigration statutes and to Congress's goal of "closely guarding access

23-40653.25238

to work authorization and preserving jobs for those lawfully in the country." *Texas I*, 809 F.3d at 181.[50]

One law professor, while noting how compelling the equities are for DACA recipients, described the tension created by DACA's grant of employment eligibility as follows:

> Similarly, Congress has repeatedly warned that higher-than-specified levels of immigration could roil the job market, impairing the employment prospects and wage levels of U.S. citizens and lawful permanent residents. That deep-seated legislative anxiety impelled the 1986 Congress to provide for sanctions on employers hiring undocumented workers in a compromise that also provided immigrants with a major victory by legalizing a substantial number of undocumented persons living in the United States. In addition, Congress has restricted the ability of noncitizens without a legal status to obtain relief such as a reprieve from removal and a work permit. Sweeping awards of deferred action risk eroding Congress's limits.[51]

The author also noted that, at the time IRCA was passed, the Justice Department assured Congress that deferred action would be used sparingly:

> Seeking to reassure Congress and other stakeholders that grants of deferred action, typically including a work permit, *outside* IRCA would be small in number, the Justice Department stated in 1987 that the "number of aliens authorized to accept employment [pursuant to deferred action outside IRCA] is *quite small* and the impact on the labor market is *minimal*." *See* Classes of Aliens Eligible, 52 Fed. Reg. 46,092 (Dec. 4, 1987) (codified at 8 C.F.R. § 109) (emphasis added). Indeed, officials claimed that the number of work authorizations was *so small* that it was "previously considered to be *not worth recording*." *Id.* at 46,093 (emphasis added).[52]

Adding approximately 1.5 million workers is not "quite small," and, according to the parties and

---

[50] Defendant-Intervenors argue it is not the DACA Memorandum, but a separate federal regulation that permits DACA recipients to obtain work authorization. *See* 8 C.F.R. § 274a.12(c)(14) ("An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, [may be able to obtain work authorization upon application] if the alien establishes an economic necessity for employment."). In *Texas I*, the Fifth Circuit specifically dispatched this argument by finding that such a reading—to allow the agency to issue employment authorization to any class of illegal aliens whom DHS declines to remove—would be outside the powers authorized by the INA. 809 F.3d at 168–69.

[51] Peter Margulies, *Rescinding Inclusion in the Administrative State: Adjudicating DACA, the Census, and the Military's Transgender Policy*, 71 Fla. L. R. 1429, 1471–72 (2019) (footnotes omitted).

[52] *Id.* at 1471 n.227.

amici curiae, their impact on the labor market is significant. Finally, adding 1.5 million new workers is certainly worth recording.[53]

DACA's impact on employment issues is certainly magnified by the ruling in *Rodriguez*, 465 F. Supp. 3d at 1301. As noted above, the court in that case held that Procter & Gamble ("P & G") could not limit its applicant pool for its internship program to citizens, nationals, LPRs, or other aliens admitted for residency. In other words, the court ruled P & G could be held liable for restricting its application pool to those with legal status—a status that DACA recipients do not share. The court held that P & G's restriction against accepting applications by DACA recipients violated § 1981 of the Civil Rights Act. 42 U.S.C. § 1981.

Thus, under the *Rodriguez* holding, an employer who might otherwise prefer to hire only those with legal status in the United States, in line with Congress's dictates, cannot do so. As a result, not only is it sometimes cheaper to hire DACA recipients due to their exclusion from being the source of ACA penalties, but it now may be illegal not to consider hiring DACA recipients. Thus, DACA is not only a way around Congress's provisions concerning residency and employment, it has apparently created a legally enforceable status that is directly contrary to law as designed by Congress.

> ### d.   For some, DACA defies the statutory scheme by awarding advance parole and a clearer path to legal status.

The Plaintiff States also complain that DACA contradicts the statutory scheme by allowing recipients access to "advance parole." Advance parole is a privilege that allows aliens to leave the

---

[53] The DACA Memorandum and the entire underlying record as produced by the Government gave no consideration to DACA's possible effects on American workers despite the fact that, prior to the creation of DACA, the Chair of the House Judiciary Committee wrote to the Secretary showing concern on this very issue:

> Ultimately, these memos may allow millions of illegal immigrants to remain in the United States in violation of existing law and regulations and compete with unemployed American and legal immigrant workers for scarce jobs. In the current environment, this effect is unconscionable.

(Doc. No. 472-3 at 156, Letter from Chairman of House Judiciary Committee to Secretary Napolitano, Sept. 12, 2011).

United States and then lawfully re-enter the country without being turned away at a port of entry. (Doc. No. 487, Ex. 5, Dep't of Homeland Sec., *DACA Nat'l Standard Operation Procedures (SOP)* 135 (2013)) (citing 8 U.S.C. § 1182(d)(5)(A)). It is designed to be awarded only "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). DACA, however, made the entire DACA population eligible to apply for advance parole, and expanded these two enumerated categories beyond their intended scope. Due to their DACA status, recipients are allowed to receive advance parole and then to travel outside the United States for a host of reasons, including work-related conferences, semester-abroad programs, and job interviews.[54] Congress did not intend advance "parole authority to create an ad hoc immigration policy or to supplement current immigration categories without Congressional approval." (Doc. No. 472-3 at 166–67).

In addition to DHS's generous interpretation of the phrases "urgent humanitarian reasons" and "significant public benefit" for DACA recipients, allocating advance parole to some DACA recipients subverts statutory law in two other ways: 1) it lets certain individuals adjust illegal status to lawful presence and then possibly to legal status by curing the "inadmissibility bar," and 2) it lets recipients avoid the statutory "unlawful presence bars." (*See* Doc. No. 219, Ex. 3, Lena Graber & Jose Magaña-Salgado, *DACA, Advance Parole, and Family Petitions*, Immigr. Legal Res. Ctr. (June 2016)).[55]

---

[54] *See* Doc. No. 487, Ex. 5 ("Generally, USCIS will only grant advance parole if the applicant's travel abroad will be in furtherance of: humanitarian purposes, including travel to obtain medical treatment, attending funeral services for a family member, or visiting an ailing relative; educational purposes, such as semester-abroad programs and academic research, or; employment purposes such as overseas assignments, interviews, conferences or, training, or meetings with clients overseas. Travel for vacation is not a valid basis for advance parole."). The Defendant-Intervenors have referred the Court to a New DACA memorandum, which states: "USCIS has not granted advance parole based on the standards associated with DACA since September 5, 2017." (Doc. No. 504-2, Ex. 2 at 33 n.7). The Court has not been informed of the standards USCIS is currently using. Regardless of what standards are being used, advance parole eligibility under DACA contradicts Congress's legislative scheme, at least for those recipients who originally entered the country illegally.

[55] This ten-page document was co-authored by one of the individual Defendant-Intervenors in this case.

First, DACA recipients' entitlement to apply for advance parole contradicts the statutory scheme by curing the bar for unlawful entry. (*See id.*). Ordinarily, an alien present in the United States may apply for an adjustment of status to change his or her legal immigration classification to that of an LPR (this is also known as receiving a "Green Card"). (*See id.*). There are several possible ways to do this, including an employment qualification or a specified family relationship (like marriage to a United States citizen), but applicants will be deemed inadmissible—that is, they will be unable to adjust their status—if they are present "without being admitted or paroled into the United States." (*Id.*) (citing 8 U.S.C. §§ 1182(a)(6)(A)(i), 1255). Generally, immigrants who first entered the United States without inspection are ineligible to adjust their status because they were not "admitted" legally when they first entered the country. (*Id.*) Approximately one half of the DACA population is in this category.[56]

DACA, through its advance parole eligibility, allows this segment to circumvent the "inadmissibility bar"— the requirement that aliens be "admitted or paroled into the United States" to adjust status. (*See id.*); (Doc. No. 487, Ex. 5) (describing procedures for processing advance parole applications for DACA recipients). Once a DACA recipient leaves the country and returns to the United States through advance parole, that individual, who would otherwise be subject to the inadmissibility bar, can now adjust status because he or she has been paroled legally back into the United States. (*See* Doc. No. 219, Ex. 23).[57] Thus, DACA's grant of advance parole eligibility

---

[56] *See* Kessler, *supra* note 41 (stating approximately half of DACA recipients overstayed a visa and half entered the country illegally).

[57] *See also* A. Molina, *Immigration: Undocumented College Students Find a Way to Study Abroad, Return Legally*, Press-Enterprise, Riverside California (Feb. 14, 2016); (Doc. No. 289, Ex. 299, Ben Harrington, Cong. Res. Serv., *An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others* (2018)) ("Advance parole, another exercise of the executive parole authority directed toward physically present aliens, allows aliens to depart the United States with parole already approved, so as to facilitate their re-entry. Upon being paroled back into the country, such aliens receive the same advantages as recipients of parole in place and other parolees (e.g., eligibility for work authorization and a clearer path to adjustment of status).").

allows its recipients to directly circumvent the INA's statutory requirements.[58]

Through 2015, over 20,000 DACA recipients had been approved for advance parole, and of those, approximately 3,000 were subsequently granted an adjustment of status. (Doc. No. 224-2). Although this number may seem small compared to the possible DACA population of 1.5 million people, it is not insignificant. Despite the DACA Memorandum stating that it "confers no substantive right, immigration status or pathway to citizenship," DACA does, in fact, enable certain individuals to change their inadmissible status (due to unlawful entry) into an admitted/paroled category and in some cases then provides a clearer pathway to citizenship. This process is another way DACA directly undermines the deterrent effect intended by Congress.

Second, advance parole for DACA recipients subverts the "unlawful presence bars" instituted by statute. *See* 8 U.S.C. § 1182(a)(9)(B)(i). Under these provisions, an alien who entered the United States illegally or remained in the United States longer than allowed is unable to return to the United States upon leaving. *Id.* Individuals who have left the country after having been illegally present for more than 180 days must remain out of the United States for three years, and those illegally present for more than a year must remain out for ten years before they may again become admissible to the United States. *Id.* All of the DACA recipients have been in the country illegally for more than one year, so the ten-year bar would apply. DACA's grant of advance parole eligibility, however, allows DACA recipients to travel abroad and then return to the United States without complying with either the three- or ten-year bar. Through DACA, all of these recipients effectively avoid the dictates of Congress while thousands of other individuals who have complied

---

[58] This "loophole" is not needed by many DACA recipients who overstayed their visas, as they were "admitted" when they first entered the country. Also, all LPR applicants must still meet other requirements, such as having a family relationship. Nevertheless, for a number of DACA recipients, the program's grant of eligibility for advance parole allows them to adjust status where they otherwise would be barred by law.

with the law are waiting for their bar period to run. Thus, DACA is contrary to the statutory scheme devised by Congress.

### e.  DACA fails *Chevron*'s first step.

In sum, DACA cannot withstand analysis under *Chevron*'s first step because Congress has directly addressed the precise issue at hand. It has not delegated the authority to adopt DACA to DHS. *See Chevron*, 467 U.S. at 842–43; *see also Texas I*, 809 F.3d at 179–81. Congress's clear articulation of laws for removal, lawful presence, and work authorization illustrates a manifest intent to reserve for itself the authority to determine the framework of the nation's immigration system. Against the backdrop of Congress's "careful plan," DHS may not award lawful presence and work authorization to approximately 1.5 million aliens for whom Congress has made no provision. *Texas I*, 809 F.3d at 186. DACA is "in excess of statutory jurisdiction" and "short of statutory right," and therefore violates the APA. 5 U.S.C. § 706(2). An agency's role is to administer the laws Congress passes, not to enact its own new legislative policy:

> However attractive it might be as a matter of policy, the DACA program appears to violate the proper respect for congressional primacy in lawmaking that should guide executive action, even when substantial exercises of prosecutorial discretion are inevitable. To the extent Congress has adopted overly broad and unduly harsh immigration laws, Congress should remain accountable for its choice. The executive branch should not presume the authority to let Congress off the hook.[59]

### 2.  Even if Congress had not spoken directly on the issue, DHS's interpretation is not a reasonable one.

This Court's ruling at the first step of *Chevron* alone provides a sufficient ground to settle the question presented, but the Court will proceed to analyze the DACA program under the second step of *Chevron*. *See Texas I*, 809 F.3d at 183 n.191 ("Now, even assuming the government had survived *Chevron* Step One, we would strike down DAPA as manifestly contrary to the INA under

---

[59] Zachary S. Price, *Enforcement Discretion and Executive Duty*, 67 Vand. L. Rev. 671, 761 (2014).

Step Two.") (citing *Chevron*, 467 U.S. at 844; *Mayo Found.*, 562 U.S. at 53).

At the second *Chevron* step, if the relevant statute is silent or ambiguous, the court asks "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The court should uphold an agency's rule if it is "a reasonable interpretation of the enacted text," but should overturn it if it is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found.*, 562 U.S. at 58, 53 (quotations omitted). Stated differently, the Court must ask "whether Congress would have intended, and expected, courts to treat [the regulation] as within, or outside, its delegation to the agency of 'gap-filling' authority." *Id.* at 58 (quoting *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173 (2007)).

DACA is not a reasonable interpretation of any statute and is "manifestly contrary" to the statutory scheme promulgated by Congress. *Texas I*, 809 F.3d at 186. For the same reasons discussed in this Court's analysis under the first step of *Chevron*, the program would not pass the second step: DACA is an unreasonable interpretation of the law because it usurps the power of Congress to dictate a national scheme of immigration laws and is contrary to the INA. DACA would grant lawful presence and work authorization to over a million people for whom Congress has made no provision and has consistently refused to make such a provision. *See King v. Burwell*, 576 U.S. 473, 474 (2015) ("[H]ad Congress wished to assign [a question of 'deep economic and political significance'] to an agency, it surely would have done so expressly.").

DHS's interpretation of its authority is especially unreasonable given the Supreme Court's precedent finding Congress intended to completely preempt further regulation in the area of immigration. The Supreme Court has found that state laws regulating the employment of aliens are preempted when they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," because they would interfere with "the careful balance

struck by Congress with respect to unauthorized employment of aliens." *Arizona*, 567 U.S. at 406 (quotations omitted). Like those state statutes, DACA not only interferes with the employer side of this balancing act, which makes it illegal for employers to hire those who are here illegally, but it interferes with the labor side as well.

In *Arizona*, the Supreme Court recounted the background as to why Congress did not impose criminal penalties on aliens working illegally. The Court quoted the report of a Commission set up by Congress that concluded such penalties would be "unnecessary and unworkable." *Id.* at 405.[60] They were unnecessary, at least in part, because the aliens already faced the loss of their ability to adjust status, 8 U.S.C. §§ 1255(c)(2), (8), and potential removal from the country. 8 U.S.C. § 1227(a)(1)(C)(i). DACA, of course, removes these consequences.

All of these measures enacted by Congress to protect American jobs for those legally in the country are undermined by DACA. Just as states cannot set up obstacles to the purposes and objectives of Congressional legislation, neither can an executive agency.

An exchange at the Supreme Court during *Texas I* further illustrates why DACA fails the second step of *Chevron* as an unreasonable interpretation of a silent or ambiguous statute. Chief Justice Roberts questioned whether there would be any limits to grants of deferred action if the Supreme Court were to adopt the Government's position:

> Chief Justice Roberts: Under your argument, could the President grant deferred removal to every unlawful – unlawfully present alien in the United States right now?
>
> General Verrilli: Definitely not.
>
> Chief Justice Roberts: Why not?

---

[60] The fact that Congress went so far as to set up a Commission to study immigration and employment policies and make recommendations should not be discounted. It demonstrates how seriously Congress took its role in formulating the resulting legislation.

General Verrilli: Here are the limits. Because the deferred action has - over time, there have been built up a set of administrative limits, which I'll talk about, some administrative policy limits, and then there's substantive statutory limits. The administrative policy limits are these: Deferred action has always been for the lowest priorities for removal. And everybody agrees –

Chief Justice Roberts: I'm sorry. By "administrative," you mean by the Executive branch?

General Verrilli: Correct. Yes. But –

Chief Justice Roberts: So that somehow binds the Executive branch now, the fact that – I mean, this hasn't been approved by the Executive branch prior to this point, either, and yet it's a fairly significant departure.

Transcript of Oral Argument at 19–20, *Texas I*, 136 S. Ct. 2271 (No. 15-674).

Counsel for the Government could not adequately answer the Chief Justice's question. The probing inquiry by the Chief Justice was not the first time this issue had been raised; this Court and the Fifth Circuit had asked the same question as well. The Solicitor General's response was, in effect, "the Executive Branch just would never do that." This response fell flat, since the Executive Branch was simultaneously attempting to give lawful presence to a combined DACA, Expanded DACA, and DAPA population of approximately 5.8 million individuals, over half of the country's 11.3 million estimated illegal aliens.[61] Nevertheless, using the Government's logic, echoed by the Defendant-Intervenors in this case, the Executive Branch could theoretically still give every illegal alien currently present in the United States lawful status, if DHS were to do it in smaller numbers, group-by-group. This cannot be a correct interpretation of the law.

The Court "must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency." *Texas I*, 809 F.3d at 181 (quoting *FDA v. Brown & Williamson Tobacco*

---

[61] Obviously, the ambiguous limitations suggested by the Government, even if they do exist, would not bind any subsequent administration. One need only look at the transitions from the Obama to Trump to Biden administrations to see how rapidly the Executive Branch can alter its position on immigration matters.

*Corp.*, 529 U.S. 120, 133 (2000)). Common sense instructs that the creation of this program, as was true for the establishment of DAPA and Expanded DACA, is too important to be delegated to an administrative agency. Consequently, DHS's interpretation of its authority under the INA is faulty. In the end, the Fifth Circuit's reasoning in *Texas I* controls this case; it is binding case law for this Court, and the result here is inescapable.

### 3. DACA is not supported by historical precedent.

Defendant-Intervenors also argue historical precedent provides a source of authority for the institution of DACA. (*See* Doc. No. 502 at 44–45). They cite past examples in which the Executive Branch has granted deferred action for particular groups of aliens and argue that those instances provide precedent for the program at issue here. This argument was made in *Texas I* as well.

In distinguishing previous deferred action programs from DAPA, in *Texas I* the Fifth Circuit noted that DAPA was not a bridge from one legal status to another. 809 F.3d at 184. Likewise, DACA is not a bridge from one legal status to another. By definition, the DACA recipients did not have a legal status to begin with and do not have legal status now. They have only lawful presence.

Next, the Fifth Circuit recognized that those programs, unlike DAPA, were "[mostly] done on a country-specific basis, usually in response to war, civil unrest, or natural disasters." *Id.* at 184. The same shortfalls present in *Texas I* are also present here, and DACA fares no better. It is not country- or area-specific and was not implemented in response to any natural disaster or other similar crisis. Despite Defendant-Intervenors' arguments, DACA is most similar to DAPA and Expanded DACA. Like those programs, the DACA program is not authorized by historical precedent.

Defendant-Intervenors highlight a particular example of deferred action—the "Family Fairness" policies of 1987 and 1990—as arguably analogous to the DACA program. These policies are attractive candidates for comparison because of their size: they provided deferred action for approximately 1.5 million individuals. (Doc. No. 502 at 44). The Fifth Circuit, however, already specifically rejected this analogy as well. *Texas I*, 809 F.3d at 185. Family Fairness was "interstitial to a statutory legalization scheme," because its purpose was to delay prosecution until Congress could enact legislation providing the same benefits, which it did when it passed the Immigration Act of 1990. *Id.* The Fifth Circuit concluded that Family Fairness was unlike DAPA because Congress had consistently declined to enact a DREAM Act, and DAPA was therefore not interstitial to any piece of legislation. *Id.* ("DAPA is far from interstitial: Congress has repeatedly declined to enact the Development, Relief, and Education for Alien Minors Act ('DREAM Act'), features of which closely resemble DACA and DAPA.").

> In fact, the President essentially admitted that DACA was not interstitial to legislation:
>
> Now, both parties wrote this legislation. And a year and a half ago, Democrats passed the DREAM Act in the House, but Republicans walked away from it. It got 55 votes in the Senate, but Republicans blocked it. The bill hasn't really changed. The need hasn't changed. It's still the right thing to do. The only thing that has changed, apparently, was the politics.
>
> * * *
>
> In the absence of any immigration action from Congress to fix our broken immigration system, what we've tried to do is focus our immigration enforcement resources in the right places.

Press Release, Office of the White House Press Secretary, Remarks by the President on Immigration (June 15, 2012). Thus, the President acknowledged that DACA was not interstitial to Congressional action. To the contrary, it was a program that the Executive Branch created because Congress refused to pass legislation.

Thus, the conclusion reached in *Texas I* applies here because DACA was not and is not interstitial to an act of Congress. In fact, just the opposite situation exists. Although the Defendant-Intervenors argue that DACA is a means of waiting for congressional action, given the nine-year history of failed legislation in Congress, it is an inescapable conclusion that DACA is not interstitial to any congressional action. Although Congress may someday enact such a DREAM Act, until it does, its continued failure to pass bills coextensive with the DACA population evinces a rejection of this policy.

### 4.   The differences between DAPA and DACA do not compel a different result.

Defendant-Intervenors argue "the decision in *Texas I* does not control resolution of this case." (Doc. No. 502 at 46). They argue three major points in support of this contention: 1) the substantive APA analysis in *Texas I* focused exclusively on DAPA and not Expanded DACA or DACA; 2) while DAPA would have provided relief to a population already covered by specific statutory provisions, DACA has no such analogous statutes; and 3) far fewer people are eligible for DACA than were eligible for DAPA.

Initially, the Court agrees with the Defendant-Intervenors' contention that the substantive APA analysis in *Texas I* focused almost exclusively on DAPA, but the Fifth Circuit's judgment was not so limited; it applied to Expanded DACA as well.

Next, to distinguish DACA from DAPA, Defendant-Intervenors point to a passage in the *Texas I* opinion citing a specific collection of INA provisions that provides "an intricate process for illegal aliens to derive a lawful immigration classification from their children's immigration status . . . ." 809 F.3d at 179 (citing 8 U.S.C. §§ 1151(b)(2)(A)(i), 1182(a)(9)(B)(i)(II), 1201(a), 1255). The *Texas I* court held that DAPA was unlawful in part because it would effectively nullify that particular group of provisions and displace it with a new method for alien parents to acquire

status through their children. The Defendant-Intervenors argue that because no analogous set of provisions exists for DACA, the Fifth Circuit's ruling does not apply. The same argument was made to, and accepted by, the Ninth Circuit in *Regents*. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018), *rev'd in part, vacated in part sub nom. Regents*, 140 S. Ct. 1891 (2020) (hereinafter "*Ninth Circuit Regents*").

This Court, however, does not agree. First, the Fifth Circuit's ruling in *Texas I* did not rely exclusively on the existence of the provisions allowing illegal aliens to derive a lawful immigration classification from their children's immigration status. The court relied at least as much on DAPA's incompatibility with the INA's provisions for lawful presence and work authorization, as discussed above with respect to DACA. Moreover, the Fifth Circuit also held Expanded DACA unlawful. That program had no overlap with the cited provisions, and the court obviously did not rely on their existence in ruling against it.

Second, analogous provisions *do* exist regulating the lawful admission of children, as well as for students and veterans. Congress has passed many acts relating to the immigration of children, and at least two of them provide methods for attaining status that significantly overlap with the DACA age group: derivative citizenship and naturalization upon application. Congress has allocated a method for children to derive citizenship from a parent, whereby a child born outside of the United States may become a citizen if the child: 1) has an American citizen parent; 2) is under 18 years of age; 3) lives in the legal and physical custody of the American citizen parent; and 4) is a lawful permanent resident. 8 U.S.C. § 1431. Another provision provides for the naturalization of a child born outside the United States upon application of the parent, if the child: 1) has a U.S. citizen parent; 2) has a parent who has been physically present in the United States for at least five years, two after the age of fourteen; 3) is under 18 years of age; 4) is residing

outside of the United States in the legal and physical custody of the applicant; and 5) is temporarily present in the United States pursuant to a lawful admission. *Id.* § 1433.

With regard to veterans, Congress has enacted the following statutes: 8 U.S.C. §§ 1438(a) (persons who lost United States citizenship because they served in the armed forces of a United States ally during World War II); 1439 (noncitizens who have served honorably in the United States armed forces for at least one year); 1440 (noncitizens who served in the United States armed forces during World War I, World War II, Korean hostilities, Vietnam hostilities, or other periods of military hostilities); 1440-1 (posthumous conferral of United Sates citizenship to noncitizens who died as a result of injuries incurred while serving in periods of hostilities).

With regard to students, Congress has passed the following provisions: 8 U.S.C. §§ 1101(a)(15)(F) (the "F-1" visa for full-time students) (the "F-2 visa" for dependents of full-time students) (the "F-3" visa for students from Canada and Mexico who commute across the border); 1101(a)(15)(H) (the "H-1B" visa for skilled workers) (the "H-4" visa for dependents of "H-1B" visa holders); 1101(a)(15)(J) (the "J-1" visa for students, scholars, trainees, teachers, professors, research assistants, specialists, or leaders in a field of specialized knowledge or skill participating in cultural exchange); 1101(a)(15)(L) (the "L-1A" visa for foreign employees of a corporation, executives or managers) (the "L-1B" visa for foreign employees of a corporation with specialized knowledge of the company's techniques or methodologies); 1101(a)(15)(M) (the "M-1" visa for vocational or technical students) (the "M-2 visa" for dependents of vocational or technical students).

The Ninth Circuit apparently neglected this plethora of statutes when it made its ruling in *Ninth Circuit Regents*. Moreover, to the extent one agrees with the Ninth Circuit's assumption that no analogous statutes exist, the Plaintiff States' rejoinder might be that the reason they do not exist

is because Congress has rejected them repeatedly. The Executive Branch has no authority to add

to or subtract from Congress's deliberately enacted body of work, especially in an area that the

Constitution assigns primary authority to Congress. U.S. CONST. art. 1, § 1.[62]

Defendant-Intervenors also argue that DACA is different from DAPA because it affects

fewer people. (*See* Doc. No. 502 at 46–47). The fact that DAPA was three times the size of DACA

is of no *legal* significance. One of Defendant-Intervenors' experts is an immigration law professor

and was Chief Counsel to USCIS during the time DACA was instituted. He found that a main

difference between DACA and DAPA was the size:

> Q:   So earlier we had talked about the differences between DACA and DAPA;
> right? . . . One is the size of the population, which you said doesn't affect
> the merits of whether DACA and DAPA are legally the same thing; correct?
>
> A:   In my opinion, it should not have that effect.

(Doc. No. 284, Ex. 67 at 99:15–22, Depo. of S. Legomsky). Consequently, even one of the

Defendant-Intervenors' own immigration policy experts found that the difference in the possible

number of participants between DACA (1.5 million) and Expanded DACA–DAPA (4.3 million)

should have no legal significance.

The Ninth Circuit, however, found this argument persuasive. It reasoned that a crucial

factor for the Fifth Circuit's conclusion in *Texas I* that DAPA was illegal was the fact that the

eligible population was so large. *See Ninth Circuit Regents*, 908 F.3d at 509 (citing *Texas I*, 809

---

[62] It is clear that well before DACA was implemented, the Executive Branch understood this limitation as was made
clear by the President:

> Now, I swore an oath to uphold the laws on the books, but that doesn't mean I don't know very well
> the real pain and heartbreak that deportations cause. . . . we are enforcing flawed laws in the most
> humane and best possible way. Now, I know some people want me to bypass Congress and change
> the laws on my own . . . . But that's not how – that's not how our system works. . . . That's not how
> our democracy functions. That's not how our Constitution is written. So let's be honest. I need a
> dance partner here – and the floor is empty.

Press Release, The White House Office of the Press Secretary, Remarks by the President to the National Council of
La Raza (July 25, 2011).

F.3d at 181). The Fifth Circuit had held it was unlikely Congress would "delegate a policy decision of such economic and political magnitude to an administrative agency." *Texas I*, 809 F.3d at 181 (quotations omitted). The record before the Ninth Circuit in *Regents* apparently showed that only 689,800 people were enrolled in DACA as of that time. 908 F.3d at 509. The Ninth Circuit therefore distinguished DACA from DAPA on this feature: "If the point is that the 'economic and political magnitude' of allowing 4.3 million people to remain in the country and obtain work authorization is such that Congress would have spoken to it directly, then surely it makes a difference that one policy has less than one-sixth the 'magnitude' of the other." *Id.* (quoting *Texas I*, 809 F.3d at 181).

The Ninth Circuit's explanations are far from convincing. First, it did not explain at what point the size of a group *would* become problematic. It also did not include all of the DACA-eligible individuals in its mathematical analysis. Thus, the comparison made by the Ninth Circuit was apples to oranges. It compared the number of *actual* DACA recipients to the number of *potentially* eligible individuals cited in *Texas I*. If size makes a difference as the Ninth Circuit claimed, this error is significant as the number of DACA-eligible individuals is larger than the population of eleven states and the District of Columbia.[63] Finally, the Ninth Circuit failed to address the question that all the *Texas I* judges, including the Chief Justice, asked: if the critical distinction is the population size, then why could DHS not just legalize all illegal aliens by doing it in smaller groups? These unanswered issues are critical and render this opinion unpersuasive. The 1.5 million people DACA would permit to receive lawful presence and work authorization are still too numerous to fit into the individualized notion of deferred action that courts have found

---

[63] *See* U.S. Dep't of Commerce, 2020 Census Apportionment Results (Apr. 26, 2021), https://www.census.gov/data/tables/2020/dec/2020-apportionment-data.html.

permissible in other contexts. As were DAPA and Expanded DACA, DACA is "foreclosed by Congress's careful plan." *Texas I*, 809 F.3d at 186.

Nothing in *Texas I* indicates that any of its reasoning should not equally apply to DACA. Further, as discussed previously, three Supreme Court justices have already agreed that DACA violates substantive immigration law. Justice Thomas stated pointedly in his *Regents* dissent that "Congress has not authorized DHS to reclassify an entire class of removable aliens as lawfully present or to categorically exempt aliens from statutory removal provisions." 140 S. Ct. at 1922 (Thomas, J., dissenting).

There may yet be one other significant difference between DAPA and DACA, but it too has no effect on DACA's legality. Many of the amici curiae argue that DACA has garnered much national media attention and its recipients evoke the sympathy of the nation.[64] DACA affects a younger population. Many came to this country unlawfully or stayed in this country without permission through no fault of their own. Further, according to many of the amicus briefs, the DACA population is generally well-educated and better situated to contribute to the well-being of this nation than other immigrant populations. As a group they are law-abiding and hold responsible positions, despite their youth. These factors make the DACA population a much more appealing and sympathetic group. While these may be compelling policy rationales for DACA, they can have no effect on this Court's legal conclusion. "The law's function is understood to be to neutralize

---

[64] The Court notes that many states, organizations, cities, civic groups, and individuals are very sympathetic to and very supportive of the DACA recipients. These groups have provided this Court with amicus curiae briefs which, in addition to being helpful, are demonstrative displays of support. This comes as no surprise, as this Court is likewise enamored with the thought of young people overcoming many hardships and hurdles and becoming productive members, if not leaders, of our communities. The Judiciary, however, is not the branch of government that makes decisions based upon the popularity of an idea or because many are sympathetic toward or biased against a particular group or program. Congress is the branch of government that weighs competing public sentiments when it enacts or refuses to enact legislation. In fact, the House recently passed H.R.6, which would legalize a population similar to but not coextensive with the current DACA recipients. Thus, Congress should be the target for these policy arguments.

the emotionality that legal disputes arouse in the participants and lay observers."[65] As much as this Court might agree with these sentiments, and as popular as this program might be, the proper origination point for the DACA program was, and is, Congress.[66]

For the reasons provided above, DACA violates the substantive provisions of the APA.

**F.    Take Care Clause**

The Plaintiff States argue they are entitled to summary judgment on their claim under the Take Care Clause of the Constitution. *See* U.S. CONST. art. II, § 3 (the President "shall take Care that the Laws be faithfully executed"). According to them, DACA amounts to a constitutional violation because "the Executive cannot exercise such legislative power—it cannot dispense with statutes addressing unlawful presence by declaring a class of aliens to henceforth be present lawfully." (Doc. No. 486 at 53).

In its order denying the preliminary injunction, this Court decided to "defer[] judgment on the Take Care Clause until a full hearing on the merits or until the appropriate court on appeal instructs it to decide the issue." (Doc. No. 319 at 67). If DHS's alleged acts or omissions related to DACA were unconstitutional, no action it takes to achieve compliance with the APA will remedy that flaw.

To resolve the issues concerning the legality of DACA, the Court need not address whether the Executive Branch has violated its duties under the Constitution. DACA's factual presentation has not changed since this Court's earlier opinion, in which the Court declined to rule on the Take Care Clause question. Moreover, the legal waterfront has not changed either; there is still a dearth

---

[65] Richard A. Posner, Frontiers of Legal Theory 226 (2001).

[66] In *Texas I*, Justice Anthony Kennedy noted that the starting place for immigration law changes should have been Congress. *See* Transcript of Oral Argument at 24, *Texas I*, 136 S. Ct. 2271 (No. 15-674) ("[T]he briefs go on for pages to the effect that the President has admitted a certain number of people and then Congress approves it. *That seems to me to have it backwards. It's as if that the President is setting the policy and the Congress is executing it. That's just upside down.*") (emphasis added).

of precedent on the Take Care Clause. Given that the Court has made a full disposition of the case without addressing the constitutional claim, it need not address this issue. *See Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) ("We have often stressed that it is important to avoid the premature adjudication of constitutional questions and that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable.") (cleaned up). Accordingly, the Court declines to rule upon the Plaintiff States' claim based upon the Take Care Clause.

## G.   Arbitrary and Capricious and Other Issues for Consideration on Remand

The Plaintiff States did not allege that DHS's actions were arbitrary and capricious under the APA as the plaintiffs in *Regents* did. Nevertheless, the Court will address that concept briefly as it is clearly a consideration for DHS should it elect to proceed on remand. While many other factors may fall under the rubric of "arbitrary and capricious," the Court will limit its discussion to the two reasons highlighted as flaws in DACA's attempted rescission in *Regents*: 1) failure to consider forbearance without benefits, and 2) failure to consider reliance interests.

First, the underlying DACA record points out in multiple places that while forbearance fell within the realm of prosecutorial discretion, the award of status and benefits did not. Despite this distinction, neither the DACA Memorandum nor the underlying record reflects that any consideration was given to adopting a policy of forbearance without the award of benefits. Second, for decades the states and their residents have relied upon DHS (and its predecessors) to protect their employees by enforcing the law as Congress had written it. Once again, neither the DACA Memorandum nor its underlying record gives any consideration to these reliance interests. Thus, if one applies the Supreme Court's rescission analysis from *Regents* to DACA's creation, it faces similar deficiencies and would likely be found to be arbitrary and capricious.

23-40653.25257

Additionally, throughout the *Texas I* litigation and this lawsuit, the parties and amici curiae have raised various other issues that might be considered in a reformulation of DACA. In no particular order, these include: 1) the benefits bestowed by the DACA recipients on this country and the communities where they reside[67]; 2) the effects of DACA or similar programs on legal and illegal immigration[68]; 3) the effects of DACA on the unemployed or underemployed legal residents of the states; 4) whether DACA amounts to an abandonment of the Executive Branch's duty to enforce the law as written (as the Plaintiff States have long claimed); 5) whether any purported new formulation violates the equal protection guarantees of the Constitution (as Justice Sotomayor was concerned that DACA's rescission would); and 6) the costs DACA imposes on the states and their respective communities.

Some of the more attenuated considerations might include: 1) the secondary costs imposed on states and local communities by any alleged increase in the number of illegal immigrants due to DACA[69]; and 2) what effect illegal immigration may have on the lucrative human smuggling and human trafficking activities of the drug cartels that operate on our southern border.[70] Finally,

---

[67] The record of this Court, and no doubt the records of the many rescission courts, are replete with facts, figures, and testimonials.

[68] The argument has been made that programs such as DACA may have a deleterious effect on legal immigration and have a motivating effect on illegal immigration. With regard to the former, the Court has only seen anecdotal reports, but with regard to the latter, a DHS official has actually testified under oath to that effect. *See* Testimony of Chief of the Rio Grande Valley Sector of the United States Border Patrol, Kevin Oaks, Cause No. B-14-119 (Doc. No. 38).

[69] While finding unbiased and accurate data or reports on the costs of illegal immigration is a difficult task, the Court cites as examples two sources that appear to be untainted by secondary motivations. The first study calculates the following 2018 costs for illegal immigration in Texas as follows: 1) emergent care ($95.8 billion); 2) elementary and secondary education ($1.5 billion); 3) higher education ($16.1 million); 4) health care ($890 million); and 5) criminal justice expenses ($374.2 million). *See* Rodriguez-Sanchez, *Undocumented Immigrants in Texas: A Cost Benefit Assessment*, Rice University's Baker Institute for Public Policy (2020). A second, smaller study, which concentrated on the costs incurred by one hospital in Corpus Christi (over 150 miles from the Mexico-United States border) in a three-year period (2011-2014), pegged those costs at between $3,513,000 and $19,610,000, depending on whether one used total costs or charges. *See* Kane, Richman, et al., *Costs and Characteristics of Undocumented Immigrants Brought to a Trauma Center by Border Patrol Agents in Southern Texas*, J. Emerg. Trauma Shock. 2019 Jan-Mar; 12(1):54-57.

[70] Estimates of the amount of money cartels charge immigrants to cross the Mexico-United States border vary greatly. According to the United Nations, these tolls (also colloquially referred to as *piso* or *brinco*) average $5,000 for

if DHS elects to justify DACA by asserting that it will conserve resources, it should support this conclusion with evidence and data. No such evidence is to be found in the administrative record or the DACA Memorandum. DHS should consider the costs imposed on or saved by all governmental units.

These are just a few concerns that have been raised by parties or amici curiae throughout the many years of the *Texas I* fight over DAPA and Expanded DACA and this litigation over DACA. The Court does not suggest by any means that this is an exhaustive list, and no doubt many more issues may arise throughout the notice and comment period. Further, the Court takes no position on how DHS (or Congress, should it decide to take up the issue) should resolve these considerations, as long as that resolution complies with the law.

## V.    Conclusion

DHS violated the APA with the creation of DACA and its continued operation. The Motion for Summary Judgment filed by the Plaintiff States is granted in part and denied in part. (Doc. No. 486). The Motion for Summary Judgment filed by the individual Defendant-Intervenors is denied. (Doc. No. 504). The Government's request for a remand without vacatur is granted in part and denied in part. (Doc. No. 569). The DACA Memorandum and the DACA program that it created are hereby vacated and remanded to DHS for further consideration, as requested.

Nevertheless, these rulings do not resolve the issue of the hundreds of thousands of DACA recipients and others who have relied upon this program for almost a decade. That reliance has not

---

Mexican nationals and closer to $7,500 for Central Americans. If one applies the low end of that range to the 749,834 immigrants encountered by the CBP between October 1, 2020 and April 30, 2021, that results in a gross number of almost four billion dollars. *See* U.N. Office on Drugs and Crime, *Global Study on Smuggling Migrants 2018* at 99, Sales No. E.18.IV.9; U.S. Customs and Border Protection (2021), Southwest Land Border Encounters, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters. Given the nature of human smuggling, no person or entity can state with certainty the dollars involved, but no one can deny that it is a lucrative sideline for the major drug cartels.

diminished and may, in fact, have increased over time. Therefore, the order of immediate vacatur as it applies to current DACA recipients (but not the order of remand) is temporarily stayed until a further order of this Court, the Fifth Circuit Court of Appeals, or the United States Supreme Court.

DHS may continue to accept new DACA applications and renewal DACA applications as it has been ordered to by the *Batalla Vidal* court cited above, but it is hereby enjoined from approving any new DACA applications and granting the attendant status. A separate injunction order will be entered to that effect. To be clear, neither this order nor the accompanying injunction requires DHS or the Department of Justice to take any immigration, deportation, or criminal action against any DACA recipient, applicant, or any other individual that it would not otherwise take.

Signed this 16th day of July, 2021.

Andrew S. Hanen
United States District Judge

**Tab 6**

Order of Permanent Injunction (July 16, 2021)

United States District Court
Southern District of Texas
**ENTERED**
July 16, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ET AL., | § | |
| *Plaintiffs*, | § | |
| | § | |
| *v.* | § | |
| | § | |
| THE UNITED STATES OF AMERICA, ET AL., | § | |
| *Defendants*, | § | Civil Action No. 1:18-CV-00068 |
| | § | |
| *and* | § | |
| | § | |
| KARLA PEREZ, ET AL.; | § | |
| | § | |
| STATE OF NEW JERSEY, | § | |
| *Defendant-Intervenors.* | § | |

## <u>ORDER OF PERMANENT INJUNCTION</u>

The Court has found that at least one of the Plaintiff States has satisfied all the necessary requisites to maintain this lawsuit. The Court has further found, pursuant to its Memorandum and Order, that the Plaintiff States are entitled to summary judgment on the merits of their procedural and substantive Administrative Procedure Act (APA) claims and has granted same. Finally, the Plaintiff States have proven the required elements to obtain a permanent injunction.

The Plaintiff States have requested vacatur of the Deferred Action for Childhood Arrivals (DACA) program and a permanent injunction against its continued operation. A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

1

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

The first three factors are discussed in detail in the Court's ruling on the opposing motions for summary judgment, and that discussion need not be repeated here. Therefore, the Court finds:

**Factor One.** As discussed in the section on standing in the memorandum and opinion, the Plaintiff States have demonstrated that they have suffered an irreparable injury.

**Factor Two.** The injury to the Plaintiff States is derived from the creation of and the continued operation of the DACA program. Only its cessation would alleviate that injury, and monetary damages are inadequate to do so.

**Factor Three.** In this factor, the Court considers only the hardships as between the plaintiff, Plaintiff States, and the defendant, the Government, the party being enjoined. Ceasing the DACA program would not impose a significant hardship on the Government. Conversely, the Plaintiff States have demonstrated the hardship that the continued operation of DACA has inflicted on them. Furthermore, the Government has no legitimate interest in the continuation of an illegally implemented program.

**Factor Four.** The public interest of the nation is always served by the cessation of a program that was created in violation of law and whose existence violates the law. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring) (recognizing that there is a "public interest in having congressional enactments properly interpreted and applied"). Considering all four factors, the Court finds that an injunction is warranted and appropriate here.

Nevertheless, "[i]t goes without saying that an injunction is an equitable remedy." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). The "essence of equity" is to "mould each decree to the necessities of the particular case." *Rondeau v. Mosinee Paper Corp.*, 422 U.S.

49, 61. Equity is distinguished by "[f]lexibility rather than rigidity" and the "qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs." *Id.*

The most significant equitable interests to consider here are those of the DACA recipients. While these recipients are not themselves enjoined, the Court also finds that as part of its analysis of factors three and four above, the Court is entitled to take into consideration their interests as well. Hundreds of thousands of individual DACA recipients, along with their employers, states, and loved ones, have come to rely on the DACA program. These interests have been discussed in this Court's earlier opinion (Doc. No. 319), by the Supreme Court in *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1896 (2020), and in the many decisions by other courts that had to address the attempted rescission of DACA. That being the case, the Court sees no need to delineate them here. Given those interests, it is not equitable for a government program that has engendered such significant reliance to terminate suddenly. This consideration, along with the Government's assertion that it is ready and willing to try to remedy the legal defects of the DACA program, indicates that equity will not be served by a complete and immediate cessation of DACA.

Accordingly, the Court hereby grants the request for permanent injunction and vacatur, subject to the following limitations and parameters:

The DACA Memorandum (June 15, 2012 Memorandum by Department of Homeland Security (DHS) Secretary Janet Napolitano) and the DACA program that it created are hereby vacated; the DACA Memorandum is remanded to DHS for further consideration, as requested. From this date forward, the United States of America, its departments, agencies, officers, agents,

and employees are hereby enjoined from administering the DACA program and from reimplementing DACA without compliance with the APA.

With respect to new (those not already granted by the date of this order) DACA applications received by DHS, the order of vacatur and remand is effective immediately. DHS may continue to accept applications as it has been ordered to do by the court in *Batalla Vidal v. Wolf*, 16-CV-4756, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020), but it may not grant these applications until a further order of this Court, the Fifth Circuit Court of Appeals, or the United States Supreme Court. Thus, DHS is hereby permanently enjoined from granting DACA status for any new applicants.

With respect to DACA recipients who obtained that status on or before the date of this injunction and DACA renewal applications for these existing recipients (regardless of when the renewal applications are submitted), the order of immediate vacatur and the permanent injunction (but not the order of remand) are temporarily stayed until a further order of this Court, the Fifth Circuit Court of Appeals, or the United States Supreme Court. *See Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) ("the authority to hold an order in abeyance pending review allows an appellate court to act responsibly when faced with serious legal questions that merit careful scrutiny and judicious review") (quotations omitted). In addition to appellate review, the stay also serves the purpose of allowing DHS time to perform the review it has represented to the Court that it plans to do.

Subject to any further order as described above, nothing in this injunction should be read as ordering DHS or any other governmental entity to cancel or otherwise terminate DACA status for any individual who currently is, as of this date, a DACA recipient in good standing. Further, nothing in this injunction requires DHS or the Department of Justice to take any immigration,

deportation, or criminal action against any DACA recipient, applicant, or any other individual that either would not otherwise take.

DHS is directed to post a public notice, within 3 calendar days of this Injunction, to be displayed prominently on its website and on the websites of all other relevant agencies, that a United States District Court has found the DACA program to be illegal and that, though applicants may continue to submit applications, the Government is prohibited from granting such applications. The Government shall provide a copy of the notice to all counsel and post it to the docket within 3 calendars days of this Order.

The Court finds this permanent injunction is reasonable and properly takes into account the reliance interests of the Plaintiff States on the duly enacted immigration laws of this country, the interests of the public in having the Government and its agencies and employees comply with the law, and the significant reliance interests that DACA has engendered since its inception. This Court retains jurisdiction of the matter for purposes of construction, modification, and enforcement of this Permanent Injunction. If the Government fails to take the appropriate steps to remedy the shortfalls in DACA within a reasonable time given the complexities inherent in such a process, the Court will reconsider its decision to stay portions of the relief that it has granted, if an appropriate motion is filed.

Signed at Houston, Texas, this 16th day of July, 2021.

Andrew S. Hanen
United States District Judge

23-40653.25265

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Nicholas S. Crown*
Nicholas S. Crown