No. 23-40653

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**State of Texas; State of Alabama; State of Arkansas; State of Louisiana; State of Nebraska; State of South Carolina; State of West Virginia; State of Kansas; State of Mississippi,**

*Plaintiffs - Appellees*

v.

**United States of America; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; Troy Miller, Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection; Patrick J. Lechleitner, Acting Director of U.S. Immigration and Customs Enforcement; Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services; Jason D. Owens, Chief of the U.S. Border Patrol,**

*Defendants – Appellants,*

**Maria Rocha; Jose Magana-Salgado; Nanci J. Palacios Godinez; Elly Marisol Estrada; Karina Ruiz De Diaz; Carlos Aguilar Gonzalez; Luis A. Rafael; Darwin Velasquez; Jin Park; Oscar Alvarez; Denise Romero; Jung Woo Kim; Angel Silva; Hyo-Won Jeon; Elizabeth Diaz; Blanca Gonzalez; Moses Kamau Chege; Maria Diaz,**

*Intervenor Defendants – Appellants,*

**State of New Jersey,**

*Intervenor - Appellant.*

## BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM LAW
## INSTITUTE IN SUPPORT OF APPELLEES

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**

Pursuant to Fifth Circuit Rule 28.2.1 and Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

DATED: April 16, 2024     Respectfully submitted,

           /s/ Matt Crapo
           Matt A. Crapo
           Immigration Reform Law Institute
           25 Massachusetts Ave., NW, Suite 335
           Washington, DC 20001
           Telephone: (202) 232-5590

           Attorney for *Amicus Curiae*

# TABLE OF CONTENTS

Page

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE ..........................................................1

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................3

I.      This Court's Decision in *Texas II* is Controlling and Dispositive of this Appeal ...........................................................................................3

II.     *Immigration Priorities* Does Not Undermine *Texas II* ...................7

III.    The Court Should Address the States' Take Care Claim ..............11

CONCLUSION ......................................................................................16

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. United States*, 567 U.S. 387 (2012).................................................11, 14

*Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017) ........................1

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ..........................................................4

*City of Los Angeles v. Adams*, 556 F.2d 40 (D.C. Cir. 1977)..................................13

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020)...........9

*Galvan v. Press*, 347 U.S. 522 (1954) .....................................................................10

*Gene & Gene, L.L.C. v. Biopay, L.L.C.*, 624 F.3d 698 (5th Cir. 2010).................5, 6

*Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838) ...................................12

*Ketchum v. Gulf Oil Corp.*, 798 F.2d 159 (5th Cir. 1986).........................................5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................................10

*Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129 (1936) ..................................3

*Massachusetts v. EPA*, 549 U.S. 497 (2007) .............................................................7

*Nishimura Ekiu v. United States*, 142 U.S. 651 (1892) ...........................................10

*Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016) ....................................1

*Texas v. Biden ("MPP")*, 20 F.4th 928 (5th Cir. 2021),
    *rev'd on other grounds*, 142 S. Ct. 2528 (2022)....................................12, 13, 15

*Texas v. United States ("DAPA")*, 809 F.3d 134 (5th Cir. 2015),
    *aff'd by an equally divided Court*, 579 U.S. 547 (2016) ............................6, 9, 11

*Texas v. United States*, 549 F. Supp. 3d 572 (S.D. Tex. 2021) ...............................15

*Texas v. United States ("Texas II")*, 50 F.4th 498 (5th Cir. 2022) ............. 2, *passim*

*Texas v. United States ("Texas III")*, __ F. Supp. 3d ___,
 2023 U.S. Dist. LEXIS 162598 (S.D. Tex. 2023) ......................................2, 4, 9

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018)...................................................................1

*United States v. Texas ("Immigration Priorities")*,
 143 S. Ct. 1964 (2023)............................................................................. 1, *passim*

*United States v. Texas*, 577 U.S. 1101 (2016) .......................................................12

*United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186 (1950) ..........6

*Univ. of the D.C. Faculty Ass'n v. D.C. Fin. Responsibility & Mgmt. Assistance
 Auth.*, 163 F.3d 616 (D.C. Cir. 1998) ....................................................................4

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
 50 F.4th 164 (D.C. Cir. 2022)..................................................................................1

## CONSTITUTION

U.S. CONST. art. II, § 3.........................................................................................11, 12

U.S. CONST. art. III, § 2 ...........................................................................................9

## MISCELLANEOUS

Deferred Action for Childhood Arrivals,
 87 Fed. Reg. 53152 (Aug. 30, 2022) ...........................................................2, 4, 5

Fed. R. App. P. 29(a)(2)..............................................................................................1

## INTEREST OF *AMICI CURIAE*[1]

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas ("Immigration Priorities")*, 143 S. Ct. 1964 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## INTRODUCTION

This Court has already held that the Deferred Action for Childhood Arrivals ("DACA") program, first established in 2012 by then-Secretary of Department of

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

Homeland Security Janet Napolitano and re-promulgated in materially indistinguishable form in 2022 by rule, 87 Fed. Reg. 53152 (Aug. 30, 2022), is "manifestly contrary" to the Immigration and Nationality Act ("INA") and therefore "violates the substantive requirements" of the Administrative Procedure Act ("APA"). *Texas v. United States ("Texas II")*, 50 F.4th 498, 528 (5th Cir. 2022). The Court declined to rule on the lawfulness of the DACA Rule and remanded this case to the district court to determine in the first instance whether the DACA Rule is materially distinguishable from the pre-existing DACA program. *Id.* at 512.

On remand, the district court found that "there are no material changes to the Final Rule from the 2012 DACA Memorandum that the Fifth Circuit held to be illegal." *Texas v. United States ("Texas III")*, __ F. Supp. 3d ___, 2023 U.S. Dist. LEXIS 162598, *46 (S.D. Tex. 2023). The federal government concedes that the DACA Rule "is substantively the same policy as the DACA Memorandum." U.S. Br. at 36 (internal quotation omitted). Accordingly, this Court's decision in *Texas II* is binding on this panel and controls the outcome here. Because the DACA Rule merely codifies and is substantively identical to the DACA program, the Court should apply the law-of-the-case doctrine and affirm the district court's judgment.

To the extent that Appellants suggest that the States lack standing in light of the Supreme Court's intervening decision in *United States v. Texas ("Immigration*

*Priorities")*, 143 S. Ct. 1964 (2023), their arguments are unavailing. The Supreme Court's decision in *Immigration Priorities* does not clearly hold or teach an outcome contrary to this Court's rulings in *Texas II*. Instead, the Supreme Court acknowledged that its standing decision "is narrow and simply maintains the longstanding jurisprudential status quo," *Id.* at 1975, and expressly disavowed that its holding would control cases involving policies such as DACA, which confer legal benefits or legal status.

Finally, the deferred action contemplated by the DACA Rule constitutes a clear instance of a generalized and prospective dispensation from the law. Well over a million DACA recipients have been given permission to reside in the United States even though Congress deems their presence unlawful. This dispensation is impermissible under the Take Care Clause, and the DACA Rule should be struck down on that basis, as well.

## ARGUMENT

### I.     This Court's Decision in *Texas II* is Controlling and Dispositive of this Appeal.

An agency is powerless to create rules that exceed the authority conferred by Congress, much less rules that run contrary to Congress's statutory scheme. Any such regulation would be *ultra vires* and a nullity. *See Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936) (holding that a "regulation [that] … operates to create a rule out of harmony with the statute, is a mere nullity" because an

agency's "power … to prescribe rules and regulations … is not the power to make law" but rather "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute").

In reviewing an *ultra vires* claim, courts examine statutory language to determine whether Congress intended the agency to have the power that it exercised when it acted. *Univ. of the D.C. Faculty Ass'n v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616, 620 (D.C. Cir. 1998). A reviewing court must reasonably be able to conclude that the regulations issued were contemplated in Congress's grant of authority. *Chrysler Corp. v. Brown*, 441 U.S. 281, 308 (1979).

As this Court has already held, the INA does not provide statutory authority for the DACA program. *Texas II*, 50 F.4th at 524-28. This Court's prior judgment with respect to the DACA program leaves no room for upholding the DACA Rule, which is materially indistinguishable from and merely codifies the pre-existing DACA program. *See*, *Texas III*, 2023 U.S. Dist. LEXIS 162598 at *46 ("[T]here are no material changes to the [DACA] Rule from the 2012 DACA Memorandum that the Fifth Circuit held to be illegal."); U.S. Br. at 36 (conceding that the DACA Rule is substantively the same as the pre-existing DACA program).[2]

---

[2] *See also* Deferred Action for Childhood Arrivals, 87 Fed. Reg. 53152, 53163 (Aug. 30, 2022) ("This rule does not authorize new entrants to the United States; indeed, *it codifies, but does not expand*, the threshold criteria for

The Court is "constrained to follow [its] dispositive precedent," and in ruling on this appeal, the Court's holding "must comport with prior panel decisions, until changed by this [C]ourt acting en banc, or unless the Supreme Court either clearly holds or teaches to the contrary." *Ketchum v. Gulf Oil Corp.*, 798 F.2d 159, 162 (5th Cir. 1986).

The States amply demonstrate that the *Texas II* decision controls the outcome here. *See* Appellees' Br. at 12-19. Accordingly, the Court should apply the law-of-the-case doctrine[3] because a prior panel of this Court has already ruled

_____

consideration for deferred action under the DACA policy that have existed since 2012."); *id.* at 53177 ("The final rule *codifies without material change* the threshold criteria that have been in place for a decade . . . ."); *id.* at 53183 ("DHS acknowledges that *this rule codifies DACA*, which reduces the agency's flexibility with regard to terminating or changing certain aspects of the policy, but reiterates the purpose of the rule is to preserve and fortify DACA, a policy that has been in place for 10 years."); *id.* at 53202 ("This rule again *codifies an exercise of DHS's authority to grant employment authorization to DACA recipients* and thereby serves to preserve and fortify DACA."); *id.* at 53208 ("DHS agrees that the rule properly *codifies DHS's decade-long policy* that DACA recipients are similarly situated to other individuals with deferred action who have, since at least 2002, not accrued unlawful presence for purposes of INA sec. 212(a)(9), 8 U.S.C. 1182(a)(9) inadmissibility while action is deferred in their case."); *id.* at 53243 ("DHS notes that the proposed 8 CFR 236.23(c)(2) *codifies and clarifies longstanding DACA policy* . . . ."); *id.* at 53297 ("DHS does not believe the rule triggers NEPA obligations in the first instance because *it simply codifies existing policy* toward a population already in the United States and thus does not alter the environmental status quo.") (emphases added throughout).

[3] "The law of the case doctrine provides that an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Gene & Gene, L.L.C. v. Biopay, L.L.C.*,

that the INA does not confer upon DHS the authority to implement the DACA program, and the DACA Rule, which is materially identical to the decade-long DACA program, falls under that ruling. *See Texas II*, 50 F.4th at 528 ("DACA 'is foreclosed by Congress's careful plan; the program is manifestly contrary to the statute.'") (quoting *Texas v. United States ("DAPA")*, 809 F.3d 134, 186 (5th Cir. 2015) (internal quotations omitted), *aff'd by an equally divided Court*, 579 U.S. 547 (2016)).

Further, none of the exceptions to the law-of-the-case doctrine applies. Exceptions to the law-of-the-case doctrine allow reexamination of issues decided on appeal "only if (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Gene & Gene*, 624 F.3d at 702 (internal quotation omitted). Inasmuch as the DACA Rule is a mere codification of the pre-existing DACA program, no material change in evidence or controlling law suggest a different outcome here. Accordingly, the Court should affirm the district court's judgment based upon *Texas II* alone.

---

624 F.3d 698, 702 (5th Cir. 2010) (internal quotation omitted). The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950).

**II.    *Immigration Priorities* Does Not Undermine *Texas II*.**

The federal government argues that the Supreme Court's decision in

*Immigration Priorities* abrogates this Court's reliance in *Texas II* on *Massachusetts*

*v. EPA*, 549 U.S. 497 (2007), in holding that the States have standing to challenge

DACA and precludes the States from establishing Article III standing now. U.S.

Br. at 16-19. But *Immigration Priorities* does neither.

The Supreme Court in *Immigration Priorities* held that federal courts lacked

the authority to "order the Executive Branch to take enforcement actions against

violators of federal law," and the States in that case therefore lacked Article III

standing to litigate such a dispute. 143 S. Ct. at 1975. The Supreme Court

explained that

> This case is categorically different … because it implicates only one
> discrete aspect of the executive power—namely, the Executive
> Branch's traditional discretion over whether to take enforcement
> actions against violators of federal law. And *this case raises only the
> narrow Article III standing question of whether the Federal Judiciary
> may in effect order the Executive Branch to take enforcement actions
> against violators of federal law*—here, by making more arrests. Under
> this Court's Article III precedents and the historical practice, the answer
> is no.

*Id.* at 1975 (emphasis added); *see also id.* at 1976 ("[T]he States have

brought an extraordinarily unusual lawsuit. They want a federal court to

order the Executive Branch to alter its arrest policies so as to make more

arrests.").

The federal government seizes on a footnote in *Immigration Priorities*
in which the Supreme Court determined that its decision in *Massachusetts v.*
*EPA* "does not control this case" because *Massachusetts* did not involve "a
challenge to an exercise of the Executive's enforcement discretion."
*Immigration Priorities*, 143 S. Ct. at 1975 n.6. According to the government,
this footnote distinguishing *Massachusetts* teaches that no State is entitled to
"special solicitude" in the Article III standing analysis in a case in which a
State challenges immigration enforcement policies under the APA. U.S. Br.
at 16-18; *see also id.* at 22 (arguing that *Immigration Priorities* abrogated
this Court's reasoning that Texas is entitled to special solicitude under
*Massachusetts v. EPA*).

The federal government reads too much into the *Immigration Priorities*
footnote. In that case, the Supreme Court stressed that its holding "is narrow and
simply maintains the longstanding jurisprudential status quo," 143 S. Ct. at 1975,
and expressly disavowed that its holding would control cases involving policies
such as DACA, which confer legal benefits or legal status. *Id.* at 1974 (expressly
excluding from the Court's holding cases that involve a challenge to an Executive
Branch policy that involves both the Executive Branch's arrest or prosecution
priorities and the Executive Branch's provision of legal benefits or legal status and

8

citing two DACA-related cases: *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020) (involving DACA), and *DAPA*, 809 F.3d at 154).

Also, the Supreme Court's holding in *Immigration Priorities* turned on the fact that federal courts *lack the authority* to order the Executive Branch to alter its arrest policies so as to make more arrests. *Id.* at 1976. The fact that the Supreme Court determined that *Massachusetts v. EPA* did "not control" the standing analysis in such "an extraordinarily unusual lawsuit" should not be read to undermine its applicability in cases such as this in which the States are not seeking an order compelling the government to alter its arrest policies, but instead seeking judicial review of a rule promulgated pursuant to the APA. Indeed, this case is clearly distinguishable from *Immigration Priorities* because nothing in this case "requires the DHS or the Department of Justice to take any immigration, deportation, or criminal action against any DACA recipient, applicant, or any other individual that would otherwise not be taken." *Texas III*, 2023 U.S. Dist. LEXUS 162598 at *66; *see also Texas II*, 50 F.4th at 529 ("It bears repeating: the district court's judgment does not require DHS to remove anyone.")

The federal judicial power extends, *inter alia*, to "Cases … arising under [the] Constitution [and] the Laws of the United States." U.S. CONST. art. III, § 2. At its minimum, standing presents the tripartite test of whether the party invoking a court's jurisdiction raises a sufficient "injury in fact" under Article III that (a)

constitutes "an invasion of a legally protected interest," (b) is caused by the challenged action, and (c) is redressable by a court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) (interior quotation marks omitted). The States argue that they are entitled to special solicitude in the standing analysis to protect their quasi-sovereign interests in the well-being of their residents, Appellees' Br. at 27-29, and amply demonstrate the requisite injury, causation, and redressability for standing. *Id.* at 15-17, 20-26.

All that *Amicus* would add is that it has long been recognized that the power "to forbid the entrance of foreigners … or to admit them only in such cases and upon such conditions as it may see fit to prescribe" is an inherent sovereign prerogative that the States surrendered to Congress upon their admission to the Union. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are . . . entrusted exclusively to Congress . . . ."). In enacting the INA, Congress fashioned a comprehensive immigration scheme in which it defined which classes of aliens are considered lawfully present, which are eligible for work authorization or parole, and which are subject to removal. Although Congress has permitted DHS to exercise broad discretion in enforcing many aspects of the immigration system, it did not give the Executive

branch free reign to expand statutory benefits, relief or lawful status to classes of aliens other than those set forth in the INA.

As this Court recognized in *Texas II*, "DACA implicates Texas's quasi-sovereign interest in classifying aliens." 50 F.4th at 515. Thus, in addition to their quasi-sovereign interests in the well-being of their residents, the States also have a strong quasi-sovereign interest in the strict enforcement of immigration law as established by Congress.

## III. The Court Should Address the States' Take Care Claim.

As the States suggest, this Court can affirm the judgment of the district court on any grounds supported by the record. Appellees' Br. at 41-42 (citing *DAPA*, 809 F.3d at 178). The States also demonstrate how benefits provided by the DACA Rule are contrary to the congressional scheme in the INA. *Id.* at 32-41. But the Court should also rule that the DACA Rule's programmatic, class-wide dispensation from the law is a violation of the Take Care clause. U.S. CONST. art. II, § 3 (requiring the President to "take Care that the Laws be faithfully executed").

A mere ten days after the DACA memorandum was published, the late Justice Scalia recognized that the DACA program amounted to a "dispensation" from the law. *Arizona v. United States*, 567 U.S. 387, 435 (2012) (Scalia, J., dissenting) (referring to applications to be enrolled in DACA as "biennial requests for dispensation"). Further, in granting review in the *DAPA* case, the Supreme

Court ordered "the parties … to brief and argue '[w]hether [DAPA] violates the Take Care Clause of the Constitution.'" *United States v. Texas*, 577 U.S. 1101 (2016).

This Court has recently provided guidance on the applicability of the Take Care Clause. *See Texas v. Biden ("MPP")*, 20 F.4th 928, 978-83 (5th Cir. 2021) (discussing how the Take Care Clause incorporates the common law prohibition against suspending and dispensing powers and concluding that "the Constitution[] explicitly forb[ids] the executive from nullifying whole statutes by refusing to enforce them on a *generalized* and *prospective* basis") (emphasis in original), *rev'd on other grounds*, 142 S. Ct. 2528 (2022); *see also Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 613 (1838) (rejecting suggestion that the Take Care Clause vested the President with the power to dispense with laws and that recognizing such a power "would be clothing the President with a power entirely to control the legislation of [C]ongress"). Although this Court need not resolve this constitutional issue to conclude that the DACA Rule is unlawful, the Take Care violation is both ripe for adjudication and provides a clear basis for an alternative holding, particularly with respect to the deferred action aspect of the DACA Rule.

The Take Care Clause provides that the President "shall take care that the laws be faithfully executed." U.S. CONST. art. II, § 3. In *MPP*, this Court explained how the Take Care Clause is a limit on executive powers and precludes the

executive branch from suspending or dispensing with the law. *See* 20 F.4th at 978-82; *id.* at 979 (describing the power to dispense with a law as "the power to grant permission to an individual or a corporation to disobey a statute" or alternatively as the power to make it lawful for an individual to violate a statutory prohibition so long as that person has "dispensation"). By defining a class of aliens who are eligible for DACA and affording successful applicants deferred action, the DACA Rule essentially grants recipients permission to disobey a statute; that is, it grants a dispensation from the immigration laws that deem such DACA recipients removable. In this way, the DACA Rule runs afoul of the Take Care Clause and should be struck down on that basis.

Appellants cannot avoid this result by attempting to justify the DACA program either as a legitimate attempt to prioritize the allocation of limited resources or as a permissible exercise of prosecutorial discretion. Faced with limited resources, an agency has the discretion to implement the mandate of Congress as best it can, by setting priorities for action. *See City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (holding that when a statutory mandate is not fully funded, "the agency administering the statute is required to effectuate the original statutory scheme as much as possible, within the limits of the added constraint."). With DACA, however, DHS does not "effectuate the original statutory scheme as much as possible" within the limits set by underfunding.

DACA was not created because of lack of resources; the aliens protected by it were already rarely removed. *See* D. Ct. ECF Doc. 487-8 at 4 (Memorandum from Jeh Charles Johnson, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Who are Parents of U.S. Citizens or Permanent Residents at 3 (Nov. 20, 2014) (explaining that DACA applies to individuals who "are extremely unlikely to be deported given [the] Department's limited enforcement resources") (also available at: https://www.dhs.gov/sites/default/files/publications/14_1120_memo_deferred_action_0.pdf) (last visited Apr. 11, 2024)). Furthermore, as Justice Scalia observed, "[t]he husbanding of scarce enforcement resources can hardly be the justification for [DACA], since the considerable administrative cost of conducting as many as 1.4 million background checks, and ruling on the biennial requests for dispensation that the nonenforcement program envisions, will necessarily be *deducted* from immigration enforcement." *Arizona*, 567 U.S. at 435 (Scalia, J., dissenting) (emphasis in original). Thus, rather than a mere marshalling and focusing of scant resources, DACA simply reflects the current administration's policy judgment that these aliens should be free to live and work in the United States without fear of deportation, or, in other words, that these aliens should be granted a dispensation from the law.

The government's attempt to justify the DACA program as a valid form of prosecutorial discretion, *see*, *e.g.*, U.S. Br. at 46, fairs no better. As this Court explained in *MPP*, the Executive may exercise prosecutorial discretion "in *particular* instances and at *particular moments* in time," but may not nullify "whole statutes by refusing to enforce them on a *generalized* and *prospective* basis." 20 F.4th at 983 (emphasis in original). Here, the DACA Rule programmatically dispenses with the law on a generalized and prospective basis and therefore cannot be shielded from judicial review as a valid exercise of prosecutorial discretion. Indeed, the district court determined that the DACA Rule defines a class of aliens numbering approximately 1.5 million—a population "too numerous to fit into the individualized notion of deferred action that courts have found permissible in other contexts." *Texas v. United States*, 549 F. Supp. 3d 572, 620-21 (S.D. Tex. 2021).

Simply put, the DACA Rule constitutes a generalized and prospective dispensation of the law applying to well over a million people, and as such clearly runs afoul of the Take Care Clause. This Court accordingly should strike it down on that alternative basis.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's

judgment.

DATED: April 16, 2024                    Respectfully submitted,

                                       /s/ Matt Crapo
                                       Matt A. Crapo
                                       Christopher J. Hajec
                                       Immigration Reform Law Institute
                                       25 Massachusetts Ave., NW, Suite 335
                                       Washington, DC 20001
                                       Telephone: (202) 232-5590
                                       mcrapo@irli.org
                                     chajec@irli.org

                                     Attorneys for *Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2024, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>/s/ Matt Crapo</u>
Matt A. Crapo

**CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because it contains 3,694 words, as measured by Microsoft Word software, which is fewer than one-half of the 13,000 word limit for a party's principal brief under Fed. R. App. P. 32(a)(7)(B). The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: April 16, 2024                    Respectfully submitted,

                                         /s/ Matt Crapo
                                         Matt A. Crapo