No. 23-40653

# In the United States Court of Appeals for the Fifth Circuit

State of Texas; State of Alabama; State of Arkansas; State of Louisiana; State of Nebraska; State of South Carolina; State of West Virginia; State of Kansas; State of Mississippi,

*Plaintiffs – Appellees,*

v.

United States of America; Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security; Troy Miller, Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection; Patrick J. Lechleitner, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services; Jason D. Owens, Chief of the U.S. Border Patrol,

*Defendants – Appellants,*

María Rocha; José Magaña-Salgado; Nanci J. Palacios Godínez; Elly Marisol Estrada; Karina Ruíz De Díaz; Carlós Aguilar González; Luis A. Rafael; Darwin Velásquez; Jin Park; Óscar Álvarez; Denise Romero; Jung Woo Kim; Ángel Silva; Hyo-Won Jeon; Elízabeth Díaz; Blanca González; Moses Kamau Chege; María Díaz,

*Intervenor Defendants – Appellants,*

State of New Jersey,

*Intervenor – Appellant.*

On Appeal from the United States District Court for the Southern District of Texas, Brownsville Division

## REPLY BRIEF OF INTERVENOR DEFENDANTS – APPELLANTS

Nina Perales
MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
110 Broadway Street
San Antonio, TX 78205
(210) 224-5476

Douglas H. Hallward-Driemeier
Emerson A. Siegle
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 508-4600

*Additional Counsel Listed on Inside Cover*

1

Anna K. Blanco (*of counsel*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Patrick S. Doherty (*of counsel*)
Krystal A. Vazquez (*of counsel*)
Antonia E. Miller (*of counsel*)
Lauren C. Brady (*of counsel*)
Laura C. Medina (*of counsel*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Philip P. Ehrlich (*of counsel*)
Francis X. Liesman (*of counsel*)
ROPES & GRAY LLP
191 North Wacker Drive
Chicago, IL 60606
(312) 845-1200

Carlos Moctezuma García
GARCÍA & GARCÍA, ATTORNEYS AT
LAW P.L.L.C.
P.O. Box 4545
McAllen, TX 78502
(956) 630-3889

*Counsel for Intervenor Defendants - Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

<u>Plaintiffs-Appellees</u>

State of Texas

State of Alabama

State of Arkansas

State of Kansas

State of Louisiana

State of Mississippi

State of Nebraska

State of South Carolina

State of West Virginia

*Represented by*

> Ryan D. Walters, Chief, Special Litigation Division, Office of the Attorney General of Texas

> James A. Mackenzie, Office of the Solicitor General of Texas

> Ari Cuenin, Office of the Attorney General, Solicitor General Division

<u>Defendants-Appellants</u>

United States of America

Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security

Troy Miller, Senior Official Performing the Duties of the Commissioner, U.S. Customs & Border Protection

Patrick J. Lechleitner, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement

Ur M. Jaddou, Director, U.S. Citizenship and Immigration Services

Jason D. Owens, Chief of the U.S. Border Patrol

*Represented by*

    Joshua M. Koppel, U.S. Department of Justice, Civil Division

    Melissa N. Patterson, U.S. Department of Justice, Civil Division

    Nicholas S. Crown, U.S. Department of Justice, Civil Division

    James J. Walker, Trial Attorney, U.S. Department of Justice, Office of Immigration Litigation

<u>Intervenor Defendants-Appellants</u>

María Rocha

José Magaña-Salgado

Nanci J. Palacios Godínez

Elly Marisol Estrada

Karina Ruíz De Díaz

Carlós Aguilar González

Luis A. Rafael

Darwin Velásquez

Jin Park

Óscar Álvarez

Denise Romero

Jung Woo Kim

Ángel Silva

Hyo-Won Jeon

Elízabeth Díaz

Blanca González

Moses Kamau Chege

María Díaz

*Represented by*

    Nina Perales

    Carlos Moctezuma García

    Douglas H. Hallward-Driemeier

    Emerson Siegle

    Anna K. Blanco (of counsel)

    Patrick S. Doherty (of counsel)

    Krystal A. Vazquez (of counsel)

    Antonia E. Miller (of counsel)

    Lauren C. Brady (of counsel)

    Laura C. Medina (of counsel)

    Philip P. Ehrlich (of counsel)

    Francis X. Liesman (of counsel)

<u>State of New Jersey</u>

*Represented by*

      Matthew J. Platkin

      Mayur P. Saxena

      Jeremy M. Feigenbaum

 

*/s/ Nina Perales*
Nina Perales

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................ i

TABLE OF AUTHORITIES ................................................. vi

INTRODUCTION .............................................................1

ARGUMENT ................................................................2

I.    *TEXAS (MEMO)* DOES NOT PRE-DETERMINE THE OUTCOME OF THIS APPEAL. ........................................................2

II.   APPELLEES FAIL TO JUSTIFY THE DISTRICT COURT'S DECISION ON STANDING. ...........................................................6

    A.    Appellees' Brief Reaffirms that the District Court's Standing Decision Was Based Solely on Stale and Legally Insufficient Facts...................................................................7

    B.    Appellees Fail to Demonstrate Traceability and Redressability, Especially After *Immigration Priorities*. ................................8

    C.    Appellees Cannot Save Their Deficient Claims with Theories of Standing That Have Already Been Rejected by the Supreme Court. ...............................................................14

    D.    Mirroring the District Court's Opinion, Appellees' Brief Confirms that, at Minimum, Material Facts Remain in Dispute, Precluding Summary Judgment and Warranting Remand..................17

III.  EACH OF APPELLEES' ARGUMENTS ON THE MERITS FAIL BECAUSE, CONTRARY TO THE DISTRICT COURT'S HOLDING, THE RULE DOES NOT OPERATE ON A "CLASS-WIDE" BASIS. ........19

    A.    The Rule Is a Valid Exercise of Discretion under the INA. ..............20

    B.    The Rule Is Constitutional under the Take Care Clause.....................23

    C.    The Rule Is Not Arbitrary and Capricious. .........................24

IV.   APPELLEES FAIL TO DEFEND THE DISTRICT COURT'S ERRONEOUS GRANT OF UNIVERSAL, NATIONWIDE RELIEF. ........25

CONCLUSION ..............................................................28

CERTIFICATE OF SERVICE ...............................................30

CERTIFICATE OF COMPLIANCE ........................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................18

*Arizona v. Garland*,
   --- F.Supp.3d ---, 2024 WL 1645417 (W.D. La., Apr. 16, 2024).....11, 12, 23, 24

*Arizona v. United States*,
   567 U.S. 387 (2012)......................................................................23

*Biden v. Nebraska*,
   143 S. Ct. 2355 (2023)..................................................................22

*California v. Texas*,
   593 U.S. 659 (2021)....................................................................9, 11

*Carroll v. Metro. Ins.*,
   166 F.3d 802 (5th Cir. 1999) ........................................................19

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) ..........................................................8

*Dep't of Com. v. New York*,
   139 S. Ct. 2551 (2019)..............................................................13, 14

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020)..................................................................24, 25, 27

*El Paso Cnty. v. Trump*,
   982 F.3d 332 (5th Cir. 2020) ..........................................................8

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)......................................................................25

*Fleming v. Bayou Steel BD Holdings II, L.L.C.*,
   83 F.4th 278 (5th Cir. 2023) ........................................................18

*Free v. Abbott Lab'ys, Inc.*,
   164 F.3d 270 (5th Cir. 1999) ..........................................................5

*Garcia-Ascanio v. Spring Indep. Sch. Dist.*,
   74 F.4th 305 (5th Cir. 2023) ................................................................19

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ..........................................................................1, 4

*Gilbert v. Donahoe*,
   751 F.3d 303 (5th Cir. 2014) ..................................................................8

*Gollust v. Mendell*,
   501 U.S. 115 (1991) ...............................................................................8

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ....................................................................1, 9, 16

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .............................................................................24

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) ...............................................................................3

*Labrador v. Poe*,
   144 S. Ct. 921 (2024) (Mem.) ..............................................................27

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) .............................................................................23

*Mississippi v. Becerra*,
   --- F.Supp.3d ----, 2024 WL 1335084 (S.D. Miss., Mar. 28, 2024) ..................17

*Netflix, Inc. v. Babin*,
   88 F.4th 1080 (5th Cir. 2023) ...............................................................15

*Texas v. Sec. and Exch. Comm.*,
   2024 WL 2106183 (5th Cir. May 10, 2024) (per curiam)................13, 14, 16, 17

*Texas v. United States*,
   --- F. Supp. 3d. ---, 2023 WL 5951196 (S.D. Tex. Sept. 13, 2023) ...........*passim*

*Texas v. United States*,
   328 F. Supp. 3d 662 (S.D. Tex. 2018)....................................................16

vii

*Texas v. United States,*
    50 F.4th 498 (5th Cir. 2022) .......................................................................*passim*

*Texas v. United States,*
    549 F. Supp. 3d 572 (S.D. Tex. 2021) .................................................................23

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court,*
    579 U.S. 547 (2016) .............................................................................15, 20

*Texas v. United States Department of Homeland Security,*
    --- F.Supp.3d ---, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024).........................12

*United States v. Rahimi,*
    61 F.4th 443 (5th Cir. 2023), *cert. granted* 143 S. Ct. 2688 (2023)....................4

*United States v. Texas,*
    599 U.S. 670 (2023)..........................................................................*passim*

**Statutes**

8 U.S.C. § 1182(d)(5)(A) .............................................................................21

8 U.S.C. § 1252(f)(1) ...................................................................4, 5, 25, 26

8 U.S.C. § 1254a ...........................................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 52(a)(6) .........................................18, 19

## INTRODUCTION

Appellees' arguments depend entirely on two mistaken premises: that (1) facts relevant to the DACA Rule and those relevant to the DACA Memorandum are identical; and (2) the relevant law has been frozen in time since 2022. On that flawed basis, Appellees urge the Court to treat this appeal as merely a redo of *Texas v. United States* ("*Texas (Memo)*"), 50 F.4th 498 (5th Cir. 2022). In reality, however, the facts relevant to DACA Rule, including the facts necessary to establish standing, are distinct, and a trio of Supreme Court decisions—*United States v. Texas* ("*Immigration Priorities*"), 599 U.S. 670 (2023), *Haaland v. Brackeen*, 599 U.S. 255 (2023), and *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)—has drastically changed the law in Intervenor-Appellants' favor. Appellees cannot avoid these significant changes in the facts and the law merely by pretending they do not exist.

Once required to do more than simply point to *Texas (Memo)*, Appellees fail to justify the District Court's ruling. Indeed, Appellees' arguments underscore that the factual and legal changes fundamentally alter the analysis of standing, the merits, and any appropriate relief and render the law-of-the-case doctrine and rule of orderliness inapplicable. Focused on the now-governing law and facts relevant to Appellees' standing to challenge the DACA Rule, the District Court's order cannot stand, for several reasons: (1) Appellees cannot establish standing based on stale assertions of indirect (and unproven) social services expenditures that are not caused

1

by the DACA Rule; (2) the Rule very explicitly does not operate class wide, but instead requires case-by-case discretion, and is therefore consistent with the Constitution, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"); and (3) the District Court and this Court lack authority to enjoin or vacate the Rule, especially on a nationwide basis.

Intervenor-Appellants thus respectfully request that this Court reverse the District Court's order and enter judgment in Intervenor-Appellants' favor, or in the alternative vacate that order and remand, either to the District Court to resolve factual disputes at trial or to the Department of Homeland Security ("DHS") for further consideration, without vacatur of the Rule.

## **ARGUMENT**

## I.     *TEXAS (MEMO)* **DOES NOT PRE-DETERMINE THE OUTCOME OF THIS APPEAL.**

Contrary to Appellees' lead argument, *see* Appellees Br. at 9, 12-19,[1] the District Court's judgment is not "ripe for summary affirmance" under *Texas (Memo)*, the rule of orderliness, and the doctrine of law of the case.

To start, Appellees do not dispute that the Rule covers a materially narrower population with different demographics than the population eligible for DACA under the Memorandum. *See* DACA-Intervenor Br. at 21-22. Those changes in the

---

[1] Citations to "Appellees Br." refer to the Brief of Appellees. Citations to "DACA-Intervenor Br." refer to the Brief of Intervenor-Appellants.

facts alter the analysis with respect to standing, the merits, and remedy. *See id.* at 21-25, 37-42, 53-54. Rather than engage with those changes, however, Appellees suggest that they do not matter; according to Appellees, DHS "admitted" that the Rule is "substantively the same policy as the DACA Memorandum," and the Rule leaves the Memorandum's eligibility criteria in place. Appellees Br. at 13. Appellees miss the point. The Court must analyze the DACA Rule for itself, *see, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558, 574-75, 579 (2019) (court need not defer to agency's "convenient litigating position" or interpretation of unambiguous regulation), and it is precisely ***because*** DACA's eligibility criteria have remained fixed that the size and demographics of the population eligible for DACA have changed, which requires standing to be assessed anew, with respect to this different population, *see* DACA-Intervenor Br. at 21-22.

Appellees also unconvincingly assert (at 12-14) that the outcome of this appeal is pre-determined by *Texas (Memo)* because the relevant law has not changed. But *Immigration Priorities* and *Haaland*, which were decided after *Texas (Memo)*, and *Aleman Gonzalez*, which the parties had not fully briefed during the *Texas (Memo)* appeal, fundamentally changed the relevant legal landscape—and cast *Texas (Memo)* into doubt. The District Court did not adequately account for these decisions in its analysis. *See, e.g.*, DACA-Intervenor Br. at 26-30, 47 (demonstrating that District Court misinterpreted *Immigration Priorities* and failed

even to cite *Aleman Gonzalez* or 8 U.S.C. § 1252(f)(1)).  And, although Appellees eventually acknowledge these new authorities (at 16-17, 19, 21, 30, 41), they too mistakenly downplay those decisions' critical impact.

As this Court recently explained, when "an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis," the "Supreme Court need not expressly overrule [this Court's] precedent" to cast it into doubt. *United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted* 143 S. Ct. 2688 (2023) (cleaned up).  *Immigration Priorities*, *Haaland*, and *Aleman Gonzalez* worked exactly that type of fundamental change on *Texas (Memo)*:  In *Immigration Priorities* and *Haaland*, the Supreme Court held that "federal courts must remain mindful of bedrock Article III constraints in cases brought by States," *Immigration Priorities*, 599 U.S. at 680 n.3, and reigned in the extravagant theories of state standing that supported this Court's decision in *Texas (Memo)*, *see* DACA-Intervenor Br. at 23, 26-30.  And in *Aleman Gonzalez*, the Supreme Court held that 8 U.S.C. § 1252(f)(1) "strips lower courts of jurisdiction or authority to enjoin or restrain the operation of" relevant provisions of the INA, 596 U.S. at 548 (cleaned up)—which definitively forecloses the remedy granted in *Texas (Memo)* as well as the relief Appellees seek here, *see* DACA-Intervenor Br. at 48-50.

Appellees nonetheless encourage this Court, like the District Court, to cling to *Texas (Memo)*.  They assert (at 16-17, 19) that, because in *Immigration Priorities*,

the Supreme Court left unresolved the "Article III consequences" of a "policy that involves . . . the Executive Branch's provision of legal benefits or legal status," 599 U.S. at 683, and declined to decide whether 8 U.S.C. § 1252(f)(1) barred the requested injunctive relief, *Texas (Memo)* survived the decisions in *Immigration Priorities*, *Haaland*, and *Aleman Gonzalez* entirely undisturbed. Appellees demand too much. Indeed, despite Appellees' attempts to minimize *Immigration Priorities*, *Haaland*, and *Aleman Gonzalez*, the Justices themselves recognized those decisions' significant impact. Justice Barrett described *Immigration Priorities* as "novel," "in tension with other decisions," and "striking new ground rather than applying settled principles." 599 U.S. at 707-09 (Barrett, J., concurring). And Justice Alito attacked the *Immigration Priorities* Court for "brush[ing] aside [ ] major precedent." *Id.* at 709 (Alito, J., dissenting). Even the dicta from *Immigration Priorities* that Appellees (at 16-17) and the District Court (*Texas v. United States* ("*Texas (Rule)*"), --- F. Supp. 3d. ---, 2023 WL 5951196, at *9-10 (S.D. Tex. Sept. 13, 2023)) seize on to suggest *Texas (Memo)* remains viable precedent is entirely equivocal—and instead confirms that the Supreme Court's analysis "***could***" change under its new, narrower approach to state standing, 599 U.S. at 683 (emphasis added).

Thus, as even Appellees' cited authorities show, the rule of orderliness and the doctrine of law of the case simply do not apply. *See, e.g.*, *Free v. Abbott Lab'ys, Inc.*, 164 F.3d 270, 273 n.1 (5th Cir. 1999) (Appellees Br. at 15) (citing case

conceding that, despite law-of-the-case doctrine, courts must reconsider key issues, including Article III standing, in "extraordinary circumstances," including changes in facts and law).

## II.   APPELLEES FAIL TO JUSTIFY THE DISTRICT COURT'S DECISION ON STANDING.

Although Appellees assert that they can also prevail without the benefit of *Texas (Memo)*, the rule of orderliness, and the doctrine of law of the case, with those inapplicable arguments properly stripped away, Appellees' brief ***confirms*** four fundamental flaws with the District Court's grant of summary judgment as to standing.   ***First***, Texas (the only state to even attempt to meet its Article III burden) presented stale and inapposite information about the Memorandum, rather than competent evidence about costs supposedly imposed by the Rule.   *See* Appellees Br. at 20-22.   ***Second***, Texas purported to connect social services expenditures to DACA using only Dr. Wong's outdated 2017 survey and speculation about how DACA recipients might react to DACA's termination, *see* Appellees Br. at 22-26, facts that are wholly insufficient to establish traceability and redressability years later, particularly after *Immigration Priorities*.   ***Third***, Appellees cannot defend the District Court's holding by purporting to resuscitate special solicitude and *parens patriae*—theories of standing the District Court did not even consider and that this Court has recently confirmed are all-but extinct.   And ***fourth***, at the very least, the summary judgment record contained competing facts about harm, traceability, and

redressability, which forced the District Court to make impermissible credibility determinations and weigh evidence. *See* Appellees Br. at 25-26. Especially after *Immigration Priorities*, those flaws in the District Court's standing analysis require this Court to either grant judgment in favor of Intervenor-Appellants or, at the least, remand for a trial to resolve disputed facts.

### A. Appellees' Brief Reaffirms that the District Court's Standing Decision Was Based Solely on Stale and Legally Insufficient Facts.

Appellees' brief confirms that Appellees' standing argument is premised only on the record in *Texas (Memo)*, including Dr. Perryman's 2018 speculation about the Memorandum's costs and Texas's 2018 estimates of its social services spending on all non-U.S. citizens. *See* Appellees Br. at 20-21 (citing ROA.22980, ROA.23040-41, ROA.23047).[2] That so-called evidence, besides being stale, is legally insufficient to demonstrate an injury-in-fact: Dr. Perryman clarified that he was "not aware of any costs to the State of Texas as a result of DACA" and "provide[d] no evidence of such costs," ROA.18080, and Appellees have failed to connect any social services spending specifically to DACA recipients, as they must to satisfy Article III, *see* Part II.B.

---

[2] Appellees appear to have wisely abandoned their untimely reliance on long-waived evidence relating to the DACA Memorandum's supposed impact on Texas's driver's licenses costs. *See* DACA-Intervenor Br. at 33-34.

But that so-called evidence is even more insufficient now because it is more than a half-decade out of date, and it is not about the DACA Rule. Standing is not static. Article III demands that litigants maintain a case or controversy "at all stages of the litigation." *El Paso Cnty. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020). Changes in facts can extinguish a plaintiff's standing and end the required Article III case or controversy. *See, e.g.*, *Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014) (change in facts "destroy[ed] [plaintiff's] standing to bring claims for injunctive relief"); *cf. Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991) ("serious constitutional doubt" whether plaintiff that loses financial interest in outcome of case "could demonstrate the standing required" by Article III). That is especially apposite here, where Appellees are now challenging a new DACA Rule that was not even in place at the time of their supposed evidence. By relying only on stale facts, Appellees' brief thus confirms that the District Court erred in concluding that Texas suffered any pocketbook injury. *See, e.g.*, *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) (Mississippi's social services spending on all non-U.S. citizens in 2006 insufficient to confer standing for Mississippi to challenge DACA in 2015).

### B.     Appellees Fail to Demonstrate Traceability and Redressability, Especially After *Immigration Priorities*.

In arguing traceability and redressability, Appellees do not ignore *Immigration Priorities* altogether, but they misread its dicta. Like the District Court (*Texas (Rule)*, 2023 WL 5951196 at *9-10), Appellees (at 16-17, 21) seize on the

Supreme Court's musings that enforcement discretion paired with benefits "***could***

lead to a different standing analysis," and that, if the "Executive Branch wholly

abandoned its statutory responsibilities to make arrests or bring prosecutions," the

"standing calculus ***might*** change."  599 U.S. at 682-83 (emphasis added).  But this

case is very different from the hypothetical cases that the Supreme Court described.

With respect to discretion-plus-benefits standing, Appellees here have challenged

only the Rule; they have ***not*** challenged (and do not purport to challenge) the work

authorization, lawful presence, and other so-called benefits associated with the Rule

that flow from entirely separate statutes and regulations.  *See* DACA-Intervenor Br.

at 29.  Appellees cannot "fairly trace[]" their supposed injuries from the Rule to

unchallenged provisions that "operate independently" of it.  *Haaland*, 599 U.S. at

296; *see California v. Texas*, 593 U.S. 659, 678 (2021) (states could not premise

standing on costs imposed by unchallenged portions of a statute); *see also Texas

(Rule)*, 2023 WL 5951196, at *21 n.93 (many of DACA's supposed "benefits are

not directly bestowed by the Final Rule or even the Federal Government").  And,

with respect to abdication standing, Appellees have introduced no facts

demonstrating that DHS wholly abdicated its responsibility to enforce the INA or

explained how Appellees properly raised the abdication standing theory here.  *See*

DACA-Intervenor Br. at 29-30.

9

By focusing on *Immigration Priorities*' dicta rather than its holding, Appellees, like the District Court, also miss the forest for the trees.  In *Immigration Priorities*, eight Justices agreed that Texas lacked standing to challenge an exercise of enforcement discretion in the immigration context, and a majority of the Justices instructed that, when a State challenges a federal policy based only on the "indirect effects on state revenues or state spending," the "State's claim for standing can become ***more*** attenuated"—***not*** less.   599 U.S. at 680 n.3 (emphasis added). *Immigration Priorities* thus imposes a significantly higher traceability and redressability burden on Appellees than they or the District Court believed.

Appellees' brief confirms that the District Court erred in concluding that Appellees satisfied that higher post-*Immigration Priorities* burden.  Appellees do not dispute, and so concede, that they cannot trace a single cent of Texas's social services expenditures to a DACA recipient who remained in Texas because of DACA or who would leave Texas if DACA ended.  *See, e.g.*, ROA.24540-24639 (Appellees' officials confirming they cannot connect social services expenditures to DACA recipients); *Texas (Memo)*, 50 F.4th at 517-18 ("The record does not indicate precisely what portion of all costs for illegal [immigrants] is spent on DACA recipients . . .").  Indeed, the record confirms that, to the extent Texas spends any money on DACA recipients, and Texas showed none, it is because "they are here"— not because they received DACA under the Rule.  ROA.18082.  Appellees are thus

forced to contend that some of Texas's social services expenditures on non-U.S. citizens are traceable to DACA and would be redressed by DACA's termination because, say Appellees, it is "all but unavoidable" that at least some DACA recipients have stayed in Texas because of DACA alone.  Appellees Br. at 22-26. But Appellees do not even attempt to link their speculation about those who might depart absent DACA with whatever indirect costs Texas might assert.  Especially after *Immigration Priorities*, that sort of hypothesizing about how independent third-party conduct indirectly affects state spending falls far short of satisfying Article III. *See California*, 593 U.S. at 675 (standing is "substantially more difficult to establish" when it relies on "decision of an independent third party"); *Immigration Priorities*, 599 U.S. at 680 n.3

Following *Immigration Priorities*, other courts in this Circuit have rejected state standing arguments premised on that same purported logical leap.  In *Arizona v. Garland* ("*Arizona*"), --- F.Supp.3d ---, 2024 WL 1645417, at *1, 12-15 (W.D. La., Apr. 16, 2024), Louisiana and Florida challenged an interim final rule related to immigration asylum, which they alleged increased their social services expenditures. Like Appellees here, Louisiana and Florida attempted to support their allegations with evidence related to state spending on "public assistance, healthcare, and education" for non-U.S. citizens.  *Id.*  But Louisiana and Florida could not trace any of those expenses to immigrants released into the states because of the interim final

rule. *See id.* As a result, the court held that the plaintiffs lacked standing. *See id.* Likewise, in *Texas v. United States Department of Homeland Security* ("*DHS*"), --- F.Supp.3d ---, 2024 WL 1021068, at *1, 12 (S.D. Tex. Mar. 8, 2024), a group of states (including Appellees) argued that they had incurred social services expenditures on immigrants who entered the United States pursuant to a DHS immigration parole program. The court emphasized, however, that Article III requires state plaintiffs to prove a "relative" injury—that "the number of [immigrants], and the associated amount expended because of them, increased relative to those same numbers prior to the implementation of the challenged program." *Id.* at *16. Because the states (like Appellees here) could not make such a showing, the court held that they lacked standing. *See id.* at *16-17.

Although a faithful application of *Immigration Priorities* should have also doomed Appellees' traceability and redressability arguments, Appellees attempt to defend the District Court by arguing that the District Court properly concluded that, unlike in *Arizona* and *DHS*, DACA's effects on DACA recipients are somehow "likely" or "predictable." Appellees Br. at 23-24. Appellees' brief confirms, however, that the District Court relied on just two purported pieces of evidence in support: Dr. Wong's 2017 survey, and Dr. Potter's speculation about how DACA recipients might react to DACA's termination. *See* Appellees Br. at 22-26 (citing ROA.25214-16 (District Court relying on Dr. Wong and Dr. Potter), ROA.34109

(Dr. Wong's survey)). Yet, as Intervenors-Appellants have explained (at 25), Dr. Wong's 2017 survey and Dr. Potter's 2018 uninformed speculation predated the Rule by nearly half a decade, occurred at a particular point in time, and suffered from significant methodological flaws and faulty assumptions.

Appellees derisively refer (at 24) to Intervenor-Appellants' concerns as "buyer's remorse," but this Court recently confirmed that, when it comes to traceability and redressability "there's a difference between theory and practice." *Texas v. Sec. and Exch. Comm.* (*"SEC"*), 2024 WL 2106183, at *2 (5th Cir. May 10, 2024) (per curiam). "Evidence couched in hypothetical language," including Dr. Wong's survey and Dr. Potter's speculation, simply "cannot support" Article III standing. *Id.* ("speculation about the possibility" of cost pass-throughs to investors "too hypothetical to support a claim of standing"). Thus, especially after *Immigration Priorities*, the District Court erred in relying merely on Dr. Wong and Dr. Potter to conclude that the DACA Rule caused redressable injuries.

Appellees' repeated citations (at 22-26) to *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), only underscore the District Court's error. There, the Supreme Court held that state plaintiffs had standing to challenge an attempt to reinstate a citizenship question on the 2020 census. *Id.* at 2565-66. The Court recognized that the states' theory of standing (like Appellees' theory here) "depend[ed] on the independent action of third parties." *Id.* at 2565. The

*Department of Commerce* plaintiffs, however, "met their burden of showing that third parties will likely react in predictable ways." *Id.* at 2566. That was because, not only had the defendants and the district court tested the states' evidence at trial, *see* Part II.D, but that evidence had also "established that noncitizen households have *historically responded* to the census at lower rates than other groups." *Id.* at 2566. In other words, the state plaintiffs in *Department of Commerce* had exactly the type of evidence that Appellees lack here—evidence about how the relevant third parties actually responded to a challenged action, rather than mere speculation about how those third parties might theoretically react. *See also SEC*, 2024 WL 2106183, at *2 ("there's a difference between theory and practice"). Lacking that historical evidence, the District Court erred in concluding that Appellees had demonstrated traceability and redressability here.

### C.  Appellees Cannot Save Their Deficient Claims with Theories of Standing That Have Already Been Rejected by the Supreme Court.

Again misunderstanding *Immigration Priorities* and *Haaland*, Appellees assert (at 27-31) that they are entitled to special solicitude in the standing analysis and that they can assert their residents' rights against the Federal Government as *parens patriae*. Appellees raise those extravagant theories of state standing on appeal even though the District Court did not accept (or even acknowledge) them. *See Texas (Rule)*, 2023 WL 5951196, at *8-11. It is not surprising that Appellees invoke those theories now: *DAPA* and *Texas (Memo)*, on which Appellees heavily

depend, both relied on special solicitude to find Texas had standing.  *See Texas v. United States* ("*DAPA*"), 809 F.3d 134, 162 (5th Cir. 2015) ("our determination that Texas has standing is based in part on the 'special solicitude' we afford it"), *aff'd by an equally divided Court*, 579 U.S. 547 (2016); *Texas (Memo)*, 50 F.4th at 520 ("Especially with the benefit of special solicitude, Texas has established" standing). But there is a good reason the District Court declined to address Appellees' special solicitude and *parens patriae* arguments below:  they are foreclosed by *Immigration Priorities* and *Haaland*, and they are inapplicable in any event.

As Intervenor-Appellants explained, *Immigration Priorities* held that states are not entitled to special solicitude.  DACA-Intervenor Br. at 16, 27.  To the contrary, states (like all other plaintiffs) must satisfy "bedrock Article III constraints in cases . . . against an executive agency or officer."  *Immigration Priorities*, 599 U.S. at 680 n.3; *see also id.* at 689 (Gorsuch, J., concurring) (in future cases, "lower courts should just leave [special solicitude] on the shelf").  Indeed, in an entirely unrelated context, this Court recently took pains to point out "for the benefit of a future panel or en banc court, that the 'special solicitude' once afforded to states under *Massachusetts v. EPA*, with respect to justiciability doctrines like standing, seems to [ ] be falling out of favor with the Supreme Court."  *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1089 n.12 (5th Cir. 2023) (cleaned up).  Appellees (at 29) nonetheless cite *Massachusetts v. EPA* to contend that they are entitled to special solicitude to

challenge the Rule. Whatever the viability of special solicitude generally, however, the Supreme Court has explicitly rejected the specific argument Appellees make here: *Massachusetts v. EPA* simply "does not control" challenges "to an exercise of the Executive's enforcement discretion." *Immigration Priorities*, 599 U.S. at 685 n.6.

The Supreme Court has also roundly rejected Appellees' theory of *parens patriae* standing. In *Haaland*, the Supreme Court held that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." 599 U.S. at 294-95. Yet even if *Haaland* somehow left the question unresolved, *see SEC*, 2024 WL 2106183, at *3 (describing circuit split), Appellees do not have standing as *parens patriae* here. The only "quasi-sovereign interest" Appellees have asserted is to "the economic well-being of their residents." Appellees Br. at 28 (cleaned up). Yet, for all their theorizing about how the Rule must "necessarily increase[] competition and drive[] down wages," *id.*, Appellees have not demonstrated that, in any Appellee state, an employer actually hired a DACA recipient rather than an equally qualified U.S.-born worker, leaving that U.S.-born worker without reasonably equivalent employment. *See Texas (Memo)*, 328 F. Supp. 3d 662, 695 (S.D. Tex. 2018) (preliminary injunction record, which Appellees also relied on for summary judgment, did "not indicate why [any particular DACA recipient] was chosen" for a job). Because, with respect to standing, "there's a

difference between theory and practice," Appellees cannot prove any injury to a quasi-sovereign interest based on the summary-judgment record. *SEC*, 2024 WL 2106183, at *2-3 (Texas lacked *parens patriae* standing to challenge SEC regulation because Texas had "not offered sufficient evidence that the funds will indeed pass costs on to [Texas resident] investors"); *see also Mississippi v. Becerra*, --- F.Supp.3d ---, 2024 WL 1335084, at *17 (S.D. Miss., Mar. 28, 2024) (rejecting *parens patriae* standing based only on "highly attenuated chain of possibilities").

### D. Mirroring the District Court's Opinion, Appellees' Brief Confirms that, at Minimum, Material Facts Remain in Dispute, Precluding Summary Judgment and Warranting Remand.

At the very minimum, Appellees' brief makes abundantly clear that, having denied Intervenor-Appellants' motion for summary judgment, the District Court also should have denied Appellees' competing summary judgment motion as to standing and set the case for trial. As Intervenor-Appellants explained (at 34-36), there are at least genuine disputes as to injury-in-fact, traceability, and redressability. *See, e.g.*, *Texas (Rule)*, 2023 WL 5951196, at *9 (District Court noting that "the size and even the direction of" the Rule's indirect effects on Appellees' social services expenditures is unclear).[3] Appellees concede that those genuine disputes exist. For

---

[3] This Court previously believed that "no one disputes" that Texas incurred social services costs for DACA recipients. *Texas (Memo)*, 50 F.4th at 518. However, Intervenor-Appellants have consistently argued, including with respect to the Rule, that Texas cannot connect even a single cent of healthcare, education, or social

example, Appellees acknowledge (at 26) that "the [D]istrict [C]ourt found that there is contrary evidence in the record that *some* DACA recipients would remain in the United States if the DACA program were terminated," and Appellees volunteer (at 9) that, according to the administrative record, "DHS anticipates no change in the U.S. population as a direct effect of [the DACA] [R]ule."  Appellees assert that this Court need not trouble itself with that contrary evidence, however, because the District Court "credited" other evidence, because "there was ample evidence" cutting the other way, and because the District Court's "factual findings" were not clearly erroneous under Federal Rule of Civil Procedure 52(a)(6).  Appellees Br. at 26.

Appellees own language betrays the District Court's mistake.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" deciding a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  And even in a bench trial, "[s]quaring [the] evidentiary circle is the task of the finder of fact, not the stuff of summary judgment." *Fleming v. Bayou Steel BD Holdings II, L.L.C.*, 83 F.4th 278, 298 (5th Cir. 2023).  For that reason, concepts like "ample evidence" apply to the post-trial review of verdicts, not to a summary judgment appeal. *See,*

---

services expenditures to DACA recipients. *See* ROA.34904-07; DACA-Intervenor Br. at 24-25.  Thus, injury-in-fact remains hotly disputed.

*e.g.*, *Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 311 (5th Cir. 2023) (affirming in post-trial appeal "because there was ample evidence to support the jury's verdict"). Similarly, Rule 52(a)(6), on which Appellees (at 26) purport to rely, explicitly contemplates a "trial court's opportunity to judge the witness's credibility"—something entirely inappropriate at summary judgment. Appellees' own characterization thus confirms that, at the very least, the evidentiary record required the District Court to weigh evidence, evaluate credibility, and resolve disputes. Because those are tasks in which neither this Court nor the District Court should engage "at this stage in the litigation," if this Court does not reverse, it must remand for a trial as to standing. *Carroll v. Metro. Ins.*, 166 F.3d 802, 808 (5th Cir. 1999).

## III. EACH OF APPELLEES' ARGUMENTS ON THE MERITS FAIL BECAUSE, CONTRARY TO THE DISTRICT COURT'S HOLDING, THE RULE DOES NOT OPERATE ON A "CLASS-WIDE" BASIS.

Appellees' defense of the District Court's ruling on the merits starts from a mistaken premise: that the DACA Rule somehow "reclassif[ies] an entire class of removable [immigrants] as lawfully present or [ ] categorically exempt[s] [them] from statutory removal provisions." Appellees Br. at 31 (cleaned up); *see also, e.g.*, *id.* at 11 (describing the Rule as "declaring an entire class of [immigrants] to henceforth be present lawfully"). Contrary to Appellees' and the District Court's mistaken belief, however, the Rule does not operate on a class-wide basis. To the

contrary, the Rule explicitly requires DHS adjudicators to exercise discretion at each step of the DACA application process, guaranteeing that, with respect to the already-narrower DACA-eligible population, DACA will be granted only in a temporary, contingent, and individualized way.  *See* DACA-Intervenor Br. at 39-40, 42.  That reality undermines Appellees' arguments and the District Court's holding that the Rule violates the INA, and it dooms Appellees' Take Care Clause and arbitrary and capricious claims—claims that the District Court wisely declined to address.

### A.     The Rule Is a Valid Exercise of Discretion under the INA.

Appellees, like the District Court, do not quarrel with the general proposition that the INA requires DHS to exercise discretion.  *See* Appellees Br. at 18-19 (recognizing "DHS's inherent prosecutorial discretion") (cleaned up); *Texas (Rule)*, 2023 WL 5951196, at *21 ("DHS does not need a rule to enable it to not prosecute someone.").  Rather, Appellees heavily rely on this Court's decision in *DAPA*, which "[a]t its core" was "about [DHS's] decision to change the immigration classification of millions of illegal [immigrants] on a class-wide basis."  809 F.3d at 170. Analogizing this case to *DAPA*, Appellees assert that the Rule exceeds the INA because it supposedly operates class wide.  *See* Appellees Br. at 32-33.  But Appellees ignore that DACA is not DAPA, and that the DACA Rule is not the DACA Memorandum.

To start, Appellees do not address, let alone disagree with, Intervenor-Appellants' argument that the Rule expressly operationalizes the exercise of discretion at each step of the DACA application process. *See* DACA-Intervenor Br. at 39-40. Instead, Appellees appear to assume that the Rule's regulatorily required discretion is illusory, and that everyone eligible for DACA under the Rule receives it. *See* Appellees Br. at 35 (eliding distinction between "the DACA-eligible population" and "DACA recipients"). Appellees identify, however, no evidence in the summary judgment record to support that assertion, and the District Court recognized that "there may be a difference of opinion as to whether prosecutorial discretion is actually being exercised in the DACA arena." *Texas (Rule)*, 2023 WL 5951196, at *21. Yet, without the District Court's assumption that the DACA Rule operates class-wide, the District Court's holding (and Appellees' attempt to defend it) falls apart.

By highlighting additional aspects of the Rule that they find problematic, *see* Appellees Br. at 34-41, Appellees only further undermine their argument and the District Court's holding. Appellees (at 36-37) and the District Court (2023 WL 5951196, at *14-15) argue that the "Rule contradicts the INA by allowing recipients to access advance parole." Appellees misunderstand the INA's statutory scheme. The INA itself, via the Attorney General's authorization to "in his discretion parole into the United States . . . any [noncitizen]," 8 U.S.C. § 1182(d)(5)(A), allows

DACA recipients to apply for a discretionary grant of advance parole, but only in the same way *every* non-U.S. citizen can do so.  In other words, the Rule changes nothing:  the entire DACA-eligible population (and every other non-U.S. citizen) has *always* been eligible for advance parole and would remain eligible without the Rule.  Appellees (at 33, 40-41) also argue that the Rule violates the major questions doctrine.  But the Supreme Court recently reiterated that an agency's "previous invocations of" and "past practice under" a statute help illustrate the intended breadth of Congress's delegation. *Biden v. Nebraska*, 143 S. Ct. 2355, 2369, 2372 (2023).  Intervenor-Appellants explained (at 41-42) that the Rule is entirely consistent with DHS's historical practice in general, and is indistinguishable in size and scope from the Family Fairness Program, a post-Immigration Reform and Control Act of 1986 initiative by Presidents Regan and Bush that ultimately offered renewable deferred deportation and work authorization for an indefinite period on a non–country specific basis to approximately 1.5 million people following Congressional inaction.  Yet, Appellees do not even mention the Family Fairness Program, let alone distinguish it from the Rule.  Appellees' other arguments (at 32-41) merely assert that, because the INA explicitly makes other groups of non-U.S. citizens eligible for deferred action and work authorization (including work authorization for non-U.S. citizens from countries designated by the executive branch who receive temporary protected status from the executive branch, *see* 8

U.S.C. § 1254a (cited in Appellees Br. at 39)), Congress must have also intended to preclude DHS from making DACA recipients eligible for deferred action and work authorization. "By introducing a limitation not found in the statute," however, Appellees "ask [this Court] to alter, rather than to interpret," the INA. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020).

In short, by requiring individualized, case-by-case determinations, the Rule is consistent with the "broad discretion exercised by immigration officials" that is a "principal feature" of the INA. *Arizona v. United States*, 567 U.S. 387, 396 (2012). At the very least, there would need to be a remand for discovery and fact-finding about ***whether*** the DACA Rule operates on a class-wide basis.

## B.   The Rule Is Constitutional under the Take Care Clause.

As Appellees concede (at 44), the District Court prudently declined to reach Appellees' novel argument that the Rule violates the Take Care Clause. Appellees offer no compelling justification for this Court to do so now. The Take Care Clause is widely misunderstood, *see, e.g.*, *Texas (Memo)*, 549 F. Supp. 3d 572, 621-22 (S.D. Tex. 2021), and Appellees "are unable to cite a case wherein [a] plaintiff successfully prosecuted a Take Care Clause claim against a president or members of his administration." *Arizona*, 2024 WL 1645417, at *16. "Furthermore, the Plaintiff States' Take Care Clause claim merely re-states their APA claims with respect to the [Rule], and the Plaintiff States allege no independent constitutional allegations

against the Defendants under this provision." *Id.* There is thus no reason for this Court to address Appellees' Take Care Clause claim in the first instance now.

And even if this Court did address Appellees' Take Care Clause claim, the claim would certainly fail—especially because the Rule does not operate class wide. The Clause is a source of executive prosecutorial discretion—including the Executive's "special province" not to prosecute. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Accordingly, the Rule is precisely the sort of prosecutorial discretion that the Supreme Court recognized is firmly rooted in, rather than a violation of, the Take Care Clause. *See, e.g.*, *id.*

### C.    The Rule Is Not Arbitrary and Capricious.

Although the District Court likewise sensibly declined to reach Appellees' wholly unsupported argument that the Rule is arbitrary and capricious, Appellees now contend (at 42-44) that DHS acted arbitrarily and capriciously because it failed to engage in "reasoned decisionmaking." The administrative record, *Department of Homeland Security v. Regents of the University of California* ("*Regents*"), 591 U.S. 1 (2020), and Appellees' filings below, however, entirely undermine their claim. As the record confirms, DHS undertook a rigorous process of notice-and-comment rulemaking to promulgate the Rule, including by carefully considering and explaining its justification and the Rule's impact in an administrative record comprising approximately 7,600 pages of government studies and academic research

papers and analyses, *see* ROA.25566-33254, and by receiving and thoroughly responding to 16,361 overwhelmingly supportive comments, *see* ROA.25795.  In *Regents*, the Supreme Court also cautioned that it would be arbitrary and capricious for DHS ***not*** to consider retaining a policy of deferred action for DACA recipients.  *See* 591 U.S. at 33.  And Appellees themselves acknowledged below that they do not dispute that DHS "adequately assess[ed] the costs and benefits of employment authorization for DACA recipients relating to American workers."  ROA.35408.  That concession reveals Appellees' arbitrary and capricious claim for what it really is:  an impermissible request that this Court "substitute its own policy judgment for that of the agency," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), rather than a legitimate concern with the agency's decisionmaking.

## IV.   APPELLEES FAIL TO DEFEND THE DISTRICT COURT'S ERRONEOUS GRANT OF UNIVERSAL, NATIONWIDE RELIEF.

Appellees say (at 41, 45-47) more about *Aleman Gonzalez*, 8 U.S.C. § 1252(f)(1), and the appropriateness of a nationwide remedy than the District Court (which said nothing at all), but Appellees' arguments are unconvincing.

With respect to 8 U.S.C. § 1252(f)(1), Appellees do not and cannot dispute that Congress stripped the District Court and this Court of "jurisdiction or authority to enjoin or restrain the operation of" relevant sections of the INA.  Rather, Appellees argue (at 41) that, when *Aleman Gonzalez* interpreted Section 1252(f)(1) to mean precisely what it says, the Supreme Court's analysis was limited to the

specific content of that case: "a class-action challenge to the actual enforcement of immigration laws against particular individuals." But the INA says exactly the opposite. Section 1252(f)(1) is unequivocal; it applies "[r]egardless of the nature of the action or claim or the identity of the party or parties bringing the action." 8 U.S.C. § 1252(f)(1). Appellees also argue (at 41) that *Aleman Gonzalez* does not apply here because the DACA Rule operates "outside the scope of §§ 1221-1232," the provisions of the INA covered by Section 1252(f)(1). But Appellees' own brief defeats that argument: Appellees concede (at 35) that they believe the Rule transgresses the INA exactly because it violates (among other provisions) Sections 1225, 1227, and 1229a. And because Appellees do not and cannot distinguish the effects of vacatur from a permanent injunction, Section 1252(f)(1) and *Aleman Gonzalez* likewise deprive this Court and the District Court of authority to vacate the Rule. *See* DACA-Intervenor Br. at 49-50.

With respect to the nationwide scope of relief, Appellees merely argue (at 47) that immigration laws must be uniform and that the public interest always favors those laws' prompt enforcement. Appellees (like the District Court) fail, however, to account for the large and still-growing chorus of judges and Justices who have cautioned district courts against issuing wide-reaching nationwide injunctions that overstep the bounds of the litigation. *See* DACA-Intervenor Br. 51-52 (collecting cases). Most recently, five Justices appeared to disparage lower courts' nationwide

injunctions that not only "redress the injuries of the plaintiffs before them" but instead seek "to govern an entire State or even the whole Nation from their courtrooms." *Labrador v. Poe,* 144 S. Ct. 921, 926 (2024) (Mem.) (Gorsuch, J., joined by Thomas and Alito, JJ., concurring); *see also id.* at 931 (Kavanaugh, J., joined by Barrett, J., concurring) ("prohibiting nationwide or statewide injunctions may turn out to be the right rule as a matter of law").  Nor do Appellees adequately explain how a nationwide permanent injunction is consistent with DACA recipients' reliance interests, which the District Court recognized "weigh heavily in [DACA recipients'] favor," *Texas (Rule)*, 2023 WL 5951196, at *19; which the Supreme Court made clear in *Regents* must be taken into account, 591 U.S. at 30-31; and which the amicus briefs make clear have only grown stronger, *see e.g.*, Br. of Local Gov'ts at 6-23 (DACA recipients make their communities more prosperous and safe); Br. of Colleges & Universities at 7, 23 (DACA recipients "are outstanding students" with "considerable talents" who will benefits their communities and the nation); Br. of U.S. Companies & Business Associations at 5-22 ("American business rely on DACA recipients as employees, consumers, and job creators" and that "DACA recipients fill jobs that otherwise would remain vacant").

At the very least, Appellees' brief confirms that, if this Court affirms, it should stay the District Court's injunction pending further proceedings.  This Court, recognizing that DACA presents "serious" legal questions of "profound

significance," previously took that approach with respect to the Memorandum, *see* 50 F.4th at 531, and Appellees apparently do not dispute that a stay pending further proceedings is also appropriate as to the Rule, *see* Appellees Br. at 46.

## **CONCLUSION**

Intervenor-Appellants respectfully request that this Court reverse the District Court's order and enter judgment in their favor, or in the alternative vacate that order and remand to the District Court to resolve pending factual disputes at trial or to remand the Rule to DHS without vacatur.

Respectfully submitted,

Dated: May 28, 2024

| | |
|---|---|
| Douglas H. Hallward-Driemeier | /s/ Nina Perales |
| Emerson A. Siegle | Nina Perales |
| ROPES & GRAY LLP | MEXICAN AMERICAN LEGAL |
| 2099 Pennsylvania Avenue, N.W. | DEFENSE & EDUCATIONAL FUND |
| Washington, D.C. 20006 | 110 Broadway Street |
| (202) 508-4600 | San Antonio, TX 78205 |
| | (210) 224-5476 |

Anna K. Blanco (*of counsel*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Patrick S. Doherty (*of counsel*)
Krystal A. Vazquez (*of counsel*)
Antonia E. Miller (*of counsel*)
Lauren C. Brady (*of counsel*)
Laura C. Medina (*of counsel*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Philip P. Ehrlich (*of counsel*)
Francis X. Liesman (*of counsel*)
ROPES & GRAY LLP
191 North Wacker Drive
Chicago, IL 60606
(312) 845-1200

*Counsel for Intervenor Defendants – Appellants*

Carlos Moctezuma García
GARCÍA & GARCÍA,
ATTORNEYS AT LAW P.L.L.C.
P.O. Box 4545
McAllen, TX 78502
(956) 630-3889

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been filed electronically this 28th day of May, 2024, by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Nina Perales*

Nina Perales
MEXICAN AMERICAN LEGAL
DEFENSE & EDUCATIONAL FUND
110 Broadway Street
San Antonio, TX 78205
(210) 224-5476

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the volume limitation provided in Fed. R. App. P. 32(a)(7)(B), in that it contains 6,499 words, excluding parts of the brief exempted under Fed. R. App. P. 32(d), according to the word-count feature of Microsoft Word. I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font, size 14 point.

Dated: May 28, 2024                    */s/ Nina Perales*
                                       Nina Perales